**No. 26-4716**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**ASHLEY M. GJOVIK,**

*Plaintiff-Appellant*,

v.

**APPLE INC.,**

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-cv-04597-EMC
Hon. Edward M. Chen

# APPELLANT'S OPENING BRIEF

Ashley M. Gjovik
2108 N St., Ste. 4553
Sacramento, CA 95816
(408) 883-4428
legal@ashleygjovik.com

*Plaintiff-Appellant, In Propria Persona*

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ....................................................................vi

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT ........................................................2

STATUTORY AND REGULATORY AUTHORITIES ...........................2

ISSUES PRESENTED...........................................................................3

STATEMENT OF THE CASE................................................................4

A. Gjovik Reported Safety Hazards and Violations of Law to Apple and to Government Agencies.......................................4

B. Apple Removed Her From the Workplace, Over Her Objection, as She Was Gathering Evidence. ...............................6

C. Her Sexual-Harassment Complaint Described the Texts That Apple Later Said She Concealed.......................................7

D. She Protested Apple's Collection of Employees' Images. .........8

E. Apple Fired Her Hours After She Sent Its Investigator's Message to a Federal Agency. ...................................................8

F. Apple's Account of Its Reasons Changed. .................................9

G. The District Court Capped the Complaint and Dismissed Most Claims on the Pleadings.................................................10

H. The Court Struck Her Opposition Evidence and Granted Apple Summary Judgment......................................................10

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT.........................................................................................13

I. THE DISTRICT COURT GRANTED SUMMARY JUDGMENT UNDER THE WRONG LEGAL STANDARDS. .......13

A. Standard of Review.................................................................13

B. The Court Decided the § 1102.5 Claim on Pretext, Which *Lawson* Does Not Require. .......... 13

C. The Court Granted Apple's Clear-and-Convincing Defense on Its Decision-Maker's Own Testimony. .......... 14

D. The Court Required Proof That Retaliation Was "the Only Reason," on a Concession Gjovik Never Made .......... 16

E. The Court Entered Judgment on Theories That Neither Apple's Motion Nor the Order Addressed .......... 17

II. GJOVIK WAS ENTITLED TO JUDGMENT ON LIABILITY BECAUSE EACH OF APPLE'S STATED REASONS WAS PROTECTED ACTIVITY. .......... 19

A. Standard of Review .......... 19

B. Apple Has Sworn to Its Reasons and Bears the Burden on Every Disputed Fact. .......... 20

C. The Twitter Posts Were a Protected Protest of Apple's Collection of Employees' Images. .......... 21

D. The "Failure to Cooperate" Was Her Request for Written Questions Before Her Agency Testimony. .......... 25

E. The Third Reason Was the Content of Her Sexual-Harassment Complaint. .......... 27

F. Because Each Reason Was Protected Activity, Judgment on Liability Should Be Entered .......... 30

III. THE RECORD INDEPENDENTLY REQUIRED A TRIAL ON APPLE'S MOTIVE AND ON THE LEAVE AND SUSPENSION. .......... 31

A. Standard of Review and the Record .......... 31

B. A Jury Could Find the Leave Involuntary and the Leave and Access Suspension Adverse. .......... 31

C. The Record Contains the Motive Evidence the Order Said Did Not Exist. .......... 33

D. Apple Rested Its Defense on Investigations That It Shielded From Examination. ....36

E. The Evidence the Order Found Missing Was Withheld by Apple Under Erroneous Discovery Orders. ....37

F. The Court Entered a Protective Order Without a Showing of Good Cause. ....39

IV. THE DISTRICT COURT STRUCK GJOVIK'S RESPONSES AND THEN RULED AGAINST HER FOR FAILING TO RESPOND. ....39

A. Standard of Review ....39

B. The Stricken Evidence Answered Declarations and Testimony Apple Produced After Her Motion. ....40

C. The Court Struck the Evidence Without the Rule 6(b) Inquiry or Any Lesser Measure. ....41

D. The Strike Was Not Harmless. ....43

E. On the Pleadings, the Court Struck Her Sur-Reply and Dismissed Three Claims as "Waived." ....44

V. THE DISTRICT COURT DISMISSED CLAIMS ON THE PLEADINGS BY DECIDING FACT QUESTIONS AND APPLYING INCORRECT STANDARDS. ....47

A. Standard of Review ....47

B. The Court Used Judicial Notice to Decide When She Should Have Discovered the Fab. ....47

C. The Court Dismissed the UCL Claim by Treating a Superseded Complaint as a Binding Admission. ....50

D. The Court Dismissed the Sarbanes-Oxley and Dodd-Frank Claims by Deciding Her Motive From Apple's Document. ....51

E. The Court Tested the Post-Termination Emotional-Distress Allegations for Believability. ....53

F. The Court Removed Three Categories of Protected Disclosures on Pleading Grounds. ....54

G. The Court Dismissed the RICO, Bane Act, and Ralph Act Claims for Missing Detail. ....56

VI. THE DISTRICT COURT CAPPED THE PLEADINGS AND CLOSED THEM WITHOUT APPLYING *FOMAN* ....58

A. Standard of Review ....58

B. The Page Cap Produced the Deficiencies the Court Then Found. ....58

C. The Court Denied Leave on New Evidence Without Any *Foman* Finding. ....59

CONCLUSION ....61

STATEMENT OF RELATED CASES ....63

CERTIFICATE OF COMPLIANCE ....64

CERTIFICATE OF SERVICE ....65

ADDENDUM ....66

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*,
624 F.3d 1253 (9th Cir. 2010) ....................................................39, 41

*Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*,
248 F.3d 892 (9th Cir. 2001) ..............................................................2

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..........................................................................14

*In re Apple iPhone Antitrust Litig.*,
846 F.3d 313 (9th Cir. 2017) ............................................................44

*Aryeh v. Canon Bus. Sols., Inc.*,
55 Cal. 4th 1185 (2013) ....................................................................50

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................53

*Bachelder v. Am. W. Airlines, Inc.*,
259 F.3d 1112 (9th Cir. 2001) ....................................................19, 20

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) ............................................................43

*Briones v. Riviera Hotel & Casino*,
116 F.3d 379 (9th Cir. 1997) ............................................................41

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*,
408 F.3d 1142 (9th Cir. 2005) ..........................................................38

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..........................................................................19

*Chuang v. Univ. of Cal. Davis, Bd. of Trs.*,
225 F.3d 1115 (9th Cir. 2000) ..........................................................31

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003) ............................................................34

*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013) (en banc) ...........................................32

*Denton v. Hernandez*,
504 U.S. 25 (1992) ........................................................................53

*Diaz v. Gates*,
420 F.3d 897 (9th Cir. 2005) (en banc)............................................57

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003)......................................................56, 60

*Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*,
249 F.3d 1132 (9th Cir. 2001)............................................................31

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003)............................................................39

*Foman v. Davis*,
371 U.S. 178 (1962) ........................................... 12, 52, 58, 59, 60, 62

*Gantt v. Sentry Insurance*,
1 Cal. 4th 1083 (1992)................................................................26, 30

*Garrett v. City & County of San Francisco*,
818 F.2d 1515 (9th Cir. 1987)............................................................39

*Ghazali v. Moran*,
46 F.3d 52 (9th Cir. 1995)..................................................................46

*Grinzi v. San Diego Hospice Corp.*,
120 Cal. App. 4th 72 (2004)...............................................................18

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000)........................................................................16

*Hallett v. Morgan*,
296 F.3d 732 (9th Cir. 2002)..............................................................38

*Harris v. City of Santa Monica*,
56 Cal. 4th 203 (2013)..................................................................21, 30

*Hearns v. San Bernardino Police Dep't*,
530 F.3d 1124 (9th Cir. 2008)............................................................58

*Heinemann v. Satterberg*,
731 F.3d 914 (9th Cir. 2013)..............................................................44

*Hentzel v. Singer Co.*,
138 Cal. App. 3d 290 (1982)....................................................................46

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994)..........................................................................18, 23

*Ho v. ReconTrust Co.*,
858 F.3d 568 (9th Cir. 2017)..........................................................57, 60

*Huey v. Honeywell, Inc.*,
82 F.3d 327 (9th Cir. 1996)..................................................................50

*Huffman v. Lindgren*,
81 F.4th 1016 (9th Cir. 2023)...............................................................43

*Husman v. Toyota Motor Credit Corp.*,
12 Cal. App. 5th 1168 (2017)................................................................17

*Joaquin v. City of Los Angeles*,
202 Cal. App. 4th 1207 (2012)..............................................................29

*Johnson v. City of Shelby*,
574 U.S. 10 (2014) (per curiam) ....................................................52, 55

*Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*,
973 F.2d 688 (9th Cir. 1992)..................................................................19

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)...................................................47, 48, 51

*Killgore v. SpecPro Pro. Servs., LLC*,
51 F.4th 973 (9th Cir. 2022).............................................................13, 29

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) (en banc)................................................47

*Lawson v. PPG Architectural Finishes, Inc.*,
12 Cal. 5th 703 (2022)..................................................11, 13, 14, 29

*Lawson v. PPG Architectural Finishes, Inc.*,
No. 22-56114 (9th Cir. July 2, 2024) (unpublished)..............................15

*Light v. Dep't of Parks & Recreation*,
14 Cal. App. 5th 75 (2017)....................................................................54

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005) ........................................................57

*Lujan v. Minagar*,
124 Cal. App. 4th 1040 (2004) ........................................................32

*Marcure v. Lynn*,
992 F.3d 625 (7th Cir. 2021) ........................................................46

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ........................................................13, 16, 20

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) ........................................................50

*McKennon v. Nashville Banner Publ'g Co.*,
513 U.S. 352 (1995) ........................................................24

*Murray v. UBS Sec., LLC*,
601 U.S. 23 (2024) ........................................................20

*Nazir v. United Airlines, Inc.*,
178 Cal. App. 4th 243 (2009) ........................................................27

*Nigro v. Sears, Roebuck & Co.*,
784 F.3d 495 (9th Cir. 2015) ........................................................30

*O'Connor v. Boeing N. Am., Inc.*,
311 F.3d 1139 (9th Cir. 2002) ........................................................48

*Paknad v. Superior Court*,
119 Cal. App. 5th 1256 (2026) ........................................................36

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993) ........................................................41

*Porter v. Cal. Dep't of Corr.*,
419 F.3d 885 (9th Cir. 2005) ........................................................33

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ........................................................15, 25

*R & R Sails, Inc. v. Ins. Co. of Pa.*,
673 F.3d 1240 (9th Cir. 2012) ........................................................42

*Schroeder v. McDonald*,
55 F.3d 454 (9th Cir. 1995) .......... 31

*Semore v. Pool*,
217 Cal. App. 3d 1087 (1990) .......... 18

*Simpson Strong-Tie Co. v. Gore*,
49 Cal. 4th 12 (2010) .......... 21

*Simpson v. Lear Astronics Corp.*,
77 F.3d 1170 (9th Cir. 1996) .......... 38

*SKF Farms v. Superior Court*,
153 Cal. App. 3d 902 (1984) .......... 49

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011) .......... 36

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .......... 56

*Tameny v. Atlantic Richfield Co.*,
27 Cal. 3d 167 (1980) .......... 10, 16, 18, 24, 30

*Tex. Dep't of Cmty. Affs. v. Burdine*,
450 U.S. 248 (1981) .......... 17

*Tolan v. Cotton*,
572 U.S. 650 (2014) (per curiam) .......... 31

*TSC Indus., Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) .......... 52

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) .......... 37

*Van Asdale v. Int'l Game Tech.*,
577 F.3d 989 (9th Cir. 2009) .......... 52

*Venegas v. County of Los Angeles*,
32 Cal. 4th 820 (2004) .......... 57

*Ventura v. ABM Indus. Inc.*,
212 Cal. App. 4th 258 (2012) .......... 54, 57

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010)....................................................................47

*Wallace v. County of Stanislaus*,
245 Cal. App. 4th 109 (2016)....................................................................20

*Washington v. Garrett*,
10 F.3d 1421 (9th Cir. 1993)....................................................................35

*Wellpoint Health Networks, Inc. v. Superior Court*,
59 Cal. App. 4th 110 (1997)....................................................................36

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
705 F.2d 1515 (9th Cir. 1983)....................................................................42

*Yanowitz v. L'Oreal USA, Inc.*,
36 Cal. 4th 1028 (2005)....................................................................28, 32

*Zetwick v. County of Yolo*,
850 F.3d 436 (9th Cir. 2017)....................................................................13

**Constitutional Provisions**

Cal. Const. art. I, § 1 ....................................................................23

**Statutes**

15 U.S.C. § 78u-6 ....................................................................52

18 U.S.C. §§ 1513(e), 1961(1) ....................................................................57

18 U.S.C. § 1514A(a)(1) ....................................................................51

18 U.S.C. § 1962(a), (c), (d)....................................................................56, 61

28 U.S.C. § 1291....................................................................2

28 U.S.C. § 1331....................................................................2

28 U.S.C. § 1332(a)(1) ....................................................................2

28 U.S.C. § 1367(a) ....................................................................2

28 U.S.C. § 2106....................................................................19

42 U.S.C. § 9658....................................................................47, 48

Cal. Civ. Code § 51.7....................................................................57, 58

Cal. Civ. Code § 52.1(b), (c) ....................................................................57

Cal. Civ. Code § 1668....................................................................................22

Cal. Civ. Code § 1708.85 ..........................................................................59, 60

Cal. Civ. Code § 3426.1(d)...........................................................................23

Cal. Gov't Code § 12940(h) ....................................................................26, 28

Cal. Gov't Code § 12964.5 ............................................................................22

Cal. Lab. Code §§ 96(k), 98.6 ................................. 10, 16, 17, 18, 23, 26, 30

Cal. Lab. Code § 232.5 ..........................................................................21, 22

Cal. Lab. Code § 432.5 ..................................................................................22

Cal. Lab. Code § 1102.5 ...........................................................................passim

Cal. Lab. Code § 1102.6 .............................................................13, 15, 21, 30

Cal. Lab. Code § 6310 ...................................... 10, 16, 26, 30, 32, 33, 45, 46

Cal. Lab. Code § 6362 ............................................................................46, 47

Cal. Lab. Code § 6399.7 ................................................................................46

Cal. Penal Code §§ 266, 266h, 266i ...............................................................29

**Regulations**

17 C.F.R. § 229.404(a) ...................................................................................52

Cal. Code Regs. tit. 8, § 5192(c)(8), (e) ........................................................47

**Rules**

Fed. R. App. P. 4(a)(1)(A)................................................................................2

Fed. R. Civ. P. 6(b).................................................................3, 12, 39, 41

Fed. R. Civ. P. 8...................................................................................55, 57, 58

Fed. R. Civ. P. 9(b), 10(c) .......................................................................54, 55

Fed. R. Civ. P. 12(b)(6), 12(g)(2)........................................40, 44, 46, 47, 53

Fed. R. Civ. P. 15(a) .......................................................................................60

Fed. R. Civ. P. 26(b)(1), (b)(5)(A), (c)(1) .............................................38, 39

Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ....................38

Fed. R. Civ. P. 37(c)(1) ....................15

Fed. R. Civ. P. 56(a), (d), (e)(1), (f), (g)....................19, 38, 42

Fed. R. Evid. 201(e), 501....................36, 49

9th Cir. R. 28-2.6 ....................63

**Other Authorities**

CACI Nos. 2430, 2507, 4605 ....................16, 30

Restatement (Second) of Torts § 520 (1977) ....................49

## INTRODUCTION

Ashley Gjovik, a senior engineering program manager at Apple, spent 2021 reporting environmental and regulatory violations: vapor-intrusion controls at her Superfund-site office that Apple had compromised and would not test before sealing the floor, Apple's refusal to notify the EPA as the site's controls required, and its refusal to give employees the safety information the law requires. She took those reports to the EPA and other agencies, along with complaints of harassment, retaliation, and unlawful surveillance of employees. Apple removed her from the workplace the day before she planned to document the cracked floor, sealed the floor before the EPA inspected, and fired her five weeks later, hours after she told its investigator that she had sent his message to a federal agency. Each of the three reasons Apple claims to have fired her for was itself something the law protected her in doing.

The case never reached a jury. The district court granted Apple summary judgment under standards that California law rejects, after striking all of her opposition evidence and declining to compel the internal records whose absence it then held against her. It already dismissed most of her other claims on procedural grounds or in its discretion: for want of detail after capping her complaint at 75 pages, and as "waived" after striking her response. This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332(a)(1): Gjovik, a citizen of New York when she sued, alleged claims exceeding $75,000 against Apple Inc., a citizen of California. 4-ER-658. The Third Amended Complaint (“3AC”) also pleaded claims under RICO, the Sarbanes-Oxley Act, and the Dodd-Frank Act, supporting jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). 4-ER-790–91.

This Court has jurisdiction under 28 U.S.C. § 1291. The district court entered final judgment disposing of all claims on June 24, 2026. 1-ER-2. Gjovik filed a timely notice of appeal on July 22, 2026. 4-ER-849–51; Fed. R. App. P. 4(a)(1)(A). The earlier orders dismissing claims and denying leave to amend merged into the judgment. *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 897 (9th Cir. 2001). Gjovik filed a Ch. 7 petition in July 2025; the trustee abandoned these claims, and the district court lifted its stay on Nov. 18, 2025. 4-ER-886–87 (Dkt. 264, 267).

## STATUTORY AND REGULATORY AUTHORITIES

Pertinent constitutional and statutory provisions are set forth in the Addendum to this brief.

## ISSUES PRESENTED

1. Whether the district court applied incorrect legal standards at summary judgment by deciding the § 1102.5 claim on the absence of pretext, holding that Apple carried its clear-and-convincing burden as a matter of law, requiring proof that retaliation was "the only reason," and entering judgment on theories that Apple's motion did not address.

2. Whether Gjovik was entitled to summary judgment on liability, or at a minimum to a trial, because each of the three reasons Apple gave for the termination was itself protected activity.

3. Whether genuine disputes of material fact exist about Apple's motive and about the leave and access suspension; whether summary judgment could rest on the absence of evidence that Apple withheld and the court declined to compel; and whether the protective order was entered without good cause.

4. Whether the district court erred by declining to consider Gjovik's responses and then ruling on their absence, at summary judgment and on the pleadings, without the inquiry Rule 6(b) requires or any lesser measure.

5. Whether the district court erred in dismissing on the pleadings the toxic-tort, Unfair Competition Law, Sarbanes-Oxley, Dodd-Frank, emotional-distress, RICO, § 1102.5, Bane Act, and Ralph Act claims.

6. Whether the district court abused its discretion by capping the complaint at 75 pages, dismissing claims for missing detail, and denying unopposed leave to amend on new evidence.

## STATEMENT OF THE CASE

### A. Gjovik Reported Safety Hazards and Violations of Law to Apple and to Government Agencies.

Gjovik was a senior engineering program manager at Apple from 2015 to 2021. 3-ER-493; 4-ER-792.[1] She reported to David Powers, who reported to Dan West, who reported to Vice President Yannick Bertolus. 1-ER-4.

Her office sat on the TRW Microwave Superfund site, above groundwater contaminated with trichloroethylene. 4-ER-665; 1-ER-4. Beginning in Mar. 2021 she raised concerns that the building's vapor-intrusion controls were compromised and that employees had not been given the information the law required, and in April she went to the EPA. 1-ER-4; 4-ER-750, 753–54; 3-ER-426. In July, Apple said that it would seal cracks in her office floor and then test the air. She asked that the air be tested first and told Apple that the site's controls required EPA notice

[1] Record citations are to the Excerpts of Record, by volume and page. Filings not in the excerpts are cited to the docket sheet. The operative Fifth Amended Complaint is verified, 4-ER-688, and facts within Gjovik's personal knowledge are cited from it as evidence. Facts concerning dismissed claims are drawn from the complaints, whose allegations are taken as true. Material that the district court struck is so marked; it includes the Rule 30(b)(6) deposition of Apple's designee.

and approval; when Apple refused both, she reported it to the EPA and told Apple that she had. 4-ER-668; 3-ER-414; *see* 4-ER-748–49. On July 26 the EPA told Apple that it wanted to inspect the office and with a travel justification that "[a]n Apple employee recently contacted EPA and notified EPA that there were cracks in the building's foundation." 4-ER-669; 3-ER-420. She forwarded her EPA communications to Employee Relations on July 27 and 28. 3-ER-451. The EPA inspected on Aug. 19, 2021. 3-ER-421–22; 4-ER-671.

She also raised safety concerns about Apple's return-to-office plans during the COVID-19 pandemic, and in June she sent an employee petition to Chief Executive Tim Cook and Senior Vice President Deirdre O'Brien. 3-ER-507–17. When the New York Times quoted her on July 23, Apple's Business Conduct office opened a case, and its tickets noted that "any case having to do with Ashley G. is currently being escalated." 3-ER-408; 3-ER-409–10; 3-ER-412.

In 2020 she lived next to an Apple facility in Santa Clara, became severely ill, and found industrial chemicals in her apartment's air and in her blood. 4-ER-659–63. Apple operated a semiconductor fabrication plant there without disclosing its nature, and she learned what it was on Feb. 21, 2023, through public-records requests, and that the EPA later found at least nineteen federal hazardous-waste violations there. 4-ER-660, 664, 4-ER-684.

She reported a board member's conflict of interest to Business Conduct and, on Aug. 31, to the SEC, and possible violations of Syria sanctions to her managers, to Business Conduct, and, on Sept. 3, to the FBI. 4-ER-793, 794, 811. She complained to Employee Relations of sex discrimination, a hostile work environment, and retaliation for her safety complaints. 1-ER-4–5. She opened an EEOC complaint on Aug. 12 and signed the charge on Sept. 9. 3-ER-439–42; 4-ER-674–76, 678; 3-ER-602. She took part in a pay survey that Apple shut down, discussed working conditions with coworkers and the press, and on Aug. 26 filed an NLRB charge, which Apple admits it knew about. 4-ER-681–82; 1-ER-6, 25. On Aug. 29 she filed retaliation complaints with the California Labor Commissioner and the federal Department of Labor ("DOL"). 3-ER-598; 3-ER-443–44. She also alleged that Apple retaliated against her for speaking publicly, and to legislators, about the chemical exposure at her apartment. 4-ER-679, 683.

### B. Apple Removed Her From the Workplace, Over Her Objection, as She Was Gathering Evidence.

On Aug. 2, 2021, Apple announced maintenance at her office beginning Aug. 4. 4-ER-670. She told Apple that she and coworkers were documenting the cracks in the floor before the work covered them, and she told Employee Relations that on Aug. 5 she would go to the office to collect evidence and to retrieve a

laptop that held her text messages with West. 3-ER-597; 4-ER-670; 3-ER-435, 436.

On Aug. 4 the Employee Relations investigator, Ekelemchi Okpo, told her that she was "being put on leave," effective immediately, and refused her request that it start a day later. 3-ER-438. Apple admits telling her that the leave "ensures that [she] [is] removed from the workplace." 3-ER-603.

### C. Her Sexual-Harassment Complaint Described the Texts That Apple Later Said She Concealed.

On Aug. 23 Gjovik gave Employee Relations a 34-page "Issue Confirmation," a document Okpo had drafted and she completed. 3-ER-434; 1-ER-5 n.6. One entry described a Dec. 2017 dinner at a restaurant whose head chef was a friend of West and Bertolus. She wrote that West and the chef "told me they were trying to set me up with the Sous Chef" and that the two men "pressured both of us to exchange numbers." She listed the incident under "Sexual harassment; pimping & pandering with receipt of indirect benefits." 3-ER-436.

The same entry disclosed the later text exchange, quoting West's reply that "there was absolutely no pressure from me." It also said that she had planned to retrieve the laptop holding that night's texts on Aug. 5, "but ER put me on leave and removed me from the 'workplace' on 8/4 before I could & they knew I was planning on it." 3-ER-436.

### D. She Protested Apple's Collection of Employees' Images.

Beginning in 2017, Apple had employees carry iPhones running an app, "Gobbler" to collect face images for product development. 1-ER-7 & n.9; 2-ER-357–58. Gjovik alleged that the app photographed her "anytime, including at home." 4-ER-756; 4-ER-673. She complained about the program to Apple management in Aug. 2021. 4-ER-751–52.

On Aug. 30, 2021, while on leave, she posted on Twitter about Apple's surveillance of its employees and its use of their data, and she linked an article she was quoted in by The Verge titled "Apple cares about privacy, unless you work at Apple." 1-ER-7–11. The posts included images of her own face that the app had captured. 1-ER-7–11; 2-ER-359.

### E. Apple Fired Her Hours After She Sent Its Investigator's Message to a Federal Agency.

At 2:08 p.m. Pacific on Sept. 9, Aleks Kagramanov of Apple's "Threat Assessment & Workplace Violence" team emailed that Apple was "looking into a sensitive Intellectual Property matter" and asked to talk "within this hour." Two minutes later she replied: "Happy to help! Please send any questions / updates via email so we keep everything written please." At 2:27 she told him that she had forwarded his email to the investigator on her NLRB case because it came "the day before my Affidavit is supposed to be taken." At 2:50 he wrote that "you have chosen not to participate in the discussion" and suspended her access. At 3:07 she

answered that she was "definitely willing to participate" and asked for "additional detail on what these allegations are." No one answered. At 6:20 Megan Bowman of Human Resources recommended termination to Bertolus, reporting that "Ashley chose not to talk with the team and asked for all communication to be in writing." He agreed six minutes later, and Apple sent the termination letter at 6:54. 3-ER-492–93; 3-ER-456–59; 1-ER-12–13. Apple admits the times. 3-ER-600–01; 3-ER-519.

The letter cited disclosure of "confidential product-related information" and a failure "to cooperate and to provide accurate and complete information," and it identified no product, image, or policy provision. 3-ER-454–55. Apple gave Gjovik no specifics in 2021.

### F. Apple's Account of Its Reasons Changed.

In Mar. 2022 Apple told the DOL that "[t]he only reason" for the termination was her "deliberate breaches of her confidentiality agreements and violations of Apple policy," by disclosing confidential information and "refusing to meaningfully participate in internal investigations." 3-ER-453. That statement, like Apple's later interrogatory answers, gave as a ground an Aug. 28 post about employees' ear scans, which Apple's Rule 30(b)(6) designee disclaimed in 2026, and it said nothing about a misleading complaint. 3-ER-446–47, 450; 2-ER-286 (stricken). Apple first identified the "misleading" reason as concerning the sous

chef on Apr. 6, 2026, ten days before discovery closed, in an interrogatory answer that the court had compelled. 1-ER-19; 3-ER-397, 400.

### G. The District Court Capped the Complaint and Dismissed Most Claims on the Pleadings.

Gjovik sued pro se on Sept. 7, 2023. 4-ER-853 (Dkt. 1). The court dismissed her Second Amended Complaint ("2AC") sua sponte for its length and capped any further complaint at 75 pages. 4-ER-858 (Dkt. 41, 42); 1-ER-231–32. In three orders it then dismissed, on the pleadings, her toxic-tort claims arising from the fab; her Unfair Competition Law ("UCL") claim challenging Apple's user studies and the Gobbler program; her RICO, Sarbanes-Oxley, and Dodd-Frank claims; her Bane Act, Ralph Act, and emotional-distress claims arising from harassment after the termination; and several categories of protected activity underlying the retaliation claims. 1-ER-181–229 (May 2024); 1-ER-138–78 (Oct. 2024); 1-ER-100–33 (Feb. 2025). The last order also denied her unopposed motion for leave to amend on newly obtained evidence. 1-ER-132–33.

### H. The Court Struck Her Opposition Evidence and Granted Apple Summary Judgment.

Four retaliation claims remained: Labor Code §§ 1102.5, 6310, and 98.6, and wrongful termination in violation of public policy under *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980). Gjovik moved first, on Apr. 24, 2026. 3-ER-523–24, 534–42. Apple filed its opposition and cross-motion, with four new

declarations, on May 7, and its designee was deposed on May 12. 4-ER-898 (Dkt. 367-372); 2-ER-297. Gjovik's reply and opposition was filed on May 21-22, and her supporting declarations on May 25-26. 4-ER-898–99 (Dkt. 374, 375, 377, 379).

At the June 11 hearing the court said that "there are a lot of disputed issues of fact" and that "[t]here is enough here to suggest potential causal relationship between those activities and her termination." 2-ER-236:20–237:1. On June 24 it struck both opposition declarations and granted Apple's motion on all claims. 1-ER-41. Judgment followed. 1-ER-2.

## SUMMARY OF THE ARGUMENT

I. The district court granted summary judgment under the wrong standards. It decided the § 1102.5 claim by finding "no pretext," which *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703 (2022), holds a plaintiff need not disprove; granted Apple's clear-and-convincing defense as a matter of law on its decision-maker's own testimony; required proof that retaliation was "the only reason," and entered judgment on theories that Apple's motion never addressed.

II. Gjovik was entitled to judgment on liability. Each of Apple's three sworn reasons was her protected activity: a protest of Apple's invasion of employee privacy; a request, the day before she was to give sworn testimony to a federal agency, that an investigator's questions be put in writing; and a report of sexual

harassment. The only disputes concern Apple's labels, on which Apple bears the burden.

III. The record independently required a trial. Apple removed her from the workplace as she was documenting the cracks in her office floor before an EPA inspection, circulated an "exit outcomes" file four days before the posts, and gave the DOL reasons that its own designee later disclaimed. Where the order found "no evidence," the evidence was Apple's internal record, which Apple withheld and the court declined to compel.

IV. It struck all of her opposition evidence at summary judgment, and it struck her sur-reply and dismissed three claims as "waived" on the pleadings, for filings that were hours or days late, without the inquiry Rule 6(b) requires or any lesser measure. The court refused to consider Gjovik's responses and then ruled on their absence.

V. The court dismissed claims on the pleadings by deciding facts: from judicially noticed documents; from a superseded complaint; from Apple's unauthenticated copy of her SEC whistleblower tip; and, under a standard for in forma pauperis complaints.

VI. The court capped the complaint at 75 pages, dismissed claims for missing detail, refused more pages, and denied an unopposed motion for leave to amend on new evidence without applying *Foman v. Davis*, 371 U.S. 178 (1962).

# ARGUMENT

## I. THE DISTRICT COURT GRANTED SUMMARY JUDGMENT UNDER THE WRONG LEGAL STANDARDS.

### A. Standard of Review

Summary judgment is reviewed de novo, viewing the evidence in the light most favorable to the nonmoving party. *Zetwick v. County of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017). Gjovik argued the governing standards at 3-ER-535–38 and 2-ER-302, 309; the court ruled at 1-ER-21–23, 35–37.

### B. The Court Decided the § 1102.5 Claim on Pretext, Which *Lawson* Does Not Require.

Under Labor Code § 1102.6, the employee must show that protected activity "was a contributing factor" in the adverse action; the employer must then prove "by clear and convincing evidence" that it would have taken the same action "for legitimate, independent reasons." That statute, "and not *McDonnell Douglas*, supplies the applicable framework." *Lawson*, 12 Cal. 5th at 712; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under it "a plaintiff does not need to show that the employer's nonretaliatory reason was pretextual." She prevails "[e]ven if the employer had a genuine, nonretaliatory reason," if "the employer also had at least one retaliatory reason that was a contributing factor in the action." *Lawson*, 12 Cal. 5th at 715-16; *see Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 982-88 (9th Cir. 2022).

The district court decided step one this way: "Apple is entitled to a finding as a matter of law that there was no pretext, and thus the sole reason for the termination was based on legitimate nonretaliatory business reasons. Accordingly, retaliation was not a contributing factor in the decision to terminate." 1-ER-36. That is the inference *Lawson* forbids: a genuine reason need not be the sole reason.

Applied correctly, step one presents at least a jury question. Apple's own reasons are protected activity; Apple swore that the only communications it knew of in which she raised "Privacy" concerns "involve her public dissemination of confidential Apple product information." 3-ER-513–15. And she was fired hours after telling Apple's investigator that she had sent his email to the NLRB, 14 days after the NLRB charge and 17 days after her Issue Confirmation. 3-ER-492–93; 3-ER-601; 1-ER-6, 15 n.17.

### C. The Court Granted Apple's Clear-and-Convincing Defense on Its Decision-Maker's Own Testimony.

The court held alternatively that "no reasonable jury could find in her favor on the second step." 1-ER-36–37. A court views summary-judgment evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). This Court reversed after remand in *Lawson* because the employer "failed to provide sufficient evidence to require any reasonable jury to find by clear and convincing evidence" that it would have fired

the plaintiff anyway. *Lawson v. PPG Architectural Finishes, Inc.*, No. 22-56114, slip op. at 12 (9th Cir. July 2, 2024) (unpublished). And a court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

The court instead held Gjovik, on her own motion, to proof "beyond peradventure," and Apple to no comparable standard. 1-ER-41. It relied on Bertolus's testimony that the disclosure "in itself warranted termination," on Apple's policies, and on his having "received confirmation that the image was in fact confidential." 1-ER-36–37. Bertolus is the decision-maker whose motive is at issue, and he is impeached. He approved the termination six minutes after Human Resources sent him its summary of an exchange he had never seen. 3-ER-453; 3-ER-456–59; 3-ER-464–65.

Apple's comparator evidence is thirteen name-redacted termination letters, of which three describe a disclosure; they were produced at the end of discovery, and the court relied on them without ruling on her Rule 37(c)(1) objection. 2-ER-326, 328–55; 2-ER-312; 1-ER-14 n.15, 34. And a policy that permits termination does not show that Apple "would have" fired this employee, absent her protected activity. Cal. Lab. Code § 1102.6.

### D. The Court Required Proof That Retaliation Was "the Only Reason," on a Concession Gjovik Never Made.

For the § 6310 and § 98.6 claims and the claim for wrongful termination in violation of public policy under *Tameny*, the court applied *McDonnell Douglas* because she "confirmed at the hearing that she was bringing a pretext case only," meaning one in which "the only actual motive is the discriminatory one." 1-ER-22. It required her to show that Apple's reason "was fabricated and the only reason why it terminated her was to retaliate against her." 1-ER-35–36.

She made no such concession. When the court said it did not "see [mixed motive] being raised here," she answered: "I believe all the reasons I've stated for the termination were unlawful, themselves." 2-ER-237:11–18; *see* 2-ER-238:3–11. Her briefs argued the same. 3-ER-535–38; 2-ER-309. Arguing that the stated reasons are themselves retaliatory does not concede sole causation, and Apple itself pleaded a mixed-motive defense. 3-ER-605.

The standard was also wrong. A jury is asked whether protected activity was "a substantial motivating reason," which "does not have to be the only reason." CACI Nos. 2430, 2507, 4605. The third-stage question is whether "the evidence as a whole" supports an inference of unlawful motive, not whether the reason was fabricated. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 356, 361 (2000). And where protected activity could be found a substantial motivating reason, summary judgment is improper "even if the employer's professed legitimate reason has not

been disputed." *Husman v. Toyota Motor Credit Corp.*, 12 Cal. App. 5th 1168, 1186 (2017).

The court also decided the truth of Apple's reason at step two, where the employer bears only a burden of production. 1-ER-26, 29; *see Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981). Nor does that framework apply where the employer's stated reason is itself the protected conduct (Part II.B); that was her principal argument, and the order never decides it. 2-ER-238:9–11.

Nor did the court address Labor Code § 98.6(b)(1), which since 2024 has provided "a rebuttable presumption in favor of the employee's claim" when an employer acts "within 90 days of the protected activity," and which she invoked without answer from Apple. 3-ER-529, 537; 2-ER-308. Its application here is a question for remand.

### E. The Court Entered Judgment on Theories That Neither Apple's Motion Nor the Order Addressed.

Apple moved on the grounds that the termination was not retaliatory and that the paid leave was not an adverse action. 2-ER-371–80. The court entered judgment on the entire case. 1-ER-42; 1-ER-2. Five pleaded theories went undecided.

Count 4 alleged retaliation for discussing wages with coworkers, including Apple's shutdown of a pay survey; the court had sustained that theory, and neither

Apple's papers nor the order mentions it. 4-ER-681–82; 1-ER-158–59; 1-ER-130–31.

The court had sustained her § 98.6 claim for discharge based on "lawful conduct occurring during nonworking hours away from the employer's premises." Cal. Lab. Code §§ 96(k), 98.6(a); 1-ER-159–60. She pressed it in both briefs, and she posted while on leave. 3-ER-529, 531, 536; 2-ER-309. That provision reaches off-duty conduct asserting "recognized constitutional rights," and California's privacy right binds private employers. *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 84-85 (2004) (quotation omitted); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 20 (1994).

Her *Tameny* claim alleged that the Gobbler program violated the constitutional privacy right and that "Apple's proffered reason for terminating Plaintiff is illegal itself." 4-ER-677–78; 3-ER-531–32; *see Semore v. Pool*, 217 Cal. App. 3d 1087, 1097-98 (1990). Apple never moved against that theory, and the order does not decide it. 1-ER-27–29.

She pleaded and argued COVID-19 safety complaints. 4-ER-680; 3-ER-523–24, 530, 535. Apple admits that it knew of her June 2021 petition to Cook and O'Brien, and O'Brien is the executive whom Kagramanov emailed about her on Sept. 9. 3-ER-510–11; 3-ER-483–84.

She plead that Apple fired her for complaining publicly, and to legislators, about the 2020 chemical exposure at her apartment, beside what Apple's semiconductor plant. 4-ER-679, 683. The court dismissed her tort claims on the ground that she should have discovered the plant's role while Apple still employed her, but the summary-judgment order does not mention this theory. 1-ER-110–15.

A movant must identify "the basis for its motion," and a court may grant summary judgment "on grounds not raised by a party" only "[a]fter giving notice and a reasonable time to respond." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(f).

## II. GJOVIK WAS ENTITLED TO JUDGMENT ON LIABILITY BECAUSE EACH OF APPLE'S STATED REASONS WAS PROTECTED ACTIVITY.

### A. Standard of Review

The denial of summary judgment is reviewable de novo on appeal from a final judgment granting a cross-motion, and this Court may "direct the entry of such appropriate judgment . . . as may be just under the circumstances." *Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 694 n.2 (9th Cir. 1992); 28 U.S.C. § 2106; *see* Fed. R. Civ. P. 56(a), (g). It has done so where the employer's stated reason for a discharge was protected conduct. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1131-32 (9th Cir. 2001).

Gjovik's motion argued that each of Apple's three reasons was itself protected activity. 3-ER-522, 528–29, 531–38; 2-ER-298–302, 307–09. The court denied it in one sentence, because "Apple prevails on its motion," but in granting Apple's motion it decided the substance of hers, holding each reason "legitimate" and "nonretaliatory." 1-ER-41; 1-ER-22, 26–29, 37–40.

### B. Apple Has Sworn to Its Reasons and Bears the Burden on Every Disputed Fact.

Apple's reasons are fixed. Bowman's recommendation gave three: Gjovik disclosed "confidential product-related information on Twitter"; "failed to cooperate in Apple's investigative process today and during the [Employee Relations] investigation into her workplace concerns"; and "failed to accurately and completely provide information" to the Employee Relations investigator. 1-ER-12–13. Bertolus testified to the same three. 3-ER-467; *see* 1-ER-31.

An employer's statement that it fired an employee for conduct the law protects is direct evidence of unlawful motive, leaving "no room for a *McDonnell Douglas* type of pretext analysis." *Bachelder*, 259 F.3d at 1131-32 (directing judgment for the employee on liability); *accord Wallace v. County of Stanislaus*, 245 Cal. App. 4th 109, 123 (2016). Nor, under a contributing-factor standard, must she separately prove retaliatory animus. *See Murray v. UBS Sec., LLC*, 601 U.S. 23, 34-39 (2024). The district court asked "whether Apple's decision to terminate

was motivated (at all) by retaliation." 1-ER-23. If any one of Apple's reasons was protected activity, the answer is yes on Apple's own account.

What Gjovik did is undisputed. The disputes concern Apple's labels: that the images were "confidential," her request a "refusal," and her complaint "misleading." Apple bears the burden on each. It invokes an exception to a remedial statute, the "proprietary information" exception in Labor Code § 232.5(d). *See Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 23 (2010). It must prove its "legitimate, independent reasons" by clear and convincing evidence under § 1102.6, and the same-decision showing on the other claims is also its burden. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 241 (2013). If Apple's evidence does not establish its label, judgment should be entered for Gjovik.

### C. The Twitter Posts Were a Protected Protest of Apple's Collection of Employees' Images.

Bertolus testified that the disclosure on Twitter "was so egregious that that in itself warranted termination." 3-ER-463. Apple does not contend that any word of the posts was confidential. 1-ER-11 n.12. What it calls confidential are images of Gjovik's own face, taken by an Apple app on the phone she carried, including in her home, and never uploaded to Apple. 1-ER-7; 2-ER-359; 4-ER-756. The court held the posts unprotected because "the information Ms. Gjovik disclosed was, in

fact, confidential," so that she "had no right to post and claim it as protected activity." 1-ER-26, 28.

An employer's label does not decide whether a disclosure of working conditions is protected. Section 232.5 forbids an employer to require "that an employee refrain from disclosing information about the employer's working conditions," to require a document "that purports to deny" that right, or to discharge an employee "who discloses information about the employer's working conditions." Cal. Lab. Code § 232.5(a)-(c). Subdivision (d) excepts "proprietary information, trade secret information, or information that is otherwise subject to a legal privilege." The court read that exception to reach whatever the employer treats as confidential, as Apple's counsel urged: "Apple had the right to decide that it was confidential." 1-ER-28–29; 2-ER-241:20–242:2. That reading erases subdivisions (a) and (b).

Other statutes state the same policy. Cal. Lab. Code § 1102.5(a); Cal. Gov't Code § 12964.5(a) (as in effect in 2021); Cal. Lab. Code § 432.5; Cal. Civ. Code § 1668. Gjovik so argued, and the court answered that she "cites no concrete authority." 2-ER-308; 1-ER-28. The statutes are the authority. And Apple has agreed, in resolving an NLRB complaint, not to enforce the agreement it invoked against employees' discussion of their working conditions. 3-ER-494–99; *see* 1-ER-16–17.

Apple identified no proprietary right in photographs of her face. It did not claim trade secrets, and it offered no evidence of independent economic value or reasonable secrecy efforts for pictures that sat on employees' phones in their homes. 2-ER-368; *see* Cal. Civ. Code § 3426.1(d). Nor could Apple say what in the images was proprietary. Its declarant identified "the specifics of the technology . . . and the algorithms," and conceded that Gjovik blurred them. 2-ER-359. Counsel told the court that "we couldn't get into the real detail about what it is about the pictures that's confidential." 2-ER-241:16–19. And a senior manager in the organization that ran the program agreed with her, before she posted, that the images were not confidential. 2-ER-293–94 (stricken); 2-ER-240:9–20.

The California Constitution gives the protected interest in these images to Gjovik. Article I, section 1 protects "informational privacy," the interest "in precluding the dissemination or misuse of sensitive and confidential information," and it binds private employers. *Hill*, 7 Cal. 4th at 20, 35. The district court had held that her allegation that the program violated that right could support a whistleblower claim. 1-ER-215–16. Apple's position, that pictures of an employee's face and home taken by its software on her phone belong to Apple, inverts the constitutional rule.

The posts were also protected on grounds the order did not reach, as off-duty conduct under §§ 96(k) and 98.6 and as an assertion of the privacy right under

*Tameny*. *See* Part I.E. And § 1102.5(b), which the court held inapplicable because she posted "to the public (via Twitter) and to the press," protects disclosure "to a person with authority over the employee" and does not require that it be private; Apple's Business Conduct office tracked her posts, and Apple admits that it reviewed them before it fired her. 1-ER-28; 3-ER-409–12; 3-ER-603; *see* Part V.F.

That she "could easily have made criticisms about Apple's capturing of her images without showing the actual images themselves" concerns the manner of her protest, not its protection; the photograph is the evidence of the practice. 1-ER-29. The court also treated the Verge article, and unblurred images that it said she gave the reporter, as a ground for the firing: Apple fired her, it wrote, for disclosures "through her tweets and the Verge article." 1-ER-26, 29–30. But Apple told the DOL, and pleaded here, that it learned of her disclosures to the reporter after it fired her. 3-ER-449; 3-ER-604–05. "The employer could not have been motivated by knowledge it did not have." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360 (1995).

Whether photographs of an employee's own face are her employer's "proprietary information" is a question of law. If the posts were protected, then on Bertolus's testimony protected activity was the principal reason for the discharge. If confidentiality instead turns on disputed facts, it was Apple's to prove to a jury. The court called confidentiality "undisputed," but Apple's evidence conflicts with

itself, and the court drew inferences against Gjovik from her blurring of the images and from her not making "a written claim to Apple," although Apple first told her the subject of its inquiry hours before it fired her. 1-ER-11, 26–27, 30, 35; 3-ER-492; *see Reeves*, 530 U.S. at 147.

### D. The "Failure to Cooperate" Was Her Request for Written Questions Before Her Agency Testimony.

The exchange is set out in the Statement. 3-ER-492–93; 3-ER-600–01. Neither investigator could identify a policy requiring a live interview. 3-ER-478; 3-ER-473. The court reasoned that "[n]o reasonable jury could find in Ms. Gjovik's favor that the request for a live voice-to-voice interview was retaliatory," because Apple "had legitimate, nonretaliatory reasons for wanting live voice-to-voice communications." 1-ER-37. That answers the wrong question. Apple may prefer a call; the issue, which the order never decides, is whether it could fire her for offering written answers while agency proceedings were pending.

The court's factual premises are contradicted by the record. It wrote that she offered to participate "[s]everal hours later, at 6:07 p.m."; the email was sent at 3:07 p.m. Pacific ("6:07 PM EDT"), as Apple admits. 1-ER-12; 3-ER-492; 3-ER-519. Its conclusion that Apple fired her "only after . . . giving her an opportunity to give her side of the story . . . which she declined to do" depends on that chronology. 1-ER-30. It wrote that she could have "requested that they be

taped/recorded"; Apple's investigator testified that he would have refused. 1-ER-38; 3-ER-481.

Her response was protected. Section 1102.5(b) forbids retaliation for "providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry," and retaliation "because the employer believes that the employee disclosed or may disclose information" to a government agency. She told Apple's investigator that she had sent his email to the NLRB, that her affidavit would be taken the next day, and that she wanted a written record because of "my investigation and my complaints to the government." 3-ER-492–93. Sections 98.6(a) and 6310(a) protect an employee who has filed complaints with the Labor Commissioner and with safety regulators, as she had eleven days earlier. 3-ER-598. And public policy protects an employee's ability to give evidence to an investigating agency. *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083, 1097 (1992).

The same is true of her part in the Employee Relations investigation of her own complaints. Cal. Gov't Code § 12940(h). She had told Okpo in writing of "frequent misrepresentations of my verbal conversations," and he closed his investigation, which he agreed had become "completely contingent on oral communication," when she would not discuss one issue by phone. 2-ER-260, 263, 273–75 (stricken); 3-ER-472–75. An employer cannot turn a protected complaint

into a firing offense by prescribing the medium in which the complainant must pursue it.

Whether her response was protected is a question of law on settled facts. A jury could also find that there was no refusal and that the charge was a pretext. Kagramanov testified that treating her request as a refusal was "my determination," made "in partnership with our legal counsel," and he recalled no other case in which he suspended an employee's access within an hour or sent updates to O'Brien. 3-ER-478–79, 483–84; *see Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 277-80 (2009) (one-sided investigation is evidence of pretext).

### E. The Third Reason Was the Content of Her Sexual-Harassment Complaint.

Apple's verified interrogatory answer states that its "misleading" finding rested on her account of the "incident regarding a Sous Chef" in her Aug. 23 complaint. 3-ER-504–06. The recommendation said that she "failed to accurately and completely provide information, including actively redacting relevant information from documents," and Bertolus agreed that this reason reflected a view that she was making "bad faith complaints." 1-ER-12–13; 3-ER-467.

The record rules out a good-faith belief that she lied. Apple's investigators told West that the conduct she reported was "not appropriate"; that guidance came from Okpo, who labeled her account "misleading." 3-ER-487–88; 3-ER-489–90;

*see* 1-ER-40. Two of the three facts that Okpo called contrary were stated or quoted in her complaint, which told Apple that the remaining texts were on a laptop that the leave kept her from retrieving. 3-ER-475; 3-ER-436, 438. Nothing was redacted: asked whether he meant "black boxes over text," Bertolus answered "No." 3-ER-461–62. He had "absolutely no idea" that the exchange concerned the sous chef. 3-ER-466.

The court held that Apple did not fire her "simply because she had made a complaint that Mr. West sexually harassed her" but because she "had misrepresented the text exchange," which the court then read for itself. 1-ER-39–40.

The law does not distinguish between firing an employee for complaining and firing her for what the complaint said. Section 1102.5(b) protects the disclosure of "information" by an employee with "reasonable cause to believe" that it discloses a violation, and the Fair Employment and Housing Act ("FEHA") protects a complaint about conduct that the employee reasonably and in good faith believed unlawful, even if she was mistaken. Cal. Gov't Code § 12940(h); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1043 (2005). If an employer may discharge a complainant whenever it has "a sufficient basis to conclude" that her account "was not complete," 1-ER-40, the protection exists only for complaints the employer chooses to believe.

Her description of the conduct as pandering was a report of a suspected crime, protected whether or not she was right. *Killgore*, 51 F.4th at 988; 2-ER-298 (citing Cal. Penal Code §§ 266, 266h, 266i). Pandering includes procuring another person for the purpose of prostitution "by abuse of any position of confidence or authority," and she reported that a senior director used his position over her to arrange a liaison with a restaurant employee. Cal. Penal Code § 266i(a)(5). If the label was part of the reason for the discharge, as Apple's motion and the order suggest, Apple fired her in part for reporting a suspected crime; if it was not, as Apple's designee testified, the court's finding addressed a ground that Apple disclaims. 2-ER-370; 2-ER-287 (stricken).

*Joaquin v. City of Los Angeles*, 202 Cal. App. 4th 1207, 1223-26 (2012), on which the court relied, involved a complaint found, after a hearing, to be fabricated; no one found that Gjovik invented anything. And an employer's assessment of the protected complaint is not a reason "independent" of it. *Lawson*, 12 Cal. 5th at 715-16.

The court also decided for itself what the texts showed, which is a jury's function. West acknowledged that "[i]t can be more difficult for employees sometimes to say no to stuff if it's their supervisor asking," and the texts the court quoted include her question, "Was he a willing participant in this?" 3-ER-489–90; 1-ER-39. The court called her account that the leave kept her from the laptop

"sheer speculation"; her complaint says that she "told ER several times" and that "they knew I was planning on it." 1-ER-24; 3-ER-524; 3-ER-435, 436; *see Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015).

Two things are therefore established. The complaint was protected: Apple answered under oath that her concerns "may be construed as protected activity," and the court said at the hearing that her protected activity was "not disputed." 1-ER-23; 3-ER-508–09; 2-ER-236:20–24; *see* 3-ER-533–34, 537. And its content was a reason for the firing, on Apple's sworn statement.

### F. Because Each Reason Was Protected Activity, Judgment on Liability Should Be Entered.

Apple identified three reasons and told the DOL that these were "[t]he only reason." 3-ER-453. If each is protected activity, no "legitimate, independent" reason remains under § 1102.6, and Apple's position that the posts were "alone grounds for the termination" establishes that protected activity alone was sufficient cause. 2-ER-369, 376. The same is true of the *Tameny*, § 98.6, and § 6310 claims, which require that protected activity be "a substantial motivating reason" for the discharge. CACI Nos. 2430, 4605; *Harris*, 56 Cal. 4th at 232. The posts were protected through § 98.6 and *Tameny*; the request for a written record through §§ 98.6 and 6310 and *Gantt*; and the harassment complaint through FEHA and *Tameny*. Apple's same-decision defense fails. 3-ER-605.

## III. THE RECORD INDEPENDENTLY REQUIRED A TRIAL ON APPLE'S MOTIVE AND ON THE LEAVE AND SUSPENSION.

### A. Standard of Review and the Record

A court errs when it fails "properly to acknowledge key evidence offered by the party opposing that motion." *Tolan v. Cotton*, 572 U.S. 650, 659 (2014) (per curiam). An employment plaintiff "need produce very little evidence" to defeat summary judgment. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000). These issues were raised at 3-ER-521–43 and 2-ER-295–310 and decided at 1-ER-24–40. Unless marked as stricken, the evidence cited here was before the court on the cross-motions. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). It included her verified complaint, which "may be used as an opposing affidavit under Rule 56." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); 4-ER-688; *see* 3-ER-396–520. The order did not treat the complaint's sworn facts as evidence, and it relied on Apple's evidence without resolving her objections. 2-ER-312–13; 2-ER-306.

### B. A Jury Could Find the Leave Involuntary and the Leave and Access Suspension Adverse.

The court held that the paid leave was not an adverse action because "[t]he undisputed evidence shows that Ms. Gjovik asked to be put on such leave." 1-ER-24. Apple's own exhibit disputes it. The Issue Confirmation states that Okpo told

her she was "being put on leave," refused her request that it begin a day later, and "essentially sa[id] it's voluntary but I also don't have a choice." 3-ER-437–38; *see* 3-ER-470. A week earlier she had written that she "refuse[d] to quit or to take medical leave as a response to the hostility"; on the day of the leave she said publicly that Apple had "suspended" her; and she twice told the investigator in writing that the leave was retaliation. 2-ER-318–21; 3-ER-452; 2-ER-262, 270–72 (stricken).

The timing supports an inference of retaliation. The leave began a week after she forwarded her EPA correspondence to Employee Relations, two days after she told Apple that she and her coworkers were documenting the cracks, and one day before she planned to photograph them and to retrieve the laptop; by her sworn account of Apple's records, the crack sealing began that day. 3-ER-451; 3-ER-597; 3-ER-435, 436; 3-ER-397, 403; *see* 3-ER-427–29. Section 6310 reaches an employer that acts because it anticipates a complaint. *Lujan v. Minagar*, 124 Cal. App. 4th 1040, 1045-46 (2004); *see* 3-ER-534, 539; 2-ER-310.

An action is adverse if it is "reasonably likely to impair a reasonable employee's job performance or prospects for advancement." *Yanowitz*, 36 Cal. 4th at 1054-55; *see Dahlia v. Rodriguez*, 735 F.3d 1060, 1078-79 (9th Cir. 2013) (en banc) (involuntary leave). Apple's own termination letters describe a paid leave as a suspension: "you were suspended (with full pay and benefits) while Apple

conducted an investigation." 2-ER-341, 345. The order also does not consider the suspension of her access, 23 minutes after she told Apple's investigator that she had sent his email to the NLRB. 3-ER-601; *see* Cal. Lab. Code § 6310(b) (protecting an employee who is "suspended, or in any other manner discriminated against").

### C. The Record Contains the Motive Evidence the Order Said Did Not Exist.

Apple's managers expressed hostility to her complaints. The order found "no evidence of . . . any internal comments by Apple decision makers suggesting they were upset or unhappy about Ms. Gjovik's complaints." 1-ER-30. West's review said that "a switch flipped where Ashley seemed to stop assuming good intent with most leadership"; Powers wrote that she should stop "needlessly scaring the team"; and Bertolus described her complaints as made in "bad faith." 3-ER-500–02; 4-ER-667; 3-ER-595; 3-ER-467. Her verified complaint adds that Employee Relations told her Apple was upset that she was talking to the press, and that Okpo questioned her for an hour about her posts on retaliation and asked her to stop. 4-ER-668–69. A "pattern of antagonism" following protected conduct supports an inference of causation. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005) (quotation omitted).

Apple acted as the EPA's inspection approached. The order reasoned that had Apple wanted to fire her for her safety complaints, "it could have done so in March 2021 . . . or in July 2021." 1-ER-30. That inference runs against the nonmovant, and timing must be judged "in the light of the timing and the surrounding circumstances." *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003). The circumstances changed in late July, when the EPA asked to inspect her office and Apple asked it to sign a nondisclosure agreement. 3-ER-596; 3-ER-415–18. Apple removed her on Aug. 4; the sealing work, by her sworn account of Apple's records, ran through Aug. 18; and on Aug. 19 the EPA found the cracks "adequately sealed." 3-ER-397, 403; 3-ER-421–22. On Sept. 9, less than two hours before Apple's investigator first wrote to her, Employee Relations circulated "[u]pdated notes" of the July 7 meeting about her safety concerns, recording that she asked whether the floor work "was reported to the EPA" and was told that "it was not reported since it is voluntary work." 3-ER-430–33; 3-ER-469; *see* 3-ER-526.

Apple prepared for her exit before the posts that it says caused it. Apple admits that its "Draft Exit Outcomes" file was circulated on Aug. 26, 2021: the day of her NLRB charge, three days after her Issue Confirmation, and four days before the posts. 3-ER-520. The court adopted Apple's explanation, though at the hearing

it said the title "sounds like . . . a predetermined decision to terminate." 1-ER-32–33; 2-ER-239:1–5.

Apple's explanation changed. The order found "the same three reasons" throughout, but the termination letter gave two; the DOL statement and interrogatory answers added an ear-scan post that Apple's designee later testified "was not the basis for your termination"; Apple has said both that it learned of her disclosures to the press after it fired her and that they were among its reasons; and the court itself had twice described Apple's defense as resting on two reasons. 1-ER-31; 3-ER-454–55; 3-ER-446–47, 450, 453; 2-ER-286 (stricken); 3-ER-449; 3-ER-604–05; 2-ER-301; 3-ER-607, 608. "[F]undamentally different justifications for an employer's action" raise a genuine issue of pretext. *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993).

The people who shaped the decision knew of her protected activity. The court found it "not even clear . . . who harbored the retaliatory animus and then influenced Mr. Bertolus," and found "no evidence" that Apple knew of her agency complaints other than the NLRB charge. 1-ER-16, 30, 32, 34. Apple's privilege log lists messages that day among Kagramanov, Apple's in-house employment counsel, and a senior director of Employee Relations, and an email from him to O'Brien; his version reached Bertolus through a summary that omitted her offer to participate. 3-ER-482–84; 3-ER-456–59. Okpo declared that he acted "after I was

directed to do so by Apple's attorneys and at their direction throughout the investigation," and, asked whether he knew that she had filed agency complaints, he answered: "Only through counsel." 2-ER-316; 3-ER-472. Apple admits that she filed federal and California labor complaints on Aug. 29 and that it reviewed her public posts before firing her; she swore that national outlets reported her NLRB, DOL, and EEOC charges on Sept. 2. 3-ER-598, 603; 4-ER-672–73; *see* 3-ER-599. An employer is liable when a biased subordinate's act is a proximate cause of the decision. *Staub v. Proctor Hosp.*, 562 U.S. 411, 421-22 (2011).

### D. Apple Rested Its Defense on Investigations That It Shielded From Examination.

Each of Apple's reasons is the conclusion of an internal investigation, and Apple stopped its investigators from saying what they had done: "What he did in his investigation is privileged, and I am not going to let him answer about that." 3-ER-469; *see* 3-ER-471; 3-ER-478, 480. California law governs the privilege. Fed. R. Evid. 501. An employer that defends on its investigation puts "the adequacy of the investigation directly at issue" and cannot invoke privilege or work product "to preclude a thorough examination of its adequacy." *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110, 128 (1997); *accord Paknad v. Superior Court*, 119 Cal. App. 5th 1256 (2026).

Gjovik raised this point at every stage. 3-ER-550–51; 3-ER-545–46; 2-ER-246–47; 3-ER-541–42; 2-ER-304–05. Apple told her on Apr. 20, 2026, that it "has no need to (and does not intend to) rely on the adequacy of its investigation into those concerns," and seventeen days later it moved for summary judgment on Okpo's declaration and his findings. 3-ER-551; 2-ER-370; 2-ER-315–24. The magistrate judge held her challenge "not ripe," although her Apr. 9 email had devoted a numbered dispute to it, and the district judge reasoned that "Apple is not claiming as a defense that it made the decision to terminate Ms. Gjovik because counsel so advised." 1-ER-49; 2-ER-388; 1-ER-43. But Apple relies on what its investigators found, and the privilege "does not protect disclosure of the underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Apple could not carry a clear-and-convincing burden, or have its investigators' conclusions accepted as undisputed, on subjects that it would not let her examine.

### E. The Evidence the Order Found Missing Was Withheld by Apple Under Erroneous Discovery Orders.

The order rests on absences: "no evidence" of hostile internal comments or of Apple's knowledge of her agency complaints, and no way to tell "who harbored the retaliatory animus." 1-ER-30, 32, 34. Gjovik had requested the records that would fill those gaps: Apple's internal communications about her, Employee Relations' reports and notes, and its communications about the EPA's inspection.

3-ER-565, 566–68. Apple answered that for its legal and investigations teams it "will not search, review, or produce documents." 3-ER-570–72, 573–74; 3-ER-549.

Neither of her motions to compel was decided on whether the records were discoverable. The first was denied, except as to one request, for want of conferral; the second, decided a week after the last summary-judgment brief, because she "did not timely raise these disputes by the April 9, 2026 deadline" and "did not attempt to narrow any of her requests," although her Apr. 9 email raised the requests and she had agreed to narrow ten of them. 1-ER-73–74; 1-ER-47–48, 53; 2-ER-384, 385–88; 3-ER-548. The order also placed the burden of proportionality on her, took "Apple at its word" that its production was complete, and excused Apple from logging what it withheld as privileged. 1-ER-48–49. *But see* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment; Fed. R. Civ. P. 26(b)(5)(A); *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

She took each ruling to the district judge and invoked Rule 56(d). 3-ER-560–63; 3-ER-554–55; 2-ER-245–49; 2-ER-312, 314; 1-ER-43 n.1; *see Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996). Reversal of a discovery ruling requires "actual and substantial prejudice," and the prejudice here is the order itself. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). It is error to

grant summary judgment "without first having determined the merits of plaintiff's pending discovery motion." *Garrett v. City & County of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987). Here the motions were never decided on their merits, and the court then counted the absence of the records against her.

### F. The Court Entered a Protective Order Without a Showing of Good Cause.

A protective order requires "good cause," which the party seeking it must show. Fed. R. Civ. P. 26(c)(1); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Apple sought the district's model order by letter; Gjovik objected and asked for full briefing, which the district judge denied. 3-ER-592–93; 3-ER-610–11; 1-ER-93, 95. The magistrate judge then had the parties sign the model order and entered it with no finding of good cause, and the district judge overruled Gjovik's renewed objection. 3-ER-577–78; 1-ER-91; 3-ER-558; 1-ER-65. Apple's use of that order is the subject of No. 26-5331; the order itself is challenged here.

## IV. THE DISTRICT COURT STRUCK GJOVIK'S RESPONSES AND THEN RULED AGAINST HER FOR FAILING TO RESPOND.

### A. Standard of Review

A decision to strike a late filing or to deny relief under Rule 6(b) is reviewed for abuse of discretion, which includes applying the wrong legal standard. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258-61 (9th Cir. 2010).

Dismissal under Rule 12(b)(6) is reviewed de novo. Gjovik sought leave for her late filings (2-ER-312; 2-ER-296–97; 2-ER-264–68), objected under Rule 12(g)(2) (4-ER-722–25), and sought leave to file a sur-reply (4-ER-696–716). The court ruled at 1-ER-180; 1-ER-142–44, 155–56, 169–71, 174–75; 1-ER-111–12; and 1-ER-17–19, 27.

### B. The Stricken Evidence Answered Declarations and Testimony Apple Produced After Her Motion.

The court struck both of Gjovik's opposition declarations because they were filed one and three days before Apple's reply was due and contained "evidence that Ms. Gjovik could – and should – have filed in conjunction with her opening motion." 1-ER-18–19. The evidence did not exist then, and her opposition was her only response to Apple's cross-motion. 1-ER-17 n.20. Apple's four declarations were first filed on May 7, and its corporate designee was deposed on May 12, after the magistrate judge had found Apple's refusal to produce one "unreasonable." 4-ER-898 (Dkt. 367-372); 3-ER-552–53. Apple had made its witnesses available only in Apr. 2026, eight months after she asked, and Bertolus only after the discovery cutoff; it had not disclosed its declarant on confidentiality as a witness. 3-ER-398; 2-ER-266. The first stricken declaration was principally a crosswalk supplying page-and-line citations and certified excerpts for testimony she had already filed on time. 2-ER-280; 2-ER-255–57, 258; 2-ER-250–51.

The court had refused to adjust the briefing schedule for the late depositions, citing her "prior representations that she does not need additional discovery to proceed with summary judgment"; she had said only that she could bring her own motion. 1-ER-57; 3-ER-589:14–18; *see* 3-ER-582:6–16; 1-ER-68.

### C. The Court Struck the Evidence Without the Rule 6(b) Inquiry or Any Lesser Measure.

Rule 6(b)(1)(B) calls for an equitable inquiry that weighs the danger of prejudice, the length of the delay, the reason for it, and the movant's good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). A court "may not apply per se rules," and *Ahanchian* reversed a summary judgment entered after the district court refused to consider a counseled opposition filed three days late. 624 F.3d at 1261-63. The same test governs an unrepresented plaintiff. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381-82 (9th Cir. 1997).

The court did not address the length of the delay or Gjovik's good faith. With each filing she said that it was late, gave her reasons, and asked for leave: depositions taken after the discovery cutoff, transcripts received days before her deadlines, illness, and the circumstances of an unrepresented litigant in bankruptcy and without stable housing. 3-ER-397–99, 401; 2-ER-390–94; 2-ER-296–97; 2-ER-280; 2-ER-264–68. The authority the order cited upheld the exclusion of late affidavits "where party failed to request extension of time or show excusable

neglect." 1-ER-18–19 (citing *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1519 (9th Cir. 1983)). The court relied instead on her law degree, on its earlier warnings, and on the volume of her filings, none of which is a factor. 1-ER-19. Its premise that "all of Ms. Gjovik's filings were late," was also mistaken. 1-ER-17; 2-ER-253. And Apple's request to strike first appeared in its reply; the court took it under submission without asking her to respond. 2-ER-253–54; 2-ER-243:8–13.

The court considered no lesser measure. When exclusion of evidence "amount[s] to dismissal of a claim," the court must consider "willfulness, fault, or bad faith" and "the availability of lesser sanctions." *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012); *see* Fed. R. Civ. P. 56(e)(1). The only prejudice the court found was that the declarations arrived one and three days before Apple's reply was due; the hearing was two weeks off. 1-ER-18.

The lateness was also the product of a schedule that Gjovik asked the court to change before she missed any deadline. The magistrate judge required one brief on every remaining discovery dispute by Apr. 23, on pain of waiver, the day her summary-judgment motion was due. 1-ER-75–76; 3-ER-584. She objected that the process "ensures no discovery relief before the dispositive deadline." 3-ER-560–63; 3-ER-555. The district judge called her concern "understandable" and changed nothing, while giving Apple about sixty more days for medical discovery. 1-ER-

68; 1-ER-60–62. Both of her Apr. 23 filings then missed midnight, the discovery brief by 28 minutes and the summary-judgment brief by ten hours. 1-ER-46 n.1; 1-ER-17; 3-ER-399. The magistrate judge wrote that she "manually changed the filing date" of the discovery brief, "attempting to mislead the Court," although the court's own system generates the filing date and she had told the district judge under oath that day that she filed it "at midnight"; the district judge declined to strike the finding. 1-ER-46 n.1; 3-ER-399; 2-ER-249; 1-ER-44; *see* 4-ER-897–99.

The court also withheld the latitude owed to an unrepresented litigant, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990), because Gjovik "has a J.D.," although the recognized exception is for "practicing attorneys," and it never found that she is one. 1-ER-19; *see also* 1-ER-155; 1-ER-232; *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023).

### D. The Strike Was Not Harmless.

The court relied on the gap it had created. It faulted her for offering confidentiality evidence "for the first time" in opposition, disregarded comparator evidence because it appeared in a stricken declaration, and found Apple's evidence "undisputed," yet it cited a stricken exhibit against her. 1-ER-11, 26–27, 35; 1-ER-12 n.13. Its alternative holding, that the result would be the same "even if" it considered the stricken material, discussed two examples and weighed the evidence, discounting a coworker's view that the images were not confidential

because "[t]here is no indication that the co-worker even worked on Face ID." 1-ER-27. The coworker was a senior manager in the organization that ran the Face ID studies. 2-ER-289–94; 2-ER-357, 361–66.

The court did not address the rest. That material included Rule 30(b)(6) testimony that Bertolus's belief that the images were confidential came from "members of global security, the members of the HR team or the people team, and legal counsel," and that the Verge article was a basis for the termination. 2-ER-284–85, 287. It included West's 2020 texts about the dinner: "of all the inappropriate things I've done. that might be top of the list. especially since I don't think you were comfortable telling me no." 2-ER-261, 276–78. And Apple still had to show that its own evidence entitled it to judgment. *Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013).

### E. On the Pleadings, the Court Struck Her Sur-Reply and Dismissed Three Claims as "Waived."

Apple's motion against the Fourth Amended Complaint ("4AC") made arguments "that it could have made in its prior motion to dismiss the [3AC] but did not," including against claims it had never challenged or that had survived. 1-ER-142–43. Gjovik objected under Rule 12(g)(2). 4-ER-742:23–743:2; 4-ER-722–25. The court acknowledged that the rule "does lend support" to her position but overruled the objection under *In re Apple iPhone Antitrust Litigation*, 846 F.3d

313, 317-20 (9th Cir. 2017), where the plaintiffs had a full opportunity to respond on the merits. 1-ER-143. Here, having objected that the new arguments were barred, Gjovik was held to have conceded them, with prejudice, in the same order that decided they were not barred.

Her opposition defended the claims that Apple attacked, and when Apple's reply asserted that she had "concede[d]," she sought leave to file a sur-reply, which said: "I concede nothing." 4-ER-722–25, 728–30, 734–39; 4-ER-718, 719–20; 4-ER-697. The court struck it as "not targeted to any alleged new contention in Defendant's reply" and as overlength, and dismissed three claims with prejudice because she had not made the arguments that the sur-reply made. 1-ER-180; 1-ER-179. For the UCL claim, previously challenged only for standing, the court itself identified the continuing-accrual answer to Apple's new time-bar argument, said she "could have, but did not" make it, and deemed it "waived." 4-ER-789; 1-ER-170–71; *see* 4-ER-700, 702–03. For her right-to-know complaints, a predicate of the § 6310 claim that Apple had never challenged, the court thought Apple's reading "arguably in some tension with the purpose" of the Act but deemed any opposition "waived" because she "appears to have a J.D.," although she had argued the point in her opposition, at the hearing, and in the sur-reply. 4-ER-746 n.15; 1-ER-155; 4-ER-728–29; 4-ER-690:9–694:12; 4-ER-704–14. The implied-covenant claim, which had survived Apple's first motion, was dismissed because she

"fail[ed] to address it in any way"; the sur-reply addressed it. 1-ER-221; 1-ER-175; 4-ER-715.

A court may not grant a Rule 12(b)(6) motion solely because it is unopposed. *Marcure v. Lynn*, 992 F.3d 625, 631-33 (7th Cir. 2021). In this circuit, dismissal for failure to oppose is a sanction that requires weighing "the public policy favoring disposition of cases o[n] their merits" and "the availability of less drastic sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995). The court weighed neither.

The right-to-know ruling was also wrong on the merits, which the court did not decide. Apple argued that the Superfund vapors were not "hazardous substances" because they were not present "as a result of workplace operations." 4-ER-746 (quoting Cal. Lab. Code § 6362). But the Act protects an employee who "has filed any complaint . . . under or related to" it, and § 6310 protects good-faith complaints whether or not an OSHA standard "is being violated." Cal. Lab. Code § 6399.7; *Hentzel v. Singer Co.*, 138 Cal. App. 3d 290, 299-300 (1982). She alleged that Apple's safety staff told her "Apple legal decided that Apple employees 'have no Right to Know.'" 4-ER-750, 753–54. California's hazardous-waste-operations standard (HAZWOPER) requires employers at a Superfund site to inform and train the employees who work there, and "workplace operations" include "failure of control equipment," such as the cut-down exhaust stacks and

cracked slab that she alleged. Cal. Code Regs. tit. 8, § 5192(c)(8), (e); Cal. Lab. Code § 6362; 4-ER-704, 707–12; 4-ER-666, 670.

## V. THE DISTRICT COURT DISMISSED CLAIMS ON THE PLEADINGS BY DECIDING FACT QUESTIONS AND APPLYING INCORRECT STANDARDS.

### A. Standard of Review

Dismissal under Rule 12(b)(6), including on limitations grounds, is reviewed de novo; judicial notice and incorporation by reference are reviewed for abuse of discretion. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960, 969 (9th Cir. 2010); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Claims dismissed with prejudice are preserved without repleading. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). Gjovik opposed each dismissal and objected to judicial notice. 4-ER-778–87; 4-ER-768–76; 4-ER-722, 726, 730–39; 4-ER-655–56; 3-ER-618:9–15. The court ruled at 1-ER-191–204, 222–24; 1-ER-146–49, 161–74; and 1-ER-104–30.

### B. The Court Used Judicial Notice to Decide When She Should Have Discovered the Fab.

The court agreed that 42 U.S.C. § 9658 governs when the limitations period began for the nuisance and fear-of-cancer claims. 1-ER-107–08. The period runs from when the plaintiff "knew (or reasonably should have known)" the cause of her injury, a "fact-intensive" inquiry that this Court has held could not be resolved

even on summary judgment. 42 U.S.C. § 9658(b)(4)(A); *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150, 1156 (9th Cir. 2002). The complaint alleged that Gjovik learned that the facility was a chip fab through public-records requests in Feb. 2023, with an expert's help; that public databases "showed no significant toxic chemical releases"; and that Apple obscured the facility's nature with code names and misleading classifications. 4-ER-660, 664, 4-ER-684–85.

The court took judicial notice that building permits, a fire-department report, and an air-district inventory were publicly available, and it found it "implausible that she could not have found the documents at issue." 1-ER-110–15. Judicial notice can establish that a document exists, not what a reasonable person would have found or understood. *Khoja*, 899 F.3d at 999-1000. For the permits, the only documents reflecting semiconductor fabrication, the court relied on recent captures of a search portal, not of the permits themselves, and inferred that "there is nothing to indicate that the building permits . . . were not available at that time." 1-ER-113, 115 n.6. That is an inference against the pleader; Apple's counsel conceded that for one exhibit "we don't have a way back going back that far." 3-ER-618:24–619:16. Whether a layperson would have found these records, read them as evidence of a chip fab, and linked it to her illness before Sept. 2021 is a question for the factfinder. And the dismissal was with prejudice because she had "previously"

failed to cure, under a discovery rule that the court acknowledged it "should not have relied on." 1-ER-107–08, 117.

The court also "deem[ed]" her "failure to timely oppose the request for judicial notice a waiver," although her opposition was on the docket, and answered by Apple, two weeks before the hearing, and she argued the point at the hearing. 1-ER-111–12; 4-ER-650–54, 656; 4-ER-875 (Dkt. 161); 3-ER-618:1–15. A party "is entitled to be heard on the propriety of taking judicial notice," and the court itself called the availability of the permits "[t]he closest call." Fed. R. Evid. 201(e); 1-ER-113–15.

The ultrahazardous-activity claim fell to a different error. The court first recognized that the question turns on the factors of Restatement (Second) of Torts § 520, including the "inappropriateness of the activity to the place where it is carried on," and that it "cannot be decided on demurrer." 1-ER-208 (quoting *SKF Farms v. Superior Court*, 153 Cal. App. 3d 902, 906 (1984)). When Gjovik pressed the location factor, the court dismissed with prejudice: "She is now backtracking from that position. The Court holds Ms. Gjovik to her prior position." 1-ER-167. The "prior position" was the court's own paraphrase, and the complaint that it first sustained alleged that "[s]emiconductor fabrication adjacent to a residential area is an ultrahazardous activity." 1-ER-209; 4-ER-813–14; *see* 4-ER-734–40. The

alternative time-bar ground rested on the discovery rule that the court later abandoned. 1-ER-161–66, 177.

### C. The Court Dismissed the UCL Claim by Treating a Superseded Complaint as a Binding Admission.

The UCL claim sought an order barring Apple's use of the Gobbler images and requiring Apple to disgorge them. 4-ER-755, 757. Besides waiver, the court held the claim time-barred, taking a 2017 start date from the superseded 2AC as a "judicial admission." 1-ER-170. But an amended pleading's "superseded portion ceases to be a conclusive judicial admission," and a UCL claim "accrues each time a wrongful act occurs, triggering a new limitations period." *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) (quotation omitted); *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013). The superseded complaint itself alleged that "[e]ven today Gjovik's iCloud is still connected to Gobbler," and the operative one that she has "no way to remove it." 4-ER-825; 4-ER-756. The court's remaining ground, that she could not seek relief for others without a class action, does not defeat her claim for her own data or for public injunctive relief. 1-ER-171; 4-ER-756, 757; *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955, 959-60 (2017). The court denied leave without finding futility, although Apple itself told it that the UCL claim "factually overlaps with remaining claims alleging retaliation for

complaining about purported violations of her right to privacy." 1-ER-177; 3-ER-616; 1-ER-98.

### D. The Court Dismissed the Sarbanes-Oxley and Dodd-Frank Claims by Deciding Her Motive From Apple's Document.

The 3AC alleged that Gjovik reported a board member's conflict of interest, "apparent self-dealing by corporate insiders including an interested party transaction," and inadequate internal controls to Apple's Business Conduct office and, nine days before she was fired, to the SEC, with Apple's knowledge. 4-ER-794, 811–12. The court dismissed both claims with prejudice on its first ruling. 1-ER-199–204.

The court decided her motive from a document outside the complaint. Over her objection it took notice of Apple's redacted copy of her SEC submission and concluded that her "conduct here still seems to be motivated by a concern about safety, not fraud." 1-ER-202 & n.8; 4-ER-781–82. A court may not "assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003. And motive is not an element: § 1514A protects reports of conduct the employee "reasonably believes constitutes a violation" of the listed laws or of "any rule or regulation of the Securities and Exchange Commission." 18 U.S.C. § 1514A(a)(1).

The court tested her reports only against the fraud statutes, required her theory to "approximate the basic elements of a claim of securities fraud," and found the conflict not "demonstrably material to shareholders." 1-ER-201–02. The first phrase comes from a decision holding that an employee need not "essentially prove the existence of fraud before suggesting the need for an investigation." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1002 (9th Cir. 2009). Materiality is ordinarily a question for the trier of fact. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). And Regulation S-K requires disclosure of any transaction exceeding $120,000 in which a director has a material interest. 17 C.F.R. § 229.404(a); *see* 4-ER-760:4–16.

Dodd-Frank independently protects a whistleblower's "providing information to the Commission," and the complaint alleged retaliation because she "lawfully provided information to the Commission with her SEC whistleblower tip." 15 U.S.C. § 78u-6(h)(1)(A)(i); 4-ER-812. The court dismissed because the caption cited clause (iii), but a complaint is not defective for "imperfect statement of the legal theory supporting the claim asserted." 1-ER-203–04; *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

The with-prejudice ruling rested on her "failure to respond directly to Apple's argument in her opposition and her failure to articulate at the hearing new facts," neither of which is a ground for denying leave under *Foman*. 1-ER-203. She

did oppose, and she explained that she "did have to really, really simplify" the claims "to meet the page limit." 4-ER-768–70; 4-ER-759:13–15, 761:13–762:2; *see* 4-ER-834–38, 839–41.

### E. The Court Tested the Post-Termination Emotional-Distress Allegations for Believability.

The complaint alleged that twenty days after the termination, "Apple mailed Plaintiff a package containing her personal items, which were intentionally damaged and covered in glass shards," and that the package "contained a hidden listening device," which she later gave to the police. 4-ER-686–87. An account "later revealed to be associated with Apple public relations or global security" had posted an image "implying that Apple had mailed Plaintiff the severed head of one of Plaintiff's loved ones." 4-ER-686. The court said that specificity "is particularly important where the claims on their face strain plausibility," invoking *Denton v. Hernandez*, 504 U.S. 25 (1992), and later found the allegations "entirely speculative." 1-ER-173; 1-ER-119.

*Denton* construes the in forma pauperis statute, which grants an "unusual power to pierce the veil of the complaint's factual allegations." 504 U.S. at 32 (quotation omitted). Gjovik paid the filing fee. 4-ER-853 (Dkt. 1). Under Rule 12(b)(6), allegations are not rejected "on the ground that they are unrealistic or nonsensical." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Attribution is not

speculative when the defendant itself mailed the box, intent "may be alleged generally," and glass shards and a listening device together are difficult to explain as careless packing. Fed. R. Civ. P. 9(b).

The court also held that Apple's failure to act after learning of the harassment could not "satisfy the level of intent required for an intentional tort." 1-ER-120. But ratification applies "where an employer fails to investigate or respond to charges that an employee committed an intentional tort." *Ventura v. ABM Indus. Inc.*, 212 Cal. App. 4th 258, 272 (2012). And the first order wrongly held the retaliation-based theory barred by workers' compensation exclusivity for want of "race- or sex-based discrimination"; the exception also covers retaliation in violation of FEHA, which she alleged. 1-ER-222–23; *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017); 4-ER-817–18.

### F. The Court Removed Three Categories of Protected Disclosures on Pleading Grounds.

First, six days before she was fired, Gjovik reported possible sanctions violations to the FBI. 4-ER-793. The court struck that predicate with prejudice because the prior complaint pleaded the facts under the Sarbanes-Oxley count and "the Court never permitted Ms. Gjovik to add new factual predicates." 1-ER-146–47. But the prior order granted leave to amend the § 1102.5 claim "and/or . . . supplement the allegations in support of the claim," without limit, and facts

pleaded under the wrong heading are still pleaded. 1-ER-227; 4-ER-793, 816; Fed. R. Civ. P. 10(c); *Johnson*, 574 U.S. at 11.

Second, the 4AC alleged that she reported violations of CERCLA, RCRA, and the Clean Air Act, among other laws. 4-ER-751–52. The court dismissed with prejudice "any part of the § 1102.5 claim where all that Ms. Gjovik does is cite wholesale to a statutory framework," for want of a "benchmark" within each statute. 1-ER-148–49. Section 1102.5(b) requires only "reasonable cause to believe that the information discloses a violation of state or federal statute," and Rule 8 requires fair notice, not a pin cite. The first order had left the point undecided, and the 4AC did supply a benchmark: a 2016 EPA letter and the site's land-use covenant required reporting to and consultation with the EPA. 1-ER-216; 4-ER-748–49.

Third, the first order held that her internal complaints about the Gobbler program could support a § 1102.5 claim and asked her to say "to whom she complained." 1-ER-215–16. The 4AC answered: she "[m]ade complaint to Apple management in August 2021." 4-ER-751–52. The court dismissed the predicate with prejudice because she did not name the manager in a public filing. 1-ER-147, 149; *see* 4-ER-727. Her allegation pleads a disclosure "to a person with authority over the employee," and Rule 8 does not require a plaintiff to name her witness.

### G. The Court Dismissed the RICO, Bane Act, and Ralph Act Claims for Missing Detail.

The RICO count alleged that Apple profited from a false reputation for regulatory compliance, maintained through "witness intimidation and tampering, systemic retaliation against employees and contractors who report issues, unlawful NDAs and over restrictive policies." 4-ER-797–98; *see* 4-ER-799–808. A § 1962(a) claim requires injury from the investment of racketeering income, which she alleged. *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1149 (9th Cir. 2008); 4-ER-795. The court dismissed that claim with prejudice, holding amendment futile "[b]ecause Ms. Gjovik did not, at the hearing, explain how she could overcome the above deficiencies." 1-ER-194. The transcript shows otherwise: she cited a decision in which "investing the proceeds into a cover-up and witness intimidation effort was found to be a plausible claim" and offered to "amend or brief post-hearing in far more specificity." 4-ER-763:25–764:4, 765:8–9. Futility is a question about the complaint, not about oral argument. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The court dismissed the § 1962(c) and (d) claims with leave and suggested that she drop them; she did, and later moved to restore them on new evidence, so review runs through the denial of that motion. 1-ER-194–99, 228–29; 4-ER-747; 3-ER-636–38. The amendment was not futile: a corporation, its outside law firms, and its retained experts can form an associated-in-fact enterprise; retaliation

against a person for reporting a federal offense to law enforcement is racketeering activity; and lost employment is an injury to business or property. *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361-62 (9th Cir. 2005); 18 U.S.C. §§ 1513(e), 1961(1); *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc); *see* 4-ER-793, 796–810.

The court dismissed the Bane Act claim for detail that the law does not require. The Act gives a remedy for interference with legal rights "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1(b), (c); *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 841-43 (2004). The complaint alleged "threats of violence against Gjovik and her property," "threatening and dangerous packages in the mail," and surveillance and entry into her home, attributed to Apple's "Global Security & Legal teams." 4-ER-815. The court dismissed because the complaint did "not identify any specific Apple employee" and conditioned repleading on "specific facts to support a basis for respondeat superior liability." 1-ER-212–14. Rule 8 does not require a plaintiff to name the employees through whom a corporation acted, and ratification is another route to liability. *Ventura*, 212 Cal. App. 4th at 272. The claim is therefore preserved. *Ho v. ReconTrust Co.*, 858 F.3d 568, 577 (9th Cir. 2017); *see* 3-ER-633–34.

The court did not address the Ralph Act's false-report provision. It quoted only subdivision (b)(1) of Civil Code § 51.7 and dismissed for want of facts

showing a threat of violence. 1-ER-214. Since 2021, "intimidation by threat of violence" has included making or threatening to make a false report to law enforcement. Cal. Civ. Code § 51.7(b)(2). The complaint alleged false "reports to police and FBI," and the court denied leave to replead on that basis without addressing it. 4-ER-800; 3-ER-635; 1-ER-132–33.

## VI. THE DISTRICT COURT CAPPED THE PLEADINGS AND CLOSED THEM WITHOUT APPLYING *FOMAN*.

### A. Standard of Review

Denial of leave to amend is reviewed for abuse of discretion, but refusing leave "without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion." *Foman*, 371 U.S. at 182. Gjovik moved for leave (3-ER-624; 3-ER-625–47) and renewed the request (3-ER-613, 614; 3-ER-586–87). The court ruled at 1-ER-132–33, 1-ER-99, and 1-ER-80.

### B. The Page Cap Produced the Deficiencies the Court Then Found.

Length alone does not warrant dismissal under Rule 8. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131-32 (9th Cir. 2008). The court dismissed the 2AC for length before deciding Apple's motion, capped every later complaint at 75 pages, and assured Gjovik that she was "not expected to try the entirety of her case in the complaint." 1-ER-231–32. It then dismissed the RICO, Bane Act, and emotional-distress claims for missing detail, much of which was in

the complaint it had ordered cut. 1-ER-197, 212; 1-ER-173; *e.g.*, 4-ER-843–44; 4-ER-761:13–762:2. It refused her request for more pages "to ensure adequate pleading of claims that were given leave to amend," and it barred any new "factual predicate" while permitting Apple new arguments in its successive motion. 1-ER-136; 1-ER-142–44, 178. For example, the court dismissed her CERCLA-based disclosures because she had not identified which "tailored settlements, contracts, and restrictive covenants" were at issue; the 2AC pleaded the site's land-use covenant and the five-year review that found it out of compliance. 1-ER-148–49; 4-ER-828, 845–48.

### C. The Court Denied Leave on New Evidence Without Any *Foman* Finding.

In Jan. 2025 Gjovik moved for leave to amend on evidence obtained after her last complaint: a Dec. 19, 2024 FOIA release of Apple's DOL submission, which she alleged showed that Apple's termination evidence included Gobbler images of her, and her 2021 performance review, first produced on Dec. 26, 2024. 3-ER-627–28. She sought to replead the RICO, Bane Act, Ralph Act, Dodd-Frank, ultrahazardous-activity, and UCL claims and the privacy predicate of the § 1102.5 claim, and to add a claim under Civil Code § 1708.85. 3-ER-626, 628–47. Central to the motion was a theory that the 2AC had pleaded before the page cap: that in 2018 Apple's lawyers copied her entire message database, including nude

photographs, over her objection; that in 2021 she complained publicly that this was meant "to intimidate me as a whistleblower"; and that Apple retaliated by "doing the same thing she was complaining about to her again (now with Gobbler photos)." 3-ER-626–28; 4-ER-826–27, 829–33; *see* 4-ER-820–24, 842.

Apple did not oppose the motion; at its request, the court stayed its response. 4-ER-874 (Dkt. 158); 3-ER-622–23. The court denied the motion two weeks before the noticed hearing, because Gjovik "has had ample multiple opportunities to plead her claims" and "the pleadings in this case need to be settled." 4-ER-874 (Dkt. 157); 1-ER-133; *see* 3-ER-620:20–24. It found no bad faith, undue delay, prejudice, or futility, and it did not discuss the new evidence, that theory, or the UCL, Dodd-Frank, and § 1708.85 requests.

Prejudice to the opposing party "carries the greatest weight," and absent prejudice or a strong showing on another *Foman* factor, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052. A wish to close the pleadings is not a "justifying reason." *Foman*, 371 U.S. at 182. The claims she had not repleaded are before this Court through this ruling, and the Bane and Ralph Act claims are also preserved directly. 1-ER-213–14; *Ho*, 858 F.3d at 577.

## CONCLUSION

The Court should reverse the judgment and remand for trial on the retaliation claims and for further proceedings on the remaining claims. It should: (1) vacate the judgment and the order granting summary judgment to Apple and striking Gjovik's evidence (1-ER-2–42), including as to the theories identified in Part I.E; (2) vacate the discovery orders (1-ER-70–76, 63–69, 46–53, 43–45) to the extent that they denied her motions to compel, excused Apple from identifying documents withheld as privileged, and found that she altered a filing date; vacate the protective order; and direct that the motions to compel be decided on their merits before further summary-judgment proceedings; (3) reverse the denial of her motion for summary judgment and direct entry of judgment for her on liability or, alternatively, of partial summary judgment as to each stated reason that was protected activity, or at a minimum remand for decision of the motion under the correct standards; (4) reverse, or at a minimum vacate, the orders dismissing claims on the pleadings (1-ER-181–229, 138–78, 100–33) as to the UCL, implied-covenant, nuisance, fear-of-cancer, ultrahazardous-activity, Sarbanes-Oxley, Dodd-Frank, Bane Act, post-termination emotional-distress, and RICO § 1962(a) claims; (5) restore as predicates of the retaliation claims her report to the FBI, her right-to-know complaints, her environmental disclosures, and her complaints about

the Gobbler program; and (6) vacate the denial of leave to amend and direct the district court to decide that motion under *Foman*.

Date: November 13, 2026

/s/ Ashley M. Gjovik
Ashley M. Gjovik
*Plaintiff-Appellant, In Propria Persona*

## STATEMENT OF RELATED CASES

Appellant is aware of one related case pending in this Court: *Gjovik v. Apple Inc.*, No. 26-5331, an appeal from the district court's July 16, 2026 order (Dkt. 398) denying relief under Federal Rule of Civil Procedure 72(a) from the magistrate judge's order on Apple's confidentiality designations (Dkt. 396). It arises from the same district court case. 9th Cir. R. 28-2.6.

Date: November 13, 2026

/s/ Ashley M. Gjovik
Ashley M. Gjovik
*Plaintiff-Appellant, In Propria Persona*

## CERTIFICATE OF COMPLIANCE

9th Cir. Case Number: 26-4716

I am the self-represented party.

This brief contains 13,650 words, including 0 words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

Date: November 13, 2026

/s/ Ashley M. Gjovik
Ashley M. Gjovik
*Plaintiff-Appellant, In Propria Persona*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Electronic Filing system. Participants in the case who are registered users will be served by that system.

Date: November 13 2026

/s/ Ashley M. Gjovik
Ashley M. Gjovik
*Plaintiff-Appellant, In Propria Persona*

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

**Page**

California Constitution, Article I, Section 1 ....................68
California Civil Code § 1668 ....................68
California Government Code § 12940 (excerpts) ....................68
California Labor Code § 96 (excerpt) ....................68
California Labor Code § 98.6 ....................69
California Labor Code § 232.5 ....................71
California Labor Code § 432.5 ....................71
California Labor Code § 1102.5 ....................71
California Labor Code § 1102.6 ....................73
California Labor Code § 6310 ....................73
California Penal Code § 266i (excerpt) ....................75

**California Constitution, Article I, Section 1**

All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

**California Civil Code § 1668**

All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

**California Government Code § 12940 (excerpts)**

It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

* * *

(h) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.

* * *

(j) * * * (4) * * * (C) For purposes of this subdivision, “harassment” because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions. Sexually harassing conduct need not be motivated by sexual desire.

* * *

**California Labor Code § 96 (excerpt)**

The Labor Commissioner and the deputies and representatives authorized by the commissioner in writing shall, upon the filing of a claim therefor by an employee, or an employee representative authorized in writing by an employee, with the Labor Commissioner, take assignments of:

* * *

(k) Claims for loss of wages as the result of demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises.

* * *

**California Labor Code § 98.6**

(a) A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to their rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that they are owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of themselves or others of any rights afforded them.

(b) (1) Any employee who is discharged, threatened with discharge, demoted, suspended, retaliated against, subjected to an adverse action, or in any other manner discriminated against in the terms and conditions of their employment because the employee engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee has made a bona fide complaint or claim to the division pursuant to this part, or because the employee has initiated any action or notice pursuant to Section 2699 shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by those acts of the employer. If an employer engages in any action prohibited by this section within 90 days of the protected activity specified in this section, there shall be a rebuttable presumption in favor of the employee's claim.

(2) An employer who willfully refuses to hire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.

(3) In addition to other remedies available, an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per

employee for each violation of this section, to be awarded to the employee or employees who suffered the violation.

(c) (1) Any applicant for employment who is refused employment, who is not selected for a training program leading to employment, or who in any other manner is discriminated against in the terms and conditions of any offer of employment because the applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the applicant has made a bona fide complaint or claim to the division pursuant to this part, or because the employee has initiated any action or notice pursuant to Section 2699 shall be entitled to employment and reimbursement for lost wages and work benefits caused by the acts of the prospective employer.

(2) This subdivision shall not be construed to invalidate any collective bargaining agreement that requires an applicant for a position that is subject to the collective bargaining agreement to sign a contract that protects either or both of the following as specified in subparagraphs (A) and (B), nor shall this subdivision be construed to invalidate any employer requirement of an applicant for a position that is not subject to a collective bargaining agreement to sign an employment contract that protects either or both of the following:

(A) An employer against any conduct that is actually in direct conflict with the essential enterprise-related interests of the employer and where breach of that contract would actually constitute a material and substantial disruption of the employer's operation.

(B) A firefighter against any disease that is presumed to arise in the course and scope of employment, by limiting their consumption of tobacco products on and off the job.

(d) The provisions of this section creating new actions or remedies that are effective on January 1, 2002, to employees or applicants for employment do not apply to any state or local law enforcement agency, any religious association or corporation specified in subdivision (d) of Section 12926 of the Government Code, except as provided in Section 12926.2 of the Government Code, or any person described in Section 1070 of the Evidence Code.

(e) An employer, or a person acting on behalf of the employer, shall not retaliate against an employee because the employee is a family member of a person who has, or is perceived to have, engaged in any conduct delineated in this chapter.

(f) For purposes of this section, "employer" or "a person acting on behalf of the employer" includes, but is not limited to, a client employer as defined in paragraph (1) of subdivision (a) of Section 2810.3 and an employer listed in subdivision (b) of Section 6400.

(g) Subdivisions (e) and (f) shall not apply to claims arising under subdivision (k) of Section 96 unless the lawful conduct occurring during nonwork hours away from the employer's premises involves the exercise of employee rights otherwise covered under subdivision (a).

*(Amended by Stats. 2023, Ch. 612, Sec. 1. (SB 497) Effective January 1, 2024.)*

**California Labor Code § 232.5**

No employer may do any of the following:

(a) Require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions.

(b) Require an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions.

(c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions.

(d) This section is not intended to permit an employee to disclose proprietary information, trade secret information, or information that is otherwise subject to a legal privilege without the consent of his or her employer.

*(Added by Stats. 2002, Ch. 934, Sec. 2. Effective January 1, 2003.)*

**California Labor Code § 432.5**

No employer, or agent, manager, superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law.

**California Labor Code § 1102.5**

(a) An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person

with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

(b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

(c) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

(d) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for having exercised their rights under subdivision (a), (b), or (c) in any former employment.

(e) A report made by an employee of a government agency to their employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b).

(f) (1) In addition to other remedies available, an employer is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section to be awarded to the employee who was retaliated against.

(2) In assessing this penalty, the Labor Commissioner shall consider the nature and seriousness of the violation based on the evidence obtained during the course of the investigation. The Labor Commissioner's consideration of the nature and seriousness of the violation shall include, but is not limited to, the type of violation, the economic or mental harm suffered, and the chilling effect on the exercise of

employment rights in the workplace, and shall be considered to the extent evidence obtained during the investigation concerned any of these or other relevant factors.

(g) This section does not apply to rules, regulations, or policies that implement, or to actions by employers against employees who violate, the confidentiality of the lawyer-client privilege of Article 3 (commencing with Section 950) of, or the physician-patient privilege of Article 6 (commencing with Section 990) of, Chapter 4 of Division 8 of the Evidence Code, or trade secret information.

(h) An employer, or a person acting on behalf of the employer, shall not retaliate against an employee because the employee is a family member of a person who has, or is perceived to have, engaged in any acts protected by this section.

(i) For purposes of this section, "employer" or "a person acting on behalf of the employer" includes, but is not limited to, a client employer as defined in paragraph (1) of subdivision (a) of Section 2810.3 and an employer listed in subdivision (b) of Section 6400.

(j) The court is authorized to award reasonable attorney's fees to a plaintiff who brings a successful action for a violation of these provisions.

*(Amended by Stats. 2023, Ch. 612, Sec. 2. (SB 497) Effective January 1, 2024.)*

**California Labor Code § 1102.6**

In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5.

*(Added by Stats. 2003, Ch. 484, Sec. 3. Effective January 1, 2004.)*

**California Labor Code § 6310**

(a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following:

(1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, their employer, or their representative.

(2) Instituted or caused to be instituted any proceeding under or relating to their rights or has testified or is about to testify in the proceeding or because of the exercise by the employee on behalf of themselves, or others of any rights afforded to them.

(3) Participated in an occupational health and safety committee established pursuant to Section 6401.7.

(4) Reported a work-related fatality, injury, or illness, requested access to occupational injury or illness reports and records that are made or maintained pursuant to Subchapter 1 (commencing with Section 14000) of Chapter 1 of Division 1 of Title 8 of the California Code of Regulations, or exercised any other rights protected by the federal Occupational Safety and Health Act (29 U.S.C. Sec. 651 et seq.), except in cases where the employee alleges they have been retaliated against because they have filed or made known their intention to file a workers' compensation claim pursuant to Section 132a, which is under the exclusive jurisdiction of the Workers' Compensation Appeals Board.

(b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by their employer because the employee has made a bona fide oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, their employer, or their representative, of unsafe working conditions, or work practices, in their employment or place of employment, or has participated in an employer-employee occupational health and safety committee, shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.

(c) An employer, or a person acting on behalf of the employer, shall not retaliate against an employee because the employee is a family member of a person who has, or is perceived to have, engaged in any acts protected by this section.

(d) For purposes of this section, "employer" or "a person acting on behalf of the employer" includes, but is not limited to, a client employer as defined in paragraph (1) of subdivision (a) of Section 2810.3 and an employer listed in subdivision (b) of Section 6400.

(e) Notwithstanding Section 6303 or other law, as used in this section, “employee” includes a domestic work employee, except for a person who performs household domestic service that is publicly funded, including publicly funded household domestic service provided to a recipient, client, or beneficiary with a share of cost in that service.

*(Amended by Stats. 2020, Ch. 288, Sec. 1. (AB 2658) Effective January 1, 2021.)*

**California Penal Code § 266i (excerpt)**

(a) Except as provided in subdivision (b), any person who does any of the following is guilty of pandering, a felony, and shall be punishable by imprisonment in the state prison for three, four, or six years:

* * *

(5) By fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, procures another person for the purpose of prostitution, or to enter any place in which prostitution is encouraged or allowed within this state, or to come into this state or leave this state for the purpose of prostitution.

(6) Receives or gives, or agrees to receive or give, any money or thing of value for procuring, or attempting to procure, another person for the purpose of prostitution, or to come into this state or leave this state for the purpose of prostitution.

* * *