**No. 26-4716**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ASHLEY M. GJOVIK,

*Plaintiff-Appellant,*

v.

APPLE INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-cv-04597-EMC
Hon. Edward M. Chen

# EXCERPTS OF RECORD
# VOLUME 4 OF 4

Ashley M. Gjovik
2108 N St., Ste. 4553
Sacramento, CA 95816
(408) 883-4428
legal@ashleygjovik.com

*Plaintiff-Appellant, In Propria Persona*

Case: 25-4716, 11/13/2026, DktEntry: 10.4, Page 2 of 256

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ASHLEY M. GJOVIK, *an individual*,

Plaintiff,

vs.

APPLE INC., a corporation,

Defendant.

CAND No. 3:23-CV-04597-EMC

9th Cir No.: 24-6058

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**

***In Support of Plaintiff's Opposition to Defendant's Motions to Dismiss***

**Motion Hearing:**
**Dept: Courtroom 5 (& Zoom)**
**Judge: Honorable Edward M. Chen**
**Date: February 21, 2025**
**Time: 9AM PT**

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CAND No. 3:23-CV-04597-EMC

9th Cir No.: 24-6058

ASHLEY M. GJOVIK, *an individual*,

Plaintiff,

vs.

APPLE INC., a corporation,

Defendant.

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE & OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

***In Support of Plaintiff's Opposition to Defendant's Motions to Dismiss***

**Motion Hearing:**
**Dept: Courtroom 5 (& Zoom)**
**Judge: Honorable Edward M. Chen**
**Date: February 21, 2025**
**Time: 1:30 PM PT**

# I. Notice & Judicial Notice

1. Plaintiff respectfully submits this response to Defendant's Request for Judicial Notice of the City of Santa Clara's building permit portal. Defendant argues that because the building permits related to semiconductor fabrication tools were publicly available through the city's website, the Plaintiff should have known about the toxic emissions from the facility, and therefore, there is no basis for tolling the statute of limitations for the toxic tort claims. Plaintiff objects to the request for the following reasons.

2. "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007) *(per curiam)* (citing *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)). A court "may judicially notice a fact that is not subject to reasonable dispute because it" either (1) "is generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). Because Plaintiff does not object to the request for judicial notice and the documents are appropriate subjects of judicial notice, the Court grants Defendants' RJN.[1] *Wells v. Lakeview Loan Servicing, LLC*, No. CV 23-4796 PA (JPRX), 2023 WL 8254485, at *2 (C.D. Cal. Sept. 26, 2023).

[1] See, e.g., *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (court records); *Harticon v. U.S. Bank Trust, N.A.*, No. 2:18-CV-00277 KJM (DBx), 2019 WL 1041330, at *3 (E.D. Cal. Mar. 5, 2019) (documents filed in county recorder's office).

## II. The IIED Claim Accrues When Plaintiff Learned of the Exposure

3. First, the Defendant's argument regarding public access to building permit information is irrelevant to the accrual date for Plaintiff's IIED claim. Under California law, the statute of limitations for an IIED claim begins to run when the Plaintiff learns of the harm or injury. In this case, the IIED claim is based on the emotional distress caused by the discovery of the toxic exposure, which Plaintiff only became aware of in February 2024. The Plaintiff cannot have a claim for emotional distress related to chemical exposure when the Plaintiff was unaware of the exposure itself. Thus, the IIED claim did not accrue until February 2024, when Plaintiff was made aware of the extent of the harm caused by the toxic emissions. This is the point at which the claim for IIED arises, and any suggestion otherwise is without merit.

## III. Defendant's Argument Regarding Public Access to Building Permits is Without Merit

4. Defendant's argument about the public availability of building permit information is also flawed. First, Defendant's submission of documents obtained from the City of Santa Clara's website does not establish that the information was readily available in the form necessary for Plaintiff to understand the significance of the semiconductor fabrication tools. The documents submitted by Defendant were only retrieved today, and Defendant has not provided any evidence of what was available on the City's website in prior years—when Plaintiff was unaware of the toxic emissions from 3250 Scott. [See Exhibit A].

5. In order to properly respond to Defendant's argument, Plaintiff would be required to introduce its own public records and evidence to demonstrate what information was available at relevant times. However, as a result of

Defendant's bad faith litigation tactics, Plaintiff's requests for such evidence were repeatedly denied by the court. The request for judicial notice should not be granted simply because Defendant claims that documents are publicly available.

6. The documents offered by Defendant do not resolve any legal question in this case. A request for judicial notice is appropriate only when a document can affirmatively answer a specific legal question. Here, the building permits do not answer the legal question of whether the Plaintiff was aware of the toxic emissions in time to meet the statutory deadlines for filing a toxic tort claim. However, in case Defendant's request is accepted, Plaintiff also includes the instructions from the city website for requesting records, which says nothing about the portal the Defendant points to, and in fact, directs people to the Public Records Request portal instead. [Exhibit B].

## IV. The Reasonable Person Standard is a Factual Determination, not a Matter of Law for a 12(b)(6) Motion

7. Furthermore, the issue of whether Plaintiff, as a reasonable person, should have been aware of the toxic emissions from the facility is a question of fact, not an issue that can be resolved on a motion to dismiss. The reasonable person standard depends on the circumstances, which include the unique nature of semiconductor fabrication and the historical offshore outsourcing of such operations in the U.S. These facts must be explored through discovery, expert witness testimony, and other factual evidence, making it inappropriate to resolve this matter at the 12(b)(6) stage.

8. Defendant's argument effectively asks the Court to rule on a factual issue that requires a deeper investigation into what information was available to the Plaintiff and how a reasonable person in Plaintiff's position would have

responded. The Court cannot make these factual determinations at this early stage, and judicial notice should not be granted on this basis.

## V. Public Access to Building Permits Does Not Resolve the Question of Tolling for Toxic Tort Claims

9. As discussed in Plaintiff's Opposition to Defendant's Motion to Dismiss, Defendant is attempting to use the availability of building permits to bar tolling of the statute of limitations for toxic tort claims. However, if the Court were to accept Defendant's argument and deny tolling based on the public availability of building permits, it would have far-reaching consequences for thousands of other victims who may have been harmed by similar toxic exposures. If a building permit search alone is enough to trigger the statute of limitations, it would unfairly bar individuals from filing their claims, as they may not have known the full extent of the harm or its cause until much later. Such a ruling would set an unfair precedent and would prevent many potential victims from seeking justice. The Court must consider the unique circumstances of this case and deny Defendant's motion to dismiss and request for judicial notice.

## VI. Conclusion

10. For the reasons outlined above, Plaintiff respectfully requests that the Court deny Defendant's Request for Judicial Notice and reject Defendant's argument that public access to building permits bars tolling of the statute of limitations for the toxic tort claims. Defendant's attempt to manipulate the facts and impose a standard that would have serious consequences for thousands of victims should not be allowed to succeed at this stage of the litigation.

I verified the authenticity of each of these documents as described. A true and correct version of each document is attached. I declare under penalty of

Case: 25-4716, 11/13/2025, DktEntry: 10.4, Page 8 of 256

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

CAND NO. 3:23-CV-04597-EMC
9TH CIR NO.: 24-6058

**ASHLEY M. GJOVIK**, *an individual*,

Plaintiff,

vs.

**APPLE INC.**, a corporation,

Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S FIFTH MOTION TO DISMISS. (FINAL)**

***Fed. R. Civ. P. § 12(b)(6)***

**MOTION HEARING:**
Dept: Courtroom 5 (& Zoom)
Judge: Honorable Edward M. Chen
Date: February 13, 2025
Time: 1:30 PM PT

**ADDENDUM: FINAL 2.0;**
**REVISED WITH LEGAL CITATIONS & MISSING SECTIONS**

# Plaintiff's Opposition to Defendant's Fifth Motion to Dismiss

1. Plaintiff, Ashley Gjovik, respectfully submits the following Opposition to Defendant's Motion to Dismiss portions of her Fifth Amended Complaint ("5AC"). Defendant's motion represents yet another attempt by the Defendant to erode the substance of Plaintiff's case through repeated procedural tactics. Defendant's motion to dismiss is part of an ongoing strategy designed to whittle away at Plaintiff's claims, and it continues a pattern of improper filings that has been allowed by the Court despite clear violations of the procedural rules. As demonstrated below, the Defendant's motion must be denied, and the Court must not allow the Defendant to continue to break the rules or dismiss claims for random reasons that fail to address the core merits of the case.[1]

2. Concurrently filed is an *Opposition* to Defendant's *Request for Judicial Notice* (also addressed here), Plaintiff's *Request for Judicial Notice,* Plaintiff's *Notice of Pendency,* and Plaintiff's *Motion to Amend* her Complaint.

3. This case represents a critical moment to address systemic abuses by Apple Inc., encompassing violations of whistleblower protection laws, labor statutes, environmental regulations, and fundamental principles of fairness and safety. The plaintiff, Ashley Gjovik, a former Senior Engineering Program Manager at Apple, brought to light unsafe work conditions, criminal conduct, environmental hazards, and unlawful labor practices. In response, Apple retaliated against Gjovik, exacerbating the harm she endured and demonstrating a troubling corporate culture that prioritizes secrecy and profit over compliance, safety, and integrity.

4. Central to this matter is Apple's operation of an unpermitted semiconductor fabrication plant adjacent to residential apartments, which emitted toxic gases and caused significant health issues for residents, including Gjovik. Compounding this environmental negligence was Apple's systematic retaliation when Gjovik raised legitimate concerns. These

[1] *See, e.g., Brauch v. Birmingham*, 49 F. Supp. 229 (N.D. Iowa 1943); *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 39 Fed. R. Serv. 3d 492 (2d Cir. 1997); *Holmes v. New York City Housing Authority,* 398 F.2d 262 (2d Cir. 1968); *Calabrese v. Chiumento,* 3 F.R.D. 435 (D.N.J. 1944).; *Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959).

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHLEY M. GJOVIK,**<br>*an individual*,<br><br>Plaintiff,<br><br>vs.<br><br>**APPLE INC.,**<br>*a corporation, et al.*,<br><br>Defendant. | D.C. CASE NO. 3:23-CV-04597-EMC<br><br>NINTH CIRCUIT CASE NO. 24-6058<br><br>**PLAINTIFF'S FIFTH AMENDED COMPLAINT**<br><br>CLAIMS: CIVIL LITIGATION<br><br>DEMAND FOR JURY TRIAL. |

and their staff, publish op-eds calling for legislation, was interviewed and written about by the press, and served as a witness for government agencies and legislative committees.

7. Plaintiff spoke out publicly, organized with coworkers, lobbied on their behalf, and called for change in Apple's environmental and labor practices. Plaintiff's advocacy also brought awareness to her prior neighbors of the pollution issues where she had lived in 2020, leading to more chemical exposure victims joining Plaintiff in complaining to the government.

8. In 2021, Plaintiff filed retaliation and discrimination complaints with multiple administrative agencies, including the U.S. NLRB, U.S. EEOC, U.S. Department of Labor, California Department of Labor, and California DFEH. The EEOC and DFEH claims were merged into this lawsuit. The U.S. Department of Labor whistleblower retaliation case is currently with the Administrative Review Board.[1] U.S. NLRB is prosecuting Apple for unlawful employment policies, per Plaintiff's October 2021 charge.[2] NLRB will start prosecution imminently against Apple for its retaliation and unfair labor practices committed against Plaintiff.

9. Over the last three years, due to Plaintiff's investigations and advocacy, multiple government inspections of Apple's two facilities have been noted, resulting in citations for environmental and safety regulatory violations, ordered corrective actions, and required monitoring. The plaintiff still regularly speaks with the U.S. EPA ("EPA") as a community advocate.

10. Apple continued harassing and retaliating against Plaintiff after she was fired and through the current day, intentionally interfering with and severely damaging her career, reputation, relationships, finances, physical condition, mental health, and every aspect of her life.

## JURISDICTION AND VENUE

11. The U.S. District Courts have diversity jurisdiction over this case because the amount in controversy exceeds $75,000 and the parties are of diverse state citizenship. [28 U.S.C. § 1332]. When the complaint was filed, Plaintiff was domiciled in New York and is now domiciled in the

---

[1] *Ashley Gjovik v Apple Inc,* 2024-CER-00001 (OALJ), 2024-0060 (ARB); CERCLA 42 U.S.C. §9610, Clean Air Act 42 U.S.C. §7622, RCRA 42 U.S.C. §6971, TSCA 15 U.S.C. §2622.
[2] NLRA 29 U.S. Code § 158.

Commonwealth of Massachusetts. Apple is a corporation headquartered in California. The venue is proper in the District Court of Northern California because Apple is headquartered and operates in this district. Many of Plaintiff's claims arose from acts, omissions, and injuries within the District of Northern California [Civil L.R. 3-5(b)].

## PARTIES

12. Ashley Gjovik, ("Plaintiff"), is a natural person currently domiciled in Boston, Massachusetts.[3] The plaintiff holds a recently awarded Juris Doctor degree from Santa Clara University School of Law and is appearing as a pro se. The plaintiff was an employee of Apple Inc. from February 2015 through September 2021. The plaintiff held a leasehold at a Santa Clara residential property at 3255 Scott Blvd, next to Apple's semiconductor fabrication at 3250 Scott Blvd, from February 2020 through October 2020.

13. Apple Inc. is a business engaged in and affecting interstate commerce and a covered entity under the federal statutes at issue here.[4] Apple is a corporation headquartered at One Apple Park Way in Cupertino, California Apple says it "*designs, manufactures and markets smartphones, personal computers, tablets, wearables and accessories, and sells a variety of related services.*" As of November 2024, Apple Inc. claimed an annual revenue of $394.33B.[5]

14. At all pertinent times, Apple was the tenant and operator controlling the facilities at both 825 Stewart Drive in Sunnyvale and 3250 Scott Blvd. in Santa Clara, California at both properties, Apple registered its state and federal Resource Conservation and Recovery Act activities under its own name and with Apple EH&S as the contact for the government and public.

## PROCEDURAL HISTORY

15. Plaintiff now files her 5th Amended Complaint ("5-AC"), in an abbreviated version but with the same substantive content as the prior 5-AC version. The plaintiff filed her original complaint on September 7 2023. The 1st Amended Complaint was filed in October 2023 per

[3] The plaintiff established a consulting LLC in California in 2022, which she manages with a virtual office in Sacramento. The LLC address is used on papers for privacy.
[4] "*Apple*" refers to its successors and assigns; controlled subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures; and their directors, officers, managers, agents, and employees.
[5] Apple Inc, 2024 10K, https://investor.apple.com/sec-filings/default.aspx

stipulation, to allow Apple more time to prepare, as needed due to Apple's delayed arrival in court.

16. The 2nd Amended Complaint was filed on December 21 2023 as a matter of course but was dismissed sua sponte by this court without prejudice and with leave to amend on January 30 2024, ordering Plaintiff to reduce the length by over five hundred pages.

17. The 3rd Amended Complaint was filed on February 27 2024, met with a Motion to Dismiss and Motion to Strike, and was ruled upon with a decision and order issued May 20 2024. The 4th Amended Complaint was filed on June 18 2024, also met with Motions to Dismiss and Strike, and was ruled upon with a decision and order issued October 1 2024. The plaintiff was ordered to revise her complaint again.

18. On October 1, 2024, the Plaintiff filed an appeal to the 9th Circuit Court of Appeals, contesting denied injunctions, collateral orders, and the dismissal with prejudice of dozens of her claims, mostly due to discretionary procedural reasons not related to the potential merit of the claims. The plaintiff filed a pending Motion to Stay pending appeal.

## STATEMENT OF FACTS

19. **3250 Scott Blvd, Santa Clara:** In early 2015, Apple started stealth semiconductor fabrication activities in a facility located at 3250 Scott Blvd. in Santa Clara, California. Like some sort of skunkworks, Apple codenamed the facility "*Aria*" and even tried to use the codename on regulatory paperwork. Apple's intentional actions to obfuscate the owner and nature of the facility delayed Plaintiff's discovery of Apple's fabrication activities for years.

20. The 3250 Scott fabrication operated less than three hundred feet from thousands of homes where Plaintiff lived in 2020, the Santa Clara Square Apartments. Within three hundred feet of the building were two public parks, picnic tables, outdoor fitness stations, and a children's playground. Within one thousand feet of 3250 Scott, there was also a church, a school, an elder care facility, and the San Tomas Aquino Creek, which flows into the Pacific Ocean.

21. At 3250 Scott, Apple was cited for building, environmental, health, safety, and fire code violations in 2015 (stop work order due to construction without permits), 2016 (spill of cooling water into storm drains, fire code and California ASPA violations, health and safety code violations, failure to monitor wastewater discharge adequately), 2019 (wastewater testing violations), 2020

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 14 of 256

trichloroethylene on site but not in any of its chemical inventories, and why exactly Apple was pouring that trichloroethylene down the drain.

27. 3250 Scott reported an average daily water usage of around 44,000 gallons, and the sewer pipes carrying 3250 Scott's discharges flowed downhill and directly around the apartment where Plaintiff lived in 2020. In 2020, the government had already started investigating the plumbing at her apartment as a vector for some unknown solvent vapor pollution.

28. Apple was fully aware of this facility and its operations, as every year, Apple submitted a financial assurance document to the Santa Clara Fire Department which detailed hazardous waste treatment and disposal operations and was signed by Apple's Chief Financial Officer, Luca Maestri – including affixing a company seal. Financial assurance filings also attached a detailed confirmation letter from Apple's third-party auditor, E&Y, on behalf of Apple. Maestri was also on the email distribution list for notification of hazardous waste violations at the facility.

29. **Chemical Injuries in 2020:** In February 2020, Plaintiff moved into a new apartment at the Santa Clara Square Apartments (adjacent to 3250 Scott) and quickly became severely ill with severe fainting spells, dizziness, chest pain, palpitations, stomach aches, exhaustion, fatigue, and strange sensations in her muscles and skin. The plaintiff also suffered bradycardia, volatile blood pressure with hypertension and hypotension, and a high frequency of premature ventricular contractions. Due to the solvent exposure, Plaintiff also suffered skin rashes, burns, and hives, and her hair fell out and she had a shaved head for a year as the bald patches slowly grew back.

30. Plaintiff visited the emergency room on February 13 2020, and Urgent Care (at Apple's for-profit clinic) on February 20 2020. Plaintiff then consulted with dozens of doctors who screened her for all sorts of diseases, subjecting Plaintiff to extensive blood draws, urine samples, injections, and scans – including potentially dangerous procedures like MRI and CT scans with contrast. From February - September 2020, Plaintiff was screened for multiple severe and fatal diseases and disorders, including M.S., brain tumors, deadly arrhythmias, and NMO. The plaintiff was too sick to work and went on disability.

31. Plaintiff transitioned her medical care to a different clinic and provider after her Apple primary care provider at AC Wellness refused to help her triage her 2020 medical issues. Instead,

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 15 of 256

she suggested Plaintiff was suffering from anxiety and enrolled Plaintiff in an Apple internal study related to blood pressure, requiring Plaintiff to share her iPhone medical and fitness data and participate in weekly life coaching sessions (while being exposed to Apple's solvent vapor and gas exhaust).

32. While sick in 2020, Plaintiff would wake up occasionally at 3 AM feeling like she was dying and with symptoms of heart failure and asphyxia. Heart monitoring showed arrhythmias, bradycardia, and low blood pressure. On September 2 2020, Plaintiff discovered elevated levels of volatile organic compounds in her home. What immediately captured Plaintiff's attention was the significant spike in volatile organic compounds that had occurred the night prior, around 3 AM, while she had been suffering from a "dying" spell.

33. Plaintiff sought out occupational and environmental exposure doctors, who told Plaintiff that all her symptoms were consistent with solvent and other chemical exposure. The plaintiff quickly filed complaints with the Santa Clara Fire Department, U.S. EPA California EPA. She also called Poison Control, who said what she described sounded like Benzene exposure. Before moving out Plaintiff also gathered extensive video, photo, medical monitoring, and air monitoring data – which supports the claims in this lawsuit.

34. All the reported toxic gas leaks during the time frames Plaintiff her symptoms in 2020 were the worst around 8-9 AM, 10-11 PM, and sometimes around 2-3 AM. One of the few chemical spills that did not occur during those times was caused by an Apple engineer accidentally turning on lethal fluorine gas. Another incident was root caused to an Apple engineer accidentally installing the gas for a tool "backwards." In the two weeks following the April 2021 phosphine leak, Apple's manifests included sixty pounds of "v*acuum filters contaminated with glass dust*" implying there may have been a phosphine explosion. The TEOS leak occurred on July 17 2020. That day Plaintiff was covered in hives, rashes, and skin abnormalities. She visited a dermatologist who had no idea what caused the rash.

35. In September 2020, Plaintiff hired an industrial hygienist to evaluate the indoor air at her apartment. She ordered an inspection, soil testing, and a two-hour sorbent tube-based TO-17 air panel. Plaintiff's testing returned results showing several of the chemicals in use by Apple at 3250

Case: 25-4716, 11/13/2026, DktEntry: 10.4, (16 of 256)

Scott including acetone, acetonitrile, acetaldehyde, benzene, 1,2-dichloroethane, ethanol, ethylbenzene, hexane, isopropanol, isopropyl toluene, methylene chloride, toluene, and xylene.

36. In September 2020, Plaintiff set up more air monitors to observe the levels of volatile organic compounds in her apartment next to the 3250 Scott factory (though she was not aware of the factory exhaust at that time). The results of the data confirmed what Plaintiff had noticed with her symptoms and ad hoc testing – that the volatile organic compounds mostly spiked early in the morning and late at night as if they were being exhausted from an automated mechanical system (which it was). The plaintiff notified several Apple executives of her findings and activities, including her managers Powers and West, and her Apple coworkers, Josh and Aidria.

37. In September 2020, Plaintiff's blood and urine test results showed industrial chemicals, including arsenic, mercury, toluene, and xylenes. Also noteworthy are the symptoms of Plaintiff's 3 AM attacks, (including both subjective reporting and physical real-time heart monitoring) match phosphine and arsine gas exposure.[6]

38. Phosphine and arsine are extremely dangerous, exposure can be fatal, and there are no antidotes. Apple has a significant quantity of arsine gas onsite, and Plaintiff's medical tests from September 2020, on the morning after a 3 AM attack, revealed significant arsenic in her blood with no other explanation than arsine gas exposure within the prior 8 hours.

39. In September 2020, Plaintiff noticed an Apple facility at 3250 Scott across the street, which was on the same Superfund groundwater plume as her apartment. The plaintiff mentioned the facility to Apple in September 2020, inquiring if anyone was familiar with the area because Apple had an office there. Apple EH&S (Elizabeth) and Plaintiff had at least two phone calls. The woman who responded oversaw EH&S teams involved in 825 Stewart Drive and the activities at 3250 Scott. In September 2020, Elizabeth suggested that Plaintiff use a special paid leave to move out of the apartment called '*extreme condition leave*' designated for disasters. Later, in September 2021, Apple Employee Relations, Waibel, conferred with Elizabeth about Plaintiff's environmental concerns only hours before Plaintiff was abruptly fired.

[6] US CDC, NIOSH, *Arsine Emergency Response.*

40. In October 2020, Plaintiff asked her manager from Apple Legal, Joyce, if she knew anyone who practiced environmental law because Plaintiff may be interested in the field and wanted to learn more. The plaintiff was introduced to Deborah, Apple's EH&S counsel. Deboarh met with Plaintiff twice on a video chat, in November 2020. The plaintiff spoke about her experience in 2020.

41. During the conversation the lawyer admitted to Plaintiff that Apple did not have EH&S counsel before her, that she was still catching up, that Apple needed to be doing inspections and testing that it had not done, and that she was trying to get them to start soon. Deborah was Apple's legal representative with the EPA for the August 2021 inspection of Plaintiff's Superfund office. Deborah was and is also in charge of EH&S legal matters for 3250 Scott.

42. On February 21, 2023, the Plaintiff discovered the semiconductor fabrication activities at 3250 Scott. She shared the discovery on Twitter that day, expressing severe distress about Apple engaging in potentially lethal and ultrahazardous activities directly next to apartments. The plaintiff's posts also complained explicitly about the presumed toxic exhaust Apple would release from the roof of 3250 Scott and into the windows of her apartment. Until that day, Plaintiff did not know it was Apple who was responsible for making her so ill in 2020 and did not know these chemicals were potentially lethal to human life.

43. Plaintiff undertook months of research about 3250 Scott, consulting with more experts, meeting with government agencies, requesting more public records, and drafting a formal complaint. On June 23 2023, Plaintiff filed complaints about 3250 Scott to the EPA, CalEPA, the city of Santa Clara, and Santa Clara County.

44. U.S. EPA's Enforcement and Compliance div. for Hazardous Waste and Chemicals assigned an inspector and a formal investigation was opened around July 12 2023.[7] Plaintiff met with the EPA's Resource Conservation and Recovery Act Enforcement and Compliance team several times before they inspected Apple's factory in August 2023 and January 2024.

45. Per the formal report, the EPA inspectors identified at least 19 unique violations of the

[7] US Environmental Protection Agency, ECHO, 3250 Scott Blvd # 110001168254.

civil and criminal provisions of the Resource Conservation and Recovery Act at 3250 Scott. Apple was found to be illegally treating, storing, disposing, and transporting hazardous waste without permits, manifests, or other required documentation.

46. EPA found Apple was emitting exhaust from its fabrication activities through a system that did not have required permits and did not have any monitoring. The EPA also found Apple did not inspect the waste on weekends, instead hoping for the best until they returned on Mondays. The enforcement action(s) is still underway.

47. The plaintiff filed a complaint with the BAAQMD in July of 2024, which resulted in at least six violation notices thus far; including failure to obtain "*Authority to Construct,*"[8] failure to obtain a "*Permit to Operate*,"[9] and for exceeding the "*Final Emission Limits*" for nitric oxide (NO), nitrogen dioxide ($NO_2$), and carbon monoxide (CO) emissions.[10] This confirmed that Apple was operating 3250 Scott without required permits and also illegally exhausting toxic chemicals.

48. **825 Stewart Drive:** Plaintiff's Apple office at the time of her termination was located at 825 Stewart Drive in Sunnyvale, California, also known as the "*TRW Microwave*" Superfund site, part of the EPA Triple Site (three adjacent Superfund sites in Sunnyvale, forming a mile-long groundwater solvent mega-plume).

49. The "TRW Microwave" Superfund site is a former industrial semiconductor manufacturing facility at 825 Stewart Drive The primary contaminants in the groundwater plume are chlorinated volatile organic compounds, including the carcinogen trichloroethylene and its daughter products cis-1,2-dichloroethene and vinyl chloride. The contaminated groundwater under 825 Stewart Drive is as shallow as only 2.6 feet below the ground surface, with shallow trichloroethylene concentrations up to 1,400 µg/L and vinyl chloride up to 51 µg/L.[11]

50. Northrop Grumman, the primary Potentially Responsible Party under the Comprehensive Environmental Response, Compensation, and Liability Act, conducted an initial vapor intrusion evaluation at 825 Stewart Drive in 2003 and 2004. The assessment indicated that

---

[8] Rule 2-1-301: August 29 and September 12, 2024.
[9] Rule 2-1-30: August 29 and September 12, 2024.
[10] Rule 9-7-307: September 12, 2024.
[11] AECOM for Northrop Grumman, *2021 Annual Groundwater Monitoring Report* (3/17/2022).

trichloroethylene concentrations in indoor air present an inhalation risk exceeding acceptable health and safety levels, with results at 5.1 µg/m3 and 5.2 µg/m3, respectively.[12]

51. Indoor air pollution due to vapor intrusion worsened over time, and indoor air concentrations increased to 7.7 µg/$m^3$ in 2013, the accelerated action level for trichloroethylene in commercial buildings. In 2024, the EPA proposed a full ban on trichloroethylene as a whole substance in the U.S., prohibiting it under the TSCA as an unreasonable danger to human health.

52. In May 2015, Northrop Grumman installed a sub-slab ventilation system inside the building. (The slab refers to the concrete foundation, and the sub-slab is under the slab.) Northrop Grumman installed horizontal collection pipes beneath the slab foundation, which allows vapors to move laterally. It connected the collection pipes to vertical vent risers, allowing sub-slab contaminant vapors to discharge into the atmosphere. The risers vent to the rooftop via wind-powered turbines.

53. Apple became a tenant in 2015. Apple's installation of a new HVAC system in late 2015 included sawing the sub-slab exhaust vent stacks on the main building roof down from three feet to one foot and then installing the HVAC system intakes in close proximity to the sub-slab vapor exhaust vents, without consideration for the function of the sub-slab system vents and their function.[13] The HVAC intakes for the area of the building where Plaintiff worked were in the assumed sphere of influence of the vent exhaust, including the chemicals trichloroethylene and vinyl chloride.

54. Apple's tampering with the exhaust stacks and indifference towards the exhaust's proximity to HVAC intakes resulted in a significant risk of re-entrainment of the hazardous waste vapors and gases into the HVAC system, and thus into the indoor air of the building where Plaintiff and her coworkers would be exposed. California law prohibits the exhaust of gas and vapor in a way that causes harmful exposure to employees and requires that these types of stacks exhaust upward

[12] Fifth Five Year at pg4; AECOM for Northrop Grumman, 2021 Annual Groundwater Monitoring Report,825 Stewart Drive, Sunnyvale CA, March 17, 2022.

[13] AECOM for Northrop Grumman, Evaluation of Passive Sub-Slab Depressurization System, Former TRW Microwave Site, page 1 (April 15, 2022).

72. On March 17, 2021, the Plaintiff's team administrative assistant sent an email on behalf of EH&S announcing to the Plaintiff and Powers' management team that it would be testing 825 Stewart Drive for vapor intrusion but saying nothing more.

73. Plaintiff replied and informed her coworkers that their office was a Superfund site on March 17 2021, providing a link to the EPA website for the site and news articles referring to their office as a "*paved over environmental disaster zone*" due to the "*massive amounts of trichloroethylene in the soil and groundwater from nearly 30 years of chip manufacturing.*"[18]

74. Plaintiff explained to her team what vapor intrusion means, told them to take it seriously, and expressed concerns that Apple employees *"should be better informed about these types of environmental risks at our offices."* The plaintiff added, *"The chemicals under [the 825 Stewart Drive office] if in high enough quantities, can cause cancer."*

75. Plaintiff's manager, Powers, forwarded Plaintiff's email to Human Resources and West, complaining, "I think Ashley should be keeping these emails private and not needlessly scaring the team about something she doesn't know about." During their next weekly meeting, powers gave Plaintiff a 'warning' and forbade her from discussing safety or toxic waste dumps with her coworkers. Things went downhill from there.

76. *The plaintiff* asked in her email for details of what type of testing was to be performed and for what duration, if there would be a risk assessment, and if EH&S would share the findings with the employees in the building. EH&S initially agreed to meet with Plaintiff to discuss her concerns. The plaintiff's coworkers thanked her for sharing this information and informing them about the site. Two of Plaintiff's friends, a manager and senior manager at Apple, texted her, affirming her concerns were reasonable and appropriate.

77. One manager called the situation "*a really important life-threatening situation*," after reviewing documentation for the site, another questioned, "*Why is the building still open*?" One of the managers noted: *"What is crazy is … they say no daycare, no elder care, no residential, etc. So, it is fine and dandy for everyone else to get slowly poisoned? … So glad you are digging into this stuff for all of*

[18] Alexis C. Madrigal, *Not Even Silicon Valley Escapes History,* The Atlantic (July 23, 2013); Beth Winegarner, *Silicon Valley's Toxic Past Haunts Sunnyvale Neighborhood,* KQED (June 15, 2017).

105. On July 2, 2021, Employee Relations, Waibel, and EH&S notified Plaintiff via email that there were cracks in the slab/floor of Plaintiff's office and that they would seal the cracks and then test the air. The plaintiff asked if they could also test the air before sealing the cracks. She explained she wanted to know if she was exposed to chemicals through the cracks and, if so, which ones. She said, "*for cancer monitoring*."

106. On June 30, 2021, two days before hinting at the existence of cracks in the slab, Apple EH&S and legal filed the first and only Toxics Release Inventory filing to the EPA for air emissions at 3250 Scott in 2020. It is unclear why Apple never submitted a Toxics Release Inventory filing before 2020 or after the 2020 record.

107. Under information and belief, the Toxics Release Inventory filing was submitted to try to manufacture for Apple some statute of limitations excuse later if the Plaintiff ever found out what they did—without them having to share the information in a way they thought she would not notice.

108. In July 2021, Plaintiff notified the EPA about the cracked slab at her toxic waste dump site office, and Apple insisted they did not have to tell the EPA and refused to test the air until after they sealed the floor. The plaintiff expressed it was her understanding that Apple needed to notify the EPA of the cracks and obtain EPA approval for a work plan for the testing and sealing plans. The plaintiff notified Lagares, Okpo, and Waibel that she was reporting them to EPA. The plaintiff also complained to Lagares that Apple EH&S was "*going out of their way to avoid having evidence of their negligence.*"

109. In early July 2021, Plaintiff discovered that West had been reassigning her best projects (things that would help her receive a positive review). Then, on July 15 2021, Powers suddenly quadrupled her workload with highly unfavorable projects (things that were certain to upset people and fail). Powers was snapping at and harassing her, West was ignoring her, and Plaintiff reported these issues to Lagares, Waibel, and Human Resources Business Partner Helen Polkes. Still, Apple did nothing, or they also harassed Plaintiff.

110. The plaintiff became more vocal about her concerns about retaliation and fraud at Apple on Apple's Slack discussion tool and began threatening Lagares that she planned to sue Apple for

Times made Plaintiff's quote "*Quotation of the Day*" for the entire New York Times.[22]

116. Lagares told Plaintiff that Apple was upset that Plaintiff was talking to the press and criticizing Apple. The plaintiff told Lagares she was taking Labor Law and learned she could speak about her work conditions regardless of non-disclosure agreements. Lagares told her it is "*annoying*" to Apple when employees "*figure that out*."

117. Apple and Northrop Grumman were notified on July 26, 2021, that EPA wanted an inspection of 825 Stewart Drive due to the cracked slab (that Plaintiff brought to EPA's attention) and because EPA discovered what Apple did with the hacksaw, vents, and HVAC on the roof in 2015, with the EPA Quality Assurance team exclaiming it was "*not appropriate*" and asking for air samples.[23]

118. On July 26 2021, Plaintiff posted on Apple's Slack, complaining that Apple's response to her concerns was to retaliate against her and intimidate her into silence. Many of Plaintiff's coworkers responded that they had also experienced retaliation from Apple for raising real and reasonable concerns. On July 27 2021, Okpo interrogated Plaintiff for over an hour about her Slack posts and responses from coworkers – repeatedly asking her to stop posting and encouraging others to post their concerns and instead directing all employees to speak privately. The plaintiff told him no. She would not help him retaliate against her coworkers.

119. During the July 27, 2021, meeting, Okpo said Apple may give the Plaintiff a severance ("exit") package of around $600,000 if she signs a preemptive litigation waiver. Apple agreed that Plaintiff would not have to sign another non-disclosure agreement but made the severance negotiation contingent on Plaintiff waiving all claims. The plaintiff expressed concerns about the settlement amount and her potential medical costs if she were to get cancer from the exposure at her office.

120. At the time, the plaintiff did not know about the activities and spills at the 3250 Scott facility near her apartment or what Apple had done to the HVAC at 825 Stewart Drive. Apple was intentionally concealing those facts. Apple wanted all claims waived and denied the severance on

---

[22] "*Quotation of the Day: Virus Surge Complicates Return-to-Office Plans*," New York Times, July 24, 2021.
[23] U.S. EPA, TRW Microwave Site, Vapor Intrusion FOIA documents.

128. In response, on August 2, 2021, Apple suddenly announced they were conducting extensive maintenance at 825 Stewart Drive starting August 4, 2021. Then, on August 3, 2021, Lisa Jackson's environmental lobbying team scheduled a Public Relations blitz about how safe and thoughtful Apple is.[24]

129. Apple also tried to get the EPA to sign a non-disclosure agreement about the inspection of 825 Stewart Drive that would prohibit the EPA from discussing the inspection. The EPA declined to sign the non-disclosure agreement.

130. When Plaintiff saw Apple's EH&S notice on August 2, 2021, about maintenance at 825 Stewart Drive, she quickly arranged for coworkers in the office to gather evidence of the cracks, warning them that Apple was trying to cover up environmental and safety issues.

131. Plaintiff's coworkers gathered photos of the cracks for Plaintiff. They also asked many of the same questions the plaintiff had asked EH&S. The plaintiff shared EH&S's responses and was concerned about Apple's position and conduct. The plaintiff informed Apple that she and her coworkers were gathering evidence before Apple could cover up the cracks.

132. On August 4, 2021, Okpo forced the Plaintiff on indefinite administrative leave and refused to provide any estimated period for the next steps. Okpo informed her that Apple removed her "*from the workplace and all workplace interactions*." The plaintiff complained that it was illegal for them to tell her to stop talking to her coworkers. Okpo made it clear he also wanted her off Slack. The plaintiff told Okpo he could not keep her off Twitter. The plaintiff posted on Slack, informing her coworkers of what Okpo had just done.

133. On August 4 2021, a reporter at an online blog contacted Plaintiff after coworkers told the reporter what Plaintiff had posted. The plaintiff agreed to let her write an article about the Plaintiff being put on leave. The plaintiff also posted about it on Twitter, and more outlets picked up the story.[25]

---

[24] FOIA; Axios, *Exclusive: EPA administrator visits Apple HQ to talk climate, environmental justice*.

[25] *e.g.,* The Telegraph, "*Apple worker who complained about sexism and 'hostile' workplace put on paid leave*," 8/5/2021; Yahoo Finance, "*Senior Apple employee alleges sexism at work, is put on indefinite leave,*" 8/5/2021; Fox News, "*Apple exec says she was placed on leave after raising sexism concerns, other workplace issues,*" 8/5/2021.

Case: 25-4716, 11/13/2026, DktEntry: 10.4, Page 24 of 256

146. On August 19 2021, the EPA conducted an onsite inspection of Plaintiff's Apple office due to Plaintiff's complaints to the EPA. EPA's notes from the August 19, 2021, site visit and inspection included concerns and issues with the HVAC, sub-slab ventilation system, missing sub-slab ports, integrity of the slab, and lack of documentation for inspections of the slab.

147. The plaintiff had previously registered for a three-part training about racial justice at Apple University and wanted to attend. Her friend Josh led the class, and he confirmed he would be happy to have her participate if Employee Relations approved and did not discipline her for attending. On August 20, 2021, Okpo told Plaintiff she could not participate "*because she's on leave*." The plaintiff complained about retaliation and said she did not want to be on leave, but Okpo ignored her.

148. While the Plaintiff was on leave, she repeatedly asked Okpo for updates about her office, but he refused to provide any. The plaintiff also complained about Apple Board Member Ronald Sugar and her office. Sugar was a top executive at TRW Microwave when they manufactured semiconductors and microwave equipment at the plaintiff's office. Before joining Apple's board, Sugar was the CEO of Northrop Grumman – the responsible party for the toxic waste cleanup under her office.

149. The plaintiff included detailed complaints of fraud, organized witness tampering, obstruction of justice, toxic torts, corruption, negligence, conflicts of interest, racketeering, and environmental crimes.

150. On August 23 2021, a member of EPA's Quality Assurance team captured notes about the inspection of 825 Stewart, writing: "*Significant, visible slab cracks, gaps, and penetrations had been sealed… However, large test equipment is bolted to the slab, and it is unclear if these installations penetrate the slab.*" He added that related to the sub-slab exhaust on the roof above Plaintiff's desk, "*vapors could be building up on the roof near the HVAC intake.*"

151. On August 23, 2021, a news article discussing Apple's employment practices commented, "*One Apple employee, Ashley Gjovik, has been very vocal on Twitter by stating multiple problems within Apple. She alleges a powerful cover-up culture within Apple that led to her eventual administrative leave.*"

152. On August 26 2021, Plaintiff filed an NLRB charge against Apple and posted on Twitter that she did so. The next day, on August 27 2021, Apple's Business Conduct team closed Plaintiff's complaint about Ronald Sugar and Plaintiff's office. A couple of days later, around August 30 2021, a third-party law firm (McDermott, Will, & Emery) filed a notice of appearance for five attorneys in Gjovik's NLRB claim against Apple.

153. Apple did not fire Plaintiff until September 9, 2021, raising the question of whether opposing counsel in this lawsuit (Orrick, Herrington & Sutcliffe) was also retained by Apple for this dispute prior to Plaintiff's termination and, if so, if they covertly interacted with Plaintiff or Plaintiff's coworkers, or otherwise influenced the situation.

154. On August 29 2021, Plaintiff filed a formal complaint to the EPA about Apple and her office at 825 Stewart Drive, complaining of Apple's *"lack of due diligence,* "*negligence*," "*recklessness*," "*violations of Right to Know and OSHA*," intimidation, misrepresentations, and refusal to " *notify the EPA of changed circumstances at the site*." The plaintiff did not know about the EPA safety inspection ten days prior.

155. On August 29 2021, Plaintiff filed a Whistleblower Protection Program complaint with the U.S. Department of Labor, reference number ECN76833. On August 29 2021, Plaintiff filed retaliation and labor code violation charges to the California Department of Labor.

156. On September 1 2021, Plaintiff posted on Twitter that she had filed a complaint with the California Department of Labor. A question on the form asked: How did your employer know about the protected right you exercised? Plaintiff wrote, *"I kept saying, 'Stop it, you guys. There's Labor laws about this.*"

157. While Plaintiff was stuck on leave, Apple had emailed her three times to ask if they could capture three-dimensional scans of her ears and ear canals, and Plaintiff complained that Apple's requests were harassing and invasive.

158. Plaintiff complained that Apple often asked that Plaintiff and her coworkers participate in invasive, oppressive, and humiliating medical studies, anatomical studies (like ear scans), DNA tests, biometrics data collection, and other highly personal examinations. Apple did not disclose the details of the experiments until after Plaintiff signed a secrecy oath and 'consented' to the

activity, and then repeatedly threatened Plaintiff with termination if she was to speak about it even to a doctor or attorney (as was expressly written in one Deed Poll).

159. Around August 30, 2021, and August 31, 2021, Plaintiff shared an article titled "Apple Cares about Privacy Unless You Work at Apple" and confirmed the blog interviewed her and she provided information for the article, including multiple images of secret photos Apple took of her in her home from the Gobbler application.

160. In her posts she complained of Apple's surveillance of workers and Apple's culture of intimidation and retaliation and compared working at Apple to being in a panopticon. [27] The article discussed several examples of Apple's invasions of employee privacy, which were brought forward by Apple employees who wanted the public's help in reforming Apple's business and labor practices.

161. In the article, Plaintiff complained about the Gobbler app installed on her phone taking photos of her anytime, including at home; and was quoted saying, "*If they did this to a customer, people would lose their goddamn minds.*"

162. On August 31 2021, the U.S. Department of Labor contacted Plaintiff to start intake for Plaintiff's Whistleblower Protection Program charges.

163. Newspapers published articles about the Plaintiff's charges against Apple starting around September 2, 2021. Bloomberg reported about Plaintiff's U.S. NLRB, U.S. Department of Labor, California Department of Labor, and U.S. EEOC charges. The same day, the Financial Times and Reuters also wrote about the Plaintiff's complaints. [28]

164. The press continued to cover what Apple was doing to Plaintiff, and a movement started among Apple employees who began speaking out and organizing around work conditions and human rights. Apple workers, past and present, began publicly sharing their own stories of discrimination, retaliation, and cover-ups. The press wrote about this, too. The plaintiff was not only a catalyst for many employees to come forward, but these employees also catalyzed the

---

[27] The Verge, *Apple Cares about Privacy, Unless You Work at Apple,* 8/30/2021.

[28] Bloomberg, *Apple Worker Complaints Reviewed by Labor Relations Board*, 9/2/2021; Financial Times, *US labour board examines retaliation claims against Apple*, 9/2/2021.

plaintiff's view and protest of Apple's misconduct.

165. Okpo contacted Plaintiff again on September 3, 2021, and September 7 2021, asking to meet with her on Webex (a video conferencing platform), implicitly denying her request to keep things in writing, and refusing to tell her what the meeting was about. Both times, Plaintiff asked Okpo to keep things in writing due to the misrepresentation and intimidation. If he refused, she requested a Business Conduct review of his decision, noting he is a lawyer and there is a power imbalance. Okpo never responded.

166. On September 5 2021, Plaintiff messaged Josh, her friend and a Senior Director, complaining about Apple Employee Relations, commenting she had been researching Apple's labor history and the issues were "*very systemic*" and with "*lots of bad faith conduct*," but "*not completely diabolical*." (Plaintiff would later refer to this dynamic instead as '*Waco meets Enron*.')

167. In late August and early September 2021, Plaintiff posted on social media about her U.S. NLRB, California Department of Labor, U.S. EEOC, and California DFEH cases with a status update and the report numbers. Around that time, Plaintiff also tweeted about her U.S. SEC whistleblower tip, U.S. FBI, and U.S. Department of Justice complaints.

168. The plaintiff interviewed with the U.S. EEOC on September 2, 2021. On September 6, 2021, the Plaintiff replied to the U.S. EEOC confirming she was working on a draft of her complaint and targeted sending it to them by September 8, 2021.

169. On September 7 2021, Plaintiff discovered the second woman to ever report to West had sued Apple over West's retaliation, constructive termination in violation of public policy, and Intentional Infliction of Emotional Distress only two years prior. The ex-colleague's complaint explained she saw reprisals and intimidation in West's organization and that West spoke openly about knowledge of his employee's fear of retaliation. She said that after she raised concerns with West about these issues, West began retaliating against her, too.

170. The complaint alleged three sham Employee Relations investigations into her concerns, finding no policy violations related to West's conduct. Employee Relations put her on administrative leave, waited a few weeks, and then told her she could either accept two months of severance and sign a release of rights to pursue legal action against Apple, or she could return to

work as things are except that West will be even more angry at her now. She was West's administrative assistant. The coworker resigned and filed suit instead.[29] Apple settled shortly after. The plaintiff complained about it on Twitter and messaged the legal filings to West's current administrative assistant, informing her about it.

171. On September 8 2021, Plaintiff replied to the U.S. Department of Labor with copies of her prior filed complaints to the U.S. EEOC, U.S. NLRB, EPA, California EPA, and U.S. SEC. The plaintiff noted she was working on answering the investigator's questions and would reply by the deadline, which was September 10 2021.

172. On September 8, 2021, Plaintiff emailed the U.S. EEOC her draft of the language for her charge. The Plaintiff did not request an investigation but did request a Right to Sue letter, which she received before her termination. On September 9 2021, at 12:39 PM PST, Plaintiff emailed the U.S. EEOC investigator assigned to her case and asked the investigator if she needed anything else from Plaintiff to move forward. Then again, at 1:02 PM, asking the U.S. EEOC how she could sign the charge to meet the deadline.

173. On the morning of September 9, 2021, it occurred to Plaintiff, and she shared in real-time on Twitter, that Apple was likely spying on her personal phone and computer because their work policies say they are allowed to spy on employees' personal devices (Apple-made devices communicating with Apple servers).[30] Plaintiff began removing her data from her accounts on Apple servers, including migrating her email, photos, and documents.

174. On September 9 2021, at 2:08 PM, a man named Aleks Kagramanov, an Apple "*Workplace Violence and Threat Assessment*" investigator, contacted the Plaintiff, asking to speak with her on the phone "*within the hour*." The email had no subject line, and Plaintiff did not know the team. Kagramanov said he was "*looking into a sensitive IP matter*" and wanted to speak with Plaintiff. He said Apple "*sincerely appreciates [her] prioritizing this call and being flexible*." He never said the Plaintiff was under investigation.

[29] *Brown v Apple Inc*, Case No. 18CV330922, Superior Court of the State of California, County of Santa Clara, Complaint (July 2 2018).
[30] The NLRB is now suing Apple over that policy.

Case: 25-4716, 11/13/2026, DktEntry: 10.4, Page 29 of 256

know what she was accused of.

181. She added, "*In the meantime, without any additional context or effort to communicate with me in email, this really does feel like intimidation and additional retaliation, and I will consider it as such.*"

182. On September 9, 2021, the U.S. EEOC investigator posted the final version of the charge and asked the Plaintiff to sign it. The plaintiff digitally signed her U.S. EEOC charge against Apple. Then, the Plaintiff emailed the U.S. Department of Labor with responses to their questions about her protected activity and Apple's retaliation. The plaintiff replied again at 5:26 PM PST, informing them Apple's Workplace Violence interrogator had just suspended her account access and threatened her.

183. On September 9 2021, at 6:54 PM, Yannick Bertolus, Plaintiff's Vice President and West's close friend, sent Plaintiff an email with the subject line "*Your employment status*" and attached a letter providing vague and ambiguous reasons as the basis for Apple's decision to end her employment.

184. On September 15 2021, at 7:40 PM PST, nearly a week after Apple fired the Plaintiff, Apple's lawyers at O'Melveny and Myers, via Partner David R. Eberhart, emailed Plaintiff a letter implying Apple terminated her due to her complaining about Apple asking to 3-D scan her ear canals and also because she posted some of the surveillance photos Apple secretly took of her at home through her phone when it was illegally harvesting her biometrics through its face Gobbler application.[33] Eberhart threatened her and demanded she delete several Twitter posts but never cited any legal authority.

185. The plaintiff told Eberhart that nothing he mentioned was confidential and that she had the right to protest and discuss her work conditions. She deleted the posts Eberhart referenced because Apple had effectively intimidated her with their threats. However, a lawyer responded to Eberhart more formally a couple of weeks later, on Plaintiff's behalf, warning Eberhart about Rule

[33] At this point, Apple had retained at least two law firms to defend it from Plaintiff's claims, which again raises the question of whether Orrick, Herrington & Sutcliffe were also retained and, if so, what role they played in the actions Apple took against Plaintiff.

to be terminated, as communicated by Human Resources to her VP, was that Plaintiff supposedly failed to participate in the Employee Relations investigation by redacting the evidence she provided Employee Relations. However, she did not redact any records in her Box folders for Employee Relations. The plaintiff did, however, redact the internal records she posted on Twitter. Apple Human Resources must have gotten confused and mixed up their Twitter stalking screenshots with the records Plaintiff provided them directly. Apple never raised the matter to Plaintiff, and Plaintiff only discovered this fact via discovery.

212. Apple continued to monitor her posts after September 2021 (attempting to get Twitter to delete some of them, admitted in U.S. Department of Labor filings) and through January 2022 (Appleseed wrote to the Plaintiff, upset that she tried to get the Plaintiff's Twitter posts deleted but found out Apple also reported them, and it was Apple's reports that resulted in the posts being deleted). Apple has undoubtedly read Plaintiff's Twitter and other social media for years. Apple also knew about Plaintiff's activities through direct updates from Plaintiff, information shared by agencies arising out of Plaintiff's complaints, press coverage of Plaintiff, and any surveillance they were conducting of her personal and work devices (which Apple's policies said they would do).

## COUNT ONE: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

213. Apple retaliated against Plaintiff and discharged Plaintiff's employment for multiple reasons that violated public policy. Among other unlawful reasons, Apple suspended and fired Plaintiff in violation of the "*strong public interest*" reflected "*in encouraging employee reports of illegal activity in the workplace*." Specific concurrent claims are incorporated here as Tamney sub-claims. Specifically: Cal.Lab.C. §§ 96(k), 98.6, 232, 232.5, 1102.5, and 6310. These sub-claims are included in addition.

214. **Illegal Data Harvesting [California Constitution Article I, Section 1; FTC Act]:** Apple's coercive and unlawful data collection of biometric, genetic, anatomical, and surveillance data is a gross and egregious violation of Article I Section 1 of the California Constitution; the California Privacy Rights Act; the U.S. FTC Act; Cal.Pen.C. § 637.7, and the International Covenant on Civil and Political Rights: Article VII.

215. While false and pretextual, Apple's proffered reason for terminating Plaintiff is illegal

itself. Apple claims it fired Plaintiff for complaining about Apple's surveillance of employees, including coercive data collection of biometrics and invasive 24/7 video recording.

216. Apple discriminated against Plaintiff, including ending her employment, because of Plaintiff's actions related to her constitutional and statutory right to privacy, which are substantial and fundamental rights that benefit the public and were firmly established at the time of discharge. Apple's decision to use this as their excuse for firing the Plaintiff reveals Apple's animus against California employees' privacy rights.

217. Apple also intruded into Plaintiff's seclusion, physically and constructively invading Plaintiff's privacy in violation of California Civ. Code § 1708.8(a), (b), (d), and Apple surveilled Plaintiff and forced Plaintiff to surveil others with the always-on video camera in her iPhone, including in bathrooms and locker rooms, in violation of California Labor Code § 435.

218. The Gobbler application captured videos and photos of the plaintiff in the bathroom; the plaintiff has copies of those images. Apple's use of Gobbler on Plaintiff's phone also forced Plaintiff to take part in Apple's unlawful acts by facilitating Apple's secret capture, storage, and processing of photos, videos, and biometrics of the public without their knowledge or consent. Apple's termination of Plaintiff claimed that she would be fired if she warned people about the surveillance occurring on her phone. Therefore, Apple's unfair business practices made consent from the public impossible. The public had a reasonable expectation of privacy for sensitive biometrics.

219. Apple also violated § 5 of the FTC Act in unlawfully coercing employees to provide personal and sensitive data for commercial product development, which was also engaging in unfair acts or practices that can harm consumers, cannot be avoided by consumers, and are unreasonable and misleading statements to consumers. Employees can be consumers under the FTC Act as an employee of Apple who goes out and buys an iPhone is an Apple customer who now owns an Apple product with consumer protection laws protecting them.

**220. Employment Discrimination [California DFEH; U.S. EEOC]:** The Plaintiff reported and testified about complaints about sex, gender, and disability discrimination, which are fundamental rights for a *Tamney* claim. The plaintiff filed California DFEH and U.S. EEOC claims

on August 12 2021, then testified and provided evidence. She requested a Right to Sue letter, granted on September 9 2021, just hours before Apple fired her. Apple retaliated against Plaintiff for opposing Apple's discriminatory practices. Before her termination, the plaintiff also filed employment discrimination claims with the U.S. NLRB and the U.S. Department of Justice Civil Rights Department.

221. Apple discriminated against Plaintiff because of Plaintiff's actions exercised her constitutional and statutory rights to be protected from discrimination due to her sex and due to her disabilities, which is a right that benefits the public, is a substantial and fundamental right, and which was firmly established at the time of discharge.

222. **Crime Victim/Witness Discrimination [California Labor Code § 230(e)]:** The plaintiff was a "*victim of a crime that caused physical injury*" and suffered "*physical, psychological, and financial harm due to the attempted commissions of a crime.*" Apple discriminated against Plaintiff due to Plaintiff's actions related to constitutional and statutory rights to be protected from crime and seek justice for injury caused by crime, which is a right that benefits the public, is a substantial and fundamental right, and which was firmly established at the time of discharge.

223. **Legislative Witness Discrimination [California Government Code § 9414]:** Apple knew Plaintiff was speaking with politicians about what occurred to her next to 3250 Scott. West and Plaintiff even texted about it. Apple also knew it was responsible for Plaintiff's harm, and Plaintiff's contacts with legislatures risked exposing what Apple did.

224. Apple knew Plaintiff may testify at legislative committees about the air pollution caused by Apple, even if she did not yet know it was Apple. Apple undertook an effort to ensure Plaintiff did not testify and to harass Plaintiff because Plaintiff may testify to a committee. Apple also knew Plaintiff was talking to elected officials about its retaliation against Plaintiff after her termination, including a State Senator, a U.S. Representative, and a U.S. Senator. Apple had reason to believe Plaintiff planned to be a witness for an agency or committee.

225. Under Cal P.C. 140(a) 137(b) 136.1., it is illegal to intimidate or threaten witnesses before and after testimony. Further, Apple also engaged in a misdemeanor public offense under California Government Code § 9414 to harass and retaliate against the Plaintiff, attempting to

about safety and health conditions or practices at the workplace to Apple managers and her coworkers. Apple discriminated against and discharged Plaintiff because Plaintiff reported work-related injuries and illnesses and requested information about work-related injury and illness reports or records.

236. Apple knew about Plaintiff's complaints through conversations, emails, meeting notes, internal complaints, external complaints, public interviews, and social media posts. Plaintiff filed a Retaliation claim with the California Department of Labor on August 29 2021, and Apple was notified of such before her termination. The plaintiff complained of unsafe work conditions and internal violations of safety laws, rules, and standards to Apple, EPA, California EPA, and OSHA.

237. The plaintiff complained about violations of, and issues related to, multiple topics, including Hazard Communication and employee exposure to chemicals;[48] COVID-19 safety and communication;[49] wildfire smoke safety;[50] employee injury tracking and reporting;[51] e-waste reduction and Apple's prior e-waste violations;[52] environmental safety, including vapor intrusion exposure,[53] Right to Know and Proposition 65,[54] the Safe Drinking Water and Toxic Enforcement Act of 1986,[55] and Workplace Violence under the OSH Act.[56]

238. Apple retaliated against Plaintiff preemptively out of fear that Plaintiff would file more workplace health and safety complaints. Apple hoped its retaliation would cause Plaintiff to drop her existing complaints out of fear and intimidation and prevent her from filing more complaints.

## COUNT FOUR: CALIFORNIA LABOR CODE § 98.6.

239. Apple violated Cal.Lab.C. § 98.6 when Apple discharged and discriminated against Plaintiff for engaging in certain activities, including *"filing a complaint with the Labor Commissioner*

---

[48] Cal.Lab.C. §§ 6398, 6400-6405, 6408; Cal.C.Reg., Title 8, § 340.2; 29 CFR Z § 1910.1020.
[49] Cal.Lab.C. §§ 6325; 6409.6, 6432.
[50] Cal.C.Reg., Title 8, § 5141.1.
[51] Cal.C.Reg., Title 8, § 14300.
[52] Cal. Health and Safety Code; Resource Conservation and Recovery Act.
[53] Cal.Lab.C. § 6406; the Comprehensive Environmental Response, Compensation, and Liability Act; the Superfund Amendments and Reauthorization Act; Resource Conservation and Recovery Act; Clean Air Act; and the Occupational Safety & Health Act.
[54] The Emergency Planning and Community Right-to-Know Act; Cal.Lab.C. § 6399.7.
[55] Cal. Health and Safety Code §§ 25249.5 to 25249.14.
[56] Cal.Lab.C. §§ 6401.7, 6401.9.

Case: 25-4716, 11/13/2026, DktEntry: 10.4, Page 34 of 256

*or testifying in such proceedings*." The plaintiff filed a complaint with the California Labor Commissioner on August 29, 2021, and Apple knew she did so through her public statements and the notification from the agency.

240. Apple violated § 98.6 by retaliating against Plaintiff because Plaintiff filed a claim and caused to be instituted proceedings related to the rights under the jurisdiction of the California Labor Commissioner and for exercising rights provided to her under the California Labor Code on behalf of herself and on behalf of other employees. Apple punished her for doing so.

241. Apple's forbidden animus was revealed in multiple comments and communications from employees, managers, and agents before and after Apple fired Plaintiff. Comments referenced Plaintiff's protected activities but claimed Plaintiff was lying and acting in bad faith and argued that Plaintiff should be punished because Plaintiff made those complaints.

242. Apple retaliated against Plaintiff due to Plaintiff's protected activity, and she suffered adverse actions with a causal connection to the protected activity. Apple engaged in actions prohibited by this section within 90 days of Plaintiff's protected activity.

243. **Violation of California Labor Code § 232.5 via §§ 98.6, 98.7:** Apple violated California Labor Code §§ 232 and 232.5 by disciplining, discriminating against, and terminating the Plaintiff for discussing her wages and working conditions. The Plaintiff engaged in protected activities under § 232.5, which includes sharing information about wages and work conditions with coworkers and the public. In violation of these protections, Apple retaliated against Plaintiff for disclosing information regarding Apple's work conditions and wages, including her participation in employee pay surveys, social media posts, and public advocacy.

244. In late July 2021, the Plaintiff participated in a pay survey among coworkers. The plaintiff suggested adding a question about gender to the survey. In August 2021, she participated in another pay survey shared via Slack, where she again included a gender-related question.

245. In August 2021, the Plaintiff also openly discussed her wages on social media and encouraged her coworkers to do the same. Apple was aware of her actions and retaliated by placing her on leave on August 4, 2021, the day after she shared a post on Slack referencing Apple's policies on employees' right to speak freely about wages, hours, and working conditions. Her post

encouraged her colleagues to speak out and organize.

246. Apple retaliated more when it shut down the pay survey, reportedly because it included a question about gender. The closure of the survey and the later media coverage criticizing Apple's actions sparked public concern about pay equity at the company. Articles published in August 2021 noted that Apple had shut down employee-run surveys on pay equity. The articles criticized Apple's policies on diversity data in these surveys. The Plaintiff also shared information and commented on Twitter about an earlier U.S. Department of Justice lawsuit against Apple for illegal wage-fixing practices. Apple admitted to reviewing Plaintiff's public posts on social media before firing her, which further underscores the retaliatory nature of the actions taken against her.[57]

247. The Plaintiff's actions to raise awareness about wage discrepancies and to speak out against these practices were consistent with her rights under labor laws that protect wage disclosure and organizing activities.[58] A charge was filed with the NLRB in September 2021 about Apple shutting down the pay surveys. The NLRB issued a decision in January 2023 that there is substantial evidence Apple violated labor laws by doing so, further confirming the Plaintiff's claims.

248. **Violation of Cal.Lab.C. § 96(k) via §§ 98.6, 98.7**: Apple violated Cal.Lab.C. § 96(k) when it demoted, suspended, discharged from employment, threatened discharge, and discriminated against Plaintiff because of Plaintiff's lawful conduct that occurred during nonworking hours away from the employer's premises, and the conduct involved the exercise of rights protected by the California Constitution.

249. The plaintiff engaged in lawful conduct asserting recognized constitutional rights and rights under the Labor Code during nonworking hours while on leave away from Apple's premises. Apple put the Plaintiff on leave, but the plaintiff did not want to be on leave. The plaintiff asked to come back, but Apple said no. Apple cannot turn around and claim the leave was work time or the workplace. Apple told Plaintiff she had been "*removed from the workplace*." Until Apple let Plaintiff

[57] The Verge, *Apple keeps shutting down employee-run surveys on pay equity,* 8/9/202; The Verge, *Apple just banned a pay equity Slack channel but let's fun dogs channel lie*, 8/31/2021.

[58] The Verge, *Apple says it has pay equity, but informal employee survey suggests otherwise*, 8/23/2021.

Case: 25-4716, 11/13/2026, DktEntry: 10.4, Page 36 of 256

return to work, Plaintiff was off duty. Plaintiff posting about work conditions in her personal time does not transform Plaintiff's personal time into work time.

250. Apple fired Plaintiff for various illegal reasons, including many of the public statements Plaintiff made while on leave in August – September 2021.

251. Apple fired Plaintiff for complaining on social media and to the press about harassment and safety issues at Apple, as was her inherent right to be free from discrimination under California Constitution Article 1, §§ 8, 31, and her right to physical safety under California Constitution Article 1, § 1.

252. Apple fired Plaintiff for complaining on social media and to the press about unlawful and unethical surveillance and invasions of privacy by Apple to Plaintiff and her coworkers. Apple's legitimate justification is illegitimate. Plaintiff has a self-executing right to protest invasions of privacy under California Constitution Art. 1, § 1.

253. Apple fired the Plaintiff for complaining on social media and to the press about the environmental crimes she witnessed and was a victim of at her apartment in 2020 and Apple's conduct at her office.

254. Apple fired Plaintiff for complaining on social media and to the press about the intimidation and threats she received due to her status as a crime victim and because she advocated for crime victim's rights – as was her right under California Constitution Article 1, § 28.

255. Apple violated Cal.Lab.C. § 96(k) when it retaliated against Plaintiff for making any and all of these statements, which she had a constitutional right to make and which she made outside of worktime and outside of the workplace.

## Toxic Tort Tolling Theories

256. In 2022, Plaintiff continued monitoring the *TRW Microwave* and Honeywell *Synertek* Superfund sites. She requested public records via FOIA and engaged with the EPA's corrective actions involving Apple and Northrop Grumman. The cause of her illness remained unclear in 2020-2021, but EPA investigations into solvent contamination from the *Synertek* site's groundwater plume near her apartment suggested a potential link.

257. In July 2022, Plaintiff discovered that the EPA had conducted groundwater testing in

2021, following her complaints, revealing increased levels of trichloroethylene near her former residence. She contacted the EPA and U.S. Army Corps of Engineers in January 2023 for further clarification on the health risks and the agency's remediation efforts.

258. Simultaneously, Plaintiff investigated Apple's facilities for environmental violations, compiling a database of over 160 sites. When she found inspection records for Apple's 3250 Scott facility on January 11, 2023, she asked the EPA about potential vapor intrusion.

259. On February 21, 2023, after filing multiple Public Records Act requests about various Apple buildings, Plaintiff received documents revealing disturbing information about Apple's operations at 3250 Scott – permits for semiconductor fabrication equipment. Recognizing the significance of this discovery from her prior experience working on hardware bring-up at Apple, she publicly connected Apple's hazardous manufacturing activities at 3250 Scott to her 2020 illness.

260. The plaintiff's findings were further substantiated through communication with an environmental safety expert. Lenny highlighted the acute health risks of gases used in semiconductor manufacturing and pointed out a 2019 gas leak report that mentioned phosphine—an indicator of Apple's toxic emissions at 3250 Scott. This information confirmed Plaintiff's belief that Apple's activities at the facility caused her illness.

261. Throughout 2020-2022, Plaintiff spent significant time researching potential causes of her illness, reviewing environmental databases and public records for nearby facilities, including 3250 Scott. Records on the EPA's Toxics Release Inventory (TRI) and other federal and state databases showed no significant toxic chemical releases from 3250 Scott. Without knowledge of the semiconductor operations at the facility, Plaintiff could not connect these records to her illness or find the source of her exposure.

262. The plaintiff noticed that 3250 Scott was registered as a hazardous waste generator—a designation common in Silicon Valley—but she could not have connected this to her injury. The region's history of industrial activity and the current presence of research and development facilities that generate hazardous waste did not raise any alarms. Furthermore, the unusual nature of Plaintiff's illness—including manifesting as a sudden heart failure while sleeping in her

Case: 25-4716, 11/13/2025, DktEntry: 10.4, Page 38 of 256

apartment—was not something typical of the environmental risks she had seen associated with the local tech industry.

263. Government agencies, including the EPA, had also investigated the area and found no records that would indicate a direct link to her health issues. They, too, could not identify a clear cause, which further obscured Plaintiff's ability to connect the dots before discovering Apple's involvement in February 2023. Apple further obstructed transparency by pressuring government agencies like the fire department and EPA to avoid documenting or discussing its activities. Notably, Apple tried to force the EPA to sign an extensive and unlawful NDA before allowing an inspection of Plaintiff's office in August 2021—another clear example of its attempts to prevent the discovery of its hazardous operations.

264. Additionally, Plaintiff had worked at Apple for several years and was familiar with the company's unconventional, often eccentric, research and development activities. While often questionable, these operations never caused harm like she experienced in 2020. The plaintiff had no reason to suspect that Apple's activities were related to her injury.

265. In 2020 and 2021, Plaintiff raised concerns about nearby facilities, including 3250 Scott, with Apple's Environmental Health & Safety (EH&S) and Legal departments. Apple's failure to warn her implicitly reassured her that nothing unusual or hazardous occurred at the facility, leading Plaintiff to assume that 3250 Scott posed no significant health risk. As a result, she focused her research on other potential sources of contamination.

266. By early 2023, government agencies, including the EPA, had conducted extensive investigations into the Plaintiff's illness, ruling out nearby Superfund contamination and vapor intrusion. The prevailing theory was that Plaintiff's symptoms were caused by something in the building materials at her apartment, not industrial contamination. However, Plaintiff's discovery of Apple's semiconductor fabrication activities at 3250 Scott in February 2023 revealed the true cause of her illness, as the facility's toxic emissions were the source of her exposure.

267. Apple intentionally concealed its hazardous operations at 3250 Scott, using misleading permits and improper classifications that obscured the facility's true nature. This deception, coupled with Apple's failure to disclose relevant information and its use of non-disclosure

infamous for deranged harassment, stalking, and surveillance of their critics.[63]

295. Conversely, the Plaintiff had never experienced anything like what Apple had done to her. She lived a quiet, private life and had a good relationship with most people. There is no one else except Apple that Plaintiff could plausibly attribute responsibly for the things that have occurred to her since 2020. No one else would have the motive or resources to do these things, and the harassment was perfectly timed with her conflict with Apple. Discovery will show most of this conduct, if not all of it – was initiated, carried out, authorized, ratified, and supported by Apple.

***Burglary, SWATing, & Destruction of Property***

296. On September 29, 2021, Apple mailed Plaintiff a package containing her personal items, which were intentionally damaged and covered in glass shards. (18 U.S.C. § 876). The package also contained a hidden listening device, which further violated the Plaintiff's privacy and caused her emotional harm. The deliberate destruction of Plaintiff's personal belongings, including planting a listening device in one of her items, was part of an ongoing campaign to frighten, torment, and emotionally distress Plaintiff. Apple employees' actions in posting provocative messages about the Plaintiff were meant to distress her further.

297. Before the package arrived at Plaintiff's home on September 30, 2021, Plaintiff asked on Twitter what people thought Apple was mailing her. One account, *BabyHummingbird*, later revealed to be associated with Apple public relations or global security, posted an image from a movie implying that Apple had mailed Plaintiff the severed head of one of Plaintiff's loved ones. The account only posted to/about Plaintiff, and its first "like" was an ad that read, "*Apple's back better than ever!*" It also liked posts harassing Plaintiff made by other suspicious accounts.

---

[63] e.g., Bloomberg, *When Elon Musk Tried to Destroy a Tesla Whistleblower, March 13 2019;* U.S. DOJ, *eBay Inc. to Pay $3 Million in Connection with Corporate Cyberstalking Campaign Targeting Massachusetts Couple,* January 11 2024; PBS, *Feds charge eBay $3 million over employees who sent live spiders and cockroaches to couple,* January 11 2024; VICE, *Secret Amazon Reports Expose the Company's Surveillance of Labor and Environmental Groups*, November 23 2020; BGR, *Apple accused of impersonating police during effort to recover lost iPhone 5 ,* Dec. 192018, LA Times, *How the FBI and the L.A. Times destroyed Jean Seberg's life,* June 7 2020; Lubbers, E . 2015. *Undercover Research—Corporate and Police Spying on Activists. An Introduction to Activist Intelligence as a New Field of Study*. Surveillance & Society13(3/4): 338-353 (2020); etc.

298. Later, in May 2022, the Plaintiff experienced three suspicious call dropouts (May 16 at 6:29 P.M., May 24 at 2:03 P.M., and May 26 at 1:59 P.M.), which led her to discover hacking on her network (May 28, 2022) and surveillance devices placed within her home, including the previously mentioned bugged statue (May 29, 2022).

299. The plaintiff reported the matter to the FBI on May 30, 2022, and the FBI directed her to the local police to take physical possession of the statue. That night, around midnight, someone tried to break into Plaintiff's home but fled upon Plaintiff's dog barking. The plaintiff called the police on May 31, 2022, and the police filed a report (SC PD Report No. 2205310079) about the statue and the attempted break-in and took possession of the statute. The plaintiff alleged Apple was behind it all, explaining to the police that she was a safety and environment whistleblower and that Apple had not responded well.

300. After that, the plaintiff still experienced suspicious network activity, which led her to find that someone had installed some sort of electronic equipment in her fake fig tree. It was giving off radio frequency and electromagnetic signals, as the statue did. The plaintiff was hesitant to report more issues because she knew she potentially sounded insane. She was exhausted and resorted to throwing the fig tree in a dumpster.

301. These acts were done with the intent to invade Plaintiff's privacy and cause emotional harm. After reporting these intrusions to the police and the FBI, Plaintiff endured further violations, including attempted break-ins, which she attributed to Apple. These actions were aimed at intimidating and distressing the Plaintiff. The acts were outrageous and done with the knowledge that by reporting the things Apple was doing to her, she risked harming her own credibility. It would sound crazy if people were unaware that corporations engaged in misconduct like this. This was all part of Apple's scheme.

302. Around September 2021, the Plaintiff heard two men in her apartment attic, walking around and doing something for a few hours directly above her office. Later, Plaintiff's property manager, Prometheus, explained to Plaintiff that the only way to access her attic was through the closet in her bedroom – but Plaintiff did not see anyone enter or exit. Upon further investigation,

# CERTIFICATION & CLOSING

353. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 26 2024

Respectfully submitted,



**/s/ Ashley M. Gjovik**
*Pro Se Plaintiff*

**Physical Address**: Boston, Massachusetts
**Mailing Address:** 2108 N St. Ste. 4553 Sacramento, CA, 95816
**Email**: legal@ashleygjovik.com
**Phone**: (408) 883-4428

**Pages 1 - 24**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge Presiding

ASHLEY GJOVIK, )
)
Plaintiff, )
)
VS. ) **Case No. 3:23-cv-04597-EMC**
)
APPLE, INC., )
)
Defendant. )
)

San Francisco, California
Wednesday, August 28, 2024

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
ASHLEY M. GJOVIK, PRO SE
2108 N Street, Suite 4553
Sacramento, California 95816

For Defendant:
ORRICK, HERRINGTON & SUTCLIFFE
1000 Marsh Road
Menlo Park, California 94025
**BY: MELINDA S. RIECHERT, ATTORNEY AT LAW**

Stenographically Reported By:
Kelly Shainline, CSR No. 13476, RPR, CRR
Official Stenographic Reporter

**MR. RIECHERT:** My understanding is it's a one-year statute of limitations. If it was a PAGA case, then it would be tolled for the 65 days, but I didn't understand that there was an argument being made that that one-year statute --

**THE COURT:** Well, that's kind of a small part of this. It only pertains to the civil penalty. I understand that there are other issues with respect to scope and all that sort of stuff, which I'm aware of and have read the briefing.

Let me ask a question about the claim under 63 -- 6310, which has to do with exposure to hazardous substances resulting from I think, quote, "workplace operations."

And I think there's a construction question here whether sort of vapors from the -- I don't know, from the soil or from the ground or from environmental conditions, not from the actual operation of machinery and that sort of thing, can that constitute exposure to hazardous substance from workplace operations within the meaning of the statute.

And I'd like to hear just a brief response, maybe first from Ms. Riechert, given the sort of broad remedial purpose of the statute, why shouldn't that include sort of exposure to toxic substances in the environment of the workplace be it an office, be it a factory, even though it doesn't emanate from any workplace machinery or computers and that sort of thing?

**MR. RIECHERT:** I think this is the fourth cause of action under the Hazardous Substances Information and Training

Act; is that correct, Your Honor?

**THE COURT:** Yes.

**MR. RIECHERT:** Yeah. She was not granted leave to amend to add that cause of action, so I would like to make that as my first point. You granted leave to fix the prior problems in the third and second and first amended complaint.

**THE COURT:** That's right. I didn't allow a standalone action, but I think it's incorporated under the 6399.7 still and, therefore, it still may be at play. We may still have to reach the issue because if it's -- if it doesn't have merit to it, then the 6399.7 claim under Labor Code doesn't apply. So I'm not sure I can avoid the statutory construction question.

**MR. RIECHERT:** So my understanding is that she has to allege that she actually complained about substances that were present at 825 Stewart and that those substances were due to workplace operations.

But what she says in the complaint is that they were not due to workplace operations, but due to prior issues that had existed on the property. And so I don't believe that there's an allegation in the complaint that there were any complaints of substances that were present at 825 Stewart that were due to workplace operations.

She says, for example, that she was concerned about substances that were potentially present at 825 Stewart prior -- due to contamination by prior tenants and owners, not

the work of Apple.

**THE COURT:** So she complained about the exposure, but the main point, your point, is that this was not exposure to a workplace operation, these are prior preexisting conditions? Is that your --

**MR. RIECHERT:** Right. And she doesn't say -- give any detail on who she complained to or when she complained or what she complained about, which would be another point; but, yes, it was also that it was not due to workplace operations, which is what is required.

**THE COURT:** All right. Ms. Gjovik, your response.

**MS. GJOVIK:** Yeah, I have three points. The first one is this claim has been in the complaint since the very first complaint. It's not new. I did organize the cover page a little bit, and I'm sorry if that was not allowed, but this has always been there. This is a core claim.

The second part is I definitely did complain about substances that even Apple itself had argued was not part of the remediation. There was air tests that came back with high levels of toluene and ethyl benzene. When I was asking about it, they said it's not part of the superfund site; it must be part of something at the office.

So there were specific complaints made in writing, and those were things I raised to the EPA of, "Hey, there were these chemicals too. It sounds like they might be in the

plume, the larger plume. Is that part of our workplace or is that part of the remediation?"

And then my third point, which is a much bigger issue and I briefed in depth in the surreply, I did a bunch of statutory analysis and reviewed the whole California statutory scheme around HazCom and HAZWOPER, and I actually learned something about HAZWOPER, which is a complement to the HazCom, the right-to-know material data safety sheet, that more standard one that people are familiar with.

HAZWOPER is specific for mediation sites. There's a federal OSHA version and there's a California OSHA version, and both of them required Apple to inform us we were on a superfund site and provide at least 24 hours of training per person regardless of whether they think there's activate intrusion or not. That was actually inquired by law, so I went and detailed that, and HAZWOPER does apply to this Hazardous Substance and Training Act. It's not just HazCom.

**THE COURT:** Ms. Gjovik, I'm going to ask you to slow down a bit because we have a court reporter and you're speaking so fast that it's not -- I'm having trouble understanding you as well, so you need to slow down. Go ahead.

**MS. GJOVIK:** So the third point is there's this law called HAZWOPER, H-A-Z-W-O-P-E-R. It's an abbreviation for the idea of a haz communications, hazard communications, but at remediation sites. The statute itself says MPL superfund sites

are covered by this. Regardless of whether the tenant or responsible party thinks that they're making progress, they're not.

It's also very specific that you cannot try to claim that you don't have to tell your employees at the office that they're not being exposed because you're not testing or you don't have data. Like, if there's still a potential risk, you still have to inform them. You have to train them. You have to -- there's a health and safety plan that was supposed to be created.

And the California statutory framework makes it very clear that this HAZWOPER also clearly applies under 6377.9. And there's also, I think, one of the biggest call-outs is that statute that we're talking about uses the term "substances," "hazardous substances." When you go and look at HazCom, they don't say "hazardous substances"; they say "hazardous chemicals." HAZWOPER will define hazardous substances as both chemicals and waste specifically.

**THE COURT:** How does this -- hold on a second.

**MS. GJOVIK:** So there are interpretations that the terminology used --

**THE COURT:** Ms. Gjovik --

**MS. GJOVIK:** -- in the specific statute includes hazardous waste.

**THE COURT:** Ms. Gjovik, hold on for a second.

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Monday, September 2, 2024

Kelly Shainline, CSR No. 13476, RPR, CRR
U.S. Court Reporter

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY M. GJOVIK**, *an individual*,

Plaintiff,

vs.

**APPLE INC.**, a corporation,

Defendant.

Case No. 3:23-CV-04597-EMC

**PLAINTIFF'S OMNIBUS MOTION FOR LEAVE TO FILE SUR-REPLY AND OBJECTIONS; SUR-REPLY AND OBJECTIONS.**

***In Opposition to Defendant's Fourth Fed. R. Civ. P. § 12(b)(6) Motion to Dismiss, Third § 12(f) Motion to Strike, and Replies.***

**Motion Hearing & Case Management Conference:**
Dept: Courtroom 5 (Zoom)
Judge Edward M. Chen
Date: August 28, 2024
Time: 9:30 AM PT

**REQUEST BASIS: EQUITY & FAIRNESS.**

**VIGILANTIBUS ET NON D ORMIENTIBUS JURA SUB VENIUNT.**

Additionally, the Second Amended Complaint is referenced to prove the claims can be plead sufficiently with enough time and pages.

# I. Objections

## A. Plaintiff concedes nothing!

11. Apple repeatedly claimed Plaintiff conceded to its arguments. [Reply 8/5 at 4, 5, 9, 10, 13]. **I concede nothing.** Plaintiff responds to substantive points with additional detail herein. As for the Defendant's many misleading and/or inflammatory arguments – Plaintiff asks the Court to review what was actually filed if Apple attempts to quote Plaintiff's documents, as several "quotes" are not actually things she said and are not in the referenced documents. Apple similarly quoted the Court several times in misleading ways that attempt to prejudice the Court against the Plaintiff, [4] and so Plaintiff urges the Court to factcheck Apple's references and quotes to court filings as well.[5]

## B. Defendant repeatedly misrepresented Plaintiff's Fourth Amended Complaint and her Opposition to their 4th MTD.

[4] Apple repeatedly intentionally quotes the Court's May 20 2024 Order and Decision, but drops any mention of environmental issues, privacy, or harassment from the quotes, even if it means quoting a sentence fragment. Apple: "As the Court recognized in its May 20, 2024 order regarding Plaintiff's prior complaint, "*[t]he gist of [Plaintiff's] suit is that Apple retaliated against her because she complained about conduct at the company[.]*" Dkt. 73 (the "May 20 Order")." Def's MTD at 1, 23. Similar statement also at Def's Reply pg1-2 and MTS pg1.

[5] The Court actually wrote: "*The gist of her suit is that Apple retaliated against her because she complained about conduct at the company, including but not limited to environmentally unsafe conditions.*" May 20 2024 Order, Docket #73 at 1. (Continued at FN 3). The Court added: "*(1) During her employment with Apple, Ms. Gjovik lived in an apartment near an Apple factory (known as the ARIA factory) and became ill because the factory released toxic substances into the environment. (2) Ms. Gjovik's office at Apple (known as Stewart 1) was located on a contaminated site subject to EPA regulation, i.e., a Superfund site, and she became ill because of Apple's actions/omissions related to the site. (3) Apple made employees, including Ms. Gjovik, participate in studies related to Apple products that were invasive to their privacy. (4) Apple retaliated against Ms. Gjovik for making complaints about harassment and environmental safety. Ms. Gjovik's complaints included internal complaints, complaints to governmental agencies, complaints to the press, and complaints made in social media. The retaliation by Apple included but was not limited to the termination of Ms. Gjovik from employment.*" -May 20 2024 Order, #73 at 2.

employees in environmental crimes.[13]

33. That's not the end of the analysis though. It is also critical to determine if there is any way to manage the chemicals safely.[14] The RJN's Exhibits D-O [RJN ¶ 13, 16, 18] explain that when it comes to these specific toxic gases used for semiconductor fabrication, there is no way to avoid a catastrophe. This is often the heaviest factor in the analysis for Ultrahazardous Activities – there is nothing that can be done to limit risk other than strictly restrict the amount of the substance allowed and how far it must be kept away from human life and sensitive environments. That is the case here – as noted by the city, county, and fire code [P's 7/31 RJN Exhibit O], that Apple asks this court to ignore [D's 7/15 MTD at 17]. Even if Apple were to take all reasonable precautions and exercised all reasonable care, there would still be unavoidable risk remaining in their use of toxic gases for semiconductor fabrication at 3250 Scott Blvd directly next to thousands of homes.

34. The next critical factor is how appropriate the activity is for the location. 7/31 RJN Exhibit B [RJN ¶19-21] shows the position of this fab in relation to residential housing. Not only are there laws in place that are supposed to prevent this from ever happening, but any reasonable person viewing this distance is likely to shout "*Outrageous*!" – as thousands of people did with Plaintiff's recent Twitter thread about the RCRA inspection report for 3250 Scott

---

[13] "***Cupertino's mayor says Apple is 'not willing to pay a dime' in taxes*,**" The Verge, May 5 2016, https://www.theverge.com/2016/5/5/11604704/apple-tax-evasion-cupertino-mayor-barry-chang-reform; "***Apple's Agreement With Cupertino Is Taxpayer-Fleecing Collusion,***" Bloomberg, April 18 2023, https://news.bloombergtax.com/tax-insights-and-commentary/apples-agreement-with-cupertino-is-taxpayer-fleecing-collusion; "***Want a lower tax bill? So do Apple and Genentech,***" San Francisco Chronicle, Aug. 12 2018, https://www.sfchronicle.com/business/article/Want-a-lower-tax-bill-So-do-Apple-and-Genentech-13148121.php -- "…In Santa Clara County, Apple is the leading appealer of tax assessments, with 489 open cases dating back to 2004, disputing $8.5 billion in property value…").

[14] Note: Apple argues that because these chemicals are regulated by the RCRA, that shows they are not ultrahazardous – but Apple refers to RCRA's regulation of transport, storage, and disposal of all hazardous wastes.

*Square Apartments In FYR"*; and *"3250 Scott Blvd."* (Because Apple has challenged three claims with an implication that Gjovik may be misleading the court about when/how she discovered the site, a copy of the email is attached to the 8/18 Declaration as Exhibit G.

45. Gjovik was also reviewing the CalEPA CERS portal for information on all of Apple's California facilities as she was building a large spreadsheet of all of Apple's environmental and OSHA failures in California. (As of January 18 2023, there were 162 rows!). She noticed 3250 Scott Blvd had received many inspection violations in late 2020 (probably posted in 2021), including citations for somehow losing 1,700 gallons of diesel in 2020.

46. In her January 11 2023 email, she wrote to US EPA: "*Was there an inquiry to 3250 about testing? Apple moved in 2015, per CERS records. In 2017, Honeywell General Counsel (Kate Adams) became General Counsel of Apple. Was this considered during any outreach about 3250? I'd be concerned about VI at 3250 not just for workers there, but also due to chemical reactivity with the stockpile of industrial chemicals they're apparently hoarding there, & even losing tracks of thousands of gallons of.*" (referring to the diesel). Gjovik was still focused on vapor intrusion. They did not respond.

**47.** Gjovik became especially curious about a few of Apple's California properties that seemed to be more industrial than others. She filed Public Records Act requests for records about these sites. One of these requests (Request 23-127) was filed to Santa Clara city on February 9 2023 and included a request for 3250 Scott Blvd records in addition to three other Apple buildings in Santa Clara. On February 21 2023 the city of Santa Clara responded that it would take a while to gather the records but linked to four prior requests where some records had already been released in the interim. [8/18 Declaration Exhibit H]. The requests with records for 3250 Scott Blvd (Requests 22-1148 and 22-1149, filed October 11 2022) were from AEI Consultants explaining they were working on "property

62. Action accrual in statute of limitations commenced to run at the time the plaintiff becomes aware of her exposure and defendants' responsibility for it. *In re Hawaii Federal Asbestos Cases*, 734 F. Supp. 1563, 1570 (D. Haw. 1990) – ("the statute of limitations does not begin to run until plaintiffs knew or should have known that they have suffered the functional impairment, that defendants manufactured a defective product, and that there exists a causal connection between the two.") Action accrues not simply with knowledge of injury but with knowledge an injury was caused by the wrongdoing of another. *Kernan v. Regents of the Univ. of Cal.*, No. A162750, 7 (Cal. Ct. App. Aug. 29, 2022). Constructive suspicion is not enough. *Nelson v. Indevus Pharmaceuticals, Inc.*, 142 Cal.App.4th 1202, 1205 (Cal. Ct. App. 2006).

63. Finally, Apple and their agents (including these Orrick attorneys) went out of their way to ensure Plaintiff did not discover what Apple had done to her, including making false statements to the government. They failed to provide her information and tried to point her in other directions, all the while mercilessly harassing and tormenting her. Further they had a duty to disclose not only to her, but to the community and government too, what they were doing and had done, under multiple Right to Know, environmental, health and safety, and labor laws.

**H. Apple's Unfair Business Practices, in violation of UCL § 17200, caused Plaintiff harm to her property and economically.**

64. Defendant attacks Plaintiff's § 17200 standing and injuries. Plaintiff did more legal research, worried that without pleading restitution, her injunctive claim could be dismissed per Defendant's arguments. She reintegrates content from the SAC, and she proposes a supplemented pleading as follows. This also includes additional injury for standing, though she believes what she pled was sufficient. (Apple argues that a Lyft charge would not count because it's just going to the building before, they do things to her and ignores the fact, she would also

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 54 of 256

need to take a Lyft to leave the building). Further, studies like Gobbler were injuring her continuously.[27] The Gobbler app still tries to connect to her personal iCloud account, even years after her termination. [8/18 Declaration Exhibit I].

> Plaintiff suffered numerous injuries due to Defendant's Unfair Business Practices including the cost of transportation to visit the "black sites" where Apple conducted some of these studies and hosted the secrecy trainings; and also costs of buying a required safe to store the prototype at home as required by many hardware programs. In addition, the time Plaintiff had to spend on these activities, is time that could have been spent on professional development and consulting. Plaintiff lost the opportunity to make additional income due to Dependent's policies and requests to spend so much time on these studies and data collection.[28]
>
> But worse, Defendant claims it terminated Plaintiff because she publicly complained about these activities. Plaintiff's UCL claim also argues its unlawful and unfair that Apple requires secrecy about these activities. Thus, terminating her because she did not maintain that secrecy is a direct injury to her financially (i.e., lost income and benefits)[29] and to her property (i.e., trade libel; destroying her possessions from her desk prior to mailing them back to her, etc.) due to Apple's unfair business practices.[30]
>
> In addition, due to Apple's "live on" policies, Plaintiff's only electronics

---

[27] *Clayworth v Pfizer, Inc.* (2010) 49 C4th 758, 789, 111 CR3d 666 (declining to read into Bus & P C § 17204 requirement that plaintiffs prove compensable loss at outset).
[28] *Cal. Med. Ass'n v. Aetna Health of Cal.*, 14 Cal.5th 1075, 1084-1085, 1089-1090 (Cal. 2023)— "CMA may not have incurred additional out-of-pocket costs in responding to Aetna's allegedly illegal practices; its employees were salaried and would have been paid regardless. But the economic value CMA received from their labor was reduced…That injury suffices for standing purposes."
[29] *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal.App.4th 544, 561 (Cal. Ct. App. 2013 )—"having alleged that he had been forced to pay increased advertising costs and to reduce his prices for services in order to compete, and that he had lost business and the value of his law practice had diminished, succeeded in alleging at least an identifiable trifle of injury as necessary for standing under the UCL."
[30] *Animal Legal Defense Fund v. LT Napa Partners LLC*, 234 Cal.App.4th 1279, 1283-84, (Cal. Ct. App. 2015) – "Where the economic injury is diversion of resources, the proper focus of the inquiry is … on whether the plaintiff 'undertook the expenditures in response to, and to counteract, the effects of the defendants' alleged [misconduct].'"

Case: 25-4716, 11/13/2025, DktEntry: 10.4, Page 55 of 256

were Apple products, including the ones she bought herself as a consumer. However, due to Apple's extensive surveillance capabilities, Apple's privacy policies which say she has no privacy ever again, and all of Apple's retaliation – Plaintiff had to purchase non-Apple computers, phones, and peripherals in 2021. This cost Gjovik a lot of money, and she lost the money she had invested in the Apple products, and it was only due to Apple's unfair business practices.

In addition to the requested injunctive and declaratory relief, including enjoining these Unfair Business Practices and disgorging at least the data of Gjovik and any products built off that data, Plaintiff also requests restitution of the back pay she is owed from Plaintiff. Because this claim is under UCL and not an employment or labor claim, the after acquired evidence and other imbalanced employment damages policies should not apply here. If Defendant attempts to argue these policies to reduce her damages under the labor and employment claims, Plaintiff asks that the back pay instead be restituted from the UCL claims without deductions, and with interest.[31]

65. Data and software disgorgement is appropriate here and there is precedent of FTC using software disgorgement as a remedy with at least five cases since 2019, including against Amazon and Cambridge Analytica.[32] There is also recent FTC precedent for enjoining a company's use of biometric technology following violations of the Act. [33]

66. A California Unfair Competition Law (UCL) claim generally accrues

---

[31]"*Espejo v. Copley Press, Inc.*, 13 Cal.App.5th 329, 377 (Cal. Ct. App. 2017) – "[T]he trial court's discretion to award restitution under the UCL is very broad….when necessary in order to arrive at fair compensation, the court in the exercise of a discretion may include interest or its equivalent as an element of damages."

[32] IAPP, *Algorithm disgorgement 'significant part' of FTC's AI enforcement strategy,* https://iapp.org/news/a/algorithm-disgorgement-significant-part-of-ftcs-ai-enforcement-strategy/

[33] US FTC, *"Rite Aid Banned from Using AI Facial Recognition After FTC Says Retailer Deployed Technology without Reasonable Safeguards,"* Dec 19 2023, https://www.ftc.gov/news-events/news/press-releases/2023/12/rite-aid-banned-using-ai-facial-recognition-after-ftc-says-retailer-deployed-technology-without (Rite Aid's unlawful conducted included employees using an app on their mobile phones to capture photos of customers that gathered the person's biometrics without notifying the person. Rite Aid is now prohibited from using facial recognition technology for surveillance purposes for five years.)

Case: 25-4716, 11/13/2025, DktEntry: 10.4, Page 56 of 256

when each of the elements of the cause of action (wrongdoing, harm, and causation) are satisfied.[34] Defendant argues Plaintiff cannot prove the discovery rule for Gobbler, but the discovery rule is not relevant for Gobbler. [Def's MTD at 8].

67. The UCL also supports equitable tolling which suspends or extends the statute of limitations where a plaintiff has reasonably chosen to pursue one remedy among several remedies and the notice function of the statute of limitations has been served;[35] the continuing violation doctrine by which a series of wrongs or injuries are aggregated, and the limitations period accrues for all of them on commission of the last of them;[36] and the continuous accrual rule by which a series of wrongs or injuries is viewed as each triggering its own limitations period…[37]). All of these apply here.

68. In addition, there is duress as Apple threatened employees with termination if they were to even speak to their friends about the study [8/18 RJN Exhibit R], let alone file suit. Further, Apple claims it terminated Plaintiff over her speaking publicly about it and may still file a related counterclaim in this lawsuit, thus there is certainly still continuing and imminent harm. In addition, when Gjovik checks the settings of her "personal" iCloud account, it still shows "Gobbler" trying to connect to her data.

69. It's also unlawful to propose an agreement for sale of consumer goods/services with provisions waiving consumer's right to make statements regarding the seller or its employees or agents or concerning the goods/services, and unlawful to penalize consumers for exercising these rights. Any contract with such terms is contrary to public policy and unenforceable. Cal. Civ Code

[34] *Beaver v. Tarsadia Hotels,* C.A.9 (Cal. )2016, 816 F.3d 1170, certiorari denied 137 S.Ct. 113, 580 U.S. 823, 196 L.Ed.2d 41.
[35] 3 Cal. Proc. (5th), Actions, § 720 et seq; § 147 Statute of Limitations., 13 Witkin, Summary 11th Equity § 147 (2024).
[36] 3 Cal. Proc. (5th), Actions, § 564.
[37] 3 Cal. Proc. (5th), Actions, § 522 et seq.

signed by the Apple CFO. Every time Apple vented its fab exhaust into the ambient air, Apple knew people just like the Plaintiff would be injured and would be deeply traumatized if and when they discovered what they were exposed to.

106. Apple's employees and contractors have already revealed not only evidence of knowledge, but also gross recklessness – with one of their ACT Environmental contractors who was leading the hazardous waste disposal efforts in 2020 at the site, when Gjovik was doused in chemicals, bragging in his LinkedIn profile that during that time he found "innovative" ways to save Apple money on hazardous waste disposal. (SAC ¶ 1415). Meanwhile, Gjovik still has bald spots after Apple burned all of her hair off.

107. Further, Apple's continued harassment of Plaintiff despite everything else that's happened, including her exposures, is sick and depraved. The amount of stress puts her even more at risk for cancer and disease, after she has already suffered great bodily injury from Apple's illegal conduct and emissions. Cal. HSC § 42400.1 Cal. Penal Code § 12022.7.

### K. Cal.Lab.C. § 6399.7 (via § 6310) includes HAZWOPER.

108. Plaintiff does not 'concede' to waiving her Section 6399.7 claim. [Def's Reply at 12-13]. First, this claim has been in every complaint in this lawsuit. [7/31 Declaration Exhibits A-C]. Defendant has repeatedly taken advantage of Plaintiff's vulnerability in having to dramatically shorten the length of her complaint and continues to attack claims it knows she has pled and can plead but still exploits the page limits as a loophole. [MTD at 22; Reply at 5].

109. Second, Defendant argues that Section 6399.7 should not apply in this case essentially because, they claim, there are no hazardous substance information, notification or training requirements for employees working at toxic waste dumps – and no protection from retaliation if those employees ask for information or training about the hazardous substances at those toxic waste dumps

and it irritates their managers. This is false, and probably unlawful for Apple to even claim.

110. 825 Stewart Drive is an active US EPA National Priorities List (NPL) Superfund site. As of mid-2021, the most recent vapor intrusion testing at 825 Stewart Drive was supposedly back in the summer and winter of 2015. The 2015 results were declared 'acceptable' under US EPA vapor intrusion risk levels, however both times the results showed vapor intrusion was actively occurring. During the 2015 testing of the indoor air,, the results identified the presence of TCE (Trichloroethene), PCE (Tetrachloroethene), Chloroform, 1,2-Diclorobenzne, 1,2-Dichlorethane, cDCE (cis-1,2-Dichloroethene), tDCE (trans-1,2-Dichloroethene), CFC-11, CFC 12, and Freon 113 – all of which were also found in the groundwater and/or the sub-slab vent space under the floor.

111. Plaintiff did not simply "perceive" a "risk" of vapor intrusion – Apple's own tests showed that vapor intrusion was actively occurring. Every single vapor intrusion air test at 825 Stewart Drive always came back showing vapor intrusion. Just because chemical exposure does not exceed the max limits for that chemical, does not nullify exposure to that chemical within 'tolerated' limits for industrial work.

112. In addition, several other chemicals were identified in the testing with an unknown source, as they are not formal "Contaminants of Concern" under the CERCLA Record of Decision. The 2015 testing of the indoor air and/or sub-slab vent space identified the presence of chemicals including: Benzene, Toluene, Ethylbenzene, 1,1,1-TCA, MEK, Xylenes, Acetone, and Methylene Chloride. These chemicals and Gjovik's exposure to them, if unrelated to the hazardous waste, would be governed by HAZCOM.

**113.** Cal. Labor Code §6361 explains the intent of the Hazardous Substance and Information Training Act, "The Legislature finds and declares the following: Hazardous substances in the workplace in some forms and

concentrations pose potential acute and chronic health hazards to employees who are exposed to these substances. Employers and employees have a right and a need to know the properties and potential hazards of substances to which they may be exposed, and such knowledge is essential to reducing the incidence and cost of occupational disease. Employers do not always have available adequate data on the contents and properties of specific hazardous substances necessary for the provision of a safe and healthful workplace and the provision of information and training to employees as is the responsibility of the employer under existing law.... The Legislature, therefore, intends by this chapter to ensure the transmission of necessary information to employees regarding the properties and potential hazards of hazardous substances in the workplace."

114. Cal. Labor Code § 6399.7 protects employees from retaliation for exercising their rights under this protection: "No person shall discharge or in any manner discriminate against, any employee because such employee has filed any complaint or has instituted, or caused to be instituted, any proceeding under or related to the provisions of this chapter, or has testified, or is about to testify, in any such proceeding, or because of the exercise of any right afforded pursuant to the provisions of this chapter on such employee's behalf or on behalf of others, nor shall any pay, seniority, or other benefits be lost for exercise of any such right. A violation of the provisions of this section shall be a violation of the provisions of Section 6310." (SAC 279-1281, *"§6310: Right-to-Know Retaliation [Cal. Labor Code §6399.7*]").

115. Under Cal. Labor Code § 6380, "the director, pursuant to Section 6382, shall establish a list of hazardous substances and shall make the list available to manufacturers, employers, and the public." Cal. Code Regs. tit. 8 § 339 is the published "Hazardous Substances List" pursuant to 6380. "The substances on this list are subject to the provisions of Labor Code Sections 6360 through 6399.7 and Section 5194 in Title 8 of the California Code of Regulations."

116. Cal. Code Regs. Tit. 8 5192(c)(8) requires employee notifications. "Any information concerning the chemical, physical, and toxicologic properties of each substance known or expected to be present on site that is available to the employer and relevant to the duties an employee is expected to perform shall be made available to the affected employees prior to the commencement of their work activities. The employer may utilize information developed for the hazard communication standard, 8 CCR 5194, for this purpose."

117. Chapter 2.5 (where §§ 6380 and 6399.7 are located) does not define "hazardous substance," however Cal. Code Regs. Tit. 8, § 5161 (where the § 339 list is located) defines "hazardous substance" as "a substance, material, or mixture which by reason of being explosive, flammable, poisonous, corrosive, oxidizing, an irritant, or otherwise harmful, is likely to cause injury or illness. Hazardous substance includes a hazardous chemical as defined in section 5194(c) and hazardous waste as defined in section 5192(a)(3)."

118. Under Cal. Code Regs. Tit. 8 § 5192(a)(3) (CAL HAZWOPER) the definition of "hazardous substance" includes among other things: "hazardous waste" defined as "a waste or combination of wastes as defined in 40 CFR 261.3, or regulated as hazardous waste in California pursuant to Chapter 6.5, Division 20, California Health and Safety Code, or those substances defined as hazardous wastes in 49 CFR 171.8." Cal. Code Regs. Tit. 8 § 5194(c) (CAL HAZCOM) defines "substance," as "Chemical elements and their compounds in the natural state or obtained by any production process, including any additive necessary to preserve the stability of the product and any impurities deriving from the process used." The definitions under § 5194 do not include "hazardous substance," but instead list "hazardous chemical."

119. Federal OSHA promulgated the HAZWOPER (29 CFR § 1910.120) standard as a counterpart to the more well known HAZCOM (29 CFR § 1910.1200). The HAZWOPER (Hazardous Waste Operations and Emergency

Response) standard covers "clean-up operations" "involving hazardous substances" at hazardous waste cleanup sites, including EPA's National Priority Site List. 1910.120(a)(1)(i). Where the standard overlaps with other federal regulations, the more protective of employee safety and health is to apply. 1910.120(a)(2)(i).

120. Cal. Code Regs. Tit. 8 5192 (a)(2)(A) explains that all requirements of Title 8 of the California Code of Regulations apply pursuant to their terms to hazardous waste operations (whether covered by this section or not). If there is a conflict or overlap, the provision more protective of employee safety and health shall apply without regard to 8 CCR 3202(a). Apple asserts HAZWOPER does not apply and/or has less requirements. Further, HAZWOPER does apply, as does HAZCOM, and HAZWOPER creates additional obligations beyond that of HAZCOM.

121. Under Cal. Labor Code § 142.7, California's government committed to enacting their own version of HAZWOPER that was at least as protective as the federal version if not more protective. The standard was enacted under Cal. Code Regs. Tit. 8 § 5192 which is to be at least equally protective as the federal version and may provide concurrent coverage at clean-up sites with § 5194, depending on the situation. Specific to US EPA NPL Superfund sites, as that is the situation in this case, § 5192 requires that the employer of any workers working at that Superfund site must develop site health and safety plan, provide hazard training and notifications to the employees, manage a medical surveillance program for potentially exposed workers, complete and maintain a thorough site characterization, and monitor site air quality and employee exposure ongoing. This requirement is not optional, and the employer is responsible for its own employees, regardless of the employer's position in the regulatory oversight of the Superfund site.

122. Further, these HAZWOPER requirements are more specific and

detailed than the default health and safety obligations an employer has at any site, and those default requirements in California include: "Every employer shall furnish employment and a place of employment that is safe and healthful for the employees therein."[43] Cal. Labor Code § 6400.

123. Further, § 6407 adds: "Every employer and every employee shall comply with occupational safety and health standards, with Section 25910 of the Health and Safety Code, and with all rules, regulations, and orders pursuant to this division which are applicable to his own actions and conduct." Under § 6408, the coverage includes that "all employers shall provide information to employees" including to "observe monitoring or measuring of employee exposure to hazards" (c) "access by employees or their representatives to accurate records of employee exposures to potentially toxic materials or harmful physical agents."

124. In April 2021, Plaintiff complained to Apple that the US EPA documentation showed there's excess cancer risk at the site due to vapor intrusion, and asked Apple *"Shouldn't employees be notified about this? Prop 65 at least?"* Apple's response was, "*No Prop 65 requirements per internal review.*" (SAC ¶227, 1282-1286). On March 24 2021, Gjovik also complained to her managers that the EPA documentation for the site note an increased cancer risk due to the vapor intrusion exposure pathways. In April 2021 she emailed EPA asking about her Right to Know rights. (SAC ¶ 264). In July 2021, Gjovik, pleaded with Apple to test the air prior to fixing the cracked slab, so she knows what she was exposed to 'for cancer monitoring.' (SAC ¶ 300, 331). Apple said no.

125. Proposition 65 is incorporated into both Cal. Admin. Code tit. 8, §§ 5192 and 5194 through Cal. Code Regs. Tit. 27, § 25904, Cal. Labor Code Section 6382, and Cal. Code Regs. tit. 8 § 339. Cal. Admin. Code tit. 8, § 5194 also explains at (b)(6)(C) that Proposition 65 notifications are required in the workplace regardless of § 5194 (CAL HAZCOM) coverage. The Occupational Carcinogens

[43] *In re western pac. Roofing Corp.* Cal-OSHA App Bd. 1999 WL 276529.

Control Act of 1976 also includes requirements related to employee exposures to carcinogens, including one of the NPL Contaminants of Concern at the site: vinyl chloride. Cal. Lab. Code § 9004. Proposition 65 covers exposure to carcinogens through vapor intrusion.[44] (SAC ¶ 1282, "*§6310: Proposition 65 [Cal. Code of Reg. §5194(b)(6)],*" ¶ 1282-1286).

126. In April 2021, Plaintiff asked Defendant, "*Shouldn't employees be notified this is a remediation site? Ideally informed consent for working there. At the very least Right to Know should require some sort to disclosure?*" Apple responded that they "*decided no legal requirement…*" Plaintiff asked, "W*ould you be willing to at least email or present at a staff meeting — to disclose the … management team … on the history & current conditions of the property & building?*" Apple responded, "*Larger message may be possible, but need to talk to legal.*"

127. When Gjovik raised the topic in her March 17 2021 email to the management team about the Superfund status of their office, Gjovik's manager, immediately forwarded Gjovik's email to Human Resources and her Senior Director, complaining "*I think Ashley should be keeping these emails private and not needlessly scaring the team about something she doesn't know about. I want to have a talk with her.*" Powers gave Gjovik a 'warning' during their next 1:1 meeting and told her she is not allowed to talk about safety or toxic waste dumps with her coworkers. (4AC ¶ 56).

128. In April 2021, Gjovik asked EPA about requirements for "*informing workers in these buildings about the chemicals, the gov status, etc. Maybe this is more OSHA & Right to Know — but any guidance you can provide here would be helpful. Also, anything about workers' rights to be able to talk about these sites.*" Plaintiff escalated her concerns to US EPA about the need to "communicate to workers in

[44] *Bayview Hunters Point Residents v. Tetra Tech EC, Inc.* (3:19-cv-01417) Docket No. 105, (N.D. Cal.), Order re Motions to Dismiss Re: Dkt. Nos. 64, 77 (03/31/2021); Proposition 65 Notice of Violation, Bayview Hunters Point Residents, July 9, 2020, https://oag.ca.gov/system/files/prop65/notices/2020-02666.pdf

these buildings about how to monitor for their issues (weird smells, weird health issues, etc.) or how to report trouble or what not to mess with (plugs, HVAC, etc.)."

129. Plaintiff complained to a Senior Director at Apple about Apple's EH&S team, summarizing a conversation with them: *"what happens if someone starts messing with one of the seals on the sub-slab vents because they don't know what it is (and in my building, literal Hades is beneath) — and [Apple EH&S was] like OMG DO NOT LET ANYONE DO THAT. And then [she] was like, what happens if people start feeling sick and it could be VI and they don't know that's happening and [EH&S is] like OMG IF YOU SMELL ANYTHING WEIRD CALL US IMMEDIATELY. And [she's] like, listen you fools, how is anyone supposed to know to do that if they don't even know it's remediation site."* (SAC ¶ 1205).

130. On April 21 2021, Gjovik raised concerns to Apple's Inclusion & Diversity team, complaining of disparate impact of chemical exposure at Apple's offices toxic waste sites, disproportionally harming non-white people and women. The I&D manager asked Gjovik to draft a business justification for Apple to not expose Black and Brown people, and women, to industrial chemical vapors. Gjovik complained and asked that Apple should: "*1) inform apple employees of the presence of industrial chemicals in the soil & groundwater beneath their buildings, along with any anticipated health risks 2) empower apple employees to understand these sites and their rights around them (like who at the EPA to call if they have questions about their specific building and want a neutral 3rd party) 3) do ongoing vapor intrusion testing and monitoring on buildings who have VI risk and train employees on site how to identify possible VI issues (medical symptoms, smells, etc.) In a perfect world 4) require informed consent for employees to actually be assigned to work in the worst of these buildings.*" HR never replied. (SAC ¶ 244-246).

131. Cal. Code Regs. Tit. 8 5192(e) requires training for any and every person who works at a hazardous waste like a NPL Superfund. Even workers

working in areas of the site that are fully characterized and monitored must complete at least 24 hours of offsite instruction and a minimum of one day field training. 5192(e)(3)(C). The training is to cover topics including identification of "safety, health and other hazards present on the site," "work practices by which the employee can minimize risks from hazards," "safe use of engineering controls and equipment on the site," and "medical surveillance requirements including recognition of symptoms and signs which might indicate overexposure to hazards." 5192(e)(2)(B-D).

132. Under Cal. Labor Code § 142.3(c), "Any occupational safety or health standard ... shall prescribe the use of labels or other appropriate forms of warning as are necessary to ensure that employees are apprised of all hazards to which they are exposed, relevant symptoms and appropriate emergency treatment, and proper conditions and precautions for safe use or exposure."

133. Plaintiff complained in March 2021, "*there's a covenant with the government about what can and cannot be done on site. This includes no day care, elder care, hospital use, raising of food, or use of the building as a residence. Further, the site owner is supposed to notify the government agency in charge (now the EPA) if there are any damages to the vapor intrusion mitigation systems — or monitoring of groundwater — or if any soil is to be disturbed on site. Etc. From what I've seen, there are no warnings on site about any of this.*" (SAC ¶ 374, 1186). Plaintiff also complained in April 2021, "*The land use covenant requires notice to be given to EPA if any damages to remediation systems — or any subsurface disturbance. How are employees supposed to follow this if there's no notice it's a remediation site?*" Apple responded, *"Not employee's responsibility....*" (SAC ¶ 226).

134. In July of 2021, Gjovik complained to Apple that their EH&S team refused to provide her any details about work plans or protocols for site management. Upon further inquiry, they disclosed to her there are none and she can just Google it. (SAC ¶ 307). Plaintiff complained in July 2021 that Apple

EH&S kept saying the whole process was routine but eventually admitted they've never done it before for any of their Apple buildings with employees actively working inside." She also complained EH&S "won't give her any details of what the "floor sealing process" entails." (SAC ¶ 304).

135. Cal. Code Regs. Tit. 8 5192(c) requires a thorough and ongoing site characterization and analysis. This includes ongoing air monitoring. 5192(c)(6). Any information concerning the chemical, physical, and toxicologic properties of each substance known or expected to be present on site that is available to the employer and relevant to the duties an employee is expected to perform shall be made available to the affected employees prior to the commencement of their work activities. The employer may utilize information developed for the hazard communication standard, 8 CCR 5194, for this purpose. Under 5192(c)(8) the employer also must develop and maintain and detailed safety and health plan for the site. 5192(b).

136. In May 2021, Apple EH&S told Gjovik they would not answer any more of her environmental questions, including any of her prior pending questions. EH&S told her they *"feel it is safe"* so there is no need talking about it further. In July 2021, Apple EH&S told Gjovik they still will not answer her questions, nor will they provide her any guidance around risk and exposure other than "*they feel it is safe.*" (SAC ¶ 307). They also refused to give her copies of prior air testing results. In May 2021, Apple EH&S also said they may not test the air now that Gjovik asked so many questions, and they did delay until the US EPA forced them, but they drug it out until mid-2023. (SAC ¶ 735).

137. In April 2021, Gjovik complained to her manager about the site: *"None of this sounds safe. Based on all this data, seems more likely that not that my fainting spell in Mike's office in Sept 2019 was very likely related to the chemicals on this Superfund site. If not the TCE, PCE, or Chloroform — then the levels of Ethylbenzene and Toluene exceeding max industrial limits in 2015 that no one seems to*

*have ever followed up on.*" (SAC ¶ 43-44, 229, 236, 306).

138. Cal. Code Regs. Tit. 8 5192(f) requires medical surveillance of certain employees working at the hazardous waste site including "Any employee who is injured, becomes ill or develops signs or symptoms due to possible overexposure involving hazardous substances or health hazards from an emergency response or hazardous waste operation." 5192(f)(C).

139. On August 23 2021, Gjovik submitted her "Issue Confirmation" to Apple Employee Relations and Business Conduct. The document included allegations of "Toxic Torts, occupational exposure (2017-current)" and "Violation of OSHA laws & Right to Know statute (2017-current)." (SAC ¶ 447, 784). Gjovik also included similar complaints in her complaints to US EPA on August 29 2021. (SAC ¶ 265).

140. The legislative intent of the Hazardous Substance Information and Training Act (Lab. Code, § 6360 et seq.) is "to ensure the transmission of necessary information to employees regarding the properties and potential hazards of hazardous substances in the workplace." Lab. Code, § 6361(d). California courts have found this intent is "merely [an] express[ion of] the broad scope of the undertaking and the legislative commitment to inform California workers of potential risks of hazardous substances."[45] All of this was covered by Section 6399.7, and actionable under Section 6310.

### L. Apple was certainly reading Plaintiff's Twitter posts.

141. Defendant continues to argue Plaintiff cannot prove they were surveilling her social media posts. [Def's Reply at 13-14]. First, Plaintiff can prove it. Second, it's beside the point because her posts and the associate content was also covered in the press, and Apple was directly notified of such by the press.

[45] *ICN Pharmaceuticals, Inc. v. State of California,* 3 Cal.App.4th 1131, 1136 (Cal. Ct. App. 1992).

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 68 of 256

168. Finally, Defendant still does not explain why it is suggesting striking the entirety of her Section 98.6 claim despite not expressly arguing it should be dismissed. Is Defendant trying to dismiss her 98.6 claim or not? [MTS pg53-54 Exhibit A]. Is Apple hoping the court approves all requests in the MTS without checking that the motion relates to what Apple says it does?

### Q. Breach of Implied Covenant of Good Faith & Fair Dealing

169. Despite Plaintiff's claim for a breach of the implied covenant of good faith/fair dealing being approved to move forward in the May 20 2024 decision ("the Court…allows the claim for breach of the implied covenant to proceed…")[61] Defendant now rechallenges it with no new basis, and then claims Plaintiff did not sufficiently defend herself from their Blitzkrieg of a 4th MTD and so now her claim should be forfeited, despite already being approved. Further, Defendant says Plaintiff can't amend either. [MTD at 24-25; 14-15 Reply at 14-15].

170. Plaintiff has not alleged in her 4AC that Defendant violated any express terms of an employment contract, but rather, Defendant violated the *implied* covenant of good faith and fair dealing that applies to all contracts. Plaintiff does not allege one specific contract governs her relationship with Apple as Apple used hundreds of contracts and policies during her employment, and several of them were recently found to violate federal law. Its unclear which contract(s) govern at this point, or if any do (instead now an implied contract). The implied covenant of good faith and fair dealing would apply to any of these scenarios.

171. Defendant also argues her performance bonus is prospective and not earned. (Def's MTD at 24). Plaintiff pled that her performance bonus was already vested by the time she was terminated, citing the end of the review year.

[61] *Gjovik v. Apple Inc.*, 23-cv-04597-EMC, 41 (N.D. Cal. May. 20, 2024).

### R. Plaintiff's request for Cal. Labor Code civil penalties is not relevant for a subsequent 12(b)(6) motion, or 12(f) motion.

172. Plaintiff has explained that these motions are not meant to be used to strike/dismiss penalties at this phase in the proceeding. [P's Opp to MTD at 19]. Further, couldn't a compromise just be Plaintiff contacting CalDOL after she wins and asking them if they want to fine Apple in addition to her lawsuit? Do we have to decide this now?

## III. Conclusion

In Apple's latest Motions, Apple attempts to dismiss all but three of Plaintiff's claims, and even then, tries to dismiss significant portions of those three remaining claims as well.

A large corporation operated a secret, off-book factory, engaging in the illegal dumping of toxic waste for several years [P's 7/31 RJN, Exhibit A]. When an employee discovered the illegal activities, the corporation engaged in surveillance, harassment, and threats to silence her. Despite these efforts, she continued her investigation, gathering evidence and reporting to federal authorities. In response, the corporation deployed covert agents to obstruct her and her claims.

The corporation now requests that the court disregard these actions and limit its liability to a single day, September 9, 2021, arguing that excluding years of misconduct and potentially criminal conduct and focusing solely on the events occurring over a few hours on one day, will be more efficient. The corporation seeks to dismiss the victim's statements, judicially noticeable evidence, and her arguments, asking the court to accept their assertion of innocence and to characterize the situation as a misunderstanding.

Defendant's Motion to Dismiss and Motion to Strike should be denied. Plaintiff also respectfully requests that if any claims are dismissed or stricken, she

(Additional counsel on following page)

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ASHLEY GJOVIK,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 23-cv-4597-EMC

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Dept: Courtroom 5, 17th Floor
Judge: Honorable Edward M. Chen
Date: August 22, 2024
Time: 1:30 p.m.

## I. INTRODUCTION

Apple moved to dismiss portions of Plaintiff's Fourth Amended Complaint ("4AC"), including the claims that are untethered to Plaintiff's employment (the majority of which are plainly time barred), certain employment-related claims that do not satisfy the pleading requirements, and amendments not authorized by the Court's May 20 Order. Plaintiff's untimely[1] Opposition does not even attempt to address most of the arguments in Apple's Motion, effectively conceding that dismissal is appropriate as to many of her claims. The Motion should be granted in its entirety and dismissal should be with prejudice, as Plaintiff has already had ample opportunity to amend the complaint and any further amendments would be futile.

## II. PLAINTIFF'S OPPOSITION DOES NOT UNDERCUT APPLE'S MOTION.

### A. The Court May Consider Arguments Not Raised in a Prior 12(b)(6) Motion.

As anticipated (*see* Dkt. 78 ("Mot.") at 15 n.11), Plaintiff complains that Apple's motion to dismiss is improper because it includes arguments she contends "were available and omitted from [Apple's] earlier Rule 12 motions" and suggests that Apple has "dilatory or otherwise improper motives[.]" Dkt. 84 ("Opp.") at 3-5. Both points are wrong.

First, in her Opposition, Plaintiff relies on outdated case law and fails to address recent Ninth Circuit authority—*In re Apple iPhone Antitrust Litig*., 846 F.3d 313 (9th Cir. 2017)—where the Court held a district court may exercise its discretion to consider new arguments in subsequent Rule 12(b)(6) motions. *Id.* at 319 (cited in Mot. at 15 n.11). Nor did Plaintiff address case law from this Court and this district, both of which have considered potentially dispositive arguments in a Rule 12(b)(6) motion in light of *In re Apple* and/or to avoid the "form over substance" act of requiring a defendant to file a subsequent Rule 12(c) motion on the same grounds (as is expressly

[1] Plaintiff's Opposition was due on July 29, 2024, but she did not file it until July 31, 2024. "[A]lthough she is proceeding pro se, [a plaintiff] is nevertheless obligated to follow the same rules as represented parties." *Lee v. City of Redwood City*, No. C 06-3340 SBA, 2006 WL 2067074, at *3 (N.D. Cal. July 25, 2006) (where plaintiff filed opposition to motion to dismiss two days late, the court instructed that "failure to comply with its orders or the rules may result in dismissal with prejudice"); *see also Warrick v. Birdsell*, 278 B.R. 182, 187 (9th Cir. Bankr. 2002) (pro se litigant not excused from requirement to understand and follow bankruptcy court rules, particularly in light of fact that she held law degree and also ran paralegal firm). Plaintiff's failure to timely file cut short Apple's time for reply without justification.

relating to her alleged exposures in 2020. And in any event, the documents *writ large* are not judicially noticeable. "The court may judicially notice a ***fact*** that is not subject to reasonable dispute." Fed. R. Evid. 201(b) (emphasis added). Instead of asking the Court to judicially notice facts, however, Plaintiff has bombarded the Court with a pile of documents without identifying which "facts" from those documents she requests to be noticed and why she requests notice of them. This alone is grounds for denying her request. *See Cruz v. Specialized Loan Servicing, LLC*, No. SACV 22-01610-CJC (JDEx), 2022 WL 18228277, at *2 (C.D. Cal. Oct. 14, 2022) ("[C]ourts do not take judicial notice of documents, they take judicial notice of facts."). Plaintiff also fails to explain why any "facts" drawn from these documents—the vast majority of which were created long before she filed the operative complaint—were not previously pled. The Court should disregard the RJN as an improper attempt to circumvent the page limits the Court has imposed.

### D. All Claims Untethered to Plaintiff's Employment Should Be Dismissed.

#### 1. Ninth Claim: The UCL Claim Is Time Barred, Plaintiff Has Abandoned Any Claim for Restitution, and Plaintiff Lacks Statutory Standing to Pursue Injunctive Relief.

Plaintiff does not oppose Apple's argument that her UCL claim is time barred because it is based on conduct from August 2017, nearly seven years before she brought this claim. *Compare* Mot. at 8-9 *with* Opp. at 18. Because Plaintiff does not contest this point, she concedes it, and her claim should be dismissed with prejudice. *See In re Ford*, 483 F. Supp. 3d 838, 846 (C.D. Cal. 2020) (where plaintiff "does not respond to [an] argument," she "concedes the point").

Her claim should be dismissed for additional reasons as well. The Opposition makes clear that Plaintiff has abandoned any UCL claim seeking restitution. *See* Opp. at 18. Thus, her UCL claim seeking restitution should be dismissed with prejudice.

As for her UCL claim seeking injunctive relief, Plaintiff does not contest the premise that to pursue injunctive relief under the UCL, she must have statutory standing, which requires that she establish that she has "lost money or property as a result of" the alleged unfair competition. *Compare* Mot. at 7-8 *with* Opp. at 18. Plaintiff does not counter Apple's argument that her rideshare costs fail to establish standing. *Compare* Mot. at 8 *with* Opp. at 18. Nor does she point to any allegation in the 4AC that she has "lost money or property as a result of" any alleged unfair

competition by Apple. *See* Opp. at 18. Because Plaintiff does not contest these points, she concedes them. *See In re Ford*, 483 F. Supp. 3d at 846. She thus effectively concedes a lack of statutory standing, which is fatal to her UCL claim. Plaintiff appears to cite *In re Facebook Privacy Litigation*, 791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014), in an effort to argue that she has Article III standing to seek injunctive relief. *See* Opp. at 18. Even if Plaintiff had ***Article III standing***, however, that would not excuse her from demonstrating ***statutory standing***, which she has failed to do (and effectively concedes).

The other cases cited by Plaintiff do not help her either. Plaintiff cites *In re Google Assistant Privacy Litigation,* 457 F. Supp. 3d 797 (N.D. Cal. 2020) for its discussion of a Federal Wiretap Act claim. *See* Opp. at 18. And a trio of other cases cited by Plaintiff—*Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009), *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 966-73 (N.D. Cal. 2015), and *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 692 (N.D. Cal. 2021)—actually support Apple's argument, because the UCL claims were dismissed due to lack of standing. The Court here should reach the same outcome.

**2. Plaintiffs' Multiple IIED Claims Should Be Dismissed.**

**a. Tenth Claim: Much of the Alleged Conduct Is Not Outrageous; the Remaining Alleged Conduct Does Not Satisfy Rule 8 and/or Was Deemed Inadequate in the May 20 Order.**

Plaintiff does not try to dispute that much of the conduct alleged in the 4AC—such as social media posts allegedly by Apple employees stating that "Gjovik's complaints were bogus, that [she] was a liar and bad actor, and that [she] deserved the harm Apple was causing her"—does not constitute outrageous conduct under the law. *Compare* Mot. at 11 with Opp. at 19-21. By not opposing, Plaintiff concedes it is not outrageous. *In re Ford*, 483 F. Supp. 3d at 846. Plaintiff also does not address Apple's argument that allegations about other conduct in the 4AC do not satisfy Rule 8. *Compare* Mot. at 11-12 with Opp. at 19-21. Again, she concedes the point.

Instead of addressing Apple's arguments, Plaintiff cites a series of cases involving outrageous conduct worlds apart from that alleged in the 4AC. For example, she cites cases involving threats of physical harm. *See Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 809 (2006)); *Kiseskey v. Carpenters' Tr. for So. Cal.*, 144 Cal. App. 3d 222, 229 (1983) (cited by *Intel*

**Ashley M. Gjovik, JD**
*In Propria Persona*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# United States District Court
# Northern District of California

**Ashley M. Gjovik**, *an individual*,

Plaintiff,

vs.

**Apple Inc.**, a corporation,

Defendant.

Case No. 3:23-CV-04597-EMC

**Plaintiff's Memorandum of Points & Authorities**

***In Opposition to Defendant's Fourth Motion to Dismiss***

**Fed. R. Civ. P. § 12(b)(6)**

**Motion Hearing & Case Management Conference:**
Dept: Courtroom 5 (Zoom)
Judge Edward M. Chen
Date: August 22, 2024
Time: 1:30 PM PT

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 75 of 256

5. Defendant's latest motion puts forward a number of procedural allegations against Plaintiff which are false and not based in fact. Defendant repeatedly alleges that Plaintiff added new claims and theories that were not in her prior complaints, and that she violated this Court's May 20, 2024, order in amending claims she was not allowed to or otherwise amending in a way that has offended Defendant. Defendant goes so far as to label the 4AC as an "eleventh-hour attempt to introduce yet further claims and allegations." (4th MTD at 2).

6. In reality, Plaintiff heeded this Court's comments in the May 20 2024 Order and decided to drop the majority of claims she was given leave to amend, in hope that it would prevent Defendant from filing another Motion to Dismiss, and instead they would file their Answer and the case could proceed swiftly. Plaintiff now deeply regrets dropping her RICO Act, Bane Act, and Ralph Act claims as she has now spent just as much time responding to Defendant's latest Motion to Dismiss as she would have if she amended and kept those claims.

7. Defendant arbitrarily accuses Plaintiff of inappropriately adding new claims and facts, including supposedly new allegations about smuggling, sanctions laws, Cal.Lab.C. 6399.7, Cal.Lab.C. 1101 and 1102, Cal.Lab.C. 232, and breach of the convent of good faith and fair dealing.

8. In reality, these claims have been in every single one of Plaintiff's complaints. Plaintiff will not defend each of these claims where the basis of Defendant's argument is misrepresenting the prior existence of the claim. Instead, Plaintiff created three new resources for everyone involved in the litigation, attached to her concurrently filed Declaration. Exhibit A includes a Table showing history of claims. Exhibit B includes the table of contents for all five complaints (with page numbers as filed). Exhibit C shows a post hoc, recently created index for key terms in each of the complaints. Hopefully Apple will stop making these types of misrepresentations now that the claims are so easy to investigate.

### B. The majority of Defendant's arguments are barred by Rule 12(g) and 12(h).

9. Fed.R.Civ.Pro. 12(g) provides in pertinent part: If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated. *Aetna Life Ins. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988). The Defendant is foreclosed from asserting in a subsequent Rule 12(b)(6) motion "a defense . . . that was available . . . but omitted from [an] earlier motion" to dismiss. Fed R. Civ. P. 12(g)(2). *In re Anthem, Inc. Data Breach Litigation*, Case No. 15-MD-02617-LHK, 79-80 (N.D. Cal. May. 27, 2016).

10. Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics. *Allstate Ins. Co. v. Countrywide Financial Corp.,* 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011). Rule 12(g) applies to situations in which a party files successive motions under Rule 12 for the sole purpose of delay[.]"); *Doe v. White*, No. 08-1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010) (citing the "substantial amount of case law which provides that successive Rule 12(b)(6) motions may be considered where they have not been filed for the purpose of delay, where entertaining the motion would expedite the case, and where the motion would narrow the issues involved"). *Schwartz v. Apple Inc.* (In re Apple iPhone Antitrust Litig.), 846 F.3d 313, 319 (9th Cir. 2017).

11. Defendant now seeks to assert defenses against the Fourth Amended Complaint that pertain to a failure to state a claim, but which were available and omitted from their earlier Rule 12 motions. *Hernandez v. City of San Jose*, 241 F.Supp.3d 959, 984–85 (N.D. Cal. 2017).

12. The Fourth Amended Complaint largely shares the same factual

material as the Third Amended Complaint, Second Amended Complaint, First Amended Complaint, and Original Complaint. There are minor modifications, but no notable substantive change in causes of actions, parties, or facts. *Carrasco v. Craft* (1985) 164 CA3d 796, 808-809, 210 CR 599, 607. Plaintiff's amended complaint did not change the theory or scope of the case in a way relevant to the new defense, or otherwise transform the litigation in any way. *Burton v. Ghosh,* 961 F.3d 960, 967-968 (7th Cir. 2020).

13. Thus, Defendant's arguments could have been raised in its previous motion to dismiss and the instant motion violates Rule 12(g)(2)'s ban on successive Rule 12(b) motions. *Hamman v. Cava Grp.*, 22-cv-593-MMA (MSB), 5 (S.D. Cal. Dec. 4, 2023). "Rule 12(g)(2) facially bars successive Rule 12(b)(6) motions." *In re Apple iPhone Antitrust Litig.*, 846 F.3d at 318.

14. "The philosophy underlying Rule 12(g) is simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics." 2A J. Moore, J. Lucas and G. Grother, Moore's Federal Practice (2d ed. 1987) ¶ 12.22 at12-186. *Aetna Life Ins. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1475 n.2 (9th Cir. 1988). Further, this tactic can be part of "a pattern of abusive litigation activity in which the Defendants, through their attorneys, delayed filing an answer to [the Plaintiff's] complaint." *Aetna Life Ins. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988). In *Aetna*, the Defendant's had delayed for seven months. Here, Apple has delayed filing an Answer for nearly eleven months.

15. Apple's already had several extra "bites at the apple" with respect to attacking Plaintiff's pleading. Apple needs to file its Answer and participate in the proceeding. "Without question, successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir. 1986).

16. The court may determine that successive or piecemeal motions are

interposed for improper motives and such motions may be denied on those grounds. See Fed.R.Civ.P. 11; *Aetna Life Ins. Co. v. Alla Med. Servs. Inc.,* 855 F.2d 1470, 1475-77, n. 2 (9th Cir. 1988) ("courts have discretion to hear a second motion under Rule 12(b)(6) if the motion is not interposed for delay and the final disposition of the case will thereby be expedited. . . ."); *United States v. Molen,* No. 2:10-cv-02591 MCE KJN PS, 4-5 (E.D. Cal. May. 9, 2011).

17. *See Herron v. Best Buy Stores*, *LP*, No. 12-CV-02103-GEB-JFM, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013) (refusal to consider argument Toshiba had "failed to squarely raise . . . in its initial dismissal motion"); *Fed. Agr. Mortgage Corp. v. It's A Jungle Out There*, *Inc.*, No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) (where the complaint is amended after the defendant has filed a Rule 12(b) motion, the defendant may not thereafter file a second Rule 12(b) motion asserting objections or defenses that could have been asserted in the first motion."); *see also* Wright & Miller, 5C Fed. Prac. & Proc. § 1388, 491-95 (3d ed. 2004) (citing additional cases applying Federal Rule 12(g)(2) and Rule 12(h)(2)). *Romo v. Wells Fargo Bank, N.A.*, Case No. 15-cv-03708-EMC, 3-4 (N.D. Cal. Jun. 28, 2016).

18. As with the *Packaged Seafood* case, "in a case as broad as this, where there are many claims and many potential arguments to be made, to refuse to enforce Rule 12(g)(2)'s clear command on such a foundational argument as the one Defendants here urge ... would set a dangerous precedent regarding the ability to continually hamstring a plaintiff with wave after wave of motions to dismiss." *In re Packaged Seafood Prods.*, 277 F. Supp. 3d 1167, 1173-74 (S.D. Cal. 2017). Successive or piecemeal motions are often interposed for dilatory or otherwise improper motives and deny such motions on those grounds. See Fed.R.Civ.P. 11; *Aetna Life Ins. Co. v. Alla Med. Services, Inc*. (9th Cir. 1988) 855 F2d 1470, 1476-1477.

### C. Cal.Lab.C. Section 1102.5 alleges a sufficient amount of statutes to proceed.

19. Defendant argues that Plaintiff still has not plead with required specificity which laws she alleges support her 1102.5 claim, yet Defendant concurrently admits Plaintiff has alleged this sufficiently and they are no longer trying to dismiss her 1102.5 claim. Defendant attacks her smuggling and sanctions section, yet those statutes were detailed in her SAC and in emails to Apple.

20. The 2023 Senate Bill No. 497 (Chapter 612)[1], now enacted, created a presumption of liability on the employer if an adverse action is taken within 90 days of protected action. Here, Apple stopped fighting some of the 1102.5 claims, all of which fall into the 90 days period prior to her termination. We really do not need to be dissecting this claim this much – it's incredibly broad coverage, with a presumption against the employer.

21. Further, Defendant is fully aware from the US Dept. of Labor proceedings that the majority of CERCLA oversight is implemented through tailored settlements, contracts, and restrictive covenants – not regulations. Plaintiff challenged land use covenants, records of decision, and other contractual matters related to the CERCLA site – and as such those claims should be sufficient. Apple is aware of what those claims are from the emails Plaintiff sent them, the US EPA investigation into her claims and finding Apple at fault in number of ways, including documented on formal reports.

22. Similarly, criminal charges for CERCLA are claims like wire fraud – not a specific section of the CERCLA. Plaintiff did accuse Apple of fraud as well as RICO and other felonies. This Court gave Plaintiff leave to amend her RICO claims, so it is possible that even that 1102.5 allegation was correct.

[1] Leg. History: https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202320240SB497

section. Defendant specifically demands Plaintiff publicly name who at the company she raised the Gobbler issue to prior to taking it public, despite having said it would fire anyone involved in making Gobbler public – thus demanding Gjovik immediately snitch on her coworker, knowing Apple's lawyers may then fire that person. Defendant claims it terminated Plaintiff because Plaintiff disclosed Gobbler publicly -- so it's unclear why Defendant keeps demanding proof that Plaintiff disclosed Gobbler publicly.

27. The protected activity need only be "a" contributing factor in the employer's adverse action. Cal.Lab.C. § 1102.6; *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 C5th 703, 712, 289 CR3d 572, 577. Further, retaliation is also forbidden where the disclosure has not yet occurred but may occur. Thus, the statute applies if an employer retaliates based on a belief that the employee will disclose illegality in the future. Lab.C. § 1102.5(b). There is a lot of space between some vague grievance and reciting exact lines of statutory language.

**D. Plaintiff's request for civil penalties is not time barred.**

28. Defendant requests to dismiss Plaintiff's request for penalties under her Cal.Lab.C. Section 1102.5 and 98.6 claims, citing CCP § 340(a) – however, this is not a PAGA lawsuit. 1102.5(f) is not exclusive to PAGA lawsuits, and the section even notes the penalty is to be "awarded to the employee who was retaliated against." Id.

29. Further, the Plaintiff was waiting on California Dept. of Labor to start investigating her claims up until the point she removed her agency claims to this instant lawsuit. The agency failed to act in a timely fashion and so now Plaintiff pursues the claims herself, and as such the option of penalties should be open to her. The penalty request is optional and thus the suit is not "for penalty." *Mathews v. Happy Valley Conference Ctr., Inc.* (2019) 43 CA5th 236, 267, 256 CR3d 497, 524— (remedy in Lab.C. § 1102.5 whistleblower statute not

exclusive since it states penalties specified therein for violation are in addition to other penalties, and thus, punitive damages are available).

30. Finally, Defendant's Motion to Dismiss frame their request as just dismissing the 98.6 penalty – however they try to strike the entire 98.6 section in their Motion to Strike.

### E. Plaintiff made numerous protected Cal.Lab.C. Section 6399.7 complaints under Section 6310.

31. Labor Code section 6399.7 prohibits discrimination against any employee for filing a complaint or instituting a proceeding "under or related to the provisions of this chapter" or exercising any right afforded "pursuant to the provisions of this chapter." "This chapter" is chapter 2.5 of the California Occupational Safety and Health Act (Cal OSHA), entitled the "Hazardous Substances Information and Training Act." Cal.Lab. Code, § 6360.

32. It requires the Director of Industrial Relations (*id.*, § 6302) to prepare a list of substances that "are present in the workplace as a result of workplace operations in such a manner that employees may be exposed under normal conditions of work or in a reasonably foreseeable emergency resulting from workplace operations" (Lab. Code, § 6362) and are "potentially hazardous to human health" (*id.*, §§ 6380, 6382). The listings referred to in subdivision (a) are as follows:

- (1) Substances listed as human or animal carcinogens by the International Agency for Research on Cancer (IARC).
- (2) Those substances designated by the Environmental Protection Agency pursuant to Section 307 (33 U.S.C. Sec. 1317) and Section 311 (33 U.S.C. Sec. 1321) of the federal Clean Water Act of 1977 (33 U.S.C. Sec. 1251 et seq.) or as hazardous air pollutants pursuant to Section 112 of the federal Clean Air Act, as amended (42 U.S.C. Sec. 7412) which have known, adverse human health risks.

- (3) Substances listed by the Occupational Safety and Health Standards Board as an airborne chemical contaminant pursuant to Section 142.3.
- …
- (d) Notwithstanding Section 6381, in addition to those substances on the director's list of hazardous substances, any substance within the scope of the federal Hazard Communication Standard (29 C.F.R. Sec. 1910.1200) is a hazardous substance subject to this chapter.

CA Labor Code § 6382 (2023). This includes all of the chemicals Plaintiff complained about.

33. Defendant claims that Plaintiff previously only "made a passing reference" to Section 6399.7 prior to the 4AC. As explained earlier, this is not true. Apple claims it can now challenge 6399.7 because it's supposedly new, but it is not new, and Apple waived it in prior 12(b)(6) motions. Apple also claims Plaintiff was not allowed to split the claim out or revise the cover page of her 4AC. Apple also suggests the content be stricken in its Motion to Strike.

34. In reality, Plaintiff made numerous, repeated, incessant complaints about Right to Know related to her Superfund site office, Apple's other toxic waste dump offices, her apartment on a toxic waste dump, and the ambient air where Apple was dumping its hazardous waste. These activities included publishing an op-ed in a local newspaper, lobbying politicians, and raising multiple internal escalations at Apple about this topic. Other than the SAC, this section was not pled in detail, primarily because it seemed like a 'given'.

35. Plaintiff is getting very tired of Defendant still trying to silence her about her safety concerns, especially Right to Know.

### F. Claims for Cal.Lab.C. Section 1101, 1102, 232, and 232.5 are sufficient and/or can be sufficient with increased page limits, and dismissal on the pleadings was waived.

rights statute at issue in order to avoid dismissal of their employment action; *Alvarez v. Hill* (9th Cir. 2008) 518 F3d 1152, 1158; *Wilson v. Birnberg* (5th Cir. 2012) 667 F3d 591, 595.

### H. The UCL Section 17200 claim is viable for injunctive relief.

49. Prior, Plaintiff successfully pled a claim for injunctive relief under Section 17200, including with concrete, particularized harm. Plaintiff cleaned up the claim in the 4AC, focusing on the experiments and data collection and dropping a focus on Apple Wellness Center. Plaintiff pled factual allegations regarding the specific programs and applications she was subject to, and even included exhibits of the communications and her data gathered by Apple.

50. See *Birdsong v. Apple, Inc.* , 590 F.3d 955, 960-61 (9th Cir. 2009) (finding lack of standing where the risk of injury "is not concrete and particularized *as to [plaintiffs]* "); *Cahen v. Toyota Motor Corp.* , 147 F. Supp. 3d 955, 972 (N.D. Cal. 2015) (dismissing claims for lack of standing where plaintiffs did not allege that they themselves were affected by defendant's alleged behavior); *Google Assistant Privacy Litig.* , 457 F. Supp. 3d at 816-17 (rejecting allegations based on third party report where "Plaintiffs do not allege that any of [the reported private] recordings covered Plaintiffs' communications"); *cf.In re Facebook Privacy Litig.* , 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011) (finding standing where defendant engaged in "dragnet" surveillance that affected all of its customers, and plaintiffs were customers). *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 681-82 (N.D. Cal. 2021).

51. In the 4AC, Plaintiff pled economic harm in addition to privacy and other personal injuries and should retain her injunctive standing. Plaintiff does not need economic restitution – and instead requests disgorgement (deletion) of data and software – not money.

### I. IIED claims are sufficiently pled; the IIED Cancer claim was already approved to move forward.

52. The IIED/Cancer claim was already approved to move forward, and the claim does not require intentional or purposeful motive – knowing and reckless is enough, which was the case here. See *Potter v. Firestone Tire & Rubber Co.* (1993) 6 C.4th 965, 1000, 25 C.R.2d 550, 863 P.2d 795, § 1174 [dumping of hazardous wastes, causing fear of cancer]; 41 Santa Clara L. Rev. 661 [emotional distress issues raised by release of toxic and other hazardous materials]; 25 Southwestern U. L. Rev. 205 [*Kerins*]; 6 A.L.R.5th 162 [emotional distress by toxic exposure].

53. According to a California appellate court decision, "infliction of emotional distress claims are merely alternative legal theories for holding defendants liable for the same conduct" that underlies a related intentional tort. Thus, such claims are "redundant" and must stand or fall with the related claim. *Wong v. Jing* (2010) 189 CA4th 1354, 1378-1379, 117 CR3d 747, 768-769. For example, criminal conduct outrageous per se: A violation of California penal law is outrageous per se. *Cramer v. Consolidated Freightways, Inc.* (9th Cir. 2001) 255 F3d 683, 697 (en banc).

54. Repeated threats of physical harm directed to plaintiffs, stated in graphic terms, may constitute "extreme and outrageous conduct." *Delfino v. Agilent Technologies, Inc. (2006) 145 CA4th 790, 809, 52 CR3d 376, 392.* Email, like other forms of communication, may "cause legally cognizable injury to the recipient or to third parties and may be actionable under various common law or statutory theories," including intentional infliction of emotional distress. *Intel Corp. v. Hamidi* (2003) 30 C4th 1342, 1347, 1 CR3d 32, 37.

55. Employer's fabricating evidence to justify discharging employee would constitute clear and convincing evidence of a "willful and conscious disregard" for employee's rights. *Brandon v. Rite Aid Corp., Inc.* (ED CA 2006)

408 F.Supp.2d 964, 982. See also, *Kiseskey v. Carpenters' Trust for Southern Calif.* (1983) 144 CA3d 222, 229-230, 192 CR 492, 496)—agents of defendant union threatened life, health, and family of employer if he did not sign agreement with union]. *Continental Culture Specialists, Inc.* (1992) 2 C4th 744, 756, 7 CR2d 808, 816—emotional distress resulting from employer's defamation and harassment.

56. See *Tilkey v. Allstate Ins. Co.* (2020) 56 C.A.5th 521, 556, 270 C.R.3d 559 [case of first impression; allowing award of punitive damages in compelled, self-published defamation case (see text, § 634)]. 21 A.L.R.6th 671 [employer's, supervisor's, or manager's intentional infliction of emotional distress on employee by accusation or implication of dishonesty]; 38 A.L.R.6th 541 [employer's, supervisor's, or manager's intentional infliction of emotional distress on employee by defamation, invasion of privacy, or misuse of company procedures]. See *Rulon-Miller v. International Business Machines Corp*. (1984) 162 C.A.3d 241, 255, 208 C.R. 524 [statements and conduct tending to humiliate employee.

57. Plaintiff alleged facts and allegations supporting underlying independent tort claims of harassment, stalking, abuse of process, malicious prosecution, defamation, trade libel, loss of consortium, other torts, and numerous criminal acts. Plaintiff's allegations are within statute of limitation, and after she was no longer an employee – removing the issue of Worker's Compensation pre-emption. Further, there were many parties involved in causing Gjovik severe distress, in a variety of different roles – including Respondent Superior.

58. If given 20-30 additional pages, Plaintiff feels confident she can again adequately plead her IIED claims, if her pleading in the 4AC is found insufficient. The IIED sections in the SAC could also be incorporated.

59. The employer may also be directly liable if it knows of harassment and fails to stop it: "In such cases, the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 86 of 256

conduct and its results, quite as if they had been authorized affirmatively by the employer." See *Faragher v. City of Boca Raton* (1998) 524 US 775, 789, 118 S.Ct. 2275, 2284. The employer may be liable for nonemployees' (e.g., the employer's customers or vendors) harassment of its employees under Title VII if the employer knew or should have been aware of the harassment and failed to take appropriate corrective action. *Folkerson v. Circus Enterprises*, Inc. (9th Cir. 1997) 107 F3d 754, 756—casino entertainer sexually harassed by casino patron; *Campbell v. Hawaii Dept. of Ed.* (9th Cir. 2018) 892 F3d 1005, 1017—teacher harassed by students.

### J. The Private Nuisance, Ultrahazardous Activities, and IIED/Cancer claims are not time barred.

60. The limitations period for Private Nuisance actions depends on the nature of the harm caused by the nuisance. A nuisance action claiming injury to real property is subject to the CCP § 338(b) three-year statute of limitations. *Wilshire Westwood Assocs. v. Atlantic Richfield Co.* (1993) 20 CA4th 732, 743-745, 24 CR2d 562, 568-569.A nuisance action claiming personal injury is subject to the CCP § 335.1 two-year statute of limitations. A plaintiff must bring a single continuing nuisance action for past, present and future damages. *Baker v. Burbank-Glendale-Pasadena Airport Auth.* (1985) 39 C3d 862, 868-869, 218 CR 293, 297; *Spar v. Pacific Bell* (1991) 235 CA3d 1480, 1485, 1 CR2d 480, 483.

61. The limitations period for Ultrahazardous Activities strict liability actions depends on the type of injury inflicted. Injuries to real property have three years. CCP § 338(b); *Wilshire Westwood Assocs. v. Atlantic Richfield Co.* (1993) 20 CA4th 732, 743, 24 CR2d 562, 568. Injuries to personal property have three years. CCP § 338(c). Personal injuries have wo years. CCP § 335.1.

62. Here there is the discovery rule, fraud, and continuing nuisance. Discovery rule is easy to prove as even the government tried to investigate where the emissions were coming from, and they could not figure it out. For fraud,

defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it. *MGA Entertainment, Inc. v. Mattel, Inc.*, 41 Cal. App. 5th 554, 254 Cal. Rptr. 3d 314 (2d Dist. 2019), review denied, (Feb. 11, 2020).

63. That the dates alleged in the complaint are beyond the statutory period is not enough to support a Rule 12(b)(6) dismissal. Dismissal can be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute [had been] tolled." *Cervantes v. City of San Diego* (9th Cir. 1993) 5 F3d 1273, 1275. Resolution of a statute of limitations issue is normally a question of fact. *Pearce v. Briggs,* 283 Cal.Rptr.3d 608. Date of accrual of cause of action is question of fact. *California-American Water Co. v. Marina Coast Water Dist.,* 86 Cal. App. 5th 1272, 303 Cal. Rptr. 3d 227 (1st Dist. 2022), review denied, (Mar. 29, 2023).

### K. The Ultrahazardous Activities claim states a claim for Ultrahazardous Activities; it was already approved to move forward.

64. Whether an activity is "ultrahazardous" for strict liability purposes is a question of law for the court to decide. *Luthringer v. Moore* (1948) 31 C2d 489, 496, 190 P2d 1, 5; *Edwards v. Post Transp. Co.*, supra, 228 CA3d at 983, 279 CR at 232. Defendant now challenges this Court's prior ruling on Ultrahazardous Activities in this case – filing a new 12(b)(6) instead of a motion for reconsideration or similar. These activities continue to be Ultrahazardous, and additional cases and policy have been gathered to support the prior decision. The concurrently filed Request for Judicial Notice is incorporated here and throughout. All exhibits are relevant to the Ultrahazardous claim.

65. As a matter of public policy, strict liability may be imposed upon defendants who cause harm as a result of "ultrahazardous activities"—i.e., activities that are so inherently dangerous that even the utmost care cannot eliminate the risk. . *Lipson v. Sup.Ct. (Berger)* (1982) 31 C3d 362, 374, 182 CR 629, 637, fn. 7; Rest.2d Torts § 519; 6 Witkin, Summary of California Law, Torts § 1575; Rest.3d Torts: Liability for Physical and Emotional Harm § 20.

66. Generally, an activity is deemed ultrahazardous if it necessarily involves a risk of serious harm to the person or property of others that cannot be eliminated by exercising utmost care and is not a matter of common usage. *Luthringer v. Moore,* supra, 31 C2d at 498, 190 P2d at 7. In evaluating individual cases without precedent, courts look to six factors set forth in Rest.2d Torts § 520. These several factors are to be considered together; the existence of one alone is usually not dispositive (Rest.2d Torts § 520, comment "f"; *Edwards v. Post Transp. Co.*, supra, 228 CA3d at 985, 279 CR at 233):

- Existence of a high degree of risk of some harm to the person or property of others;
- Likelihood that harm from the activity will be great;
- Inability to eliminate the risk by the exercise of reasonable care;
- Extent to which the activity is not a matter of common usage;
- Inappropriateness of the activity to the place where it is carried on; and
- Extent to which the value of the activity to the community is outweighed by its dangerous attributes.

[Rest.2d Torts § 520; and see Edwards v. Post Transp. Co., supra, 228 CA3d at 985, 279 CR at 233; Ahrens v. Sup.Ct. (Pacific Gas & Elec. Co.), supra, 197 CA3d at 1142, 243 CR at 424, fns. 5 & 6].

67. Regarding one who carries on an abnormally dangerous activity, *Restatement (Second) of Torts* § 519, comment (e) (1977) states that strict liability applies to "harm that is within the scope of the abnormal risk that is the

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 89 of 256

basis of the liability." The key is foreseeability. It is surely foreseeable and within the scope of the abnormal risk that radiation contamination will occur from contact with plutonium that escapes a nuclear fuel plant. Just as the risk incident to dynamite is accidental explosion, a risk incident to plutonium is accidental contamination. *Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908, 920-21 (10th Cir. 1981). The same theory applies to the toxic gases used in semiconductor fabrication (in addition to other dangerous substances), as evidenced in the Exhibits in the Request for Judicial Notice.

68. *Roeder* was a class action arising out of alleged air and groundwater contamination by a mining company. The mine site consisted of an abandoned copper mine and extraction facility in Nevada. The companies who operated the mine from 1918 to 1982 extracted approximately 360 million tons of ore and debris from the open pit mine, much of which remained as waste in a "pit lake" and "tailings or leach heap piles." Toxic substances at the mine site included arsenic, chromium, lead, mercury, uranium, thorium, and radium. These substances had contaminated the local groundwater, surface water, soil, and air, leaving the plaintiffs exposed to them. The district court declined to dismiss plaintiffs' strict liability claims, finding they were available under the factor-based approach of the Restatement (Second) of Torts:

> Open-pit copper mining likely had great value to the community and was likely appropriate to the areas of the Mine Site when it was ongoing, and open-pit copper mining may be common in Nevada (or may have been so during the relevant time period). However, it was not likely a common activity for "many people in the community." Moreover, open pit mining likely involves the use of many chemicals and the storage of many waste materials that will inevitably seep into the ground when stored in outdoor piles, as Plaintiffs allege, creating a high degree of risk of harm to people and land via heavy metals contamination. The harm is likely to be great, causing serious health problems, such as cancer. Finally . . . the risk of such seepage cannot be eliminated through reasonable care. In order to be profitable, a mine must presumably create abnormally vast piles of waste that cannot

> reasonably be isolated from the surrounding air and soil. Whatever is in these waste piles will inevitably diffuse into the surrounding environment. *Roeder v. Atlantic Richfield Co.,* No. 3:11-cv-105-RCJ-RAM, 2011.

69. The court applied that the strict liability rule in the *Dutton* case, an action by cattle ranchers against a phosphate manufacturer for damage to livestock and crops from the release of fluorine into the atmosphere in a rural area. *Dutton v. Rocky Mountain Phosphates,* 151 Mont. 54, 438 P.2d 674, 680 (1968) (quoting W. Prosser, *Prosser on Torts* § 59, at 329 (2d ed. 1955)). *Harmon v. Billings Bench Water Users Ass'n*, 765 F.2d 1464, 1468 (9th Cir. 1985). *McLane v. Northwest Natural Gas Co.,* 255 Or. 324, 467 P.2d 635 (1970) (explosion of stored gas in populous area).

70. An activity might be reasonably safe if performed in an isolated area, yet involve an unreasonable risk of harm if conducted in a highly populated area. E.g., blasting might be ultrahazardous when conducted in developed areas but not when conducted in deserted locations. *Smith v. Lockheed Propulsion Co.*, supra, 247 CA2d at 786, 56 CR at 138; see also *Ahrens v. Sup.Ct. (Pacific Gas & Elec. Co.),* supra, 197 CA3d at 1143, 243 CR at 424; Luthringer v. Moore, supra, 31 C2d at 498, 190 P2d at 7].

71. While sulfuric acid in minute quantities may be used extensively in various commercial applications, its handling and storage in large quantities is rare (not of "common usage"). *Edwards v. Post Transp. Co., supra*. Similarly, industrial use of PCBs might be widespread, but it is an "ultrahazardous activity" if not commonly used in electrical transformers in densely populated areas. *Ahrens v. Sup.Ct. (Pacific Gas & Elec. Co.),* supra, 197 CA3d at 1143, 243 CR at 424. Use of hydrocyanic acid gas in fumigating commercial buildings is ultrahazardous. *Luthringer v. Moore*, supra, 31 C2d at 498, 190 P2d at 7] Using explosives in the vicinity of a residential area is ultrahazardous. *Balding v. D.B. Stutsman, Inc.* (1966) 246 CA2d 559, 564, 54 CR 717, 720.

72. The court in *Williams* discussed *Luthringer v. Moore,* 31 Cal.2d

489, 190 P.2d 1 (1948), which applied strict liability based on the ultrahazardous activity doctrine in connection with the use of hydrocyanic acid gas, a deadly chemical, in fumigating a small shop to exterminate vermin. Also, the court in *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549 (5th Cir. 1987), found that a drilling operation was not an ultrahazardous operation as a matter of law. The court stated in dicta that one of the categories of "ultrahazardous activity" was the "storage of toxic gas."

73. E.H. Schoplen in his article, *Landowner's Or Occupant's Liability In Damages For Escape, Without Negligence, Of Harmful Gases Or Fumes From Premises,* 54 A.L.R.2d 764, 768 (1957 Supp. 1987), found liability had been considered in this area based on the theory of ultrahazardous activities. One was the California case, *Luthringer,* predicating strict liability on the escape of gases; "Hydrocyanic acid gas is defined as a "dangerous or lethal chemical" in the statutes dealing with licensing of those engaged in the pest control business (Bus. Prof. Code, § 8513.)" *Luthringer v. Moore*, 31 Cal.2d 489, 497 (Cal. 1948).

74. In *State Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 468 A.2d 150 (1983), the State of New Jersey sued various corporations that had carried on mercury processing operations at a site for almost fifty years. *Anderson v. Teck Metals, Ltd.*, No. CV-13-420-LRS, 10-14 (E.D. Wash. Jan. 5, 2015). Mercury and other toxic wastes are "abnormally dangerous," and the disposal of them, past or present, is an abnormally dangerous activity. We recognize that one engaged in disposing of toxic waste may be performing an activity that is of some use to society. Nonetheless, "the unavoidable risk of harm that is inherent in it requires that it be carried on at his peril, rather than at the expense of the innocent person who suffers harm as a result of it." *Restatement (Second) [of Torts* § 520], comment h at 39.*Anderson v. Teck Metals, Ltd.*, No. CV-13-420-LRS, 10-14 (E.D. Wash. Jan. 5, 2015).

75. The Restatement specifically addresses this issue, stating that

"[t]ypical abnormally dangerous activities, under the rule stated in this Section, include: Water collected in quantity in unsuitable or dangerous place . . . Explosives in quantity in a dangerous place . . . Inflammable liquids in quantity in the midst of a city . . . Blasting, in the midst of a city . . . Pile driving, with abnormal risk to surroundings . . . **Release into air of poisonous gas or dus**t . . . Drilling oil wells or operating refineries in thickly settled communities . . . production of atomic energy . . . ." Restatement (Second) of Torts § 519 (1977).

The law recognizes some substances as inherently dangerous. Poisonous or dangerous drugs, as well as dangerous chemicals, are familiar examples of substances recognized as inherently dangerous. *Kajiya v. Department of Water Supply* , 2 Haw. App. 221, 629 P.2d 635, 639 (1981)." *Schuck v. Beck*, 497 P.3d 395, 416 (Wash. Ct. App. 2021). See Request for Judicial Notice specifically Exhibit E gases, Exhibits C and N on gas hazards and modeling, and Exhibit O on Zoning and Fire code for toxic gases.

76. See, the poisonous gas or dust cases: "*Luthringer v. Moore*, 31 Cal.2d 489, 190 P.2d 1 (1948) (fumigation with cyanide gas); *Gotreaux v. Gary*, 232 La. 373, 94 So.2d 293 (1957), appeal transferred, 80 So.2d 578 (crop dusting); *Dutton v. Rocky Mt. Phosphates*, 151 Mont. 54, 438 P.2d 674 (1968) (fluorine); *Young v. Darter*, 363 P.2d 829 (Okla. 1961) (herbicide spray); *Loe v. Lenhardt*, 227 Or. 242, 362 P.2d 312 (1961) (crop dusting)." Restatement (Second) of Torts § 519 (1977). Those cases focus on the activity itself as being abnormally dangerous - not simply the conditions that result. For example, fumigation with cyanide gas, dusting crops with poison, and releasing fluoride from phosphate rock have been found abnormally dangerous activities - not the resulting harm the activities caused. *In re E. 1. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, Civil Action 2:13-md-2433, 29-30 (S.D. Ohio Jul. 6, 2015).

77. Although it is not possible to formulate an all-inclusive list of dangerous agencies, an inherently dangerous substance has been defined as "one

burdened with a latent danger or dangers which derives from the very nature of the substance itself." *Hobart v. Sohio Petroleum,* 255 F. Supp. 972, 975, *aff'd* 376 F.2d 1011 (D.C. Miss. 1966). Poisonous or dangerous drugs, as well as dangerous chemicals, are familiar examples of substances recognized as inherently dangerous. 65 C.J.S. *Negligence* § 100(2)(b) (1966).

## VI. Conclusion

In conclusion, Defendant's Motion to Dismiss should be denied for the reasons outlined above. Further, Plaintiff grieves as to the extensive amount of time she had to spend preparing these responses, including injuries of emotional distress in having to read and response to even more false allegations against her, and lack of sleep for two days to even file this response a day late.

The California Constitution is supposed to protect victims like Gjovik and ensure they are "to be treated with fairness and respect for ... her privacy and dignity, and to be free from intimidation, harassment, and abuse, throughout the ... justice process." (Cal. Const., Art. I, § 28(b)(1). Defendant should please stop harassing the Plaintiff.

Plaintiff also respectfully requests that if any claims are dismissed or stricken, she at least be given an opportunity to try to amend.

Dated: July 31, 2024.

Signature:



Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

ASHLEY GJOVIK, )
Plaintiff, )
VS. ) NO. 23-CV-04597-EMC
APPLE, INC., )
Defendant. )

San Francisco, California
Tuesday, July 16, 2024

**TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
ASHLEY M. GJOVIK, PRO SE
2108 N Street, Suite 4553
Sacramento, CA 95816

For Defendant:
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street, 7th Floor
San Francisco, CA 94105
BY: **KATHRYN G. MANTOAN, ATTORNEY AT LAW**

ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
BY: **MELINDA S. RIECHERT, ATTORNEY AT LAW**

REPORTED REMOTELY BY: Kendra A. Steppler, RPR, CRR
Official United States Reporter

**THE COURT:** All right.

**MS. RIECHERT:** The motion will be ruled on I would think in a month or so.

**THE COURT:** Well --

**MS. GJOVIK:** Your Honor, I was hoping to get your -- sorry, go ahead.

**THE COURT:** Go ahead. Go ahead.

**MS. GJOVIK:** I was hoping to get your guidance today, because I'm very confused by the motion Apple filed. And I'm new here. This is my first lawsuit. But it looks like they're rechallenging some of the decisions you already made under this --

**THE COURT:** Oh, well, I haven't looked at it, so I can't --

**MS. GJOVIK:** Okay.

**THE COURT:** I'm not in a position to give you guidance. I mean, if you feel that there's some parts of that that are improper for some reason, you can -- that can be part of your response. But, frankly, I haven't -- I haven't looked at it. It just got filed yesterday.

**MS. GJOVIK:** Understood.

**THE COURT:** And normally --

**MS. GJOVIK:** My thought, though, is they're challenging ultrahazardous under the exact same theory that they did last time that you already approved to go forward.

And then they had waived nuisance, because they didn't challenge nuisance, but now they're challenging it.

So I agree with your staging, and that's probably practically right too, but I also am kind of worried about halting everything else if it seems unlikely, procedurally, that they would even be considered.

**THE COURT:** Well, I'm not going to weigh in, because I haven't looked at it on the potential merits. But my usual rule -- which I will apply here because I think there's a low cost -- and that is I do want to start the wheels -- the gears -- turning on the nonemployment stuff. I'd like you to meet and confer to talk about --

**MS. RIECHERT:** On the employment stuff?

**THE COURT:** On the nonemployment stuff. The employment stuff will be covered by General Order 71 --

**MS. RIECHERT:** Okay.

**THE COURT:** -- in the early disclosures. I think there should be the early disclosures on the nonemployment stuff. And I'd like you to meet and confer to talk about, you know, sort of a -- what discovery -- high-level discovery -- might look like over the next, let's say, 60 days. Then maybe a handful of key documents that could be exchanged or that could be sought. Information about document retention, if that's an issue -- what's available and what -- you know -- what the lay of the land is in terms of access to

So let's -- let's just move forward on this pending motion. Let's move forward on discovery, hopefully with a plan that you can agree to with or without the help of the magistrate judge, and talk about an ADR process also when we get together next month. So it looks like I'll see you in August it sounds like.

**MS. RIECHERT:** Thank you very much, Your Honor.

**THE COURT:** Great. Thanks, everyone.

**MS. GJOVIK:** Thank you.

**THE COURT:** Thank you, Your Honor.

(Proceedings adjourned at 1:53 p.m.)

---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Thursday, August 1, 2024



Kendra A. Steppler, RPR, CRR

Official Reporter, U.S. District Court

(Additional counsel on following page)

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ASHLEY GJOVIK,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 23-cv-4597-EMC

**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Dept: Courtroom 5, 17th Floor
Judge: Honorable Edward M. Chen
Date: August 22, 2024
Time: 1:30 p.m.

relief is barred because she did not bring the claim within one year of the alleged retaliation.

**2. Fourth Claim: The HSITA Claim Should Be Dismissed Because the Alleged Complaints Do Not Concern "Hazardous Substances."**

In the 4AC, Plaintiff seeks to add a claim for retaliation under HSITA, despite not having been given leave to do so.[15] It should be dismissed for that reason alone.

Plaintiff fails to state a HSITA retaliation claim in any event. Labor Code section 6399.7 prohibits retaliation against any employee for filing a complaint or instituting a proceeding under or related to HSITA. HSITA applies "to all employers who use hazardous substances" and "to hazardous substances which are present in the workplace as a result of workplace operations[.]" Cal. Lab. Code §6362. The "hazardous substances" covered by HSITA are those specifically listed by the Director of Industrial Relations. *See id.* §6380; Cal. Code Regs. tit. 8, §339 (containing "the List of Hazardous Substances prepared by the Director pursuant to Labor Code Section 6380").

Plaintiff's alleged complaints do not concern "hazardous substances" within the meaning of HSITA. She does not allege that she complained about Apple's "use" of any enumerated "hazardous substances" at 825 Stewart, nor does she allege that she complained about any enumerated "hazardous substances" "present" at 825 Stewart "as a result of workplace operations." To the contrary, she alleges that she was concerned about vapors that were *potentially* present at 825 Stewart *as the result of prior contamination* by prior tenants and/or owners, not current workplace operations by Apple. *See* 4AC ¶48 ("The 'TRW Microwave' Superfund site is a former industrial semiconductor fabrication and manufacturing facility at 825 Stewart Drive … The primary contaminants in the groundwater contamination plume are chlorinated volatile organic compounds[.]"). Accordingly, Plaintiff has not alleged retaliation covered by HSITA.

**3. Fifth Claim: The Labor Code Section 98.6 Claim Fails to the Extent That It Seeks Civil Penalties.**

The Fifth Claim is barred by the one-year statute of limitations to the extent that it seeks civil penalties. *See* Cal. Code Civ. Proc. §340(a). Plaintiff seeks civil penalties under Section 98.6

[15] In her Third Amended Complaint, Plaintiff made passing reference to HSITA in paragraph 221, part of her Section 6310 claim (the Tenth Claim in that complaint). Apple did not move to dismiss that claim and Plaintiff did not seek and was not granted leave to amend it (including to split it out in multiple claims including a standalone Section 6399.7 claim).

**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**, *an individual*,

Plaintiff,

v.

**APPLE INC**, *a corporation*, et al,

Defendant.

**Case No. 3:23-cv-04597-EMC**

**FOURTH AMENDED COMPLAINT ("4AC")**

**PLAINTIFF'S CLAIMS:**

1. **Termination in Violation of Public Policy**
   California *Tamney* tort claim
2. **Violation of Cal. Whistleblower Protection Act**,
   Cal.Lab.C. § 1102.5
3. **Retaliation for Protected Safety Activities,**
   Cal.Lab.C. § 6310; § 6399.7 via § 6310
4. **Retaliation for Filing Labor Complaints,**
   Cal.Lab.C. § 98.6 via § 98.7
5. **Retaliation for Organizing Around Pay and Work Conditions,**
   Cal.Lab.C. §§ 232, 232.5 via § 98.7
6. **Retaliation for Exercising Constitutional Rights outside of the Workplace,**
   Cal.Lab.C. § 96(k) via § 98.7
7. **Breach of the Implied Covenant of Good Faith and Fair Dealing**
8. **Unfair Competition Law,**
   Cal.B&P.C. § 17200
9. **IIED – Outrageous Conduct**
   California and New York
10. **Tort of Private Nuisance**
    Cal.Lab.C. § 3479
11. **Tort of Ultrahazardous Activities**
    California Strict Liability claim
12. **IIED – Fear of Cancer**
    California / NY tort claims

**<u>DEMAND FOR JURY TRIAL</u>**

indoor air pollution of TCE, 1,2-DCE, Toluene, Chloroform, Methylene Chloride, and Ethylbenzene.[13] From December 2015 to January 2016, Apple managed and submitted a second vapor intrusion testing report to the US EPA.[14] Apple's December 2015 vapor intrusion testing results showed an increase in indoor air pollution and the sub-slab ventilation system compared to the May 2015 results.[15] The highest indoor air reading of TCE doubled between May and December 2015. In May 2015, it was 0.58 $\mu g/m^3$, and the highest indoor air TCE reading in December 2015 was 1.2 $\mu g/m^3$.[16] Apple's report also noted a "*noticeable increase*" of TCE, PCE, and chloroform in the sub-slab venting system, and high levels of toluene and ethylbenzene in the indoor air.[17] Apple moved employees in and never tested again.

54. US EPA issued a formal letter to the current building owner in 2016 explaining that if there were any issues with the integrity of the slab, such as cracks, the U.S. EPA must be notified, consulted, and oversee the repairs and subsequent evaluation that the repairs were successful. Similarly, there is a public land use covenant attached to the property and that runs with the land, which instructs that major issues with the engineering controls and vapor intrusion systems must be reported, and US EPA must be consulted on the next steps.

**THE MARCH 2021 EMAIL**

55. On March 17, 2021, Apple announced to Gjovik and Powers' management team that it would test Stewart 1 for "vapor intrusion" but said nothing more. Gjovik informed her coworkers that their office was a Superfund site on March 17 2021, providing a link to the US EPA website for the site, and news articles referring to their office as a "*paved over environmental disaster zone*" [18]

---

[13] US EPA, TRW Microwave, Site Documents, Vapor Intrusion.
[14] AECOM for Apple, Vapor Intrusion Evaluation Report, Former TRW Microwave Site, supra.
[15] US EPA, *December 2015 VI Evaluation Report*, https://semspub.epa.gov/work/09/1158560.pdf
[16] Id at pages 26-25.
[17] AECOM for Apple, Vapor Intrusion Evaluation Report, Former TRW Microwave Site, supra at pg11.
[18] Alexis C. Madrigal, *Not Even Silicon Valley Escapes History*, The Atlantic (July 23 2013).

*still open*?" One of the managers noted: *"What is crazy is … they say no daycare, no elder care, no residential, etc. So, it is fine & dandy for everyone else to get slowly poisoned?… So glad you are digging into this stuff for all of us."* Around this time, Gjovik also raised concerns about COVID-19 safety, wildfire smoke safety, Right to Know/Prop 65, and Apple's reporting/tracking of injuries.

63. In late March 2021, Gjovik repeatedly raised concerns about the Superfund site to her supervisors. After reviewing hundreds of pages of documentation for the site, Gjovik advised Apple that Apple had been negligent, that the site was not safe, and she complained Apple seemed unwilling to comply with CERCLA and health/safety regulations. She said she now believed her fainting spell in 2019 in her office was due to vapor intrusion. She was also shocked and distressed to see the 'hot spot' for the building was her desk with 1,900 ug/m3 of TCE in the sub-slab ventilation system. Powers threatened her and ordered her to stop talking with her coworkers about her safety and environmental concerns. He said she must believe whatever EH&S tells her. West first claimed the poisonous gas was sealed under the floor but, after learning the floor was cracked, told Gjovik to quit Apple.

64. Gjovik met with Apple EH&S on April 2 2021, May 17 2021, and July 7 2021. For some reason, Employee Relations, Jenna Waibel, was also there. Waibel refused to tell Gjovik why she was involved, as Powers had asked for Employee Relations assistance in trying to silence Gjovik about Gjovik's concerns.

65. Gjovik asked questions about the status of the site and the rationale for certain design and monitoring decisions. Gjovik expressed that she was disappointed with some of the answers. EH&S (Michael Stieger) told her Apple Legal and EH&S intentionally do not tell employees if they work on Superfund site and admitted that Apple deliberately does not train workers about safety procedures related to toxic waste exposure from clean-up sites. Gjovik said that was both unsafe and unwise. Gjovik also complained that the prior testing used insufficient durations and methods, had

106. On August 23 2021, U.S. EPA CERCLA Quality Assurance submitted notes: "*Significant, visible slab cracks, gaps, and penetrations had been sealed… However, large test equipment is bolted to the slab, and it is unclear if these installations penetrate the slab*." He added that related to the sub-slab exhaust on the roof above Gjovik's desk, "*vapors could be building up on the roof near the HVAC intake*."

107. On August 23 2021, a news article discussing Apple's employment practices commented that: *"One Apple employee, Ashley Gjovik, has been very vocal on Twitter by stating multiple problems that have occurred within Apple. She alleges a powerful cover-up culture within Apple that led to her eventual administrative leave."*

108. On August 26 2021, Gjovik filed an NLRB charge against Apple and posted on Twitter that she did so. On August 27 2021, Apple's Business Conduct team closed Gjovik's complaint about Ronald Sugar and Gjovik's Superfund office. The message posted said: "*…we have shared them with the appropriate internal teams for review and investigation,*" with the ticket updated to say, "*Request is closed. This request is closed and can't be reopened.*"

109. On August 29 2021, Gjovik filed a formal complaint to the U.S. EPA about Apple and her office at Stewart 1, complaining of Apple's "lack of due diligence," complaining about "negligence," and "*recklessness*," and "*violations of Right to Know & OSHA*." Gjovik complained, "*Apple's response has been to misrepresent their activities and the site, intimidate me to not speak about workplace safety concerns related to the site, and have refused to notify the Federal EPA of changed circumstances at the site*." Gjovik did not know about the US EPA safety inspection ten days prior.

110. On Sunday, August 29 2021, at 11:32 AM PST, Gjovik filed a Whistleblower Protection Program complaint with the US Department of Labor, reference number ECN76833. On August 29 2021, Gjovik filed retaliation and labor code violation charges to the California Department

employee who has authority to investigate, discover or correct the violation; or providing information to or testifying before, any public body conducting an investigation, hearing, or inquiry.

167. Cal.Lab.C. § 1102.5 also covers Gjovik's' public disclosures as due to Apple's extreme power and control over the government agencies who are supposed to be able to regulate it, often the only party in a position to force Apple to correct the issue is the public. Many of Gjovik's public statements in August and September 2021, and statements to coworkers in June and July 2021, all before her termination, noted that was why Gjovik was bringing her complaints forward to her coworkers and the public – so the public pressure may force Apple to do the right thing for once. At the very least, Apple was monitoring Gjovik's social media activity and articles, so Apple was informed of her disclosures through that surveillance.

168. Gjovik filed several complaints under multiple laws, which were known to Apple executives, bosses, and administrators (by Gjovik informing them directly, or by Gjovik speaking about them publicly on social media and the press, or by Apple's surveillance of Gjovik before her termination.

–<u>Violations of CERCLA and implementing contracts</u>

a) Made complaints to Apple about reporting requirements. Then notification to Apple that complaints were filed to the government.
b) Filed complaints to the US EPA and CalEPA. Complaints to US EPA trigged a proceeding with an inspection and corrective actions due to Gjovik's disclosures.

–<u>Violations of the RCRA</u>

a) Made complaints to the CalEPA in September 2020 – April 2021 about the soil and groundwater contamination in the property next to ARIA.
b) Made complaints to Apple management about Apple's statements to her directly contract in a 2016 article about a large settlement Apple made with DTSC over numerous RCRA violations.
c) Made complaints to Apple management about Powers and West sabotaging a hardware reuse program she created, which reduced hazardous waste.
d) Wrote article and published in SF Bay View in March 2021 raising concerns about environmental safety violations at her apartment next to ARIA: *"I thought I was dying; my apartment was built on toxic waste."*

–Violations of the Clean Air Act

a) Made complaints to US EPA and CalEPA in September 2020 – April 2021 about the ambient air around Apple's ARIA.
b) Complaint to California Air Resource Board triggered proceeding with investigator contacting her for information and conducting an inspection.

–Fraud related to environmental crimes

a) Made complaints and inquiries to the Santa Clara County District Attorney's office in April – May 2021.
b) Made complaints to the US EPA in July 2021. Made formal complaint to Apple in August 2021.
c) Statutes: 42 U.S.C. §§ 7401-7671; 42 U.S.C. §§ 9601-9675; 42 U.S.C. §§ 11001-11050 TSCA), 15 U.S.C. §§ 2601-2692

– Violations of the anti-retaliation provisions of environmental laws

a) 42 U.S.C. § 9610, and 42 U.S.C § 7622, and 15 U.S.C. § 2622
b) Filed complaints to the U.S. EPA, CalEPA, and U.S. Dept. of Labor around August 29 2021.

– Violations of the NLRA

a) Filed complaints to U.S. NLRB about NLRA § 8(a)(1) violations on August 26 2021.
b) Complaints initiated a proceeding with an NLRB field agent contacting Gjovik for an interview in early September 2021.

– Violations of Cal. Labor Code and OSH Act

a) Filed complaints to Cal.DOL, CalOSHA, and US Dept. of Labor re: CCR, Title 8, General Industry Safety Order 5194.

– Violations of the OSH Act at 29 U.S.C. § 660

a) Filed complaints to CalOSHA, US Dept. of Labor
b) Complaint initiated a proceeding with a Wage & Hour investigator contacting Gjovik for information in early September 2021.

– California Constitution Article 1, § 1 Right to Privacy

a) Made complaint to Apple management in August 2021.
b) Shared concerns with reporter for advocacy article in August 2021: *"Apple Cares about Privacy, Unless You're an Apple Employee."*
c) Made complaints on social media in August – September 2021.

– Anti-Discrimination Laws (Basis of Sex and Disability)

a) Filed complaints to U.S. Dept. of Justice Civil Rights in August 2021.
b) Filed complaints to U.S. EEOC and Cal.DFEH in August 2021, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e; California Government Code § 12920.

– Smuggling and Violations of Sanctions

a) Made complaints to West and Powers in 2020 and again in July 2021.
b) Filed a complaint to Apple Business Conduct in July 2021.
c) Notification to West and Powers she escalated in July 2021.
d) Filed a complaint to the US FBI in September 2021.

OSHA.

173. Gjovik complained about violations of, and issues related to, numerous topics, including:

- HazCom and employee exposure to chemicals [Cal.Lab.C. §§ 6398, 6400-6405, 6408; 8 Cal. Code. Reg. § 340.2; 29 CFR Z; OSH Act § 1910.1020]
- COVID-19 safety and communication [Cal.Labor.C. §§ 6325; 6409.6, 6432]
- Wildfire smoke safety [Cal.C.Reg. Title 8, § 5141.1]
- Employee injury tracking and reporting [8 Cal.C.Reg. § 14300]
- Efforts to reduce e-waste; and Apple's prior e-waste (Universal Hazardous Waste) violations. [Cal. Health/Safety; RCRA]
- Environmental safety including vapor intrusion exposure [Cal.Lab.C. § 6406; CERCLA/SARA, RCRA, CAA, CWA, OSH Act HazCom]
- Right to Know [EPCRA; Cal.Lab.C. § 6399.7] and Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986 [Cal. Health & Safety Code §§ 25249.5 to 25249.14].
- OSH Act Workplace Violence [Cal.Lab.C. §§ 6401.7, 6401.9]

174. Apple retaliated against Gjovik preemptively out of fear that Gjovik would file additional complaints related to health and safety at the workplace. Apple hoped its retaliation would cause Gjovik to drop her existing complaints out of fear and intimidation, and to prevent Gjovik from filing additional complaints.

**COUNT FOUR: CAL. LABOR CODE § 6399.7**

**(Violation of Cal.Lab.C. § 6399.7 via § 6310)**

175. In violation of the CALIFORNIA HAZARDOUS SUBSTANCES INFORMATION AND TRAINING ACT, Apple did discharge and discriminate against Gjovik because Gjovik filed a complaint; because Gjovik instituted, or caused to be instituted, proceedings under or related to the provisions of this Act; because Gjovik has testified, or was about to testify, in such proceeding; and because Gjovik exercised rights afforded to her pursuant to the provisions of this Act, on her own behalf, and on behalf of others.

176. Gjovik repeatedly complained to Apple about employee's Right to Know about

chemical exposure, about Apple's duty to disclose to workers if they were exposed and if so to what and how much, and to explain the health impacts of those chemical exposures. Apple EH&S told Gjovik that Apple legal decided that Apple employees "*have no Right to Know*." Gjovik then complained about this to the US EPA and other agencies and told Apple she was complaining about them. A violation of the provisions of this section shall be a violation of the provisions of Section 6310." [Cal.Lab.C. §6399.7]

**COUNT FIVE: CAL. LABOR CODE § 98.6**

**(Violation of Cal.Lab.C. § 98.6)**

177. Apple violated Cal.Lab.C. § 98.6 when Apple did discharge and discriminate against Gjovik for engaging in certain activities, including *"filing a complaint with the Labor Commissioner or testifying in such proceedings*." Gjovik filed a complaint with the California Labor Commissioner on August 29 2021 and Apple was notified she did so through her public statements and notification from the agency.

178. Apple violated § 98.6 by retaliating against Gjovik due to Gjovik filing a claim with and causing to be instituted proceedings related to the rights under the jurisdiction of the California Labor Commissioner, and for exercising rights provided to her under California Labor Code on behalf of herself and on behalf of other employees. Apple punished her for doing so.

179. Animus was shown in many of the comments and communications from Apple employees, managers, and agents before and after Apple terminated Gjovik. Comments frequently referenced Gjovik's protected activities, but claimed Gjovik was lying and acting in bad faith, and then argued that because Gjovik make the complaints, she should be punished for it.

180. Apple retaliated against Gjovik due to Gjovik's protected activity, and she suffered materially adverse actions with a causal connection to the protected activity. Apple engaged in actions prohibited by this section (termination, suspension, discipline, harassment, etc.) within 90 days of

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 108 of 256

bonuses, salary increases, and RSU stock grants, and was recently promoted. Gjovik substantially performed, or tendered performance, for her job duties. During each of Gjovik's six annual performance reviews, she always received a salary increase, a large RSU grant, and a performance bonus. All conditions required for Apple's performance had occurred. Apple breached the covenant by intentionally terminating Gjovik when her annual performance review was due, which would have been accompanied by a performance bonus that she had already earned through her successful performance in 2020-2021. (The end of the fiscal was June 30 2021).

191. In violation of the covenant of good faith and fair dealing, Apple deliberately undermined Gjovik's ability to fulfill her contractual obligations, evading the spirit of the agreement, and frustrating her ability to benefit from the agreement. Gjovik was damaged due to Apple's breach and is owed the performance bonus due to her, with interest.

**COUNT NINE: CAL. UNFAIR COMPETITION LAW**

**(Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*)[44]**

192. Apple has engaged in business acts or practices that were unlawful, unfair, deceptive, or misleading, and therefore violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* This UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including but not limited to any act or practice that constitutes deception, fraud, misrepresentation, or the concealment, suppression, or omission of a material fact in a consumer transaction, or that is likely to deceive the consuming public.

193. Apple is unlawfully coercing employees to provide personal data, including biometrics, which Apple can use for research and development, including training machine learning models, without actual consent or compensation, and in violation of federal competition laws and state and federal data protection laws. Apple's Whistleblowing Policy acknowledges that reports of

[44] The SAC § 17200 claims were previously nested under § 6310 and *Tamney* claims.

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 109 of 256

198. Gjovik also attempted to decline participating in the Gobbler program, but she was tricked into enrollment through Apple's misrepresentations of the years long study and data collection as a one-time social event. Gjovik was only told what the study involved (Gobbler) after she entered a locked compounds with several Apple Global Security guards surrounding her, asking her if she would 'consent.' After that day Gobbler has always been attached to Gjovik's iCloud account. Gjovik still sees Gobbler listed as part of her personal account today and no way to remove it.

199. Further, the way Gobbler works, employees are then also taking videos and gathering the biometrics of anyone around their iPhones, and per Apple's termination of Gjovik, Apple's policy is that employees would be fired if they tried to warn consumers and others around them that Apple was capturing videos of them and their biometrics for product development. Apple's declaration that it can terminate employees for protesting these invasions and warning the public is "*sufficiently serious in [its] nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right*." One must assume Apple also has hundreds of thousands (or even millions) of non-consensual biometrics and face-prints of non-employees – including children – that are used to train Apple's machine learning models. These photos/videos most certainly include nudity, sexual acts, and use of toilets– along with biometric information.

200. Apple tells consumers it would never do what it is doing with Gobbler. Apple told employees nothing until after the employees signed the non-disclosure agreements for the program, and then Apple told employees they could not tell anyone what the program would now be doing on their iPhones. Apple was aware Gobbler was not a market-ready product (nor was it intended to be) and that the data collection performed by Gobbler was not legitimate data collection for commercial research and development, yet Apple used the app anyway while continuing to promise customers that Apple would never collect their data and biometrics.

201. Gjovik's opposition and complaints about Apple's coercion of employees into unpaid

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 110 of 256

public. Apple should be required to restore these monies to Gjovik, her former co-workers, and the public.

205. However, Apple's extensive use of these illegal practices will make calculating damages a challenge. Without injunctive equitable relief, Gjovik and her prior coworkers will suffer irreparable injury, which damage remedies cannot readily remedy. Apple should be ordered to disgorge unlawful data and the fruit of the poisoned data.

206. Gjovik requests an order that prohibits Apple from using personal employee data in for-profit product development, including medical experiments, anatomical measurements, and imaging, gathering employee biometrics, any use of the Face "Gobbler" application, and other conduct violating their rights of privacy.

207. Gjovik also requests in injunctive relief of an order for disgorgement of the unlawfully and unethically obtained data, at the very least of Gjovik's data, including any products developed using Gjovik's personal data, including Gobbler images.

**COUNT TEN: IIED – OUTRAGEOUS CONDUCT**

**(Intentional Infliction of Emotional Distress – Traditional)**

208. The statute of limitations for IIED claims under California state law is two years from the date of injury and under New York state law it is one year from the act. Gjovik lived in California until August 31 2022 and then lived in the state of New York from September 1 2022 up to the date the complaint was filed on September 7 2023. The New York statute of limitations covers Gjovik's presence in New York from September 7 2022 through September 7 2023. The California statute of limitations cover's Gjovik's presence in California from September 7 2021 through September 1 2022.[45] Apple terminated Gjovik's employment on September 9 2021 and thus only two days fall

[45] Gjovik also reserves the right to claim IIED under Massachusetts law if Apple continues inflicting emotional distress upon her through the trial.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **Ashley M. Gjovik,** Plaintiff, | ) | No. 3:23-cv-04597-EMC |
| vs. | ) | San Francisco, California |
| **Apple Inc.,** Defendant. | ) | May 16, 2024<br>1:30 p.m. |

**BEFORE: THE HONORABLE EDWARD M. CHEN, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS VIA ZOOM VIDEOCONFERENCE**

**MOTION HEARING**

Official Court Reporter:
Jennifer Pancratz, RMR, CRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

surviving than others. I don't know if you see it that way, but I've given you a couple examples where Sarbanes-Oxley and Dodd-Frank would have certain requirements that don't appear to be met, but you're closer to the target when you're talking about the Whistleblower Act under California law.

I'll take your observations at this point.

MS. GJOVIK: Thank you, Your Honor.

I agree, some of my claims are stronger than others. My intention with the large number of claims was to have broad discovery for claims I thought that I had a valid claim for, but when it comes to a trial, my plan would be to definitely simplify of the strongest claims.

For the Dodd-Frank and SOX claims, I did have to really, really simplify them to meet the page limit, and I tried my best to cover that.

There's -- there's allegations of fraud related to statements that Apple makes publicly about its environmental practices that I had raised prior to being terminated, specifically pointing to articles, specifically pointing to a prior lawsuit; and my major concern was it appeared that Apple was making fraudulent statements publicly in order to have more brand loyalty, to make more money, when actually they were not doing the things they were doing.

And I had raised that to someone in Apple's environmental and lobbying team even, and she worked there, and

shareholders and not sort of general statements to the public, although, you know, that's not to say that general statements to the public can't be a securities violation.

MS. GJOVIK: I agree, Your Honor. I also, I should emphasize, the concerns about the prior CEO of the company responsible for the pollution at my office, when I was raising concerns about whether he might have had something to do with it, I believe probably the clearest SEC claim would be failure to disclose or failure to manage a related party transaction.

And I actually had specifically, you know, quoted the director rules about that, and I was wondering if he might have been doing some self-dealing to help out his old company. And I had -- I filed a business conduct complaint before I was fired, and it was supposedly raised to, per policies, Mr. Ronald Sugar to investigate himself, and then I was complaining about that too.

But I hear your concerns and I definitely am open to focusing on the strongest claims, but I felt like I might have a plausible claim for SOX and Dodd-Frank.

THE COURT: Okay. Let me just hear response from defendants on -- just take those, the SOX and Dodd-Frank, the argument that there has been, for instance, nondisclosure of conflict of interest. There's been public statements that are -- belie the actual situation via the business, the working environment, that could affect stock prices, et cetera,

MS. RIECHERT: Absolutely, Your Honor. And I can also talk, if you want, about these allegedly false public statements, but I think, again, we covered that pretty well in our brief. She doesn't say what false public statements we specifically made, and obviously she's accusing the company of fraud, and we know that fraud has to be pled with specificity.

So I don't believe that she's pled with any specificity what fraudulent statements we made. And the Erhart case, E-R-H-A-R-T, versus Bofi Holding that we cited in our papers specifically says that without knowing what particular conduct the plaintiffs complained about, we cannot -- the Court cannot meaningfully analyze whether she plausibly alleges --

THE COURT: So if Ms. Gjovik is then given a chance to amend and she comes back and just theoretically says, well, here's a statement made to the press generally about the culture and the nondiscrimination and the clean -- you know, compliance with environmental laws and making sure of workplace safety and all that sort of stuff, and she alleges that all that was knowingly and falsely made to the public -- in other words, if she were then to specify the statement, I take it you would still take the position that that would not rise to the level of an allegation of a securities fraud violation. Or what would your response be to that?

MS. RIECHERT: That's exactly what our response would be. And she did that in the second amended complaint, and we

dealt that with a motion to dismiss the second amended complaint, and then it got out of the third amended complaint. So we do not believe that making -- that she's made any allegations that were linked to securities fraud, and touting environmental practices is not securities fraud.

THE COURT: What about on the RICO? She's made RICO claims. I think -- I think some of the arguments here is that in order to state a RICO claim, you have to demonstrate that there are distinct entities. You can't have a RICO claim against the corporation itself and its employees and its actors, so it has to be a non-Apple organization.

But, you know, if they're engaged in a pattern of racketeering activity, what's your response to the general RICO claim?

MS. RIECHERT: So there's an (a) and a (b) and a (d), and I have a specific response on each.

THE COURT: Okay.

MS. RIECHERT: So on the 1962(a), she was not injured by the alleged use of investment or racketeering income. And again, if Ms. Gjovik is allowed to assert a RICO claim based on the allegations in the complaint, then every employment case could be a RICO case.

RICO is very, very specific on what it requires, and she has to show that she was injured by the use of the investment or racketeering income. And simply reinvesting the

proceeds of the racketeering income isn't enough to get a RICO claim, and that's the Westways World Travel case that we cited in our papers.

THE COURT: All right.

MS. RIECHERT: So under (a), the allegations do not meet the requirements of (a), and she doesn't have standing to assert those claims.

On (c), 1962(c), again, our argument, primary argument, is the one that you've asserted, which is there's got to be a conspiracy between Apple and some other entity, and there isn't. It's just the allegations in the complaint. The enterprise is not different from Apple itself.

And your own -- Your Honor's own decision in Coronavirus Reporter versus Apple Inc. clearly shows you know a lot about this area of the law, much more than I do; but I do think that that decision, where you said that PR firms and law firms and rival developer cronies do not meet the requirements of an enterprise in order to assert a claim under (c).

And so there just isn't enough there to assert that there was an enterprise separate from Apple.

THE COURT: All right. And I'll give you a chance, Ms. Gjovik, to respond on the RICO, if there's any additional points you'd like to make on that.

MS. GJOVIK: Yes. Thank you, Your Honor.

So for the 1962(a), I don't think I included the case

and I'd appreciate a chance to try to bring it in potentially, but I did find a case in this district where investing the proceeds into a cover-up and witness intimidation effort was found to be a plausible claim.

I hear what Apple's saying with you can't just invest the money back into the enterprise, and I agree with that. There's a lot of cases that say that. I think my allegation that they were investing their proceeds into these efforts with their global security team and contractors and lawyers to silence employees and whistleblowers, to cover up the stuff they were trying to expose, I think is a plausible claim.

As for the not having a separate enterprise, I did plead a number of separate parties outside of Apple. I pleaded a lot more in previous ones, so I could definitely amend to add more, and more specificity. But there's a lot of precedent that -- alleging that a law firm is separate than the company even if they're representing the company. That was in a Philip Morris case, so the allegations of their lawyers helping them engage in the racketeering.

Also, their environmental consulting firms, which are separate companies completely, one specifically with the -- relating to chemical weapons. They did have this -- an environmental group, ACT Environmental, at that silicon fabrication facility assisting them with the manifests and the regulatory paperwork, which are state and federal filings where

in other forums. We have a CERCLA case already before the Department of Labor administrative appeal.

THE COURT: Yeah. Yeah.

All right. Any comments you'd like to make on that specific question, Ms. Gjovik, about how specific the complaint needs to have been -- needs to be?

MS. GJOVIK: Yes, please. Thank you, Your Honor.

I can definitely amend or brief post-hearing in far more specificity. I was trying to keep it simple. I was trying to heed Your Honor's advice of not duplicating my allegations in multiple sections, so I was hoping that the allegations I was making in the fact bank and the other claims would then be incorporated into that section so I didn't have to say everything twice and thrice.

I have a list of probably dozens of statutes that I alleged were violated prior to me being terminated, including my formal complaints to the California Department of Labor, the U.S. Department of Labor, NLRB, EEOC. Apple received notice of many of these complaints prior to me being terminated, if not saw me posting about it and talking to the press about it, which they would have been asked for comment.

So I think they've known for a very long time of those specific things. You can't fill out those forms for those agencies without having to specify why you think that law was broken that that agency oversees. So if Your Honor would like

**C E R T I F I C A T E**

I, JENNIFER PANCRATZ, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED this 23rd day of May, 2024.

s/Jennifer Pancratz
Jennifer Pancratz, RMR, CRR, CRC

**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**, *an individual*,

Plaintiff,

v.

**APPLE INC**, *a corporation*,

Defendant.

**Case No. 3:23-CV-04597-EMC**

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES,**

**IN OPPOSITION TO DEFENDANT'S:**

**MOTION TO DISMISS**

Dept: Courtroom 5, 17th Floor (Virtual)

Date: May 16, 2024

Time: 1:30 p.m.

Case: 26-47-16, 11/13/2026, DktEntry: 10.4, (121 of 256)

34. Gjovik's home was 300 feet from Apple's semiconductor fabrication plant. Like in the classic California ultrahazardous activity case, *Alonso v Hills*, an ultrahazardous activity like use of poisons or blasting, only 200 yards (or here, 300 feet) from hundreds of homes in a residential district, will be found to be an ultrahazardous activity with strict liability even without proof of negligence. *Alonso v. Hills* (1950) 95 C.A.2d 778, 214 P.2d 50; *McKenna v. Pacific Elec. Ry. Co*. (1930) 104 C.A. 538, 540, 286 P. 445. (TAC starting at ¶ 22).

35. Operating a business on a dangerous toxic waste dump site, like a Superfund mega-site, with a pathway for vapor intrusion, and vapor intrusion contaminants of concern including dangerous chemicals like TCE and/or Vinyl Chloride, is an ultrahazardous activity. The status of a property as a Superfund site has been a factor in deciding if an activity is ultrahazardous. *E Industries v. Safety Light Corp*., 123 N.J. 371, 394 (N.J. 1991) ("Plaintiff's property is befouled with radium because of defendant's abnormally-dangerous activity…. Moreover, the property has been earmarked as a Superfund site."). CERCLA is a strict liability statute for a reason. Superfund sites are also relatively uncommon. As of September 2023, there are only 1,336 active Superfund National Priority List sites in the United States.[3]

## D. PLAINTIFF STATES A PLAUSIBLE CLAIM FOR SOX AND DODD-FRANK WHISTLEBLOWER RETALIATION

36. Apple's response to Plaintiff's SOX and Dodd-Frank claims are compromised due to excessive citations and quotes of mooted pleading and the contraband SEC whistleblower tip. (Def's Motion to Dismiss at 9-13.) Due to the extensive quoting and citing to the SAC, Plaintiff responds generally here instead of point by point.

[3] US EPA, Superfund: National Priorities List (NPL), [last visited 12/20/23], https://www.epa.gov/superfund/superfund-national-priorities-list-npl (noting data is current as of September 7 2023).

Case: 26-4716, 11/18/2026, DktEntry: 10.4, Page 122 of 256

37. When enacting Sarbanes–Oxley's whistleblower regime, in comparison, Congress had a more far-reaching objective: It sought to disturb the "corporate code of silence" that "discourage[d] employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally." “insulate ” *Lawson v. FMR LLC,* 571 U.S. 429, 442 (2014). Accordingly, the Sarbanes–Oxley anti-retaliation provision covers employees who report fraud not only to the SEC, but also to any other federal agency, Congress, or an internal supervisor. See 18 U.S.C. § 1514A(a)(1). *Digital Realty Trust, Inc. v. Somers,* 138 S. Ct. 767, 778 (2018). 18 U.S.C. § 1514A(a). Section 806 is directly connected to an employee's terms and conditions of employment, as it was enacted to provide "protection for employees of publicly traded companies who blow the whistle on fraud and protect investors." S. REP. NO. 107-146, at 10 (emphasis added). Its "focus" – that is, the conduct it regulates – is on prohibiting employment-related retaliation. *Garvey v. Admin. Review Bd.,* 56 F.4th 110, 127 (D.C. Cir. 2022)

38. There is a very similar fact pattern as this case as in *Wadler v Bio-Rad Labs*. In that case there was a sufficient claim for SOX/Dodd-Frank whistleblower retaliation when an employee suspected the company was engaged in FCPA violations and started investigation, only to meet a variety of types of retaliation and obstruction. *Wadler v. Bio-Rad Labs., Inc.,* 141 F. Supp. 3d 1005, 1008-9 (N.D. Cal. 2015). The employee asked for documents and the company refused to provide them; the employee claimed he was being “stonewalled”; and the conduct made the employee "become suspicious that [the] corruption issues …. were known to senior management, and that management was intentionally blocking his efforts to uncover evidence of bribery and related misconduct." *Id.* at 1009.

39. The *Bio-Rad* employee he then took his concerns to the Audit Committee of the Board of Directors, but complained that the people who would investigate his claim "had a clear conflict of interest,” and then employee was then terminated. *Id* at 1009. The fact patterns in

*Wadler v Bio-Rad Labs* are incredibly similar to this controversy between Gjovik and Apple. Wadler obtained a jury verdict of $11M against Bio-Rad Laboratories, Inc., and its CEO for violations of the Sarbanes-Oxley Act, the Dodd-Frank Act, and California public policy by terminating the employee in retaliation for his protected activity. *Wadler v Bio-Rad Labratories*, 916 F.3d 1176 (9th Cir. 2019).

40. Plaintiff has plead enough facts to survive a Motion to Dismiss and should be allowed to proceed to discovery for both SOX and Dodd-Frank claims. "After all, the issue presented by a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998).

### E. PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF THE BANE AND RALPH CIVIL RIGHTS ACTS

41. Apple's response for the Bane and Ralphs Act sections is similarly problematic as the SOX and Dodd-Frank claims. Apple responds with extensive citations and references to prior mooted pleadings, and with legal arguments arising out of those "null" documents. (Def's Mot. to Dismiss at 17-20. Plaintiff will once again answer generally and ask for deference from the Court.

42. Apple's main arguments in the overall section seem to be around vicarious liability theories (including conspiracy and respondeat superior), attempted interference with civil rights compared to actual interference, and whether there was a sufficient amount of violence. Plaintiff's pleading covered much of the threats, intimidation, coercion, and interfere and there is not a heighted pleading standard requiring the equivalent of an indictment (which is what Apple seems to be asking for) in order to survive a civil Rule 12(b)(6) Motion.

43. Several things Apple argues about are not accurate. For instance, Apple claims Plaintiff "alleges that 'Apple' threatened, intimidated, and coerced her," but "does not identify any Apple employee(s) who engaged in the alleged conduct." (Def's Motion to Dismiss at page

questions for a jury.[4] Further, Rule 12(b)(6) motions are "especially disfavored" where the complaint sets forth a novel legal theory "that can best be assessed after factual development." *McGary v. City of Portland*, 386 F3d 1259, 1270 (9th Cir. 2004) – (appreciating when a "*claim raises some novel issues*" and noting disfavor in dismissing "*cases where the complaint sets forth a novel legal theory that can best be assessed after factual development*.") Id.

**F. PLAINTIFF STATES A PLAUSIBLE CLAIM FOR VIOLATIONS OF THE RICO ACT**

47. To Apple's primary arguments under the RICO Act seem to be lack of concrete injury under 1962(a), failure to plead an Association-in-Fact Enterprise distinct from Apple, vicarious liability theories, lack of continuity and common purpose, and no relatedness, (Def's Motion to Dismiss at page 5-9.) Some of these issues are quickly addressed. RICO generally does not require pleading with particularity for most criminal conduct. "Requesting a complaint be made less vague is not to require the pleader to disclose details of the case," see *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979), "or to provide the evidentiary material that may properly be obtained by discovery," see *Famolare, Inc. v. Edison Bros. Stores,* Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981).

48. The Association-in-Fact Enterprise is well plead enough for this phase, as discovery is usually when these things become crystalized. Apple claims at page 5, "she does not (and cannot) allege an enterprise distinct from Apple," but then summarized a few of the named individuals and groups on page 7, and at the bottom of page 7 admits two of the Predicate Acts are pled with non-Apple entities. (Def's Mot. to Dismiss at page 5-7). The Association-as-Enterprise does not seem to be an issue.

[4] For instance, see: *Richardson v. City of Antioch*, 722 F.Supp.2d 1133, 1147 (N.D.Cal.2010). *Williford v. Scrivner*, Case No.: 1:15-cv-00653 - KJM - JLT, 6 (E.D. Cal. Aug. 17, 2015); *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993).

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 125 of 256

49. The only relatedness argument seems to be exclusively based on Plaintiff's mooted original complaint from September 7 2023. (Def's Mot. to Dismiss at page 8). Plaintiff will not respond to that. The continuity and common purpose arguments seem centered on two topics. First, direct comparisons to *McGowan v Weinstein*, and second, claiming there's no other victims and Plaintiff must bring forward more victims to Apple as proof. (Def's Mot. to Dismiss at 9.)

50. Apple compares this matter to the dismissed RICO claim in *McGowan v Weinstein*, however in that case the allegations centered only around one victim and a singular purpose. *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1012 (C.D. Cal. 2020). She did have a plausible claim for corporate vicarious liability however, explaining: "A principal or employer who is not at fault directly for the tortious conduct of his employee or agent in the commission of a fraud may become liable in any event." *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1016 (C.D. Cal. 2020) quoting *Clark Equip. Co. v. Wheat* , 92 Cal. App. 3d 503, 521, 154 Cal.Rptr. 874 (1979).

51. Apple complained "…she does not identify any other 'witness'… she has never alleged Apple silenced those coworkers…" (Def's Mot. to Dismiss at 9). During *United States v. Raniere*, 384 F. Supp. 3d 282, 325-26 (E.D.N.Y. 2019), when Raniere asked the US government a similar thing ask Apple asks now, the Courts and government responded to Raniere that kind of information has "no bearing on whether the alleged victims were so directed or threatened." The Court the cites similar tactics. See *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) ("A defendant may not seek to establish his innocence ... through proof of the absence of criminal acts on specific [other] occasions."); *United States v. Gambino*, 838 F. Supp. 744, 748 (S.D.N.Y. 1993) (observing that because "a defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence, such testimony would not be exculpatory within the requirements of Brady"). *United States v. Raniere*, 384 F. Supp. 3d 282, 325-26 (E.D.N.Y. 2019).

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (126 of 256)

52. The scheme, common purpose, continuity, pattern, and association is re-summarized here as a general response to Apple's complaints.

**1) Defendant directly injured Plaintiff by its racketeering Predicate Acts, and Defendant's investment of racketeering profits, in violation of RICO Act 1962(a), 1962(c), and 1962(d).**

53. Defendant increased sales and revenue by claiming to be an environmentally friendly company, but those claims were wire fraud, for example: Defendant's claims of a "Zero Waste" program, when "Zero Waste" actually means open illegal dumping, which saves Defendant money that would have been spent on proper disposal. (TAC ¶ 144.) Further, Defendant's open dumping at 3250 Scott Blvd included chemicals categorized as chemical weapons / weapons of mass effect (including chlorine, arsine, and phosphine) and Defendant planned to release/dump those chemicals in a crowded neighborhood where Plaintiff lived, and could cause mass harm to thousands of people, and did cause severe injury and suffering to multiple named people, including but not limited to Plaintiff, due to Defendant's chemical weapon use and release. (TAC ¶ 163.)

54. Defendant did also cause severe injury to Plaintiff's business and property due to their use and release of chemical weapons, damaging and destroying ascertainable and defined items of chattel property (TAC ¶ 110, 180, 182, 183, 188, 240), terminating her before she received her performance bonus she had already earned [TAC ¶ 237], and harmed her business by disabling her and causing her to be away from work and to take a reduced course load in law school while she was exposed to their chemical weapon releases. (TAC ¶ 251.) *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). *Sedima SPRL v Imrex Co*, 473 U.S. 479, 496-96 (1985). The injury to business and property can be minor and is more than sufficient here. *Northeastern Women's Ctr. Inc v. McMonagle*, 868 F.2d 1342, 1357 (3d Cir. 1989) – ($887 of chattel property damage sufficient RICO injury).

55. Defendant did also engage in more wire fraud to cover up their illegal disposal of chemical waste, including conducting a third-party vendor (e.g., ACT Environmental TAC ¶ 120) to assist Defendant in falsifying Defendant's manifest paperwork and regulatory filings, and illegally dump chemicals in order to reduce regulated output quantities, to facilitate false public statements, all in violation of criminal environmental laws and wire fraud. (TAC ¶ 144, etc.)

56. Defendant then engaged in witness intimidation and witness retaliation against Plaintiff in order to cover-up what they did with the wire fraud and chemical weapons, and then also to cover up their prior intimidation and retaliation against Plaintiff, but also to her coworkers, as she discovered systemic retaliation and intimidation by Defendant and threatened to expose it in July-August 2021. (TAC ¶ 60, 62, 65.) *Nodine v. Textron, Inc.*, 819 F.2d 347, 349 n.3 (1st Cir. 1987). Plaintiff even accused Defendant of racketeering prior to her termination, publicly, and also in a formal internal complaint. (TAC ¶ 98, etc.)

57. Defendant then also reinvested its earnings and saved costs back into its enterprise, in order to be able to continue silencing witnesses, including Plaintiff, and to be able to more effectively silence witnesses in order to engage in more fraud and chemical weapon use. (TAC ¶ 163, etc.) Defendant's investments included investing in progressive NGOs (e.g., CHEMForward TAC ¶ 116, etc.) in order to capture and control them, conspire with them, and prevent them from protecting and helping witnesses to Defendant's racketeering, and those NGOs did not help Plaintiff. (TAC ¶ 116.)

58. Defendant's investments also included investing via Predicate Acts of Bribery in order to obtain special favors from local law enforcement (including the Santa Clara County Sheriff's Office),[5] and to conspire with and capture the interests of the police to ensure the police do not investigate Defendant's other racketeering activities. (TAC ¶ 120.) *Jane Doe I v. Reddy*,

[5] *The People v Thomas Moyer*, California Sixth Appellate Circuit, H049408 (August 25 2023)

No. C 02-05570 WHA, 2003 WL 23893010, at *5-6 (N.D. Cal. Aug. 4, 2003). Defendant's investments also included law firms and lawyers – who conspired with Defendant and were paid to harass, intimidate, and coerce these witnesses – as Defendant has done to Plaintiff with its lawyers. (e.g., David Eberhart, etc.). (TAC ¶ 106.) Id. (see also, Plaintiff's December 29 2023 NLRB charge # 01-CA-332897).

59. Further, Defendant conspired with parties (including agreements with employees, ex-employees, and agents – such as Joanna Appleseed and Shantini Vyas) (TAC ¶ 139.) to intimidate Gjovik with a goal of interfering with Gjovik's testimony and production of evidence to federal agencies (such as through overt acts like meritless lawsuits, gag orders, false reports to police, etc.), (TAC ¶ 199.) including with public support including Defendant's attorneys requesting copies of court records documenting the harassment. (TAC ¶ 196, 247.) Id. *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992) – ("An entity may be liable under section 1964(c) for the acts of the entity's employees under traditional respondeat superior and agency principles," especially "when the employer is not the enterprise and the employer receives some benefit from its employee or agent's actions.").

60. Defendant's employees and ex-employees also spread fraudulent rumors about Plaintiff, causing her severe professional and reputational harm. (TAC ¶ 133.) *Procter Gamble Co. v. Amway Corp.*, 242 F.3d 539, 565 (5th Cir. 2001) – (RICO claim sufficient to survive Rule 12(b)(6) dismissal where a competitor had allegedly spread a rumor that caused consumers to stop purchasing the company's products.).

61. Defendant's actions, just including the acts listed above, extend over eight years (with 3250 Scott Blvd put in operation in 2015) (TAC ¶ 122) while the intimidation, retaliation, and fraud continued concurrently. Defendant's actions, just including the acts listed above, include at least five parties who are not Defendant and who are part of an Association-in-Fact enterprise.

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (129 of 256)

These parties benefit financially from Defendant's racketeering and thus conspire, aid, and facilitate Defendant's ongoing schemes with a common, shared purpose.

**2) Apple is Culpable and Liable for the Racketeering.**

62. As to the question of liability, "liability may arise pursuant to section 1962(a) under agency and respondeat superior principles when the individual or entity is benefited by its employee or agent's RICO violations." See *Petro-Tech v. Western Co. of North America*, 824 F.2d 1349 (3d Cir. 1987). By giving full effect to RICO's broad net of liability, the doctrines of respondeat superior and agency liability will encourage victims of racketeering to act as private attorneys general and help eradicate racketeering activity. See *Sedima*, 473 U.S. at 493, 105 S.Ct. at 3283. This will further both the compensatory and deterrent goals of RICO. See id. "An employer that is benefited by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior and agency when the employer is distinct from the enterprise." *Petro-Tech*,824 F.2d at 1357-58. *Brady v. Dairy Fresh Products Co*., 974 F.2d 1149, 1155 (9th Cir. 1992).

63. "Congress may constitutionally impose criminal liability upon a business entity for acts or omissions of its agents within the scope of their employment," *New York Central Hudson R. R. Co. v. United States*, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613 (1909); and "such liability may attach without proof that the conduct was within the agent's actual authority, and even though it may have been contrary to express instructions." *Standard Oil Co. v. United States*, 307 F.2d 120, 127-128 (5th Cir. 1962). *United States v. Hilton Hotels Corporation*, 467 F.2d 1000, 1004 (9th Cir. 1973).

64. An example of when of an Association-in-Fact RICO enterprise with similar features includes the "NXIVM" corporation. The indictment read, the RICO Enterprise functioned "[u]sing harassment, coercion and abusive litigation to intimidate and attack perceived enemies and critics of Raniere." *United States v. Raniere*, 384 F. Supp. 3d 282, 294 (E.D.N.Y. 2019)

**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**, *an individual*,

Plaintiff,

v.

**APPLE INC**, *a corporation*,

Defendant.

**Case No. 3:23-CV-04597-EMC**

**PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES**

**IN OPPOSITION TO DEFENDANT'S**

**REQUEST FOR JUDICIAL NOTICE**
Fed. R. Evid. 201.

HEARING:

Dept: Courtroom 5, 17th Floor (Virtual)

Date: May 16, 2024

Time: 1:30 p.m.

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (131 of 256)

Plaintiff disputes all three points. Further, Defendant specifically requests judicial notice that the court may "*assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6),"* Def.'s Mot. to for Judicial Notice at 1. Plaintiff also disagrees with this request as well.

## III. STATEMENTS OF FACTS

3. Defendant filed a request for judicial notice of the U.S SEC TCR ("Tips, Complaints, and Referrals" system) whistleblower "Submission" that Plaintiff filed to the US SEC on August 31 2021 about Apple and several other related parties. *Id.* Defendant attached a copy of the "Submission" to their Motion as "Exhibit A," Def.'s Mot. to Dismiss Ex. A.

4. Defendant filed a request for judicial notice of an "Offer Letter" drafted by "Apple Inc" and signed by "Ashley Henderson." Defendant attached a copy of the "Offer Letter" as "Exhibit B," Def.'s Mot. to for Judicial Notice Ex. B.

5. Defendant never contacted Plaintiff to meet/confer, or even mention, these documents, and Defendant's plans to request judicial notice. Defendant also did not attempt to confirm authenticity or accuracy with Plaintiff prior to, or after, introducing their motion.

## IV. THE MOTION SHOULD BE DENIED AS THE TAC DOES NOT RELY ON EITHER DOCUMENT

6. It is usually not appropriate for a court to grant judicial notice to a defendant for evidence to support a 12(b)(6) motion, unless the complaint relies on the document, the document is central to a party's claims, and no party questions the authenticity of the document. *United States v. Corinthian Colls*., 655 F.3d 984, 999 (9th Cir. 2011). At this phase of the lawsuit, judicial notice to support a motion to dismiss may only be appropriate "if the court is to rely on the document in determining whether to dismiss the complaint." *Rosenberg-Wohl v. State Farm Fire & Cas. Co.*, 20-cv-09316-DMR, 6 (N.D. Cal. Mar. 28, 2022).

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (132 of 256)

7. Plaintiff's Third Amended Complaint ("TAC") (Docket No. 47) does not rely on either Defendant's Ex. A or Ex. B. Defendant's motion argues that the TAC relies on the "Offer Letter," and the "Offer Letter" is central to Plaintiff's claims – while citing sections of the TAC which discuss Plaintiff's Breach of Implied Contract and Implied Covenant claims (TAC ¶ 234-237). Plaintiff mentions she has a written employment contract but then also discussed her good-cause employment based on documents such as performance reviews, employment policies, compensation increases, (TAC ¶ 234). Plaintiff quotes her 2017 performance review, (TAC ¶ 235), as a record of her good-cause employment. Plaintiff does not cite, quote, or mention the "Offer Letter." Defendant also argues that Plaintiff directly, or indirectly, mentions the "Offer Letter" in her TAC ¶ 236-237, however those paragraphs discuss her CERLCA and OSH Act retaliation claims against Apple – which is not even an "indirect" reference. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

8. The mere mention of a document in a complaint is insufficient to incorporate by reference. *Ritchie Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The "Offer Letter" is not properly subject to judicial notice in support of Defendant's motion to dismiss because Plaintiff's claims of Breach of Implied Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing do not "necessarily rely" on a written employment contract. *Clarke v. Pub. Emps. Union Local 1*, Case No.16-cv-04954-JSC, 5-6 (N.D. Cal. Jun. 14, 2017) – (employment contract irrelevant and not appropriate for judicial notice with notice requested related to a breach of fiduciary duty claim based on discretionary conduct).

9. The employment contract itself not "central to" any of Plaintiff's claims. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). *May v. Semblant, Inc.*, Case No.: 5:13-CV-01576-EJD, 4 (N.D. Cal. Sep. 27, 2013). The legal test to determine an implied "good cause" employment

contract is reviewing the *Foley* factors and none of the factors include a written employment contract. *Foley v. Interactive Data Corp*., 47 Cal.3d 654, 681-82 (Cal. 1988).

10. For example, an allegation of breach of written "Termination Guidelines" implies self-imposed limitations on the employer's power to discharge at will and may be sufficient to state a cause of action for breach of an implied employment contract. *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311 (Cal. Ct. App. 1981) – (the trier of fact can infer an agreement to limit the grounds for termination based on the employee's reasonable reliance on the company's personnel manual or policies).[1]

11. The TAC also does not rely on the content of Plaintiff's US SEC whistleblower filing at this phase. Defendant cites TAC ¶ 85, 86, 169, 172 – where Plaintiff filed her US SEC complaint, told people at Apple about it, and spoke publicly about it prior to her termination. Plaintiff's Dodd-Frank claim requires that she filed the US SEC complaint, and she did, but a 12(b)(6) motion against a Dodd-Frank whistleblower retaliation claim does not require "proof" of the claim being filed – especially in a case that had a SOX whistleblower claim docketed with US Department of Labor for multiple years, (TAC ¶ 91, 169).

---

[1] See, e.g., *Robinson v. Hewlett-Packard Corp*., 183 Cal. App. 3d 1109, 1123 (1986) [promise not to terminate without good cause demonstrated by personnel guidelines and individual performance warnings, evaluations and instructions]; *Rulon-Miller v. InternationalBusiness Machines Corp*. (1984) 162 Cal.App.3d 241, 251 [ 208 Cal.Rptr. 524] [factual issue whether termination was for reasons in stated employer policies]; *Walker v. Northern SanDiego County Hospital Dist*., ,135 Cal.App.3d 897, 904-905 (1982) [handbook creating right to discharge only for cause and to pretermination hearing]; *Toussaint v. Blue Cross*, 408 Mich. 579, 292 N.W.2d 880, 892 (Mich. 1980)[personnel manual provisions can give rise to contractual rights without showing of express mutual agreement]; *Morris v. Lutheran Medical Center* (1983) 215 Neb. 677 [ 340 N.W.2d 388, 390-391] [employer bound by published "Policy and Procedures"]; cf. *Hepp v. Lockheed-CaliforniaCo*. (1978) 86 Cal.App.3d 714, 719 [ 150 Cal.Rptr. 408] [unwritten but "well established" policy regulating rehiring of employees laid off for lack of work is enforceable].

## V. THE MOTION SHOULD BE DENIED BECAUSE NEITHER DOCUMENT CAN BE AUTHENTICATED

12. When requesting judicial notice of evidence, that evidence must not be subject to dispute, and must be either "generally known within the trial court's territorial jurisdiction" and/or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b) (addressing adjudicative facts); *Adetuyi v. City & Cnty. of San Francisco*, 63 F. Supp. 3d 1073, 1080–81 (N.D. Cal. 2014); *McKay v. Sazerac Co*., 23-cv-00522-EMC, 4 (N.D. Cal. May. 17, 2023).

13. Defendant simply claims "*Because Exhibits A and B are referred to in the TAC, their authenticity is not disputed*," Def.'s Mot. For Judicial Notice at 1. That is not the test to determine authenticity. Defendant also fails to file declarations or affidavits in support of the exhibits. *Hussein v. University Community College Syst. Of Nev*, 3:05-CV-0076 JCM (RAM), 2-3 (D. Nev. Dec. 28, 2007) – (" the documents defendants claim were authenticated by production during discovery, and which plaintiff neither admits production nor authenticity, are inadmissible.) Defendant also did not obtain a declaration from Plaintiff to authenticate the documents. *Pavone v. Citicorp Credit Services*, Inc., 60 F. Supp. 2d 1040, 1045 (S.D. Cal. 1997). For the "SEC Submission," Defendant was not even party to it, with Plaintiff filing the complaint to the US SEC and saving a copy of her complaint digitally.

14. A defendant in this situation cannot authenticate exhibits by stating in his affidavit that they are "true and correct copies," as the statement lacks foundation when he was not even present and was not involved in the communication. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 776-77 (9th Cir. 2002). Instead, Defendant has unilaterally extracted the "SEC Submission" from a mooted 120-page exhibit filed by a different party (Plaintiff) in 2023, and then Defendant

quietly attempted to resubmit the document without consent, or any legal or factual basis.[2] *Pavone v. Citicorp Credit Services, Inc.*, 60 F. Supp. 2d 1040, 1045 (S.D. Cal. 1997).

15. Federal Rule of Evidence 901(a) requires "authentication or identification as a condition precedent to admissibility." Thus, before evidence may be admitted, a foundation must be laid "by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). "Documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Canada v. Blain's Helicopters,* Inc.,831 F.2d 920, 925 (9th Cir. 1987). *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).

16. Further, there are also Best Evidence Rule issues with both documents. Plaintiff is unable to confirm the authenticity of Exhibit A due to Defendant's multiple unnecessary redactions on the document which obfuscate and conceal key terms. The document is also not signed with Plaintiff's current surname, and there is no name change documentation provided. Who is Ashley Henderson? Defendant has presented both of these documents in such a way that authenticity cannot be confirmed, or is otherwise in question, and there is no reason the originals could not be produced during normal discovery processes and timelines instead.

## VI. THE MOTION SHOULD BE DENIED BECAUSE THERE'S NO LEGAL BASIS

17. There does not appear to be legal or factual precedent for an employer attempting to request judicial notice of their employee's whistleblower tip to a federal agency, about the employer, in a retaliation lawsuit over that charge, despite the employer not being party to or

[2] Civil L.R. 7-2 (d) Affidavits or Declarations. Each motion must be accompanied by affidavits or declarations pursuant to Civil L.R. 7-5; 7-5 (a) Affidavit or Declaration Required. Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record.

directly notified about the complaint, and instead the employer essentially found it on the internet. Defendant cited one case as a legal authority for their request for judicial notice of the "SEC Submission," Def's Mot. for Judicial Notice Ex. A.

18. Defendant selected a single unpublished decision from 2011 as its only legal authority for its odd request, and the decision is simply "Civil Minutes" for an "In Chambers Order." Defendant's Motion for Judicial Notice cites and 'summarizes' it as: *"Ansell v. Laikin*, 2011 WL 3274019, at *3 (C.D. Cal. Aug. 1, 2011) (on motion to dismiss, taking judicial notice of SEC complaint that was incorporated by reference)," at pages 1-2.

19. The case was very difficult to find and required pulling it directly from PACER. The case has nothing to do with US SEC whistleblower TCRs. In the unpublished / unreported decision, the "SEC complaint" that the Defendant referred to in their motion is defined in the decision as "On December 15, 2008 the indictment and information were unsealed, and the SEC commenced enforcement proceedings against Defendant and others (the "SEC Complaint")." *Id* at 2. It's not a protected whistleblower tip – it's an enforcement complaint. The case goes on:

> "The Complaint also attaches and incorporates by reference a copy of the SEC Complaint, which sets forth further detailed allegations about Defendant's material omission. Defendant urges the Court to ignore the SEC Complaint since Plaintiff did not request that the Court take judicial notice of it. However, since the SEC Complaint is both attached to and incorporated by reference into Plaintiff's Complaint it may properly be considered on a Rule 12(b)(6) motion."
> Id at 4.

Everything about Defendant's request is disquieting.

20. Courts often take judicial notice of a Company's filings to the US Securities and Exchange Commission (SEC) but that's quite different then a confidential US SEC TCR whistleblower complaint. See, e.g., *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1297 n5 (11th Cir. 2011) (noticing contents of documents filed with SEC); *Oran v. Stafford*, 226

F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of properly-authenticated public disclosure documents filed with SEC).

21. Next, Defendant's legal authority for its request for judicial notice of the "Offer Letter" is also just a single case. In *Juster v. Workday, Inc*, the court granted judicial notice of an offer letter when the employee claimed the employer "improperly terminat[ed] him based on his conviction history," but the offer letter stated "[t]he offer of employment set forth in this Letter is contingent upon ... (ii) your consent to, successful completion of, and passing of all applicable background checks." *Juster v. Workday, Inc*, 617 F. Supp. 3d 1128, 1131-1132 (N.D. Cal. 2022). The case is not comparable to the facts and allegations in this matter.

## VII. THE REQUEST TO GIVE NOTICE TO THE CONTENTS OF THE DOCUMENT IS IMPROPER

22. "If the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." See *In re Immune Response Sec. Litig*., 375 F. Supp. 2d 983, 995–96 (S.D. Cal. 2005) (declining to incorporate numerous exhibits in SEC action where the complaint did not mention relying on them, but the defendants instead "offer[ed] the documents as evidence that Defendants did not commit a securities violation"); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006) (finding error where the court relied on documents the complaint did not mention, to resolve an issue in defendant's favor, even though the complaint had not raised the issue).

23. Upon reviewing Defendant's Motion to Dismiss for references to this pending Motion for Judicial Notice, it appears Defendant is attempting to do just what is noted in the paragraph above. (Def's Mot. To Dismiss at Docket No. 48.) Defendant repeatedly cites this

pending motion as substantive evidence on the merits of at least two claims, SOX and Dodd-Frank whistleblower retaliation, see Def's MTD at 10, 11, 13, and 23 (quoted in bullets below):

- "Plaintiff further alleges that she complained to various government agencies, including the SEC. Id. ¶169. In her SEC "tip," she complained about an alleged "conflict of interest" involving Ronald Sugar. RJN, Ex. A at 3-4." Def's MTD at 10.
- "Plaintiff's complaints about Mr. Sugar reveal she was concerned about workplace safety issues, not fraud against shareholders. See SAC ¶808 (complaint to Apple about Mr. Sugar an "due diligence programs for offices on chemical clean-up sites"); RJN, Ex. A at 7 (complaint to SEC about Mr. Sugar and "the clean-up of the toxic chemicals under the building"). Where, as here a SOX claim rests on a complaint rooted in workplace safety rather than securities concerns, it should be dismissed. See Magnuson v. Exelon Corp., 658 F. Supp. 3d 652, 661-62 (C.D. Ill. 2023)." Def's MTD d at 11.
- "As discussed above, Plaintiff's "tip" to the SEC complaining of a purported "conflict of interest" involving Mr. Sugar does not constitute protected activity under SOX. TAC ¶169; RJN, Ex. A at 3-4. Consequently, Plaintiff cannot rely on that complaint to claim Dodd-Frank protection." Def's MTD d at 13.
- "Plaintiff's offer letter states that her employment with Apple was at will, and that Apple could terminate her employment "at any time and for any or no reason." RJN, Ex. B. No provisions support Plaintiff's contrary allegations that Apple promised to retain her." Def's MTD d at 23..

This is not what judicial notice is for.

24. "Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). "Without that opportunity to respond, the defendant's newly-expanded version of the complaint – accepted as true at the pleading stage – can easily topple otherwise cognizable claims." *Id.* "Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Id.*

25. A request for judicial notice may also be denied where the court finds the matter disputable and/or irrelevant. See *People v. Overstreet* (1986) 42 C3d 891, 900, 231 CR 213, 217-218. "It's well established that judicial notice is not appropriate with the parties clearly and reasonably disagree about the meaning to be ascribed to the document. *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 216 (4th Cir. 2009) (declining to judicially notice decision documents relating to mining discharge permits because the parties "clearly and reasonably disagree about the meaning to be ascribed" to them).

26. Evidence is also not to be subject to judicial notice if it contains conclusions of law, unreasonable inferences, and/or unwarranted deductions of fact. *Donovan v. Woodbridge Maint. Ass'n, No*. 2:14-cv-00995 JAM-EFB, 5 (E.D. Cal. Mar. 16, 2015). Defendant asks for judicial notice of the content of the documents, stating: "The court is permitted to treat such documents as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule(b)(6)," Def's Mot. for Judicial Notice at 1. Further, Defendant attempts to introduce the "Offer Letter" but not any of the other documents mentioned in the TAC. Defendant's motion purports that notice of this contract is proof of some legal conclusion. A court cannot take judicial notice of the interpretation of and enforceability of a written contract for the purposes of ruling on a Motion to Dismiss when the Plaintiff's claims dispute the enforceability of that very contract. *Gould v. Maryland Sound Industries, Inc*. (1995) 31 Cal.App.4th 1137, 1145-1146 [37 Cal.Rptr.2d 718].

## VIII. JUDICIAL NOTICE SHOULD NOT BE GRANTED TO DEFENDANT'S VERSION OF THESE DOCUMENTS AS "THE TRUTH" OR THEIR DEFENSE.

27. Defendant cited *U.S. v. Ritchie* as a legal authority for their claim this court may assume the "contents" of Plaintiff's Offer Letter and SEC Whistleblower TCR are "true for purposes of a motion to dismiss." *U.S. v. Ritchie*, 342 F.3d 903 (9th Cir. 2003). (Def's Mot. for

Judicial Notice at 1.) However, *U.S. v. Ritchie* is a criminal DEA case where the court denied the request for judicial notice of exhibits (attached to an opposition brief), because none of the documents formed the basis of the complaint, and the other party did not "refer extensively" to any of them. *Id.* at 908. "Thus, it would have been improper for the court to consider the declaration and exhibits … without converting the motion to dismiss into a motion for summary judgment." *Id.* at 909.

28. "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). Even if judicial notice is appropriate, notice may only be given to the documents themselves: the existence of the document; the record of dates, actions, and statements wherein; but not the truth of assertions of fact within the documents. See, e.g., *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Here, Defendant offered to prove the truth of the matter asserted, including in a document they were not party to, and thus their requests are requests for admission of hearsay. See Fed.R.Evid. 801(c). *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 778-79 (9th Cir. 2002)."[A] statement is deemed hearsay only when the immediate inference the proponent wants to draw is the truth of the assertion on the statement's face." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 779 n.26 (9th Cir. 2002).

(Additional counsel on following page)

JESSICA R. PERRY (SBN 209321)
jperry@orrick.com
MELINDA S. RIECHERT (SBN 65504)
mriechert@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

KATHRYN G. MANTOAN (SBN 239649)
kmantoan@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY GJOVIK,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 23-cv-4597-EMC<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Dept: Courtroom 5, 17th Floor<br>Judge: Honorable Edward M. Chen<br>Date: May 16, 2024<br>Time: 1:30 p.m. |

*Bos. Sav. Bank*, 424 Mass. 165, 171 (1997); *E.B. v. Liberation Publications, Inc.*, 777 N.Y.S.2d 133, 135 (2004). Plaintiff's claim—premised on her being a consumer, allegedly in California, New York, and Massachusetts—lacks merit because Apple did not owe her, as a mere consumer, any such duty. *See Lugrain v. EKO N. Am., Inc.*, 2022 WL 16888547, at *4 (C.D. Cal. Oct. 21, 2022) (rejecting NIED claim because defendant manufacturer did not owe consumer requisite duty).

***Second***, to the extent Plaintiff's claim is based on damages allegedly suffered in connection with her employment, like other negligence-based torts, claims for NIED are preempted by California's Workers Compensation Act. *See* Lab. Code §§ 3600, 3602; *Schaffer v. GTE, Inc.*, 40 F. App'x 552, 557-58 (9th Cir. 2002) (NIED claim preempted); *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713-14 (1994) (employer actions causing injury do not fall outside scope of exclusivity rule merely by attributing to employer a sinister intention).

### N. <u>Plaintiff's UCL Claim Should Be Dismissed Because She Lacks Standing.</u>

To establish standing under the Unfair Competition Law, Plaintiff must allege she "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Here, Plaintiff alleges that "Apple exploited [Plaintiff's] image and biometric identifiers for profit." TAC ¶255. But alleging that Apple gained money alone does not establish UCL standing. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767, 803-804 (N.D. Cal. 2019) ("[T]hat Facebook may have gained money through its sharing or use of the plaintiffs' information … [is] different from saying the plaintiffs lost money."). Plaintiff also alleges that she paid a co-pay to AC Wellness Network LLC. TAC ¶259. However, she does not allege that the defendant in this case (Apple Inc.) received any benefit from the monies she allegedly paid to AC Wellness. *See Omidi v. Wal-Mart Stores, Inc.*, 2020 WL 1332594, at *7 (S.D. Cal. Mar. 23, 2020). Plaintiff thus lacks standing to bring this claim.

## IV. <u>CONCLUSION</u>

Apple respectfully requests that the Court grant its Motion to Dismiss.

Dated: March 26, 2024

By: ______________________________
JESSICA R. PERRY
Attorneys for Defendant, Apple Inc.

**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*
2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**, *an individual*,

Plaintiff,

v.

**APPLE INC**, *a corporation*, et al,

Defendant.

**Case No. 3:23-cv-04597-EMC**

**Filed**: September 7, 2023

**District Judge**: Honorable Edward Chen

**THIRD AMENDED COMPLAINT**

**PLAINTIFF'S CLAIMS:**

**A. The RICO Act,** 18 U.S.C. §§ 1962(a), (c), (d)

**B. Sarbanes-Oxley Act Whistleblower,** 18 U.S.C. § 1514A

**C. Dodd-Frank Act Whistleblower,** 15 U.S.C. § 78u-6(h)(1)(A)(iii)

**D. Private Nuisance & Nuisance Per Se** Cal. Civil Code § 3479

**E. Ultrahazardous / Abnormally Dangerous Activities (California Strict Liability)**

**F. Bane Civil Rights Act,** Cal. Civ Code § 52.1

**G. Ralph Civil Rights Act,** Cal. Civ Code § 51.7

**H. Cal. Whistleblower Protection Act**, Cal. Labor Code § 1102.5

**I. Retaliation for Filing Complaints,** Cal. Labor Code § 98.6

**J. Retaliation for Safety Activities,** Cal. Labor Code § 6310

**K. Termination in Violation of Public Policy** California *Tamney claim*

**L. Breach of Implied Contract & Covenant of Good Faith & Fair Dealing**

**M. Infliction of Emotional Distress (IIED/NIED)**

**N. Unfair Competition Law,** Cal. Business & Professional Code § 17200

**<u>DEMAND FOR JURY TRIAL</u>**

Case: 25-4716, 11/13/2025, DktEntry: 10.4, Page 144 of 256

1. Ashley Gjovik ("Plaintiff") alleges that Apple Inc ("Defendant") has violated numerous federal laws that directly caused her injury, including the RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [18 U.S.C. § 96] (with predicate acts of wire fraud, mail fraud, securities fraud, witness intimidation, witness retaliation, and non-peaceful use of chemical weapons), SARBANES OXLEY ACT [18 U.S.C. § 1514A], and DODD-FRANK ACT [15 U.S.C. § 78u-6(h)(1)(A)(iii]. Additionally, Plaintiff alleges Apple violated several California Labor Codes, including § 1102.5, § 98.6, and § 6310, and several California toxic torts, including private nuisance and ultrahazardous activities. Finally, Plaintiff also alleges Apple intentionally and negligently inflicted emotional distress upon her in the states of California and New York, and the Commonwealth of Massachusetts.

## I. JURISDICTION & VENUE

2. This court has jurisdiction over both subject matter and diversity claims. The United States District Courts have original and exclusive jurisdiction over whistleblower retaliation claims under THE SARBANES-OXLEY ACT AND THE DODD-FRANK ACT. This US District Court has federal question jurisdiction over "*all civil actions arising under the Constitution, laws, or treaties of the United States*" [28 U.S.C. § 1331], which provides original jurisdiction over several claims and issues in this case.

3. The United States District Courts also have diversity jurisdiction over this case because the amount in controversy exceeds $75,000 and the parties are of diverse state citizenship. [28 U.S.C. § 1332]. When the complaint was filed, Plaintiff was domiciled in the state of New York and is now domiciled in the Commonwealth of Massachusetts. Defendant is a corporation headquartered in California.

4. The federal courts have an independent basis for federal jurisdiction on this case; thus, they may also exercise supplemental jurisdiction because the claims arise from the same case and controversy, share a common nucleus of operative fact, and would ordinarily be expected to be tried in one judicial proceeding. [28 U.S.C. § 1367; *Osborn v. Haley*]. The state claims here require analysis of many of the same facts and legal questions as the federal claims.

5. Venue is proper in the District Court of Northern California because Apple is headquartered and operates in this district. Many of Gjovik's claims arose from acts, omissions, and injuries within the District of Northern California. The plaintiff filed this complaint with the San Francisco Division; however, the San Jose and San Francisco Divisions are proper. [Civil L.R. 3-5(b)].

## II. PARTIES

complaint and sue Apple if Apple does not settle first). Gjovik's two meritorious charges included Apple's Business Conduct Policy, NDAs, Intellectual-Property Agreement, and an email CEO Tim Cook sent his staff in September 2021, shortly after Gjovik was fired.[2] Gjovik's four other charges allege unfair labor practices. Three were under review with the General Counsel's Division of Advice office for some time.[3] The fourth charge was recently filed due to Apple's out-of-court conduct related to this case, including promulgating unlawful work rules.[4]

## IV. STATEMENT OF FACTS

10. The Plaintiff, Ashley Gjovik, is a 37-year-old woman residing in Boston, Massachusetts. Gjovik holds a Bachelor of Science in Liberal Studies and a Juris Doctor degree awarded in June 2022. Gjovik also has a certificate in Public International Law and participated in a 'summer abroad' studying international law and transitional justice at the University of Oxford in 2021 and worked for a term for a non-profit organization as a legal caseworker for refugees and asylum seekers in 2021.

11. Gjovik worked at Apple from 2015 to 2021. At the time of her termination, her title was Senior Engineering Program Manager, and her base salary was $169,000 annually. In the last full year, Gjovik worked at Apple (2020), her total W-2 compensation was $386,382. Gjovik was the co-founder of a large women's community group at Apple. Gjovik worked in a rotation position within Apple's Legal department in 2019-2020, primarily supporting the Government Affairs and Software Product Legal teams' efforts to establish Apple's first company-wide Artificial Intelligence Ethics and Social Responsibility policy.

12. Since September 2023, Gjovik has been a program manager for an air pollution research project at a non-profit research university. The role is temporary and does not utilize her legal or engineering experience. After two years of searching and hundreds of applications, it was the first and only job offer she could obtain. The role is a far lower seniority than her role at Apple, and in this first job after Apple, Gjovik's salary was reduced by 41% and total compensation lowered by 74%.

### i. Gjovik's Employment at Apple

13. Gjovik joined Apple on February 23, 2015, as an Engineering Project Manager in the

---

[2] 32-CA-284441 and 32-CA-284428 (Oct. 12 2021).
[3] 32-CA-282142 (Aug. 26 2021), 32-CA-283161 (Sept. 16 2021), 32-CA-288816 (Jan. 10 2022).
[4] 01-CA-332897 (Dec. 29 2023).

Case: 26-4716, 11/18/2026, DktEntry: 10.4, Page 146 of 256

on September 2, 2021. Gjovik did not request an investigation but did request a Right to Sue letter, which she received on 9, 2021, before her termination. Apple was made aware of Gjovik's US EEOC and Cal. DFEH complained that she was testifying to US EEOC and Cal. DFEH about what Apple did to her by at least August 12, 2021. Gjovik Tweeted about her appointment with the US EEOC.

83. On September 2-3, 2021, numerous papers were written about Gjovik's charges against Apple. Bloomberg reported about Gjovik's NLRB, US Dept of Labor, California Dept of Labor, and EEOC charges against Apple. Bloomberg wrote,

> "Ashley Gjovik, a senior engineering program manager at Apple, said that she filed the Aug. 26 complaint, which cited harassment by a manager, a retaliatory investigation, and forced paid administrative leave. Gjovik's situation began with fears about whether pollution had made her office a dangerous place to work. She says she was then retaliated against for voicing her concerns. *"I should be able to raise concerns about safety and public policy," s*he said in an interview Thursday. Gjovik has also filed complaints with the Occupational Safety and Health Administration, California's labor commissioner's office, and the Equal Employment Opportunity Commission, according to documents she provided. Gjovik said her goal is to bring light to systematic problems at Apple and try to improve policies. *"I want to pierce the veil of intimidation and secrecy,"* she said in the interview. "*The employees are terrified to speak up about their concerns*." [29]

On September 2, 2021, Financial Times wrote about Gjovik:

> "Gjovik's specific complaints against Apple date back to mid-March, when she cited unsafe working conditions related to "*chemical exposure*" at her Apple office in Sunnyvale, California, where more than 100 employees are based. Her office, known as "Stewart 1" within Apple, is located on what the Environmental Protection Agency refers to as the "*TRW Microwave Superfund site*," a location requiring special oversight owing to previous contamination by hazardous waste materials in the soil and groundwater beneath the building. In 2016, Apple paid $450,000 to settle state claims that it mishandled hazardous electronic waste at their Cupertino headquarters and Sunnyvale facilities. Gjovik said her concerns were brushed aside and she was warned against speaking up about them. In her letter to the NLRB, she said Apple's employee relations department *"intimidated me not to speak about my safety concerns*," that a manager advised that she quit Apple and was subject to sexism and a "dramatically increased" workload. Matters escalated when she took her complaints to Apple's Slack channels, specifically a 2,000-member forum for female software engineers. She said she was flooded with supportive comments and similar stories of workplace harassment — but she had since been banned from using Slack as part of her administrative leave."[30]

84. On September 3, 2021, Gjovik filed complaints with the FDA Office of Criminal

[29] Nick Turner, *Apple Worker Complaints Reviewed by Labor Relations Board*, Bloomberg, Sept 2 2021.
[30] Patrick McGee, *US labour board examines retaliation claims against Apple*, Financial Times, Sept. 2 2021, https://www.ft.com/content/484fa8be-925e-495c-91ff-54950b112754

psychiatric help and confinement" and that Gjovik "is a psychopath and frankly is a danger to other Apple *Employees*!" The account went on to call Gjovik an "*ambulance chasing psychopath*" and said, "*Apple needs to bring the hammer and make an example of people like this.*" Thousands of posts like this followed and continue to this day – causing Gjovik severe distress.

98. While Gjovik was stuck on leave, she repeatedly asked Okpo for updates about her office, and he refused to provide any updates. Gjovik often complained about retaliation and that she did not want to be on leave, but Okpo ignored her. Between August 16-23, 2021, Okpo sent a first draft of an "Issue Confirmation" document that supposedly captured all of Gjovik's complaints that he was investigating, and Gjovik revised it and sent him a final revised version on August 23, 2021. Gjovik also filed a Business Conduct complaint about her concerns about Ronald Sugar, TRW Microwave, and her office. She attached the Issue Confirmation and notified Okpo of the ticket. Gjovik's 33-page version of the Issue Confirmation included detailed complaints of fraud, organized witness tampering, obstruction of justice, toxic torts, corruption, negligence, conflicts of interest, racketeering, and environmental crimes. Starting August 17, 2021, Gjovik insisted that all communication with Okpo and Apple be in writing because he repeatedly misrepresented her statements. Okpo ignored her.

99. Gjovik had previously registered for a three-part training about racial justice with Apple University and wanted to attend. The class was led by her friend Dr. Cohen, and he confirmed he was happy to have her attend as long as Employee Relations approved and did not discipline her for attending. On August 20, 2021, Gjovik asked Okpo if she could attend, and Okpo said she could not participate "*because she's on leave*." Gjovik complained about retaliation. On August 27, 2021, Apple's Business Conduct team closed Gjovik's complaint about Ronald Sugar and Gjovik's Superfund office. The message posted said: "*…we have shared them with the appropriate internal teams for review and investigation,*" with the ticket updated to say, "*Request is closed. This request is closed and can't be reopened.*"

100. Okpo contacted Gjovik twice more (Sept. 3 and Sept. 7, 2021) before Gjovik was fired, asking to meet with her on Webex (denying her request to keep things in writing) and not telling her what the meeting was about. Both times, Gjovik asked Okpo to keep things in writing due to the request misrepresentation and intimidation. If he refused, she requested a Business Conduct review of his decision, noting he's a lawyer and there is a power imbalance. Okpo never responded.

§ 1962 through interstate mail and wires, and other instrumentalities of interstate commerce. RICO Predicate Acts within occurred in multiple states and across state lines and defrauded the US government.

113. In all counts, the defendant, Apple, is employed by the Enterprise, associated with the Enterprise, conducts the enterprise's affairs, leads the enterprise, and participates in a pattern of racketeering with the enterprise. Apple is heavily involved in the operation and maintenance of the enterprise. Gjovik's injuries from all Predicate Acts and racketeering were "because of" a RICO violation and of a tortious character. Apple's racketeering led directly to the plaintiff's injuries.

**i. Apple as the Enterprise-as-Person who Launders Money**

114. In all Predicate Acts and schemes here within, Apple violated 18 U.S. Code § 1962(a) as both the "person" and the "enterprise." As an Enterprise-as-Person and principal culpable for a pattern of predicate offenses, Apple has used and invested the income from its racketeering to establish, operate, and acquire an interest in an enterprise in and affecting interstate commerce. Apple also played an active role in the pattern of racketeering by initiating and benefiting from the activity. As an Enterprise-as-Person, Apple benefited from the racketeering activity because corrupt corporate employees, officers, and agents directly and indirectly used illegal income to operate and establish an enterprise. Apple acquired money through a pattern of racketeering. For 1962(a) claims, Gjovik was directly injured by both Apple's investment in the enterprise and predicate acts themselves.

115. Corporations and individuals who knowingly and intentionally dump hazardous waste or otherwise pollute the environment, violating environmental and public safety laws, do so because the practice is less costly and more profitable than complying with the regulations. Apple's intentional evasion of paying required fees and costs associated with proper hazardous waste management and disposal allowed Apple to operate its research and development and fabrication of semiconductor technology at a much lower cost than its competitors who do follow the law. As such, Apple gained a financial advantage, increasing its profits, which it invested in its enterprise. Apple's Acts of Wire and Mail Fraud increased Apple's profits under false pretenses and false statements – including increased sales of products, subscriptions to services, and brand loyalty based on a supposed (and false) progressive image.

116. Examples of Apple's investment of racketeering profits (i.e., Apple's money laundering) include Apple's investment in progressive non-profit organizations for marketing purposes, despite systemically and intentionally violating the laws and norms those groups aim to enforce and violating the

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (149 of 256)

rights those groups seek to protect. (e.g., ChemFORWARD, GreenAmerica, etc.) and Apple then uses the tangible outcome of those investments (e.g., formal partnerships, press releases, etc.) to further mislead the public, government, and press about Apple's actual operations through additional Acts of Wire Fraud and Mail Fraud by Apple, with the apparent credibility of Apple's materially false claims then bolstered by Apple's new farcical partnerships which were funded by racketeering profits. Apple's investment in non-profit organizations also allowed Apple to 'capture' those groups and ensure the groups do not assist witnesses/informants/victims like Gjovik when attempting to hold Apple accountable.

117. In addition, Apple instituted an "ESG modifier" for executive pay that can increase or decrease Executive Compensation by 10% based on environmental and other practices. Apple's intentional environmental violations were not just to save money on properly disposing of waste but also to increase bonuses for the executives who would then invest the money in other businesses and enterprises. Apple is giving executives bigger bonuses for illegally disposing of hazardous waste.

**ii. The Worldwide Loyalty Association-in-Fact Enterprise**

118. In violation of Section 1962(c), Apple (a "Person" under the RICO Act) conducted and participated in the conduct of an associated enterprise (the "Worldwide Loyalty Enterprise" – an enterprise sufficiently distinct from Apple) through a pattern of racketeering activity. Apple and the Worldwide Loyalty Association-In-Fact Enterprise engaged in and effected interstate and foreign commerce through activities including interstate and foreign travel, purchases, documents sent and received via physical mail and shipping, financial transactions, telephone calls, and internet communications.

119. Each Association-in-Fact Enterprise member is a person or legally incorporated entity conducting business activities throughout the United States and overseas. Members committed, aided, abetted, and conspired to commit violations of Predicate Acts. Apple participated in and directed the formation of the Worldwide Loyalty Association-In-Fact Enterprise. This ongoing organization functions as a continuing unit, including individuals, partnerships, corporations, associations, groups, and other entities and individuals. The Worldwide Loyalty enterprise entities play different roles in the Acts and scheme, including victim, prize, instrument, and perpetrator of the violation.

120. For 1962(c) and (d), Apple and the enterprise are distinct and separate entities. The Association-In-Fact Enterprise includes Apple, the corporation, and employees, along with external lawyers (e.g., Jessica Perry, David Eberhardt, etc.), law firms (e.g., Orrick, Morgan Lewis, OMM, MWE,

etc.), trade and non-profit organization (e.g., ChemFORWARD, Omidyar Network, etc.), certain media companies and publishers, certain tech reporters, companies and third-party administrators (e.g., Sedgwick, Northrop Grumman, Oaktree Capital, etc.), certain government employees and agencies, law enforcement officers and agencies (e.g., Santa Clara County Sheriff's Office, Cupertino Police Department, Santa Clara HazMat, etc.), doctors and clinics (e.g., A.C. Wellness Center, etc.), and environmental consultants (e.g. EKI, ACT Environmental, etc.).

**iii. Apple & the RICO Conspiracy**

121. Apple agreed with others to invest in, acquire, and conduct the affairs of a commercial enterprise in a manner that violates 18 U.S.C. § 1962(a), (b), and (c). Apple knowingly agreed to facilitate a scheme that includes a RICO enterprise's operation or management. Apple adopted the goal of furthering and facilitating the conspiracy. Two or more people agreed to commit a substantive RICO offense, and Apple knew of and agreed to the overall objective. In Violation of Section 1962(d), Apple conspired "*to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity*." Apple undertook criminal acts with the "*intent to commit, and to aid and abet and in connection with another federal crime*." Apple conspired to violate one or more substantive RICO provisions, and members of the conspiracy committed overt acts that constituted a predicate act of racketeering to further the conspiracy.

**iv. Relatedness, Pattern, Scheme**

122. Apple's predicate acts have similarities related to purposes, results, participants, victims, methods of commission, and other distinguishing characteristics (e.g., agency capture, intimidation and censorship, obstruction of investigations into Apple's conduct, manipulation of the press and public discourse, lying about labor and environmental practices, whistleblower retaliation, etc.).

123. The goal of Apple's racketeering does not have an end date, as much of Apple's racketeering conduct is performed to conceal its prior racketeering activity. Apple continues to engage in egregious criminal conduct while frantically working to cover up its prior criminal conduct by engaging in even more criminal conduct. Cover-ups, by their nature, present a distinct threat of long-term continuation. The threat of Apple's continuing illegal activity extends indefinitely into the future. Apple and the "Worldwide Loyalty" Enterprise are engaged in systemic criminal conduct in pursuit of enabling Apple's race to the bottom on regulatory compliance and use of intimidation, threats, and false statements

about its actual practices to increase profits and create and maintain a positive reputation. Apple's scheme has three prongs:

a) Apple intends to refrain from expending the resources required for basic regulatory compliance in most of its basic dealings, thus increasing profits.
b) Apple intends to increase profits further and obtain other financial benefits through a knowingly false reputation of strong regulatory compliance in all its dealings (i.e., promoting itself as an industry leader in environmental responsibility, etc.)
c) Apple intends to bridge the gap between its actual practices and what it reports to its customers, the public and press, and the government about its practices through a scheme of witness intimidation and tampering, systemic retaliation against employees and contractors who report issues, unlawful NDAs and over restrictive policies, threats of specific and unspecific reprisals for gathering evidence or reporting issues, and coercing others to assist in these activities to cover-up the Apple's unlawful activities and fraudulent misrepresentations.

124. Apple transmits knowingly false information (or omits and fails to transmit required information) via communications with government agencies, the press, and the public via email, paper mailings, electronic filing systems, phone calls, websites, print and digital commercials and advertisements, and other interstate communication methods. These false statements and omissions often lead to a complete lack of environmental sustainability, regulatory oversight, and reporting, despite statutory requirements for oversight and reporting based on the actual facts of Apple's activities.

125. Apple's self-proclaimed competitive edge requires "*aggressive price competition and resulting downward pressure on gross margins.*" Apple adds that some competitors compete by "*us[ing] illegitimate means*" to develop products. Apple has also stated that its "*global operations are subject to complex and changing laws and regulations on subjects, including privacy; consumer protection; advertising; … artificial intelligence; labor and employment; anticorruption; … and environmental, health and safety…*" Apple adds that "*compliance with these laws and regulations is onerous and expensive… laws and regulations can adversely affect [Apple's] business by increasing … costs*." Apple admits that to succeed, it must cut costs wherever possible, compete with businesses that engage in illegal activities, and that laws and regulations threaten Apple's business model.

126. Apple's conduct is neither lawful nor legitimate nor simply garden-variety common law crimes or torts. Here, Apple engaged in a complex, cold, and calculated conspiracy to enable and conceal their systemic, long-running, intentional violations of basic environmental, health/safety, and labor laws – and censorship, obstruction, and concealment of these acts to profit from a progressive brand.

127. Apple has engaged in a series of related predicate acts extending over a substantial period of multiple decades. Further, Apple started a series of related predicate acts and will continue these acts until there is intervention. Apple's misconduct is so persistent and egregious, dependent on continued intimidation of witnesses to keep witnesses quiet about what they know, that it is impracticable that Apple would ever voluntarily stop their schemes. Apple's conduct and "Worldwide Loyalty" endeavors are comparable to the inertia of organized crime – with both closed-ended and open-ended continuity.

**v. Predicate Act 1: Criminal Bribery of Executive Officer (Cal. Penal Code § 67)**

128. Tom Moyer was Apple's Director of Employment Law until September 2009, when he became Chief Compliance Officer and Head of Global Security.[35] Moyer allegedly committed criminal bribery by paying bribes to public officials in exchange for concealed carry handgun permits for Apple employees. The California Court of Appeals affirmed the evidence of Moyer's corrupt intent with factors including undisclosed "clandestine" meetings at the Apple Park Visitor's Center, removing whistleblowers from the matter, ignoring 'red flag' warnings from those whistleblowers, and the fabrication of a pretextual paper trail after the fact.[36]

129. Two Apple Global Security Directors flipped on Moyer and Apple, turning state's evidence and testifying against him/Apple in exchange for immunity.[37] Among other elements and theories of liability, Moyer engaged in the bribe as part of his job, on behalf of Apple, using Apple assets at Apple locations and to benefit Apple. Further, even after Moyer was charged, Apple defended him: *"After learning of the allegations, we conducted a thorough internal investigation and found no wrongdoing*."[38] Yet, there were numerous signs of misconduct and foul play. Gjovik was directly injured as Moyer's teams threatened and obstructed her.

**vi. Predicate Act 2: Tampering with a Witness, Victim, or an Informant (18 U.S. Code § 1512)**

130. Apple and agents made repeated statements, publicly and privately, explaining that they were taking actions to harm Gjovik because of Gjovik's actions as a federal witness, victim, and informant.

---

[35] US DOJ, Second Report of the External Compliance Monitor, *United States v. Apple, Inc*., et al., No. 1:12-CV-2826, and *Texas, et al. v. Penguin Group, et al*., No. 1:12-CV-3394 (October 15 2014).
[36] *State v Moyer* at 26.
[37] Mercury News, *Main witness in Santa Clara County concealed-gun bribery case pleads guilty/*
[38] Ars Technica, *Apple security chief maintains innocence after bribery charges,* (Nov. 24 2020).

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 153 of 256

Apple violated 18 U.S.C. 1512(a)(2)-(3) when it used the threat of physical force against Gjovik or attempted to do so with intent to influence, delay, or prevent the testimony of Gjovik in an official proceeding (US NLRB, US DOL, US EEOC, etc); or cause or induce Gjovik to withhold testimony, or withhold a record, document, or another object, from an official proceeding; or alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding; and hinder, delay, or prevent Gjovik's communication to a law enforcement officer of information relating to the commission or possible commission of a Federal offense.

131. Apple committed Obstruction by Intimidation, an indictable offense under §1512(b) of tampering with a witness, violating federal law. Apple knowingly used intimidation, threatened, and corruptly persuaded Gjovik, attempted to do so, or engaged in misleading conduct toward Gjovik. Apple violated 18 U.S.C. 1512(b) when it acted with intent to influence, delay, and prevent the testimony of Gjovik federal agencies and law enfrocement; or cause or induce Gjovik to withhold testimony and withhold document from the same, or cause or induce Gjovik to alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in the same

132. Apple executed this with break-ins, stalking, destruction of property, physical and digital harassment, lawsuits, reports to police and FBI (SWATing), and threats of physical violence sent over wires such as threatening to decapitate one of Gjovik's loved ones, or that Gjovik would be found dead of "*suicide*" but "*never mind the double-tap*."

133. Apple employees and assumed agents of Apple Inc. suggested Apple Inc. should / will sue Gjovik for corporate espionage, disinformation, reputational bias, defamation, blackmail, and federal crimes, among other things. Employees and agents suggested appropriate consequences for Gjovik's protected activity included jail, the death penalty, *"suing her into oblivion," "ending her," "destroying her," "ruining her,"* and bankrupting her. Apple managers & agents of Apple Inc referred publicly to the retaliation she faced from Apple Inc, including termination of her employment, as *"invited upon herself"* like *"walking down a dark alley," "finding out"* for *"fucking around," a "self-fulfilling prophecy,"* and the *"consequence"* of *"airing Apple's dirty laundry."* Apple Inc. agents threatened to denylist Gjovik from the technology, engineering, and legal employment fields, including *"never working in the tech industry again, never working for a large corporation again, never getting a job as a lawyer, failing the California Bar Association's Moral Character investigation, and never getting a job anywhere again*

*other than working in fast food."* Many communications instructed Gjovik to drop her cases/charges or modify her testimony/evidence.

134. In April 2023, Apple engaged in various schemes intending to frighten, frustrate, and intimidate Gjovik about the information she recently discovered about ARIA and its air emissions. In one of these schemes, Apple sent her an email via the webform on her website claiming to be ex-US EPA enforcement (Comrade Jones) threatened her to stop talking about the NMP release and vapor intrusion at her office. This email, among other felonies, was potentially "*False Impersonation of Federal Officer or Employee*" (18 U.S.C. § 912).[39] Apple also maliciously and unlawfully threatened, intimidated, and coerced Gjovik through physical activities, including:

a. Entered Gjovik's apartment without the consent of Gjovik, and Apple had no lawful reason to do so [California Penal Code § 602.5]
b. Broke into Gjovik's home and damaged/obstructed/disconnected part of a telephone/cable/electrical line, or equipment connected to the line – and Apple maliciously and unlawfully made an unauthorized connection with part of a line used to conduct electricity or equipment connected to the line [California Penal Code § 591]
c. Took unwanted photos and videos of Gjovik looking into Gjovik's home windows with an intent to intimidate [California Penal Code § 647i]
d. Delayed, lingered, prowled, and wandered on the private property of Gjovik's apartments [California Penal Code § 647(h)]
e. Entered Gjovik's apartment with intent to commit a crime [California Penal Code § 459]
f. Fled the scene when caught by a neighbor who said she would call police officers.
g. Used social media accounts to harass Gjovik about the real-world events she was experiencing in real-time.
h. To follow her when she ran errands [stalking]
i. Drive up to her New York apartment, capture videos/photos of her, and send someone.
j. J. Loitered on her New York sidewalk until she left the apartment and notified Gjovik that the person was watching her.
k. Intentionally listened to or recorded a conversation/communication without consent from all individuals [Cal. Penal Code 632(a)]
l. Planted listening devices in Gjovik's property to spy on Gjovik [California Penal Code § 632(a)]

135. Apple violated 18 U.S.C. 1512(c) when Apple corruptly altered, destroyed, and concealed a record, document, or other object or attempted to do so with the intent to impair the object's integrity or availability for use in an official proceeding or otherwise, obstructed, influenced, or impeded any official

[39] False Impersonation of Federal Officer or Employee (18 U.S.C. § 912). *United States v. Aguilar*, 756 F.2d 1418 (9th Cir. 1985).

proceeding, or attempted to do so. Many environmental crimes involve deception, both before the offense is committed and later when the defendant tries to cover his tracks.[40]

136. Gjovik was concerned that Apple knowingly altered and concealed a tangible object (e.g., the cracked slab, etc.) with the intent to impede, obstruct, or influence an actual or contemplated investigation of a matter within the jurisdiction of any department or agency of the United States (e.g., US EPA, etc.) in violation of 18 U.S.C. § 1519. Gjovik was concerned Apple was or was attempting to, corruptly alter and conceal (e.g., re-seal, etc.) an object (e.g., the slab, etc.) with the intent to impair the object's availability for use in an official proceeding (e.g., US EPA inspection of the cracks in the slab, etc.) in violation of 18 U.S.C. § 1512(c)(1). Gjovik was concerned that Apple knowingly and willfully concealed and covered up by trick/scheme/device (e.g., retaliation, witness intimidation, frantic repairs, etc.) a material fact (e.g., the cracked slab, etc.) in violation of 18 U.S.C. § 1001.

137. When Gjovik suffered harassment and intimidation that was openly said to be due to her federal cases, the focus was often Gjovik's NLRB charges. The interference extended to a lawsuit against Gjovik 'because of' Gjovik's NRLB charges, emails to Gjovik demanding she alter her testimony, emails demanding Gjovik omit specific evidence, and direct interference with the NLRB investigators overseeing Gjovik's charges and the resulting investigation. (NLRB investigators are considered Federal Officers under criminal statutes).[41] Appleseed repeatedly tried to delete, and did get deleted, Gjovik's posts and filings, including a copy of a federal legal filing. This occurred when Appleseed was an active Apple employee and after she supposedly quit Apple in late 2021.

138. Apple violated 18 U.S.C. 1512(d) when Apple knowingly used intimidation, threatened, and corruptly persuaded Gjovik, attempted to do so, or engaged in misleading conduct toward Gjovik. Apple acted with intent to influence, delay, and prevent Gjovik from communicating information relating to the commission or possible commission of an offense to federal officers and law enforcement authorities. There is a reasonable likelihood that at least one of Gjovik's communications targeted by Apple would have been made to a federal officer. The information that Gjovik would have communicated related to the possible commission of a federal offense.

---

[40] United States Department of Justice Executive Office for United States Attorneys, *Environmental Crimes–2012,* Volume 60, Number 4, pg89 (July 2012).
[41] 9-139.800 Interference with National Labor Relations Board Agent (29 U.S.C. § 162).

139. Apple managers, employees, and agents have referred to Gjovik's complaints to the federal and state government about Apple Inc as "*unsubstantiated*," "*meritless*," "*baseless*," "*dead in the water*," and that there's "*no case*." Apple's agents referred to Gjovik as an "*ambulance chaser*" and her cases as "*shakedown lawsuits*." Apple manager Ricky Mondello and ex-Apple employees Joanna Appleseed and Shantini Vyas have publicly called Gjovik a "*liar," "predator," "racist," "inconsequential," "not a real whistleblower."* These parties have described Gjovik's protected activities as a "*vendetta," "warpath," "perjury," "fabricated nonsense," "misleading rhetoric*," and "*misinformation*." One wrote, "*You're beyond pathetic. It will be fun to watch you disappear after you lose everything*."

**vii. Predicate Act 3: Retaliating against a Witness, Victim, or an Informant (18 U.S. Code § 1513)**

140. In violation of § 1513(b)(1), Apple engaged in conduct and thereby caused bodily injury to Gjovik and damaged the tangible property of Gjovik, and threatened to do so, with intent to retaliate against Gjovik for the attendance as a witness or party at an official proceeding, and any testimony given or any record, document, or other object produced by a witness in an official proceeding. In violation of § 1513(e), Apple, with the intent to retaliate, took any action harmful to Gjovik, including interference with the lawful employment or livelihood of Gjovik, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense. Apple also conspired to commit one or more § 1513(b) offenses.

141. Gjovik put her career and physical safety at risk to obtain evidence of what she believed to be criminal acts and violations of federal law related to the air emissions at ARIA and the slab at Stewart 1. Apple retaliated against a Federal Witness & Informant in violation of § 1513(e). Apple knowingly, with the intent to retaliate, took actions harmful to Gjovik, including interference with the lawful employment or livelihood of Gjovik, for Gjovik providing to a law enforcement officer truthful information relating to the commission or possible commission of any Federal offense. Apple also conspired to commit one or more § 1513(e) offenses.

**viii. Predicate Act 4: NMP- Wire Fraud (18 US Code § 1343)**

142. When Apple filed a Toxics Release Inventory Form R report to the US EPA on June 30, 2021, claiming treatment, disposal, and transportation of N-Methyl-2-pyrrolidone ("NMP") waste, Apple devised and attempted to devise a scheme or an artifice (falsifying transportation records) to defraud (lying

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (157 of 256)

to the government) to obtain money or property (money it would have otherwise spent on legal disposal), knowingly and willingly participated in the scheme with the specific intent to defraud, and used the mails and interstate wires in furtherance of the scheme in violation of 18 U.S.C. § 1343 and EPCRA 313.

143. The report was submitted for ARIA and the report's completeness and accuracy were certified under 40 CFR Section 372 by Apple EH&S manager Susan Creighton. The TRI filing noted that 260.17 pounds of NMP were emitted via "stack or point air emissions," and 2,341.51 pounds of NMP "*gaseous waste stream*" were treated onsite. At issue is Apple's notation that 14,742.82 pounds of NMP were transported offsite from ARIA to two disposal facilities. The problem is – that both supposed destination vendors are well-established TSDF waste processing companies that would ensure the use of manifests. Yet, no manifests were ever filed for these three supposed transports. Under information and belief, Apple did not send that NMP to those three waste facilities and instead disposed of it in some other way, but falsified the TRI filing to make it appear as if Apple did send it to the waste facilities. It is a criminal violation of the Clean Air Act to make false statements and representations, omit material information, and alter or conceal a required document. [42 US Code 7413(c)(2)(A); 18 U.S. Code § 371.]

**ix. Predicate Act 5: "Zero Waste" - Wire Fraud (18 US Code § 1343)**

144. Starting in 2021, Apple intentionally devised or intended to devise a scheme to defraud using materially false or fraudulent pretenses (e.g., use of the word 'diversion' to mean illegal dumping, etc.), representations (e.g., claiming they are recycling or reducing waste, etc.), or promises (e.g., "zero waste," etc.) over interstate wire communications related to Apple's hazardous waste creation and disposal practices. Apple told the public and government that it is engaging in environmentally friendly practices to reduce waste. However, Apple is only reducing the paper trail and cost of its waste by illegally disposing of dangerous chemicals in neighborhoods. Apple's scheme to defraud under environmental laws was undertaken with a reckless disregard for the truth or falsity of its hazardous waste representations.

145. Apple reported in its annual Environmental Report, a formal document they transmitted and published over interstate wires, that Apple transported 1,599 tons of hazardous waste in 2021 and 1,839 tons in 2020 to disposal facilities from Apple's corporate facilities globally. Based on California DTSC tracked manifests, 32% (512 tons) of Apple's global hazardous waste transported to

landfills/disposal facilities came from Apple's semiconductor fabrication factory at ARIA.[42] Statements and activities related to waste at this facility are material for Apple Inc.

146. Apple's Environmental Progress Report is a formal document Apple transmits over interstate wires. Apple reports on the amount of waste that Apple allegedly "*diverted from landfills*." Apple highlighted this number in the report under the program called "*Zero Waste*" and claimed Apple is moving towards "*waste-free operations*."[43] Apple said, "*We maintain our commitment to the safe and responsible management of hazardous waste, both onsite and offsite*."[44] In 2019, Apple published a press release over interstate wires stating, "*Apple has…strengthened its efforts to…reduce pollution. In prioritizing Zero Waste to Landfill, Apple suppliers diverted 1 million tons of garbage in three years*."[45]

147. Apple's statements are false and misleading. They are not reducing pollution—Apple is creating incredible amounts of pollution, at least at ARIA, that is an acute danger to public health. Apple is also not innocently '*diverting'* waste from landfills – Apple is '*diverting'* waste by exhausting unabated solvent vapors, fumes, and toxic gases from their one-story exhaust vents – which created dense gas and vapor plumes that surrounded the nearby four-story apartments with thousands of residents, as well as an open-air children's playground and making many people sick.[46]

148. On August 15, 2021, Alisha Johnson (who reports to Lisa Jackson) emailed over the wire to the US EPA a document with Apple's talking points about Apple's environmental practices. Including: *"In fiscal year 2020, we diverted more than 70% of waste across Apple facilities …. We have active Zero Waste to Landfill goals for retail, corporate facilities, and our supply chain.*" [FOIA document]. Again, these are false and misleading statements. In 2020, at least some of that 70% of 'diverted' waste was the NMP fumes Apple blasted into Gjovik's home. This also explains that Apple's illegal dumping was at the direction of the Board of Directors and executives as a formal "goal."

**x. Predicate Act 6: E-Waste - Wire Fraud (18 US Code § 1343)**

149. In 2015-2016, Apple intentionally devised or intended to devise a scheme to defraud using materially false or fraudulent pretenses (e.g., use of the word 'diversion' to mean illegal dumping, etc.),

[42] Apple, 2022, Environmental Progress Report, pg 87.
[43] Apple, 2021, Environmental Progress Report, pg 51.
[44] Apple, 2021 Environmental Progress Report, pg 70.
[45] Apple, *Apple releases 13th annual Supplier Responsibility Progress Report*, March 6 2019.
[46] Apple, 2022 Environmental Progress Report, pg 87.

representations (e.g., claiming they only use licensed TSDFs, etc.), or promises (e.g., compliance with hazardous waste export laws, etc.) over interstate wire communications related to Apple's electronic waste practices. Apple's fraud was for obtaining money or property, and Apple knowingly and willingly participated in the scheme intending to defraud and used the interstate wires to further the scheme.

150. In 2013, the California EPA DTSC started investigating Apple for violating e-waste regulations in 2011-2012. In 2016, based on the investigation results, Apple agreed to a five-year consent decree and was fined by CalEPA DTSC for $450,000 over hazardous/universal waste violations.[47] "To settle the allegations, Apple has agreed to increase inspections at its facilities in Cupertino and Sunnyvale, according to C[alifornia ]EPA's Department of Toxic Substances Control (DTSC)." Apple was found to have operated off-book waste processing plants, transporting waste without manifests and failing to take proper employee safety precautions. These violations surely included wire and mail fraud elements to pull off such an operation for so long.

151. In Apple's 2015 Environment Report (a formal document they transmitted and published via wires), Apple said, "*Since 1994, we have diverted more than 508 million pounds of equipment from landfills*." Apple apparently referred partially to the e-waste it had been illegally disposing of in Santa Clara County.

152. DTSC caught Apple using unlicensed TSDF transporters, yet Apple's 2016 Environmental Responsibility Report (a formal document they transmitted and published via wires) said, "*Apple disposes of hazardous waste responsibly. We complete regular audits of the Transportation, Disposal, and Storage Facilities (TSDF), where the hazardous waste is ultimately sent to be treated, incinerated, or recycled. Only facilities we audit and approve can accept and treat the hazardous waste we generate, which was 1 million pounds in fiscal year 2015*."[48] In the 2016 complaint and settlement, DTSC complained that Apple used unlicensed waste disposers, and it is unclear where the waste was transported to.

153. In Apple's 2015 and 2016 Environmental Responsibility Reports, the formal document they transmitted and published via wires, Apple said: "*All electronic waste we collect worldwide is processed in the region where it is collected— nothing is shipped overseas for disposal. The vast majority of our recycling is handled in-region, so we can make sure our recycled materials are not being dumped*

[47] California DTSC, *Apple Agrees to Pay $450,000 to Settle Hazardous Waste Violations*, 2016.
[48] Apple, Environmental Responsibility Report, 2016.

*unsafely*."[49] In the 2016 DTSC complaint and settlement, DTSC noted Apple was illegally shipping e-waste to Canada.

154. Apple's false statements had a natural tendency to influence, or are capable of influencing, the decision of the decision-making body to which it was addressed. Major publishers covered the 2016 DTSC fine, and Lisa Jackson's ex-US EPA team made false and misleading statements in their comments, which were transmitted over wire:[50]

> "An Apple spokesperson, Alisha Johnson, said: 'This matter involves an oversight in filing paperwork to close one of our recycling facilities as part of our expansion to a larger site. We have worked closely with the DTSC to ensure that going forward, we have the proper permits for our current site…As we do with all our facilities, we followed our stringent set of health and safety standards, which go well beyond the legal requirements."

Yet, in 2021, Apple told Gjovik they only do the bare minimum of what is required (and Gjovik discovered they still need to do that). Further, the conduct was not an 'oversight in filing paperwork'. Gjovik complained about this before termination as part of her SOX and Dodd-Frank claims.

**xi. Predicate Act 7: "Green" Energy – Wire Fraud (18 US Code § 1343)**

155. Apple intentionally devised or intended to devise a scheme to defraud using materially false pretenses (e.g., claims of using 'green' energy, etc.), representations (e.g., they were using 'green' energy, etc.), or promises (e.g., they were trying to use 'green' energy, etc.) over interstate wire related to Apple's energy practices. Apple has an energy company subsidiary registered with FERC called "Apple Energy LLC," so Apple's statements about energy are material and subject to high scrutiny.

156. In 2018, Apple wrote to the EPA, "*Apple generates 100% of our operational load through clean energy*."[51] For years, Apple's "environmental" branding has centered around a claim of running on "Green Energy." In 2015, it was exposed that Apple's claims about its data center in Maiden, North Carolina, running on 100% green energy, were false. Apple had claimed they did not use fossil fuels at the facility, and it was 100% "green," but records showed they did use fossil fuels, and only <1% of the energy was "green." [52]

[49] Apple, Environmental Responsibility Report, 2015; Environmental Responsibility Report, 2016
[50] Reuters, *California EPA says settled with Apple on hazardous waste claims* (Dec 6, 2016).
[51] US EPA, Docket ID No. EPA-HQ-OAR-2017-0355, *Apple Comments on EPA Proposal re Emission Guidelines for Greenhouse Gas Emissions* … (at 83 FR 45588, September 18, 2018).
[52] *Analysts Call Apple Renewable Energy Claims 'Lies,'* The Carolina Journal, 2015.

**xii. Predicate Act 8: Compliance – Wire Fraud (18 US Code § 1343)**

157. Apple intentionally devised or intended to devise a scheme to defraud using materially false or fraudulent pretenses (e.g., that Apple tries to follow the law, etc.), representations (e.g., that Apple does not break the law, etc.), or promises (e.g., that Apple cares about following the law, etc.) over interstate wire communications related to Apple's regulatory compliance practices. Apple devised and attempted to devise a scheme or an artifice to defraud to obtain money or property, knowingly and willingly participated in the scheme with the specific intent to defraud, and used the mail and interstate wires in furtherance of the scheme.

158. Apple's Global Whistleblowing Policy states: "*Apple conducts business ethically, honestly, and in compliance with applicable laws and regulations*."[53] Apple's website has a homepage for "Ethics and Compliance" that leads with a prominent statement, similarly saying: *"Apple conducts business ethically, honestly, and in full compliance with the law.*"[54] Apple's "Business Conduct Policy," produced by Tom Moyer's team, starts with: "*Apple conducts business ethically, honestly, and in full compliance with applicable laws and regulations. This applies to every business decision in every company area worldwide."*[55]

159. Apple states a conclusive, definite fact that the company is ethical, honest, and never violates laws or regulations. Apple's statement is false, as well as preemptive threats against whistleblowers speaking out, as if Apple is never doing anything wrong; there is nothing to blow the whistle about. Reviewing the long list of criminal and civil charges, decisions, and settlements against Apple – it is clear that not "*every business decision in every area of the company worldwide*" is ethical, honest, or in full compliance with the law.

**xiii. Predicate Act 9: Apple/Levoff -- Securities Fraud (15 USC § 78) & Wire Fraud**

160. Gene Levoff, member of the Worldwide Loyalty Enterprise and officer and agent of Apple, violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)] and Section 10(b) of the Exchange Act and Rule 10b-5.[56] Gene Levoff was Apple's head of Corporate Law and one of three officers for Braeburn Capital (Apple's $100B+ internal hedge fund subsidiary in Reno, Nevada). Among other duties,

---

[53] Apple, Global Whistleblowing Policy.
[54] Apple, Ethics and Compliance.
[55] Apple, Business Conduct Policy, August 2022.
[56] *US SEC v Gene Daniel Levoff*, 2:19-cv-05536, pg12-13, United States District Court, District of NJ (2019).

Case: 26-4716, 11/18/2026, DktEntry: 10.4, Page 162 of 256

Levoff was responsible for "Apple's compliance with securities laws, including providing legal advice in connection with Apple's SEC filings and financial reporting, and for managing Apple's corporate subsidiary structure."[57] He also made numerous false SEC filings about Apple's environmental practices.

161. Levoff was an Apple executive and associate General Counsel and engaged in unlawful conduct that was precisely the type of his job at Apple, which he was supposedly responsible for preventing and monitoring. Levoff even sent emails to Apple employees warning them not to engage in conduct, which he then turned around and did himself, knowing the violation, and prepared to conceal and obstruct any inquiries into his conduct through his role as the person ultimately responsible for the compliance concerns.

162. In violation of 18 U.S.C. Section 1962(c), Apple participated in and enabled Levoff's commission of RICO Acts of Securities Fraud and Wire Fraud by continuing to employ him, disclose confidential information to him, and instruct him to send notices to the company that Apple knew Levoff himself was violating. In violation of 18 U.S.C. Section 1962(d), Apple adopted the goal of furthering and facilitating a conspiracy to commit RICO Acts of Securities Fraud and Wire Fraud. Two or more people (Gene Levoff and DOE[58]) agreed to commit a substantive RICO offense, and Apple knew of and agreed to the overall objective of the RICO offense.[59]

**xiv. Predicate Act 10: Relating to Chemical Weapons [18 USC § 229; §2332(b)(g)(5)(B)]**

163. At ARIA in Santa Clara, Apple knowingly possessed chemicals not intended for peaceful purposes, protective purposes, unrelated military purposes, or law enforcement purposes, as described in 18 U.S.C. § 229F(7) – and those purposes were malicious and were not socially beneficial. Apple intended to release dangerous chemicals in a way that could cause imminent danger of death, serious bodily injury, and mass suffering. These chemicals were toxic and "through their chemical action on life processes can cause death, temporary incapacitation or permanent harm to humans or animals." [OPCW Section 299]. Apple attempted to and did acquire, transfer, receive, stockpile, retain, own, possess, use, and threaten to

---

[57] *US SEC v Gene Daniel Levoff*, 2:19-cv-05536, pg4, United States District Court, District of New Jersey (2019).
[58] Additional person(s) named DOE until identity(s) revealed during discovery – it is implausible that Levoff was able to engage in so much fraud without a single person noticing for five years.
[59] Pending discovery, there appears to only be two options: first, Apple's Audit function did notice Levoff's conduct and condoned/ratified it by inaction, similar to the executive direction in *Banko v Apple* related to Embezzlement), or Levoff deleted records of his activities, which would another Predict Act.

Case: 25-4716, 11/13/2026, DktEntry: 10.4, (163 of 256)

use chemical weapons. Apple assisted or induced another person to do the same or attempted to conspire to do the same.

164. Apple used/stored/released chemicals on Treaty Annex II, including Phosphorus Trichloride, noted in their chemical inventories, and white/yellow/red phosphorus waste, indicated on their manifests. Apple also used chemicals listed on the Department of Homeland Security list of "Chemicals of Mass Effect," including arsine, phosphine, and chlorine gases.[60] Apple repeatedly leaked phosphine gases from the factory at ARIA in 2019 and 2023, at least.

165. Like other 18 USC 229 cases, highly volatile and poisonous substances were repeatedly released into highly trafficked areas, placing many people at risk of severe harm and mass suffering. Apple also has a history of gassing its employees with Chlorine. At least two chlorine gas leaks have been reported at Apple facilities. In 2012, there was a chlorine gas leak at an Apple factory, which killed one worker and injured another four workers.[61] There was a chlorine gas leak at an Apple data center in 2015, resulting in an evacuation, HazMat response, and multiple employees taken to the hospital.[62] At ARIA, Apple's use, storage, and release (intentional and unintentional) of very toxic gases can produce a dense cloud of lethal gas that would be large enough to engulf the apartments. Such an emission, if it has not already occurred, could easily cause injuries and death.

**SECOND CAUSE OF ACTION**

**(Violation of Sarbanes-Oxley Whistleblower Protection)**

166. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief. At the time of the events alleged in this complaint, Apple's officers, employees, and agents discharged, demoted, suspended, threatened, harassed, and otherwise discriminated against Gjovik in the terms and conditions of her employment because Gjovik provided information, caused information to be provided, and otherwise assisted in an investigation regarding conduct which Gjovik reasonably believed constituted a violation of securities laws or which included fraud on shareholders. Gjovik provided information she thought related to fraud or securities violations as defined in 18 U.S.C. § 1514A(a)(1).

---

[60] DHS CISA, Chemicals of Interest.

[61] NBC News, *Report: Deadly gas leak at Apple supplier's plant in China*, July 2012.

[62] The Register, *Chlorine gas horror leak at Apple data center puts five in hospital*, June 2015; The Guardian, *Five injured in chlorine gas leak at Apple data centre*, June 2015.

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (164 of 256)

167. Gjovik complained to Apple about conflicts of interest related to a board member and decision about her office, about apparent self-dealing by corporate insiders including an interested party transaction, Apple's false public statements about Apple's environmental and labor practices, including false statements by a prior government official and now Apple executive; concerns that Apple's internal controls were inadequate; Apple appeared to be silencing and retaliating against whistleblowers and people raising concerns, in order to cover up the issues instead of investigate or resolve problems; Gjovik's complaints about the safety of her office and about the complaint process generally would be overseen by the Board Committee chaired by an officer Gjovik was complaining about; false statements to government and shareholders; material fraudulent conduct; inadequate internal controls; complaints about smuggling and violations of sanctions; and witness intimidation and obstruction of justice.

168. Gjovik complained about these issues in emails, complaints, and texts, including formal Business Conduct complaints in July 2021 (smuggling/sanctions) and August 2021 (Ronald Sugar/Conflict of Interest and Fraud); the issue confirmation with Okpo in August 2021; complaints to Senior Director Dr. Cohen about the vaccine skipping the line issues in December 2020, Apple's fraudulent conduct in April-May 2021; complaints to Gjovik's friend (N.C.) on Lisa Jackson's team about fraudulent statements about environmental practices in April 2021 and systemic retaliation and coverups in July-August 2021; and additional comments to the press and on social media before her termination.

169. Gjovik filed an SEC whistleblower tip on August 31, 2021, and directly notified Apple via Twitter, coworkers, and directly to Dr. Cohen, all prior to her termination. Before her termination, Gjovik informed Dr. Cohen directly about her FBI complaint about smuggling/sanctions and FDA/DOJ tip about vaccines. The SOX case was docketed with the US Department of Labor on December 12, 2021.[63]

170. Gjovik's concerns about fraud and securities rules related to Ronald Sugar and her office were material as Apple makes statements about the conditions of its properties, compliance with regulations, and environmental practices in its SEC filings and communications to shareholders. Gjovik's complaints were reasonable as the allegations included all the essential elements of fraud and even used the word 'fraud.' The property at issue in Gjovik's July-September 2021 complaints is worth $40M+, had a dedicated US EPA webpage for the clean-up, and another company with a property on the Triple Site

---

[63] *Ashley Gjovik v Apple Inc,* Apple Inc./Gjovik/9-3290-22-051; OSHA 11(c) Procedures: 29 CFR Part 1977, EPA Procedures: 29 CFR Part 24, SOX Procedures: 29 CFR Part 1980

found the clean-up material enough to file a copy of a remediation agreement, which also notes the TRW Microwave Superfund site, to the US SEC.[64]

171. Sugar worked at TRW Microwave Inc (headquartered at 825 Stewart Drive) when the site created pollution and clean-up orders were issued. As CFO, he would have signed financial assurance documents. It's improbable that Ronald Sugar was not personally involved in TRW Microwave use and disposal of industrial hazardous materials at Gjovik's office or not personally involved in the environmental clean-up of spills/dumping of those chemicals at Gjovik's office. Gjovik witnesses Apple committing fraud at Stewart 1 when it refused to report issues to the US EPA it was required to report and when it attempted to conceal the problems before she (or the US EPA) could inspect. Gjovik inquired if Ronald Sugar was involved in the fraud due to his conflicts of interest related to the property.

## THIRD CAUSE OF ACTION

## (Violation of Dodd-Frank Whistleblower Protection)

172. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief. Apple directly and indirectly discharged, demoted, threatened, suspended, harassed, and otherwise discriminated against Gjovik in the terms and conditions of her employment because Gjovik lawfully provided information to the Commission with her SEC whistleblower tip (filed August 31, 2021), made disclosures to the US SEC led to several meetings with US SEC investigators about her disclosures, and made other protected disclosures. The 2nd Cause of Action for SOX whistleblower retaliation is incorporated and restated here.

## FOURTH CAUSE OF ACTION

## (Creation & Maintenance of a Private Nuisance; Nuisance Per Se; Absolute Nuisance)

173. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief. Apple created and maintained a condition in violation of California Civil Code Section 3479. This nuisance was demonstrably injurious to health, which was indecent and offensive to the senses and obstructed the free use of property. By acting and failing to act, Apple created a condition or permitted a condition to exist that was harmful to health, offensive to the senses, an obstruction to the free use of property, and a fire, explosion, and poisoning hazard. Apple's conduct in acting or failing to act was intentional, unreasonable, negligent, and reckless.

[64] US SEC, *Remediation Agreement* (AMD, Fujitsu and FASL), EX-10.15.

contaminants into the air. Beneath the building, they are carried by an intentionally designed sub-slab vapor collection system, deliberately routed to the roof, and then re-entrained through the HVAC intake and into Gjovik's office and collect Gjovik's chattel property, and are generally injurious to Gjovik's health, are offensive to the senses, and interfered with Gjovik's comfortable enjoyment of life and property. Apple created the nuisance due to unnecessary, unreasonable, and injurious methods of operation of their business and failed to correct it for years after the US EPA complained.

**FIFTH CAUSE OF ACTION**

**(Strict Liability for Ultrahazardous / Abnormally Dangerous Activities)**

183. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief. Apple's activities at ARIA and Stewart 1 provided a high degree of risk of significant harm to people and property, and the exercise of reasonable care could not eliminate the risk; the activity's benefits do not outweigh the risks, and these activities are inappropriate for the location and are not common.Apple was engaged in an ultrahazardous activity that caused Gjovik to be harmed. Apple's activities were the proximate cause of that harm, and Apple is responsible for that harm. People who engage in ultrahazardous activities are responsible for the harm these activities cause others, regardless of how carefully they carry out these activities. Apple damaged Gjovik's chattel property (discoloring, weakening, dissolving glues, causing reactions), degraded her extremely expensive leasehold conditions, and harmed Gjovik's mind and body.

**xvii. Part A. – Ultrahazardous Activities at 3250 Scott Blvd, Santa Clara**

184. Operating a silicon fabrication factory is an ultrahazardous activity when there is a high degree of risk of some harm to people, land, and chattels; a likelihood that the harm will be severe; there is an inability to eliminate the risk by the exercise of reasonable care; the activity is not a matter of common usage; the activities were inappropriate for the locations where they were carried on. Semiconductor fabrication adjacent to a residential area is an ultrahazardous activity. For decades, it has been known to require pyrophoric gases, which have a "serious fire hazard," combustible and flammable chemicals that must be "carefully monitored and handled by experienced personnel." These chemicals were used only a few hundred feet from homes, and the chemicals in question were emitted from vents. The storage, use, and release of dangerous, highly poisonous gas in a residential area is an activity which, even when

conducted with the greatest of care and prudence, could cause damage to others in the neighborhood and thus is ultrahazardous, and Apple knew.

185. The close proximity to residential areas makes Apple's activities ultrahazardous. Apple's insistence on keeping the existence of the factory secret, Apple failed to put anyone around the facility on notice that Apple's ultrahazardous activities could harm them. Apple's secrecy increases the danger of its activities as well as concealing from victims the cause of their injuries. Apple released chemicals categorized by Cal. Code Regs. Tit. 17, § 93000 as "Substances Identified as Toxic Air Contaminants," of which there is no safe level of exposure without "significant adverse health effects. "Apple released into the air chemicals categorized under 42 U.S.C. Section 7412(b) as "Hazardous Air Pollutants" and Cal. Code Regs. Tit. 17, § 93001 as "Hazardous Air Pollutants Identified as Toxic Air Contaminants."

**xviii. Part B. – Ultrahazardous Activities at 825 Stewart Drive, Sunnyvale**

186. Stewart 1 is part of a Superfund mega-plume, merging with other megaplumes and impacting a large community with emissions. Operating a business on a Superfund mega-site with a pathway for vapor intrusion and contaminants of concern, including TCE and Vinyl Chloride, is an ultrahazardous activity. The activity has a high degree of risk of some harm to people, land, and chattels; a likelihood that the harm will be severe; there is an inability to eliminate the risk by the exercise of reasonable care; the activity is not a matter of common usage; the activities were inappropriate for the locations where they were carried on. Recovery from unexpected exposure to toxic fumes in an office building or other building has been recognized as a legitimate legal claim, even where the effects upon the occupants are not permanent.CERCLA sites already have strict liability for hazardous waste contamination. CERCLA imposes strict liability for environmental contamination upon, among others, the owner and operator of a facility – which, in this case, is Northrop Grumman and Apple, respectively. [42 U. S. C. §9607(a).] Superfund sites are relatively uncommon. As of September 2023, there are only 1,336 active Superfund National Priority List sites in the United States.[65]

**SIXTH CAUSE OF ACTION**

**(Violation of the Bane Civil Rights Act - Cal. Civ. Code § 52.1)**

187. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above,

[65] US EPA, Superfund: National Priorities List (NPL),

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (168 of 256)

as though fully set forth in this Claim for Relief. Apple violated the Bane Act when Apple "*interfere[d], or tries to do so, by threats, intimidation, or coercion, with [Gjovik's] exercise or enjoyment of rights secured by federal or state law*." Apple violated the Bane Act with "*an attempted or completed act of interference with a legal right, accompanied by a form of coercion*" with specific intent to violate Gjovik's rights and a reckless disregard for Gjovik's rights. Apple intended to cause harm, but Gjovik was harmed, and Apple's actions were a substantial factor in causing Gjovik's harm.

188. Apple committed violence and made threats of violence against Gjovik and her property, including threatening messages and social media posts about guns, ruin/destruction, and even her death; sending threatening and dangerous packages in the mail; tampering with Gjovik's chattels to the extent of conversion; surveilling and stalking Gjovik; hacking Gjovik's electronics and utilities; destroying Gjovik's chattels; trespassing and burglarizing Gjovik's home; and other inherently violent misconduct.

189. Any reasonable person would feel terrorized by Apple's actions, and that was Apple's intent when their Global Security & Legal teams used their background and training to formulate a psychological torture campaign. Apple's intimidation, threats, and terrorization efforts of Gjovik were operated around the clock and the world, with Apple messaging, calling, and posting about Gjovik at all hours of the day, in multiple languages, and from dozens of countries around the world. Apple's harassment of Gjovik came from all corners of the internet, including forums, social media sites, email, texts, website webform, phone calls, blog posts, news articles, and other mediums.

190. Apple's actions threatened violence and created a reasonable fear of imminent harm. Apple attempted to interfere with Gjovik's exercise of her civil rights through threats, intimidation, and coercion. Apple made threats of violence against Gjovik and her property, which she reasonably believed would be carried out if she exercised her civil rights. Apple acted violently against Gjovik and her property to prevent her from exercising her rights and to retaliate against her for doing so.

191. In an attempt to prevent Gjovik from exercising her civil rights and to retaliate against her for trying to exercise her civil rights, in violation of Gjovik's civil rights, Apple has maliciously terrorized Gjovik with threats, intimidation, and coercion that interferes with her constitutional and statutory rights. Apple tried to prevent Gjovik from doing things she had a right to do under the law and to force Gjovik to do things she was not required to do. Apple interfered and attempted to interfere by threat, intimidation,

by April 2021 and as early as February 2020, Gjovik was an environmental crime victim who suffered direct physical, emotional, or financial harm as a result of the commission of a federal crime.

**EIGHTH CAUSE OF ACTION**

**(Violation of the California Whistleblower Protection Act - Cal. Labor Code § 1102.5)**

204. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief. Apple violated § 1102.5 when it took adverse employment action against Gjovik due to Gjovik's protected activity in disclosing information to a governmental or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover or correct the violation; or providing information to or testifying before, any public body conducting an investigation, hearing, or inquiry.

205. Section 1102.5 also covers Gjovik's' public disclosures as due to Apple's extreme power and control over the government agencies who are supposed to be able to regulate it, often the only party in a position to force Apple to correct the issue is the public. Many of Gjovik's public statements in August and September 2021, and statements to coworkers in June and July 2021, all before her termination, noted that was why Gjovik was bringing her complaints forward to her coworkers and the public – so the public pressure may force Apple to do the right thing for once.

206. Gjovik filed several complaints under multiple laws, which were known to Apple executives, bosses, and administrators (by Gjovik informing them directly, or by Gjovik speaking about them publicly on social media and the press, or by Apple's surveillance of Gjovik before her termination. Complaints to the US EPA and CalEPA, complaints to the Santa Clara County district attorney's office about environmental crimes, complaints to politicians about environmental crimes and public corruption, complaints to US EEOC and DFEH, complaints to US NLRB and CalDOL, and complaints to US DOL about environmental violations, health/safety issues, and securities fraud.

207. Apple discharged and discriminated against Gjovik in retaliation for Gjovik's disclosure of information about Apple's unlawful acts and omissions. Gjovik disclosed Apple's violations of numerous laws as incorporated from allegations to government agencies, the public, the press, and Apple management. Gjovik had a reasonable cause to believe that the information she disclosed violated the statute and was non-compliant with a rule or regulation.

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (170 of 256)

**xxi. Part C. Employment Discrimination & Retaliation**

230. Gjovik reported and testified about topics including complaints about sex/gender and disability discrimination, which are "fundamental" rights for the purpose of a *Tamney* claim. Gjovik filed DFEH and EEOC claims on August 12, 2021, and proceeded to testify and provide evidence, requesting a Right to Sue letter, which she was granted on September 9, 2021, just hours before Apple fired her. Apple retaliated against Gjovik for opposing Apple's discriminatory practices. Gjovik also reported to NLRB and the US Department of Justice Civil Rights before her termination. Apple discriminated against Gjovik (including terminating her employment) due to Gjovik's actions related to a constitutional and statutory right to be protected from discrimination due to her sex and due to her disabilities, which is a right that benefits the public, is a substantial and fundamental right, and which was firmly established at the time of discharge.

231. **Part D. Environmental & Health/Safety**: Apple discriminated against and disciplined Gjovik because Gjovik reported and testified about workers' health and safety laws, public health, and safety laws. Gjovik reported CERCLA violations to Apple, the US EPA, and other agencies where Apple's misconduct resulted in several vectors of hazardous waste vapor exposure at Stewart 1.

**xxii. Part E. Victim/Witness Discrimination**

232. Apple discriminated against Gjovik (including terminating her employment) due to Gjovik's actions related to a constitutional and statutory right to be protected from crime and seek justice for injury caused by crime, which is a right that benefits the public, is a substantial and fundamental right, and which was firmly established at the time of discharge [Cal. Lab. Code § 230(e)]. Further, Apple's also violated Cal. Gov. Code § 9414 (a misdemeanor public offense) by harassing and retaliating against Gjovik, by attempting to prevent and dissuade Gjovik's testimony for a proceeding, and by depriving, threatening, and attempting to deprive or requesting Gjovik not be employed due to Gjovik being a witness for a committee, and giving testimony to a committee as a witness or victim.

233. Apple knew Gjovik was talking to legislatures about what occurred to her next to ARIA, and Apple knew that it was Apple who was responsible for Gjovik's harm, despite Gjovik not knowing that fact yet. Apple knew Gjovik may testify at legislative committees about the air pollution caused by Apple. Apple undertook an effort to ensure Gjovik did not testify and to harass Gjovik because Gjovik may testify to a committee. Apple also knew Gjovik was talking to politicians about its retaliation against

237. In addition, Apple also breached the employment contract and covenant by intentionally terminating Gjovik right shortly after her annual performance review was due, which would be accompanied by a performance bonus that she had already earned through her successful performance in 2020-2021 (end of the fiscal was June 30, 2021). Further and more maliciously, Apple also intentionally intended to run out the statute of limitations for her claims before her termination, as they almost did for the 30-day CERCLA and the OSH Act. Apple did not act reasonably and in good faith; instead, it acted in bad faith to prevent Gjovik from enjoying the benefits of her employment contract, thus causing Gjovik damage.

**THIRTEENTH CAUSE OF ACTION**

**(Intentional Infliction of Emotional Distress)**

238. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief. Apple's conduct was despicable, base, vile, and contemptible, and subjected Gjovik to cruel and unjust hardship – it was carried out with a willful and conscious disregard for Gjovik's rights and safety. Apple could have acted with some decency and reserve. Still, instead, Apple bugged Gjovik's objects and home, sent her possessions to her in a box with broken glass and threatened it could contain a severed head, sued her for reporting criminal conduct, reported her to law enforcement, repeatedly threatened to "*ruin*" and "*destroy*" her, and even sent her emails pretending to be government employees threatening her to stop speaking about Apple's chemical leaks. Through all this, Apple went out of its way to act like deranged maniacs whose conduct exceeded all bounds of decency usually tolerated by society.

239. **Part A. Intentional Acts – Retaliation, Interrogation, & Termination (Cal.):** Apple abused its position of power over Gjovik and exploited that power differential in its campaign of terror against Gjovik. Apple has extreme power and control over Gjovik and its other employees as one of the world's largest and most influential companies. Apple retaliated against an employee for reporting safety concerns by opening a sham investigation and coercing coworkers to falsely accuse the whistleblower of unlawful conduct, including harassment and falsifying documents, all for the sole purpose of retaliating against the employee, is sufficient to constitute extreme and outrageous behavior, and maliciously interrogating the employee.

Case: 26-4716, 11/13/2026, DktEntry: 10.4, (172 of 256)

**Ashley M. Gjovik, JD**
*Pro Se Plaintiff*

2108 N St. Ste. 4553
Sacramento, CA, 95816
(408) 883-4428
legal@ashleygjovik.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

**ASHLEY GJOVIK**, *an individual*,

Plaintiff,

v.

**APPLE INC**, *a corporation*,

Defendant.

**Case No. 3:23-cv-04597-EMC**

**Filed**: September 7 2023

**District Judge**: Honorable Edward Chen

**SECOND AMENDED COMPLAINT WITH EXHIBITS**

**PLAINTIFF'S CLAIMS**

1. **Sarbanes-Oxley Act Whistleblower,** 18 U.S.C. §1514A
2. **Dodd-Frank Act Whistleblower,** 15 U.S.C. §78u-6(h)(1)(A)(iii)
3. **Bane Civil Rights Act,** Cal. Civ Code § 52.1
4. **Ralph Civil Rights Act,** Cal. Civ Code § 51.7
5. **Racketeer Influenced & Corrupt Organizations Act,** 18 U.S.C. §§ 1962(a), (c), (d)
6. **Ultrahazardous Activities**
7. **Whistleblower Protection Act**, Cal. Labor Code § 1102.5
8. **Retaliation for Filing Complaints,** Cal. Labor Code § 98.6
9. **Retaliation for Safety Activities,** Cal. Labor Code §§ 6310
10. **Termination in Violation of Public Policy**
11. **Private Nuisance; Per Se Nuisance** Cal. Civil Code § 3479
12. **Intentional & Negligent Infliction of Emotional Distress**

**DEMAND FOR JURY TRIAL**

105. Gjovik started looking for a new job at Apple, interviewing with Haley Samale's team to manage new software features. Gjovik was assured she got the job, they began discussing her start date, but then was suddenly told she did not, due to Reigel providing negative feedback about her. Software Engineering Vice President, Kim Vorrath, then intervened and assigned Gjovik to run a program called Early Field Failure Analysis ("EFFA") reporting to a different manager, but still under Memula. Gjovik still wanted to leave Memula's organizing completely and tried to reject the position, but she was told it was her only option. Gjovik eventually accepted the role.

106. In 2016, Gjovik managed Software Engineering "EFFA"; failure analysis program for products in the field and launch planning for New Product Introduction, still under Memula's organization, now reporting to Shandra Rica. Gjovik drove field issue triage and root cause analysis to resolution for customer software quality issues, and partnered with hardware teams when software or firmware updates were needed to mitigate silicon or component issues.

107. Rica reported to Memula and she approached Gjovik to interact as personal friends. In 2016, Rica invited Gjovik out to drink at bars and to sleep over at Rica's home. Gjovik slept over several times with both women sleeping in the same bed. They had become close friends, Gjovik thought, so she was surprised when Rica severely retaliated against her months later.

108. In late 2016, there were reports of possible battery failures and device stability issues in the field that were being escalated across numerous engineering teams at Apple.[95]

---

[95] California AG, "Attorney General Becerra Announces $113 Million Multistate Settlement Against Apple for Misrepresenting iPhone Batteries and Performance Throttling" https://oag.ca.gov/news/press-releases/attorney-general-becerra-announces-113-million-multistate-settlement-against, Investopedia, "Apple (AAPL) Reaches $500 Million Settlement Over iPhone 'Batterygate'," https://www.investopedia.com/apple-aapl-reaches-settlement-over-iphone-batterygate-5088300

109. Gjovik felt like it was an emerging issue so began including it in her status report and repeatedly urged her management to inform Software executives about the matter, so they were not caught off guard.

110. Gjovik's management, Evan Buyze and Rica, refused to notify Software Engineering Program Office leadership.

111. Gjovik attempted to go around them and inform Rica's boss, Memula, who was concerned and agreed with Gjovik; however Rica and Buyze quickly retaliated against Gjovik for 'going around them' and demanded she not inform any software executives of the issue without their permission.

112. Shortly after, Gjovik received text messages from Operations Vice President Priya Balasubramanian asking if she could come to an in-progress meeting about the battery issues. They said that Jeff Williams, the COO, was asking where a representative from Software Engineering was and wanted someone there.

113. Gjovik quickly texted Buyze and Rica about the matter asking for their input, but it was late and both had stopped responding.

114. Gjovik decided to attend the meeting and spoke for several minutes sharing an update and the data she had previously vetted with functional teams. Jeff Williams seemed appeased and thanked her when she was done.

115. Following these events Gjovik was informed that Craig Federighi (Senior Vice President of Software Engineering, reporting to Tim Cook) was upset that Kim Vorrath (Memula's manager) never told him about the emerging issues, and Vorrath was upset that Memula had never told her about the emerging issue, and Memula told Gjovik he was going to try to '*take the fall*' because Gjovik had tried to escalate.

116. However, Rica and Buyze quickly blamed Gjovik and said the only reason they were in trouble was that Gjovik went to the meeting and shared status. They said while the status was accurate and vetted, that Gjovik should have simply declined to attend, and refuse to provide information, because that is 'easier.'

117. Rica and Buyze then insisted the program's response to the battery issue should be 'ignoring it' and 'hoping it goes away.' When Gjovik continued to raise concerns about staffing for the overall program, Rica and Buyze said Gjovik should 'ignore' those issues too.

118. They told Gjovik that if field issues are bad enough that Software executives will hear about them directly from other Executives so Gjovik should act in bad faith and stonewall at a program level. Gjovik pushed back on this and attempted to remind both how important customer product quality is.

119. Shortly after, Rica constructively terminated Gjovik. Rica explained that she and Buyze 'got in trouble' over Batterygate, graphics corruption issues with the new MacBook Pro with TouchBar, and coverage while Gjovik was out for a week, because Gjovik had supposedly set an 'unreasonable expectation' that Software Engineering would do work and so people expected them to do work, but they did not want to do work. They told Gjovik they now had to "reset expectations" for other organizations that Software will only provide minimum engagement on customer field issues.

**From:** **Ashley Henderson** a_henderson@apple.com
**Subject:** 12/5 2:1 (Shandra, Evan, & Ashley) Meeting Summary
**Date:** December 7, 2016 at 10:02 PM
**To:** Kristen Michallik kmichallik@apple.com

AH

Just FYI. Would like to have a paper trail of how this went down. Sorry lots of words.

———

Meeting starts. They ask me how my vacation was. **Then Shandra says before they start with "feedback", she wanted to ask me if I still wanted to be in this role. She says my answer will change the direction of the rest of the conversation.** I tell her I'm always considering other options and thinking about my long term goals, and have been wondering if it might be time to start exploring other options - but I haven't been actively looking. **She says something like "great, so you are ready to move on, this make the rest of this conversation easier".** Then she says "let's get into the feedback". She tells me "it's not working". She says while all the other orgs (AppleCare, Product Quality, etc) love me, the image of the EFFA program within SW is not good. She says our house is a mess, and we're in a lot of trouble.

She outlines the following pieces of feedback for me:

1. **"Over-communication internally":** the evidence she cites is that she receives 50+ emails a day about EFFA topics, and it's too much noise. She says she can't figure out what's important. She says she and Evan are in trouble for not knowing what's going on.
   - I try to clarify that now she's on the Mac EFFA lists for the last two weeks, she's getting a good chunk of the questions/asks that come to our team. The 50+ emails aren't actually from me. The # of emails sent directly to Shandra from me averages ~3-4/day the last few weeks, and ~1/day before that. She repeats over & over that I "send her 50+ emails a day" and "she doesn't know what's going on".
   - I also questioned her review of the daily status email I send her, Evan, Venkat, etc. (example in separate email). These include a list of top issues called out in bold w/ summaries and next steps. She previously said she didn't read those emails, but didn't offer a better way to get her info or explain why she didn't read them. I questioned why she didn't ask me to provide info to her in another way if she needed that info. She changed the subject.
2. **"Over-communication externally":** Shandra told me she's worried about my judgement of when to share information externally. She said most info shouldn't be shared - even if other teams request it. Her evidence were a few examples she and Evan didn't share updates with SWE leadership but other non-SWE teams had them, and it would have be better to not share with anyone than blindside SWE leadership. There was no other evidence provided for sharing info other than her getting in trouble.
   - I tried to point out times when I asked for them to share info with Venkat/Kim and it was declined, but they changed the subject.
   - I tried to explaining a lot of the benefits of sharing information with Ops/AppleCare etc in certain circumstances. Example was so AppleCare could build workaround customer support plans until a Software Update is released. Another example was so Ops & AppleCare could understand which customer symptoms might be attributed to a certain known issue - to know if there could be additional issues showing up in their field data. They changed the subject again.
3. **"Working too hard":** Shandra said that fixing issues very quickly and communicating details of root cause and resolution set an unrealistic expectation of what support SW can provide EFFA & QIF. She said the EFFA teams are mad at her now for not providing updates quickly/at all, or with details — but that she's okay with that and she will have the "tough conversations" to get them to understand what the "new expectations are". She also told me that even if she had 100 people in her org working on EFFA, they couldn't do everything that was asked of us.
   - I mentioned (again) that it sounds like we have different definitions of the goal of this program, and that I firmly believe if there are major sw issues in the field causing a bad experience for a customer on a certain device - it's the right thing to do to try to understand the issue quickly and drive a corrective action - in addition to providing any information that may be helpful to AppleCare in dealing with these issues until a fix is released.
   - I questioned her statement about 100 people, since I was able to support the majority of the P0s/P1s myself (1 person) - with only the P2s and lower getting neglected - and that she has been saying for the last few months we can't do everything..
   - I also pointed out that as we had previously discussed, I don't make commitments without taking to SWE teams first, and I push back when we don't have resources to support or don't think there's enough data to justify an investigation.
4. **"Priorities"** Evan also chimed in a couple times mentioning prioritization as a concern. While Shandra was talking about

*Exhibit: 12/7/16 Email from Gjovik to HR about Rica & Buyze, 1*

120. Rica told Gjovik that Gjovik's job was now "*finding a new job.*" Rica also told Gjovik to not tell anyone what she just said and added she "*doesn't like people who talk shit.*"

I told them the feedback during the meeting seemed overwhelmingly negative and I wanted to gauge what kind of summary they planned to provide hiring managers about my time in the role. Evan exclaimed "you need to be able to take feedback." I told him, I am listening to the feedback - I'm just trying to understand what message they're planning to provide. Evan said "it will be fair and balanced". **Then Shandra suggested that it would be best if I volunteer this role "didn't work out for me" so we can all agree on that.** I told her I'd take that suggestion into consideration, but was hesitant to say that when I feel like I accomplished a lot of positive things in the last eight months. She told me she thought saying "it didn't work out" would be best. I said that again this feels like a very negative meeting, and I was wondering if there's a timeline on this transition because this feels like a development plan/HR type conversation. **Shandra told me there was no timeline and it's not an HR conversation yet, because I'm agreeing "to leave the role" they "won't have to start that conversation".**

**The meeting ended with Shandra advising me not to complain to people about having to move on, because she doesn't like "shit talking".**

———

*Exhibit: 12/7/16 Email from Gjovik to HR about Rica & Buyze,2*

121. Out of concern for product quality, Gjovik brought the matter to the Human Resources business partner who agreed that Buyze and Rica "*cannot do that*" and said she would follow up. Gjovik had all of her job responsibilities removed for nearly three months until she was able to obtain and start in a new role at Apple. Human Resources told Gjovik that Rica cannot take her job away and that Rica was in the wrong.

122. (Gjovik also complained about this matter to Apple Employee Relations in May, July, and August 2021. In August 2021, Employee Relations investigator Ekelemchi Okpo documented this situation in detail in his original version of the "Issue Confirmation":

> "In 2016, Apple allegedly had products in the field (iPhones) with bad batteries. You shared that you gave Jeff Williams an update on field issues and the meeting went well. After your meeting with Williams, you felt that you were thrown under the bus by your skip level manager, Shandra Rica, and your manager, Evan Buyze, because they failed to update the leadership team on field issues. You told me that you did not have work assignments for 3 months after this incident, and your responsibilities were taken away. As a result, you believe that this was constructive discharge, and you raised your concerns to Michallik on December 7, 2016."

123.

124. Gjovik also provided her emails with Human Resources, Rica, and Buyze on the matter to Okpo as evidence for the investigation.)

**SSP User Studies Group <ssp_usg@apple.com>** Aug 7, 2017, 9:55:08 PM
Social Hour Study: Registration
To: recipients not specified: ;

SSP USG

Hello there!

Thank you very much for responding to our invite!

Prior to your participation, we kindly request that you do the following:

1. Review the **Informed Consent Form (ICF)**
2. E-sign the ICF by registering your email and completing the short pre-study survey that will be sent by **no-reply@ultragrape.com** (check your Spam/Junk folder, sometimes they wander off! 😊)

You will receive an iCal invite to the event shortly. If you prefer a different day/time than the one scheduled, reply to this email or comment on iCal.

Please arrive at MA3B Patio **(map)** at your scheduled time. Do not hesitate to reach out if you have any questions or concerns regarding the study.

See you soon!

*Exhibit: Email Gjovik received after 'registering for the social event, 8/7/17*

139. Gjovik was tricked into attending a "social event" that was really a compound in a parking lot with an armed guard outside, where Gjovik was coerced to use the "Gobbler" application to provide her biometrics and videos of her before she left.

140. Gjovik had received prior offers to participate in Gobbler, but denied those offers. However, now Gjovik felt she had no choice but to comply once she arrived at the compound.

141. From that day forward Gobbler was always installed on Gjovik's iPhone and it was always capturing videos and biometrics from the front camera whenever "*it thought it saw a face*." Even today Gjovik's iCloud is still connected to Gobbler with no way for Gjovik to

148. On April 18 2018, Gjovik's Apple team emailed her and her coworkers about a planned "Family Day" when they could bring their family members (spouses and children) to their office at the TRW Microwave Superfund site in Sunnyvale, and Intersil/Siemens Superfund site in Cupertino. The email stressed the need for "confidentiality" and instructed employees to report any family members not complying with Apple's secrecy rules, at these Superfund sites to Apple Global Security (the same team Moyer represented when he threatened to have 'leakers' arrested).

149. Apple put Gjovik on "document retention" for the Batterygate lawsuits on March 15 2018.[100] The notice from Apple cited "*inquiries from the U.S. Department of Justice*."

150. In May 2018, Apple Legal reached out to perform document collection on Gjovik's devices, including her text messages.

151. On May 8 2018, Gjovik replied saying she uses the same iMessage account for work and personal and said she strongly preferred to only share messages she had with the specific people involved in Batterygate. Or if they have to take all messages, she asked if she could delete personal messages first. On May 10, 2018, she added she is "*a private person*."

152. On May 10 2018, an Apple lawyer replied telling her "*Do not delete any messages*." She said, "*we can certainly identify the relevant text messages with the list of individuals that [she] provides*." Gjovik asked if she could "*export the message conversations from all relevant people instead of sharing the entire database*?" An Apple lawyer replied on May 14, 2018, saying Gjovik should "*work with the team to do [her] best to avoid collection of entirely irrelevant information.*"

[100] Silicon Valley Business Journal, *"Federal investigators open new probe into Apple's intentional iPhone slowdowns,"* Jan 31 2018, https://www.bizjournals.com/sanjose/news/2018/01/31/apple-iphone-battery-slowdown-probe-doj-sec-aapl.html *"At the moment, investigators are reportedly looking at Apple's public statements, and whether the company violated securities laws by not disclosing material information to investors."*

153. However, during the meeting, Apple's lawyers insisted Gjovik let them copy her entire iMessage database. Gjovik protested and explained further she was primarily concerned about "nudes" and sexual messages with a sushi chef she was dating in Hawai'i who had no connection to Apple. Gjovik asked if she could show them the texts so they can confirm its irrelevant and then she can delete the thread before they copy it, but Apple said no, despite previously saying they would avoid collecting unnecessary and irrelevant information. Apple told Gjovik they have ways to copy her data unilaterally without Gjovik's cooperation. Once Gjovik handed her messages over, the Apple lawyers told her they would keep her texts (and nude pictures) in their "*permanent evidence locker*."

154. Gjovik complained about the incident to a few coworkers saying like it felt like Apple wanted "collateral" for Gjovik to stay quiet about her retaliatory constructive discharge in 2016, because she refused to ignore Batterygate. Gjovik complained about the matter in 2018 to Dan West and John Basanese. Gjovik asked for their guidance on if she should directly consult Apple's legal team about the constructive termination, and both executives told Gjovik they did not want to talk about it and not to bring it up again.

155. Gjovik also posted on Twitter about the matter on August 19 2021 and it gained significant attention and engagement. On September 7 2021, Gjovik also posted about it again on Twitter, this time "quote-tweeting" a prior post where she complained about the Batterygate/nudes and also wrote "*the corruption at Apple may reach RICO levels*". Gjovik posted, "*I worry Apple wanted to intimidate me to never openly discuss how I was constructively term'ed for speaking-up abt the [battery] situation when I ran sw failure analysis*." Gjovik was terminated two days later.

156. On April 22 2018, Gjovik emailed Tom Moyer requesting "Business Conduct" approval to attend law school while she worked at Apple, a request suggested by a friend in

*So, it's fine & dandy for everyone else to get slowly poisoned? Before COVID, I was at work for longer than I was at home on a daily basis. So glad you are digging into this stuff for all of us."*

225. On March 29 2021, Gjovik noticed a person named Jenna Waibel, who worked in an organization called "Employee Relations," had been added to her meeting with EH&S. Gjovik emailed her that day: "*Hi Jenna! Not sure if it's a good or bad sign an ER HRBP got added to this*" and mentioned the article about her apartment where she got sick, and that she fainted at her office in 2019 and now thinks it was due to vapor intrusion.

226. On April 2 2021, Gjovik met with Jenna Waibel and Michael Steiger and asked them about the land use covenant for the building, the history of vapor intrusion, and other CERCLA-related topics. Gjovik expressed concerns that the 2014 Five-Year-Report for the site mentions the already very restrictive land use covenant, is apparently out of compliance with California law and needs revised, [129] but Gjovik did not see any revisions. Gjovik asked, *"does California Civil Code § 1471 add any new requirements on the property not current reflected?"* Steiger told her simply "*that's a question for legal*" and never followed up.

8. Pg 32 of the 2014 FYR mentions there's excess cancer risk for occupants due to vapor intrusion, and also plumbing/steam pathways (like the lockeroom showers). Shouldn't employees be notified about this? Prop 65 at least?

No Prop 65 requirements per internal review.

9. Shouldn't employees be notified this is a remediation site? Ideally informed consent for working there. At the very least Right to Know should require some sort to disclosure?

Apple decided no legal requirement. Larger question for Apple on ethical/moral obligation.

10. Pg 28 of the 2014 FYR mentions the current land use covenant is not in compliance with modern California legislation and needs to be revised. Was it revised? I don't see a new one still. Does CA Civil Code § 1471 add any new requirements on the property not current reflected?

Question for legal

*Exhibit: 4/2 Meeting Notes Excerpt*

---

[129] U.S. EPA, 4th Five Year Review: AMD & TRW Microwave Superfund Sites, 2014, https://semspub.epa.gov/work/09/1151964.pdf ["*The existing restrictive covenant was recorded prior to the passage of the California Civil Code section 1471, which establishes the framework for environmental covenants in California. The legal owners of the former TRW Microwave property should record a new restrictive covenant that is consistent with current California law.*"]

435. On August 19 2021, Gjovik posted on Twitter complaining about Apple demanding all of her text messages, even those with nude photographs, back in 2018 for the Batterygate lawsuits and DOJ probe. Gjovik wrote: "*Sooo, #Apple has pics of my boobs. During a discovery thing 3yr ago, legal forced me to hand-over all my texts. They refused to let me delete anything, even "fully personal," even when I said, "by fully personal I mean nudes." They said they're in their "permanent evidence locker"*.[177] The post went 'viral' with over one million views, over one thousand 'retweets', and 52,363 visits to Gjovik's profile.

436. On August 19 2021, Apple emailed Gjovik for a second time to ask to capture three-dimensional imaging of Gjovik's ears and ear canals. Gjovik did not respond.

437. On August 20 2021, Michael Schulman of the US EPA emailed his teammates saying he would avoid creating a paper trail of the inspection and interactions with Apple. He wrote, "*I will not prepare a formal memo of the site visit. Anything I share with management will be verbal or in an email, and at the "site management level" regarding human health protectiveness and site management action items."*

438. On August 20 2021, Gjovik asked Okpo for permission to attend a pre-registered training, even after the Professors approved, with Okpo justifying the denial "*because she was on leave*." Gjovik complained that the leave felt like punishment. It was clear to Gjovik that Apple was hoping she would aggressively demand to come back at which point Apple would terminate her employment for some bogus reason like failure to cooperate with the investigation.

[177] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1428495420917837826

*here until they do… #Apple clearly couldn't find a solid reason to fire me with cause or I'm sure they would have tried. So, now it's a game of who blinks first. I'm not backing down."*[178]

440. On August 20 2021, news broke that Apple had threated and intimidated the legislature of the state of Georgia.[179] Apple "exerts intense pressure on lawmakers with promises of economic investment or threats to pull its money," "threatening jobs," and "the legislation stalls." A state representative referred to Apple's conduct as "intimidation" and "strong-arming," noting legislatures will not challenge Apple out of fear of Apple harming their career and livelihood. Lawmakers in one stated accused Apple of "unethical behavior and potentially violating state ethics laws."[180] Gjovik posted about this on Twitter, criticizing Apple's corrupt behavior.

441. On August 21 2021, Gjovik complained about Okpo and the second "sham" investigation again on Twitter, replying to someone's question if she was on paid leave but with suspended system access. Gjovik replied it was paid leave with system access but she was forbidden to access systems or talk to coworkers. Gjovik added she did not think she would be allowed back.[181]

442. On August 21 2021, Gjovik 'quote Tweeted' her August 19 2021 post about the Batterygate discovery, and wrote: "*At the time, #Apple may have wanted leverage over me related to that lawsuit. I don't know what their intent was, but due to the focus of the suit, my whistleblowing, & the retaliation for it, it's in the realm of possibilities they took my nudes to intimidate me. Stay tuned..."*[182]

---

[178] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1428846269619789824
[179] Emily Birnbaum, How the Apple lobbying machine took on Georgia, and won.
Poorly resourced state governments are no match for the lobbying firepower of Apple, the most valuable company in the world, Politico, Aug 20 2021, https://www.politico.com/news/2021/08/20/apple-takes-on-state-legislatures-georgia-506299
[180] Id.
[181] Twitter, Ashley Gjovik, Aug 21 2021, https://twitter.com/ashleygjovik/status/1429157551287930885
[182] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1429177842399469569

443. On August 21 201, Gjovik submitted the first revised Issue Confirmation to Okpo and also posted on Twitter about it. On Twitter, she provided screenshots of the document where she suggested Apple needed to investigate itself for RICO Act violations including "*fraud*" and "*organized witness tampering*" among other concerns.[183]


Ashley M. Gjøvik
@ashleygjovik
Promote

Based on my experience, & the non-stop horror stories I now hear EVERY DAY from current & past #Apple employees, I'm now also asking employee relations to investigate themselves.
One "issue" I'm raising to them is literally RICO.
@USDOL, I may need to schedule an interview soon.

- **Concerns Raised (DRAFT)**:
  - Hostile work env based on sex (2015-current)
  - Hostile work env based on disability (2020-current)
  - Failure to resolve hostile work environment (2015-current)
  - Sexual harassment (2015, 2018, 2019)
  - Civil assault & battery (2015)
  - False imprisonment (2015-6)
  - Negligence & battery (2017-2020)
  - Civil assault (2021)
  - Quid pro quo / bribe (2015)
  - Intentional Infliction of Emotional Distress (2015, 2021)
  - Bullying (2015-2016, 2021)
  - ADA & FMLA violations (2020-2021)
  - Unsafe work conditions (2017-current)
  - Toxic tort, occupational exposure (2017-current)
  - Violation of OSHA laws & Right to Know statute (2017-current)
  - Failure to report workplace injuries (2017, 2019)
  - Failure to seek medical attention for life threatening injury (2017)
  - Retaliation for whistleblowing (2016, 2020, 2021)
  - Retaliation for protected concerted activities (2020-2021)
  - Retaliatory constructive termination (2015, 2016, 2016, 2021)
  - RICO (Unknown-current)
    - Misrepresentation & fraud
    - Racketeering
    - Organized witness tampering
    - Organized intimidation
    - Corporate corruption
    - Cronyism & nepotism

**Protected Activities & Whistleblowing:**

4:12 PM · Aug 21, 2021

***Exhibit**: Gjovik's Issue Confirmation Concern List, 8/21*

444. Shortly after Gjovik's post about Apple and RICO, a fake Twitter account called "Mel Nayer," began replying to Gjovik's posts making threats and wild allegations. Nayer said, "*This is an ACTIVE @Apple investigation and the managers accused are now receiving death*

[183] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1429174603713191936

Case: 25-4716, 11/13/2026, DktEntry: 10.4, Page 185 of 256

*threats. Stop sharing confidential info/screenshots that could reveal identity of those involved. #AshleyGjovik #apple.*"[184] Nayer added, "*Managers accused are receiving death threats. Take down the work screenshots because identifies are being outed and lives are at risk now.*"[185]

445. Nayer added that "*people at Apple have been fired for sharing less*." Gjovik replied to Nayer, writing "*If during the lawsuits we track down your account & see you work/consult for Apple, then your note just now: "people at Apple have been fired for sharing less" won't age well. Then you're not "just trying to help," you are actually threatening & intimidating a whistleblower.*" [186]

446. After the outburst from Nayer, Gjovik posted on Twitter: *"Y'all, I really think it's because I finally said "RICO."*[187] Gjovik then replied to her own post with a link to a music video for the song "R.I.C.O." by Meek Mill featuring Drake.[188] Gjovik also posted, "*Now that we're all fully distracted by whatever the f THAT was, plz keep in mind it happened just hours after I mentioned: 1) The corruption at #Apple may reach R.I.C.O. levels 2) Legal may have taken my nudes to intimidate me as a whistleblower re: that lawsuit.*" [189]

447. On August 22 2021, Gjovik sent the second revised Issue Confirmation to Okpo with her revisions and corrections, and she posted about it on Twitter. She highlighted concerns about "Apple Real Estate Environment, Health, & Safety" which she detailed as "*RICO; Negligence, Misrepresentation; Fraud; Recklessness; Violations of Env Laws; OSHA, & Right to Know; Toxic Torts; Corporate Corruption; Organized Intimidation; Organized Witness Tampering*." Gjovik asked Apple to investigate themselves.

---

[184] Twitter, Mel Nayer, https://web.archive.org/web/20210822103330/https:/twitter.com/mel_nayer/status/14292155549 13533 957

[185] Id.

[186] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1429216780178714625

[187] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1429224817698304007

[188] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1429233027683536897

[189] Twitter, Ashley Gjovik, https://twitter.com/ashleygjovik/status/1429250234278825987




*Exhibit: Gjovik's 9/6/21 Twitter post about FBI complaint about Smuggling*

493. On September 6 2021, Gjovik replied to the US EEOC confirming she was working on a draft of her complaint and was targeting to submit it to them by September 8 2201, responding to US EEOC sending her a 'courtesy reminder' on September 3 2021, to complete the draft.

494. On September 6 2021, Gjovik posted on Twitter about the Slack discussion from July 27 2021 where she and her coworkers discussed Apple systemically retaliating against them for raising valid concerns.

495. On September 7 2021, Gjovik posted on Twitter about the Batterygate/nude photographs matter. Gjovik finally disclosed the construction termination that occurred leading

769. US SEC began investigating Gjovik's August 31 2021 complaint against Apple and Apple's NDAs in 2022 due to Gjovik's complaints. Gjovik has met with US SEC Enforcement three times now since 2022 to discuss her Apple whistleblower tips to the agency.

770. Gjovik alleges violations of Dodd-Frank Act provisions and so brings an action in an appropriate district court of the United States. Gjovik brings an action under this subsection within ten years of the violation, six years of the retaliation, and within three years of knowledge of the violation. [15 U.S.C.A. § 78u-6]. The Dodd-Frank Act does not preempt state law claims or preclude federal laws. "*Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any whistleblower under any Federal or State law*."[323]

**iii. Disclosure Controls and Procedures (SOX and Dodd Frank)**

771. Gjovik accused Apple of fraud and violating securities law in July-August 2021 and filed her first SEC whistleblower tip about it on September 1 2021. Gjovik complained Apple had been making materially false statements about their actual environmental, labor, and regulatory compliance practices to shareholders, the public, and the SEC.

772. Apple disclosed a number of risk factors in its 10-K and 10-Q filings to the Commission, however Gjovik believed that Apple lacked controls and procedures designed to ensure that it captured and assessed certain information related to these risks. Apple's Audit and Finance Committee, chaired by Ronald Sugar, oversees Apple's "s internal control over financial

[323] 15 USC § 78u-6(h)(3); An individual who does not file an SEC complaint may nonetheless state a claim for wrongful termination in violation of public policy if his or her termination violates the public policy underlying Dodd-Frank. [See *Banko v. Apple Inc*. (ND CA 2013) 20 F.Supp.3d 749, 758—termination in retaliation for reporting embezzlement violated public policy behind Dodd-Frank and Sarbanes-Oxley Act, including policies against embezzlement and illegitimate corporate tax deductions, and encouragement of whistleblowing]

reporting and the disclosure controls and procedures designed to ensure compliance with applicable laws and regulations."[324]

773. Exchange Act Rule 13a-15(a) requires issuers that have a class of securities registered pursuant to Section 12 of the Exchange Act to maintain disclosure controls and procedures.[325] Disclosure controls and procedures include those "*designed to ensure that information required to be disclosed by an issuer in the reports that it files or submits under the Exchange Act is accumulated and communicated to the issuer's management . . . to allow timely decisions regarding required disclosure*."[326] Disclosure controls and procedures "*are intended to cover a broader range of information than is covered by an issuer's internal controls related to financial reporting*" and "*should capture information that is relevant to an assessment of the need to disclose developments and risks that pertain to the issuer's businesses*."[327]

774. If an Exchange Act Registrant fails to implement and maintain disclosure controls and procedures as required, its management may not have adequate information to assess whether the disclosures it makes to investors are fulsome, accurate, and not misleading by omission.[328] The Internal Controls Rule falls under § 1514A because it is a "rule or regulation of the [SEC]."[329]

---

[324] Apple, Audit and Finance Committee Charter (as of August 19, 2020), pg4, https://s2.q4cdn.com/470004039/files/doc_downloads/2020/20200819-Audit-and-Finance-Committee-Charter.pdf

[325] Defined in Rule 13a-15(e), disclosure controls and procedures are "controls and other procedures of an issuer that are designed to ensure that information required to be disclosed by the issuer in the reports that it files or submits under the [Exchange] Act (15 U.S.C. 78a et seq.) is recorded, processed, summarized and reported, within the time periods specified in the Commission's rules and forms." Exchange Act Rule 13a-15(e).

[326] Id.

[327] Certification of Disclosure in Companies' Quarterly & Annual Reports Final Rule Adopting Release, Release No. 33-8124 (Aug. 29, 2002).

[328] US SEC, In the Matter of Activision Blizzard Inc, Respondent; Order Instituting Cease-And desist Proceedings Pursuant to Section 21c Of the Securities Exchange Act Of 1934, Making Findings, And Imposing A Cease and-Desist Order, File No. 3-21294, Release No. 96796, February 3, 2023.

[329] *Erhart v. BofI Holding, Inc.,* 612 F. Supp. 3d 1062, 1091–93 (S.D. Cal. 2020)




*Exhibit: Gjovik email to Cohen 4/15/21*

787. Gjovik complained to Dr. Cohen that she thought Apple was making fraudulent public statements about its actual practices and positions. Gjovik had become irritated listening to Apple EH&S and Employee Relations blow her off while Apple had just issued a press release for Earth Day. The press release included:

> "As government and business leaders gather to fight climate change and build a better future for our planet, we're reminded that each of us — in communities around the world — is a part of this work," said Lisa Jackson, Apple's vice president of Environment, Policy and Social Initiatives. "The resources and community initiatives we're sharing today are all about amplifying voices too often unheard, and giving people the tools to learn, engage, and be part of the solution… As people around the world celebrate Earth Day, Apple's focus remains on supporting those communities most impacted by climate change and environmental challenges."[338]

Gjovik was inflamed that Apple was telling her to keep her safety and environmental concerns secret, to not talk to her coworkers, and that she should just assume Apple was following environmental and safety laws because Apple said it was. And while Gjovik did not yet know

[338] Apple, *Apple Celebrates Earth Day 2021*, April 21 2021, https://www.apple.com/newsroom/2021/04/apple-celebrates-earth-day-2021/

Case: 25-4716, 11/13/2026, DktEntry: 10.4, Page 190 of 256

Apple was behind the toxic exposures at 3250 Scott Blvd, Gjovik was irritated at Apple's apparent indifference towards the community living and working atop the Triple Site.

788. Apple's announcement also included a new project Apple released that was: "*collaborating with Dolores Huerta, social justice advocate and founder of the Dolores Huerta Foundation, to encourage learners of all ages to "Create a Better World Through Environmental Justice*."[339] Gjovik was similarly irritated at Apple's supposedly earnest claim to partner with labor leader Dolores Huerta on Environmental Justice maters, while Apple had just showed Gjovik an aggressive disregard for labor rights and workplace safety rules.

789. Gjovik replied to Dr. Cohen with an update on April 21 2021, saying:

> I'm trying to run this up the chain with I&D too, but they think it will just end up back with EHS. Which employees are going to spend the most time around vapor intrusion pathways (plumbing, vents, etc) — probably our Black and Brown employees working in maintenance & cooking type roles. Who's going to spend the most time physically exerting themselves running things around at these buildings? Probably our technicians and admins, who are also predominately people of color and women, respectively. Apparently women get worse health issues from this type of chemical exposure. Because we have high body fat and sensitive hormones, etc. So if there are chemical vapor issues in buildings, women will get sicker. It also can mess with our reproductive health and pregnancies. So Black & Brown women get the worst of it. ;; We're clearly not the only ones doing this…. That Google/TCE exposure news coverage was horrifying. Figured I'd at least try though. You know me.

790. On April 21 2021, Gjovik had not yet faced all the retaliation from Waibel, West had not told her to quit, she did not know about the cracks in the floor – the world was a different place and she considered letting it go for the moment, however noted it was clearly a systemic issue, which implicates the need for controls and disclosures.

791. Apple's environmental disclosures dramatically changed after Ronald Sugar joined Apple's Board of Director's in 2010 and became Chair of the Audit and Finance

[339] Id.

Committee. Prior to Sugar, Apple had repeatedly reported "environmental laws" as a potential risk factor to Apple's business model. The final 10-K prior to Sugar's tenure repeated the statement: "*Environmental Laws: Compliance with federal, state, local and foreign laws enacted for the protection of the environment has to date had no significant effect on the Company's capital expenditures, earnings, or competitive position.* ***In the future, compliance with environmental laws could materially adversely affect the Company***."[340] At this point, supposed environmentalist, Al Gore, was on the Board of Directors. Starting in 2011, after Sugar joined, that section 'environmental laws are bad' section was removed from Apple's 10-Ks after being there since the last 1990s. The same years Apple's Environmental Report claims "*Apple is committed to protecting the environment, health, and safety of its employees, customers, and the global communities in which it operates*."[341]

792. In Apple's 2023 10-K, Apple included under "General Risks", "Item 2. Properties" which said: "*The Company's headquarters is located in Cupertino, California. As of September 30, 2023, the Company owned or leased facilities and land for corporate functions, R&D, data centers, retail and other purposes at locations throughout the U.S. and in various places outside the U.S. The Company believes its existing facilities and equipment, which are used by all reportable segments, are in good operating condition and are suitable for the conduct of its business*." This is roughly the same statement used in 10-Ks for years.[342]

793. Apple's 10-Ks reference "*environmental, health, and safety*" as a risk factor under *"The Company is subject to complex and changing laws and regulations worldwide, which exposes the Company to potential liabilities, increased costs and other adverse effects on*

---

[340] Apple, 2010 10-K, https://d1lge852tjjqow.cloudfront.net/CIK-0000320193/afa23a45-2381-49cc-9933-750c74d3f0a8.pdf
[341] Apple, Environmental Report, 2010, https://www.apple.com/environment/pdf/Apple_Facilities_Report_2010.pdf
[342] Id.

805. After discovering many issues at her Superfund site office (which ended up being the tip of the iceberg), Gjovik began wondering why Apple decided it was a good idea to rent a property on a massive toxic waste dump. Gjovik began questioning if the prior CEO of the responsible party who was now on the Apple Board in charge of real estate oversight, Ron Sugar, may have influenced Apple's decision to rent the property. After hearing Apple's position about the toxic waste dump (its great and she should shut her mouth), Gjovik also began questioning why Apple was making grand public statements about environmental compliance and safety when their internal practices were deranged and reckless. Further, Gjovik questioned why one of the key people making these public statements for Apple, Lisa Jackson, would do such a thing considering her background in environmental protection. Finally, Gjovik also began worrying Apple executives persisted on their terrible plan of record and retaliation against Gjovik because it would be embarrassing to Jackson for it to come out what Apple had done.

806. On August 23 2021, Gjovik filed a formal internal complaint to Apple's Business Conduct reporting system about her concerns about Ronald Sugar. She received confirmation her complaint was submitted and was provided a tracking number (*HRC000017207*)

Request submitted - Business Conduct 8/23/21, 4:30 PM

You can change your language preferences.
Update here.

**Your request has been sent.**

Support Request HRC000017207 has been created.

Thank you for contacting Business Conduct. We make every effort to respond as soon as possible. If your question is urgent, you can call us at the numbers listed on this page.

*Exhibit: Internal Complaint, 8/23/21, # HRC000017207, Submitted*

interest" in such firm.[375] All material facts, both as to the director's interest in the transaction, and as to the contract itself, must be disclosed to (or already known by) the shareholders.[376]

819. Ronald Sugar has commercial, reputational, and relationship interests in Northrop Grumman generally – Sugar may also have a personal tie to this Superfund site, as he apparently used to work there, maybe for over a decade. It seems peculiar that Apple would suddenly want to lease such a property, after the building had sat vacant and gutted for over a decade. It was a reasonable inquiry if Sugar influenced Apple's decision to become a long-term tenant, and if so, what kind of arrangement Apple has with Northrop Grumman related to the CERCLA obligations.

820. The impact of these real estate deals is significant – not just with the environmental concerns, but the owner of Gjovik's office was CalSTRS, one of Apple's largest shareholders. Fraudulent regulatory filings about her office, including omission of required information to the US EPA, would defraud a key shareholder (with CalSTRS owning around $4 Billion of Apple stock in 2021.[377]

**3) Related Party Transaction**

821. Gjovik raised concerns about issues that constitute a Related Party Transaction and related disclosure: "*a deal or arrangement made between two parties who are joined by a preexisting business relationship or common interest*" and can include "*leases*."[378] The Securities and Exchange Commission (SEC) requires that all publicly-traded companies disclose all transactions with related parties—such as executives, associates, and family members—in their quarterly 10-Q reports and their annual 10-K reports.[379]

---

[375] Cal. Corps. Code § 310(a); Conflict of Interest Limitations, Cal. Prac. Guide Corps. Ch. 6-E
[376] Cal. Corps. Code § 310(a)(1).
[377] 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5
[378] Investopedia, Related Party Transactions (last visited 12/3/2023), ttps://www.investopedia.com/terms/r/related-partytransaction.asp
[379] Id.

822. Enron used related-party transactions to cover up billions of dollars in debt. These fraudulent related-party transactions led to Enron's bankruptcy, prison sentences for its executives, lost pensions and savings of employees and shareholders, and the ruin and closure of Arthur Andersen – all of which led to the development of the Sarbanes-Oxley Act of 2002, which established new and expanded existing requirements for U.S. public company boards, management, and public accounting firms, including specific rules that limit conflicts of interest arising from related-party transactions.[380]

823. Here, this real estate deal would have likely counted as a Related Party Transaction. In addition to the $12M sale Apple's rent for a long-term lease, the building was dramatically renovated for Apple with significant Capital improvements. Further, at the time of the sale to Oaktree Capital and lease to Apple, it had not been five years since Sugar 'retired' from Northrop Grumman, and he apparently still stayed on as an "Advisor."

824. Curiously, Apple used to report Related Party Transactions in its 10-Ks through 2010, but stopped in 2011 after Ronald Sugar joined the Apple Board of Directors and became Chair of the Audit and Finance Committee.[381] Apple had included Related Party Transactions in its 10-Ks from 1999-2010.[382] (See section on *Background: Ronald Sugar* noting that Northrop Grumman did not start making detailed Superfund disclosures until the year after Sugar retired).

825. Apple's Audit and Finance Committee, chaired by Ronald Sugar, oversees Apple's responsibility to: "*Review and approve related-party transactions consistent with the*

---

[380] Id.
[381] Apple, 2010 10-K, page 81, https://investor.apple.com/sec-filings/sec-filings-details/default.aspx?FilingId=7519151
[382] Apple, 1999 10-K, page 101, https://investor.apple.com/sec-filings/sec-filings-details/default.aspx?FilingId=124179

humiliation of suspected informants, and random public acts of extreme brutality intended to terrify potential witnesses.[662] (i.e., "*don't get Gjovik'd*").

1084. Apple's presence in Silicon Valley is directly comparable to the community where a gang operates as both are worlds unto themselves—"*places where people live, attend school, and work, all within a radius of only a few blocks—from which they rarely venture out.*" Hearing about what Apple did to Gjovik is likely to silence anyone else in Cupertino, and it was very effective. Meanwhile, anyone still willing to speak out was directed to Appleseed (an Apple Global Security employee).

***Gjovik & Batterygate***

1085. California's constitution provides that privacy is an inalienable right and "*protects against disclosure of, among other things, sexual and non-party contact information.*"[663] Even in litigation, a party's sexual practices are protected by the California Constitution's right of privacy.[664] Any compelled disclosure, "*must be narrowly drawn to assure maximum protection of the constitutional interests at stake.*"[665] During the document "*collection and processing phases, privacy concerns are truly amplified… Those charged with identifying and collecting relevant data may therefore appropriately determine what data sources are likely to contain sensitive information prior to collection.*"[666]

1086. Gjovik worried if she had an ethical duty to disclose to the man that Apple put his sexts in their 'permanent evidence locker' but because Apple says everything internal at Apple is

---

[662] U.S. Department of Justice, Office of Justice Programs, National Institute of Justice*, Research in Action: Victim and Witness Intimidation* (October https://www.ojp.gov/pdffiles/witintim.pdf 1995).
[663] Allyson Haynes Stuart, A Right to Privacy for Modern Discovery, 29 GEO. MASON L. REV., Volume 29, Issue 3 (September 2021), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3930199; *Tien v. Superior Court,* 139 Cal.App.4th 528, 539 (Cal. Ct. App. 2006) ("*It protects against the unwarranted, compelled disclosure of various private or sensitive information regarding one's personal life, including his or her …. sexual relationships*.")
[664] Cal. Const. Art. I, § 1; *Vinson v. Sup.Ct.* (Peralta Comm. College Dist.) (1987).
[665] *John B. v. Sup.Ct.* (Bridget B.), supra, 38 Cal.4th at 1200.
[666] Robert D. Keeling and Ray Mangum,*The Burden of Privacy In Discovery*, Judicature (Duke), Vol. 105 No. 2 (September 2021), https://judicature.duke.edu/articles/the-burden-of-privacy-in-discovery//

Apple damaged Gjovik's chattel property (discoloring, weakening, dissolving glues, causing reactions), degraded the conditions of her leasehold (which was a $3,800 month lease), harmed Gjovik's body (as noted in facts), and distressed Gjovik's mind (as noted in Nuisance and IIED).

1161. Gjovik did not become aware of the cause of her injuries, or sufficient facts to put her on notice the injuries were caused by the wrongful acts of Apple, until 2022 (for activities at 825 Stewart Drive), and 2023 (for activities at 3250 Scott Blvd). These activities were/are continuing violations with the harmful conduct occurring through at least 2023. Further, Apple worked to conceal their role in these activities and the harm to Gjovik until Gjovik discovered Apple's role and activities in 2022-2023. The statute of limitations is three years, so even without tolling, it is September 7 2020-September 7 2023, covering periods Gjovik was at her office and living in her apartment next to 3250 Scott Blvd.[756]

**i. Silicon Fabrication Next to Homes**

1162. Conducting an activity in the wrong place can render such activity abnormally dangerous.[757] Operating a silicon fabrication factory can be a ultrahazardous activity. The activity has a high degree of risk of some harm to people, land, and chattels; a likelihood that the harm will be severe; there is an inability to eliminate the risk by the exercise of reasonable care; the activity is not a matter of common usage; the activities were inappropriate for the locations where they were carried on.[758]

1163. Semiconductor fabrication adjacent to a residential area is an ultrahazardous activity. For decades, its known to require use of pyrophoric gases which have a "serious fire

---

[756] Cal. Code of Civ. P. § 338(b); *McCoy v. Gustafson*, 180 Cal. App. 4th 56, 66 (2009); *Starrh & Starrh Cotton Growers v. Aera Energy LLC,* 153 Cal. App. 4th 583, 595 (2007); *Mangini v. Aerojet-Gen. Corp*., 230 Cal. App. 3d 1125, 1149 (1991); *Verse Two Properties, LLC v. MedPlast Fremont, Inc*., No. 5:14-CV-03765-EJD, 2015 WL 6955133, at *6 (N.D. Cal. Nov. 10, 2015).
[757] Gerald W. Boston, Strict Liability for Abnormally Dangerous Activity: The Negligence Barrier, 36 SAN DIEGO L. REV. 597, 615 (1999); Valerio Spinaci, Lessons From BP: Deepwater Oil Drilling is an Abnormally Dangerous Activity, Nova Law Review, Volume 35, Issue 3 (2011).
[758] Restatement of Torts Second, section 519-520

hazard," combustible and flammable chemicals which must be "carefully monitored and handled by experienced personnel," heating devices and ignition sources, and complex fire suppressant systems. Air handling systems at these plants must control "the spread of contaminants." [759] There is an entire section of the US OSHA website dedicated to semiconductor fabrication.[760]

1164. Gjovik's home was 300 feet from Apple's fabrication plant. Like in the classic California ultrahazardous activity case, *Alonso v Hills*, an ultrahazardous activity like use of poisons or blasting, only 200 yards (or here, 300 feet) from hundreds of homes in a residential district, will be found to be an ultrahazardous activity with strict liability even without proof of negligence.[761] Gjovik's case is similarly comparable to *Green v General Petroleum,* where oil drilling itself is not an ultrahazardous activity, but the California Supreme Court found that drilling for oil directly next to someone's home (the property line roughly 200 feet away), is indeed a strict liability ultrahazardous activity.[762]

1165. Further, "the storage of toxic gases is, without doubt, an ultrahazardous activity." [763] The "manufacture, storage, transportation and use of high explosives" and welding a gas tank are ultrahazardous activities.[764] The OSHA website notes, "Unexpected releases of toxic, reactive, or flammable liquids and gases in processes involving highly hazardous chemicals have been reported for many years."[765]

---

[759] IMUA's Manufacturer's and Dealer's Committee, "*Underwriting Semiconductor Manufacturing Exposures*," 2000, https://www.imua.org/Files/reports/Underwriting%20Semiconductor%20Manufacturing%20Exposures.html

[760] US OSHA, Silicon Device Fabrication, https://www.osha.gov/semiconductors/silicon/device-fabrication; Silicon Manufacturing, https://www.osha.gov/semiconductors/silicon ; GA Device Manufacturing, https://www.osha.gov/semiconductors/gallium-arsenide ; GA Device Fabrication, https://www.osha.gov/semiconductors/gallium-arsenide/device-fabrication

[761] *Alonso v. Hills* (1950) 95 C.A.2d 778, 214 P.2d 50; *McKenna v. Pacific Elec. Ry. Co.* (1930) 104 C.A. 538, 540, 286 P. 445.

[762] *Green v. General Petroleum Corp*., 205 Cal. 328, 333-34 (Cal. 1928)

[763] *Updike v. Browning-Ferris, Inc*., 808 F. Supp. 538, 543 (W.D. La. 1992).

[764] *Garcia v. Est. of Norton*, 183 Cal. App. 3d 413, 418–20, 228 Cal. Rptr. 108, 111–12 (Ct. App. 1986).

[765] US OSHA, Process Safety Management, https://www.osha.gov/process-safety-management

1199. See section titled "*Retaliation for Filing a Labor Complaint*" under California Labor Code Section 98.6. It is incorporated here.

**2) §1102.5: Reporting Environmental & Safety Violations**

1200. Prior to her termination, Gjovik reported violations of environmental and safety laws (CERCLA, OSH Act, etc) at 825 Stewart Drive to the US EPA from April through August 2021, to the California EPA in August 2021, and to US Department of Labor OSHA in August through September 2021. Gjovik also reported violations of environmental laws (RCRA, CAA) to the US EPA and California EPA, and to legislatures (city mayor, county commissioner, state senator, state assemblyman) about 3250 Scott Blvd in September 2020 through July 2021, although during that time Gjovik thought she was reporting California DTSC Brownfield and/or US EPA CERCLA issues originating at 3255 Scott Blvd, and did not know she was actually reporting Apple's factory emissions. Gjovik also reported suspected environmental violations at 825 Stewart Drive and 3250 Scott Blvd to her coworkers, the press, and the public.

1201. Gjovik refused to help Apple cover-up their CERCLA non-compliance. Apple repeatedly asked Gjovik to not talk to anyone else about her concerns about her Superfund office and workplace safety, and instead keep her concerns 'private' with her managers, EH&S, and Employee Relations. Gjovik's manager even gave her a "warning" because she expressed concerns that Apple had not be testing the air inside her office, and because she told her coworkers the office was a Superfund site.

1202. The US EPA explains that institutional controls for toxic waste remediation sites with "*vapor intrusion mitigation systems*" will "*require more frequent inspection or maintenance*."[829] Gjovik complained Apple had not been inspecting or testing her office for the

[829] US EPA, Institutional Controls: A Guide to Planning, Implementing, Maintaining, and Enforcing Institutional Controls at Contaminated Sites, OSWER 9355.0-89, EPA-540-R-09-001, (December 2012), pg29, https://www.epa.gov/sites/default/files/documents/final_pime_guidance_december_2012.pdf

Case: 26-4716, 11/13/2026, DktEntry: 10.4, Page 199 of 256

last six years. Apple told Gjovik it was fine because they said so, and she should not tell anyone else about her concerns, but Gjovik refused and instead reported Apple's violations to her coworkers, the government, and the press. Apple fired Gjovik because she did so.

1203. The US EPA notes that the "*rupture [of] an engineering cap*" is a "*compromise [to] the integrity of a response action for that site*."[830] US EPA explains that vapor intrusion "*primarily enter[s] through openings in the building foundation*" through "*cracks in the concrete slab.*"[831] The US EPA explains that when there are cracks in the slab, "vapors resulting from the volatilization of contaminants in soil may be transported into indoor spaces," and "*inhalation of these vapors by indoor workers may be an important exposure pathway*."[832] When Apple told Gjovik there were cracks in the concrete floor (the "slab") at her office, Gjovik told Apple they needed to report the issues to the US EPA, but Apple told her they do not need to tell the US EPA. Gjovik asked Apple to test the air before they fix the cracks, but Apple said they intentionally will not test the air until after they fix the cracks. Gjovik told Apple the cracks were "changed circumstances" at the federally overseen CERCLA site, and that Apple must consult with the US EPA about the cracks and Apple's plan to fix the cracks, including their air testing work plan. Apple once again told Gjovik that they were right, she was wrong, and she should not talk to anyone else about her concerns. Apple told Gjovik it was fine because they said so, and she should not tell anyone else about her concerns, but Gjovik refused and instead reported Apple's violations to her coworkers, the government, and the press. Apple fired Gjovik because she did so.

---

[830] US EPA, *Institutional Controls, supra* at page 29 ("8.3 Periodic Reviews").
[831] US EPA, *A Citizen's Guide to Vapor Intrusion Mitigation*, EPA 542-F-12-021 (September 2012), https://www.epa.gov/sites/default/files/2015-04/documents/a_citizens_guide_to_vapor_intrusion_mitigation_.pdf
[832] US EPA, Supplemental Guidance For Developing Soil Screening Levels For Superfund Sites, OSWER 9355.4-24 (December 2002).

1204. Like in *Parada v City of Colton*,[833] where a city building department employee refused to allow residential construction by certain city officials without building permits as required by law, Gjovik refused to allow Apple to cover-up the cracks in the floor without reporting them to the US EPA under CERCLA, or to have the US EPA oversee testing and repair under CERCLA. Gjovik and Apple argued about this repeatedly with Apple insisting they refused to tell the US EPA about the work because it they did not have to.

1205. The US EPA explains that "co*mmunity members who live or work near [Superfund] sites*" "*generally are the first to recognize changes at the site*," and should be encouraged to help monitor the site.[834] The US EPA suggests outreach activities to inform community members about institutional controls (like sealed floors and sub-slab vapor monitoring), "*what types of activities may adversely affect the integrity of the response action*," and points of contact for "*reporting a breach*."[835] Gjovik asked Apple to tell her coworkers their office was a Superfund site, to explain the site's institutional controls to them (sub-slab vent ports, etc), and provide them a process for reporting concerns at the site (like if they smell chemicals). Apple told Gjovik they will not tell her coworkers about the site or the controls, but told her not to interact with the sub-slab vent ports and to call them right away if she smells something weird, but then said once more they will not tell anyone else and she should not tell anyone else, but Gjovik refused and instead reported Apple's violations to her coworkers, the government, and the press. Apple fired Gjovik because she did so.

1206. Apple also retaliated against Gjovik for Gjovik's refusal (and protest due to actual opportunity to refuse) with Apple's unlawful medical studies and data collection of

[833] 24 CA4th 356 (1994).
[834] US EPA, *Institutional Controls, supra* at page 31 ("8.6 Community IC Monitoring").
[835] US EPA, *Institutional Controls, supra* at page 31 ("8.6 Community IC Monitoring")

employee personal data for commercial research and development purposes.[836] As in *Ferretti v. Pfizer,* employees can refuse to participate in unlawful studies.[837] Gjovik's posts on Twitter and quotes in the article make it crystal clear Gjovik thought Apple's conduct with the application was egregious. Gjovik also expressly noted that she chose to expose the application because *"Apple's policy of secrecy should not shield it from public scrutiny about human rights & dignity*."[838]

1207. Gjovik complained about 825 Stewart Drive's deed being out of compliance and deeds are part of the institutional controls for Superfund sites. Apple brushed her off, but then later the US EPA had the same inquiry to Northrop Grumman and amongst themselves. Deed restrictions are restrictive covenants used as institutional controls to protect the public's health and safety, and compliance is important. To quote Lisa Jackson when she was the head of the New Jersey EPA, her agency launched "*enforcement actions against approximately 950 responsible parties who have failed to monitor and report on the … status of deed notices …We realize that the state's system that allows self-reporting for monitoring of these contaminated properties is broken, and we are taking the first steps toward fixing this, Commissioner Jackson said.… this situation seriously undermines the department's ability to ensure protection of public health and the environment*."[839] Apple also fired Gjovik for complaining about and inquiring about the Superfund deed.

---

[836] Lab.C. § 1102.5(c); *Ferretti v. Pfizer, Inc*. (ND CA 2012) 855 F.Supp.2d 1017, 1025-1027—doctor stated § 1102.5 claim by alleging she refused to participate in drug testing program that violated federal regulations; *Barela v. C.R. England & Sons, Inc*., 197 F.3d 1313, 15 I.E.R. Cas. (BNA) 1481, 139 Lab. Cas. (CCH) ¶ 58801 (10th Cir. 1999), appeal after remand, 203 F.3d 834 (10th Cir. 1999) – (internally reported the employer's practice of requiring employees to violate state and federal trucking laws)
[837] *Ferretti v. Pfizer Inc*., 855 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012).
[838] Twitter, Ashley Gjovik, August 30 2021, https://twitter.com/ashleygjovik/status/1432416891201490946
[839] New Jersey Department of Environmental Health, DEP TAKES ENFORCEMENT ACTIONS AGAINST RESPONSIBLE PARTIES FOR FAILURE TO MEET CONTAMINATED SITE MONITORING REQUIREMENTS, Sept. 24 2007, https://www.nj.gov/dep/newsrel/2007/07_0041.htm

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF** **NORTHERN CALIFORNIA**

**Form 1. Notice of Appeal from a Judgment or Order of a United States District Court**

U.S. District Court case number: 3:23-cv-04597-EMC

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: 09/07/2023

Date of judgment or order you are appealing: 06/24/2026

Docket entry number of judgment or order you are appealing: 390

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

○ Yes ○ No ○ IFP was granted by U.S. District Court

---

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

Ashley M. Gjovik (plaintiff)

Is this a cross-appeal? ○ Yes ○ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case? ○ Yes ○ No

If yes, what is the prior appeal case number? 24-6058, 25-2028

Your mailing address (if pro se):

2108 N. St.

Ste 4553

City: Sacramento State: CA Zip Code: 95816

Prisoner Inmate or A Number (if applicable):

**Signature** /s/ Ashley Marie Gjovik **Date** Jul 22, 2026

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Ashley M. Gjovik

Name(s) of counsel (if any):

Pro se

Address: 2108 N. St. Ste 4553, Sacramento, CA, 95816

Telephone number(s): 415-964-6272

Email(s): ashleymgjovik@protonmail.com

Is counsel registered for Electronic Filing in the 9th Circuit? ○ Yes ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Apple Inc

Name(s) of counsel (if any):

Melinda S. Riechert, Jessica Perry, Kathryn Grzenczyk Mantoan, Nicholas James Horton, Ryan Booms

Address: 1000 Marsh Road Menlo Park, CA 94025

Telephone number(s): 415-773-5887

Email(s): mriechert@orrick.com, jperry@orrick.com, kmantoan@orrick.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Ashley M. Gjovik

Name(s) of counsel (if any):

Pro se

Address: 2108 N. St. Ste 4553, Sacramento, CA, 95816

Telephone number(s): 415-964-6272

Email(s): ashleymgjovik@protonmail.com

Is counsel registered for Electronic Filing in the 9th Circuit? ○ Yes ○ No

**Appellees**

Name(s) of party/parties:

Apple Inc

Name(s) of counsel (if any):

Melinda S. Riechert, Jessica Perry, Kathryn Grzenczyk Mantoan, Nicholas James Horton, Ryan Booms

Address: 1000 Marsh Road Menlo Park, CA 94025

Telephone number(s): 415-773-5887

Email(s): mriechert@orrick.com, jperry@orrick.com, kmantoan@orrick.com

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

ADRMOP,APPEAL,CLOSED,E-ProSe,PROTO,ProSe,REFDIS,REFSET-AGT,RELATE

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:23-cv-04597-EMC

Gjovik v. Apple Inc.
Assigned to: Judge Edward M Chen
Referred to: Magistrate Judge Kandis A. Westmore
Magistrate Judge Alex G. Tse (Settlement)
Case in other court: United States Court of Appeals, 25-02028
United States Court of Appeals, 25-02028
United States Court of Appeals, 25-02028
9th Circuit Court of Appeals, 26-05331
United States Court of Appeals, Case No. 25-02028
Cause: 18:1962 Racketeering (RICO) Act

Date Filed: 09/07/2023
Date Terminated: 06/24/2026
Jury Demand: Plaintiff
Nature of Suit: 470 Racketeer/Corrupt Organization
Jurisdiction: Federal Question

**Plaintiff**

**Ashley M Gjovik** represented by **Ashley M Gjovik**
2108 N ST
Ste 4553
Sacramento, CA 95816
415-964-6272
Email: ashleymgjovik@protonmail.com
PRO SE

V.

**Defendant**

**Apple Inc.** represented by **Kathryn Grzenczyk Mantoan**
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
7th Floor
San Francisco, CA 94105
415-773-5887
Fax: 415-773-5759
Email: kmantoan@orrick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jessica Perry**
Orrick Herrington & Sutcliffe LLP
1020 Marsh Road
Menlo Park, CA 94305
650-614-7350
Fax: 650-614-7401
Email: jperry@orrick.com
*ATTORNEY TO BE NOTICED*

**Kate Elsa Juvinall**

Husch Blackwell, LLP
355 S. Grand Ave., Suite 2850
Los Angeles, CA 90071
213-629-6060
Email: kate.juvinall@huschblackwell.com
*TERMINATED: 02/19/2025*

**Melinda S. Riechert**
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400
Fax: (650) 614-7401
Email: mriechert@orrick.com
*ATTORNEY TO BE NOTICED*

**Nicholas James Horton**
Orrick, Herrington & Sutcliffe LLP
400 Capitol Mall
Suite 3000
Sacramento, CA 95814-4497
916-329-4906
Email: nhorton@orrick.com
*ATTORNEY TO BE NOTICED*

**Ryan Booms**
Orrick Herrington & Sutcliffe LLP
California
2100 Pennsylvania Ave NW
Washington, DC 20037
202-339-8400
Fax: 202-339-8500
Email: rbooms@orrick.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/07/2023 | 1 | COMPLAINT against Apple Inc. (Filing fee $ 402, Rcpt No. 311165908.). Filed by Ashley M Gjovik. Consent/Declination due by 9/21/2023. (Attachments: # 1 Civil Cover Sheet, # 2 Receipt)(exl, COURT STAFF) (Filed on 9/7/2023) Modified on 9/7/2023 (exl, COURT STAFF). (Entered: 09/07/2023) |
| 09/07/2023 | 2 | Certificate of Interested Entities by Ashley M Gjovik identifying Other Affiliate Chevron, Other Affiliate South Bay Construction, Other Affiliate Honeywell, Other Affiliate CalSTRS, Other Affiliate Ares Management, Other Affiliate Northrop Grumman Corporation, Other Affiliate The Irvine Company, Other Affiliate GI Partners, Other Affiliate Uber, Other Affiliate Oaktree Capital, Other Affiliate Hines Real Estate, Other Affiliate BentallGreenOak, Other Affiliate Amgen, Other Affiliate Emerson Collective, Other Affiliate Waverly Street Foundation for Ashley M Gjovik. (exl, COURT STAFF) (Filed on 9/7/2023) (Entered: 09/07/2023) |
| 09/07/2023 | 3 | Summons Issued as to Apple Inc. (exl, COURT STAFF) (Filed on 9/7/2023) (Entered: 09/07/2023) |

| | | |
|---|---|---|
| 09/07/2023 | 4 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 11/30/2023. Initial Case Management Conference set for 12/7/2023 at 11:00 AM in San Francisco, Courtroom B, 15th Floor. (exl, COURT STAFF) (Filed on 9/7/2023)** <br> **Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)** <br> **(Entered: 09/07/2023)** |
| 09/07/2023 | 5 | **NOTICE AND ORDER:The attached notice and order notifies the plaintiff of resources available, attaches the district's handbook for litigants who do not have a lawyer, includes a flyer for contacting the court's help desk and instructs the plaintiff about serving the defendants. Signed by Judge Laurel Beeler on 09/07/2023. (Attachments: # 1 Self Help Flyer, # 2 Pro Se Handbook)(ejk, COURT STAFF) (Filed on 9/7/2023)** <br> **Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)** <br> **(Entered: 09/07/2023)** |
| 09/10/2023 | 6 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Ashley M Gjovik.. (Gjovik, Ashley) (Filed on 9/10/2023) (Entered: 09/10/2023) |
| 09/15/2023 | 7 | CERTIFICATE OF SERVICE by Ashley M Gjovik *Summons Proof of Service* (Gjovik, Ashley) (Filed on 9/15/2023) (Entered: 09/15/2023) |
| 09/22/2023 | 8 | CERTIFICATE OF SERVICE by Ashley M Gjovik re 7 Certificate of Service *Part II - Personal Service* (Gjovik, Ashley) (Filed on 9/22/2023) (Entered: 09/22/2023) |
| 10/09/2023 | 9 | STIPULATION WITH PROPOSED ORDER *TO (1) ENLARGE TIME TO FILE RESPONSIVE PLEADING, (2) SET DEADLINE TO FILE AMENDED COMPLAINT AND RESPONSIVE PLEADING, (3) PERMIT AND SET DEADLINE FOR SECOND AMENDED COMPLAINT, AND (4) SET DEADLINE FOR RESPONSE TO SECOND AMENDED COMPLAINT AND FURTHER BRIEFING (IF NEEDED)* filed by Apple Inc.. (Juvinall, Kate) (Filed on 10/9/2023) (Entered: 10/09/2023) |
| 10/09/2023 | 10 | Corporate Disclosure Statement by Apple Inc. (Juvinall, Kate) (Filed on 10/9/2023) (Entered: 10/09/2023) |
| 10/09/2023 | 11 | Certificate of Interested Entities by Apple Inc. (Juvinall, Kate) (Filed on 10/9/2023) (Entered: 10/09/2023) |
| 10/10/2023 | 12 | **ORDER re 9 STIPULATION *TO (1) ENLARGE TIME TO FILE RESPONSIVE PLEADING, (2) SET DEADLINE TO FILE AMENDED COMPLAINT AND RESPONSIVE PLEADING, (3) PERMIT AND SET DEADLINE FOR SECOND AMENDED COMPLAINT, AND (4) SET DEADLINE FOR RESPONSE TO SECO.* The court approves the schedule and asks the defendant, if it files a motion, to notice it for a hearing at least two weeks after full briefing on any available Thursday at 9:30 am and to docket the approved briefing schedule: opposition due 1/4/2024, and reply due 1/11/2024.** <br><br> **Initial Case Management Conference previously set for 12/7/2023 is reset to 3/21/2024 at 11:00 AM in San Francisco - Videoconference Only. Case Management Statement due by 3/14/2024. This proceeding will be held via a Zoom webinar.** <br><br> **Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/lb** |

| | | |
|---|---|---|
| | | **General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>**Signed by Judge Laurel Beeler on 10/10/2023. (ejk, COURT STAFF) (Filed on 10/10/2023)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 10/10/2023)** |
| 10/10/2023 | 13 | CLERK'S NOTICE Re: Consent or Declination: Defendant shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. **Consent/Declination due by 10/24/2023**. (ejk, COURT STAFF) (Filed on 10/10/2023)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 10/10/2023) |
| 10/23/2023 | 14 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Apple Inc... (Juvinall, Kate) (Filed on 10/23/2023) (Entered: 10/23/2023) |
| 10/24/2023 | 15 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (ejk, COURT STAFF) (Filed on 10/24/2023)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 10/24/2023) |
| 10/24/2023 | 16 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Charles R. Breyer for all further proceedings. Magistrate Judge Laurel Beeler no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by Clerk on 10/24/2023. (Attachments: # 1 Notice of Eligibility for Video Recording) (ark, COURT STAFF) (Filed on 10/24/2023)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 10/24/2023)** |
| 10/25/2023 | 17 | AMENDED COMPLAINT *(Per Stipulation)* against Apple Inc.. Filed by Ashley M Gjovik. (Attachments: # 1 Exhibit Redline of changes)(Gjovik, Ashley) (Filed on 10/25/2023) (Entered: 10/25/2023) |

| | | |
|---|---|---|
| 10/25/2023 | 18 | CLERK'S NOTICE: A Joint Case Management Statement due by 2/2/2024. Initial Case Management Conference set for 2/9/2024 at 8:30 AM in San Francisco, Courtroom 06, 17th Floor. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ls, COURT STAFF) (Filed on 10/25/2023)<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 10/25/2023) |
| 10/25/2023 | 19 | NOTICE of Appearance by Kate Elsa Juvinall *NOTICE OF APPEARANCE OF MELINDA S. RIECHERT* (Juvinall, Kate) (Filed on 10/25/2023) (Entered: 10/25/2023) |
| 10/25/2023 | 20 | NOTICE of Appearance by Kate Elsa Juvinall *NOTICE OF APPEARANCE OF KATHRYN G. MANTOAN* (Juvinall, Kate) (Filed on 10/25/2023) (Entered: 10/25/2023) |
| 10/25/2023 | 21 | NOTICE of Appearance by Kate Elsa Juvinall *NOTICE OF APPEARANCE OF JESSICA R. PERRY* (Juvinall, Kate) (Filed on 10/25/2023) (Entered: 10/25/2023) |
| 10/25/2023 | 22 | NOTICE of Appearance by Kate Elsa Juvinall *NOTICE OF APPEARANCE OF RYAN D. BOOMS* (Juvinall, Kate) (Filed on 10/25/2023) (Entered: 10/25/2023) |
| 10/27/2023 | 23 | **ORDER OF RECUSAL. Signed by Judge Charles R. Breyer on 10/27/2023. (ls, COURT STAFF) (Filed on 10/27/2023)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 10/27/2023)** |
| 10/27/2023 | 24 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Edward M Chen for all further proceedings. Judge Charles R. Breyer no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by Clerk on 10/27/2023. (Attachments: # 1 Notice of Eligibility for Video Recording)(ark, COURT STAFF) (Filed on 10/27/2023)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 10/27/2023)** |
| 10/27/2023 | 25 | NOTICE of Appearance by Melinda S. Riechert (Riechert, Melinda) (Filed on 10/27/2023) (Entered: 10/27/2023) |
| 10/27/2023 | 26 | NOTICE of Appearance by Jessica Perry (Perry, Jessica) (Filed on 10/27/2023) (Entered: 10/27/2023) |
| 10/31/2023 | 27 | NOTICE of Appearance by Ryan Booms (Booms, Ryan) (Filed on 10/31/2023) (Entered: 10/31/2023) |
| 11/15/2023 | 28 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *(joint intention to stipulate to settlement conference)* (Gjovik, Ashley) (Filed on 11/15/2023) (Entered: 11/15/2023) |
| 11/16/2023 | 29 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Juvinall, Kate) (Filed on 11/16/2023) (Entered: 11/16/2023) |
| 11/16/2023 | 30 | MOTION to Dismiss *Defendant Apple Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's First Amended Complaint; Memorandum of Points and Authorities in Support Thereof* filed by Apple Inc.. Motion to Dismiss Hearing set for 2/8/2024 01:30 PM in San Francisco, Courtroom 05, 17th Floor. Responses due by 12/21/2023. Replies due by 1/11/2024. (Attachments: # 1 Proposed Order)(Juvinall, Kate) (Filed on 11/16/2023) (Entered: 11/16/2023) |

| | | |
|---|---|---|
| 11/19/2023 | 31 | NOTICE by Ashley M Gjovik *Notice of Intent to File Opposition to Defendant's Partial Motion to Dismiss, and Notice of Intent to File 2nd Amended Complaint, by or before Dec 21 2023, per Prior Stipulation Order* (Gjovik, Ashley) (Filed on 11/19/2023) (Entered: 11/19/2023) |
| 12/21/2023 | 32 | AMENDED COMPLAINT *Stipulated SAC* against Apple Inc.. Filed by Ashley M Gjovik. (Attachments: # 1 Exhibit SAC Part 2, # 2 Exhibit SAC Part 3)(Gjovik, Ashley) (Filed on 12/21/2023) (Entered: 12/21/2023) |
| 12/22/2023 | 33 | OPPOSITION/RESPONSE (re 30 MOTION to Dismiss *Defendant Apple Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's First Amended Complaint; Memorandum of Points and Authorities in Support Thereof* ) filed byAshley M Gjovik. (Attachments: # 1 Exhibit FAC SAC Redline 1, # 2 Exhibit FAC SAC Redline 2)(Gjovik, Ashley) (Filed on 12/22/2023) (Entered: 12/22/2023) |
| 12/22/2023 | 34 | Proposed Order Denying MTD re 33 Opposition/Response to Motion, by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 12/22/2023) Modified on 12/26/2023 (kmg, COURT STAFF). (Entered: 12/22/2023) |
| 12/25/2023 | 35 | MOTION FOR JUDICIAL NOTICE-[PROPOSED] ORDER GRANTING PLAINTIFFS MOTION FOR JUDICIAL NOTICE re 33 Opposition/Response to Motion, filed by Ashley M Gjovik. (Attachments: # 1 Proposed Order Order, # 2 Exhibit 1 - 825 Stewart Drive, # 3 Exhibit 2 - 3250 Scott Blvd, # 4 Exhibit 3 - NLRB, # 5 Exhibit 4 - DOL, # 6 Exhibit 5 - EEOC, # 7 Exhibit 6 - SEC, # 8 Exhibit 7 - Court 1, # 9 Exhibit 8 - Environment, # 10 Exhibit 9 - Court 2, # 11 Exhibit 10 - News 1, # 12 Exhibit 11 - News 2, # 13 Exhibit 12 - Maps)(Related document(s) 33 ) (Gjovik, Ashley) (Filed on 12/25/2023) Modified on 12/27/2023 (kmg, COURT STAFF). (Entered: 12/25/2023) |
| 12/27/2023 | 36 | Notice of Withdrawal Without Prejudice of Motion to Dismiss First Amended Complaint. (Perry, Jessica) (Filed on 12/27/2023) Modified on 12/28/2023 (kmg, COURT STAFF). (Entered: 12/27/2023) |
| 01/02/2024 | 37 | MOTION for Judicial Notice with [Proposed Order] Exhibits re 35 *Addendum \| Feb 8 2024 Hearing* filed by Ashley M Gjovik. (Attachments: # 1 Exhibit 825 Stewart, # 2 Exhibit 3250 Scott, # 3 Exhibit NLRB, # 4 Exhibit SEC, # 5 Exhibit Lawsuits, # 6 Exhibit News Articles, # 7 Exhibit Locations)(Related document(s) 35 ) (Gjovik, Ashley) (Filed on 1/2/2024) Modified on 1/3/2024 (kmg, COURT STAFF). Modified on 1/3/2024 (kmg, COURT STAFF). (Entered: 01/02/2024) |
| 01/05/2024 | 38 | ERRATA re 37 MOTION for Judical Notice *Re-filing Doc 37 #7 (Exhibit 12 - Location/Map; Same Document) Due to PDF File Error* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 1/5/2024) (Entered: 01/05/2024) |
| 01/09/2024 | 39 | Renotice motion hearing re 37 MOTION for Judical Notice, 35 MOTION for Judicial Notice with [Proposed Order] *re-NOTICE OF MOTION for 2/15/24* filed byAshley M Gjovik. (Related document(s) 37 , 35 ) (Gjovik, Ashley) (Filed on 1/9/2024) (Entered: 01/09/2024) |
| 01/12/2024 | 40 | **CLERK'S NOTICE SETTING MOTION HEARING VIA ZOOM.**<br><br>**Motion Hearing as to 37 MOTION for Judicial Notice set for for 2/15/2024, at 1:30 PM in San Francisco, - Videoconference Only before Judge Edward M Chen. This proceeding will be held via a Zoom webinar.**<br><br>**ALL PARTIES PARTICIPATING IN THE HEARING ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 1:20 PM.** |

| | | |
|---|---|---|
| | | **Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/emc**<br><br>**General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 1/12/2024)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br><br>**(Entered: 01/12/2024)** |
| 01/18/2024 | 41 | MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* filed by Apple Inc.. Motion to Dismiss Hearing set for 2/29/2024 01:30 PM in San Francisco, Courtroom 05, 17th Floor. Responses due by 2/1/2024. Replies due by 2/8/2024. (Attachments: # 1 Proposed Order)(Perry, Jessica) (Filed on 1/18/2024) (Entered: 01/18/2024) |
| 01/18/2024 | 42 | MOTION to Strike 32 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT* filed by Apple Inc.. Motion Hearing set for 2/29/2024 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 2/1/2024. Replies due by 2/8/2024. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Perry, Jessica) (Filed on 1/18/2024) (Entered: 01/18/2024) |
| 01/19/2024 | 43 | OPPOSITION/RESPONSE (re 37 MOTION for Judical Notice, 35 MOTION for Judicial Notice with [Proposed Order] ) filed byApple Inc.. (Perry, Jessica) (Filed on 1/19/2024) (Entered: 01/19/2024) |
| 01/19/2024 | 44 | NOTICE by Ashley M Gjovik re 41 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF*, 42 MOTION to Strike 32 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT*, 43 Opposition/Response to Motion *Notice of Intent to file Reply by 1/26/24 and Oppositions by 2/1/24* (Gjovik, Ashley) (Filed on 1/19/2024) (Entered: 01/19/2024) |
| 01/25/2024 | 45 | REPLY (re 37 MOTION for Judical Notice, 35 MOTION for Judicial Notice with [Proposed Order] ) *Reply to Apple's Response* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 1/25/2024) (Entered: 01/25/2024) |
| 01/30/2024 | 46 | **ORDER by Judge Edward M. Chen denying 35 , 37 Plaintiff's Motion for Judicial Notice as moot and sua sponte dismissing Plaintiff's Second Amended Complaint with leave to amend. 41 , 42 Defendant's Motion to Dismiss and Motion to Strike the Second Amended Complaint are denied as moot. (emclc2, COURT STAFF) (Filed on 1/30/2024)** |

| | | |
|---|---|---|
| | | **Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)** **(Entered: 01/30/2024)** |
| 02/27/2024 | 47 | AMENDED COMPLAINT *Plaintiff's Third Amended Complaint (75 Pages)* against Apple Inc.. Filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 2/27/2024) (Entered: 02/27/2024) |
| 03/26/2024 | 48 | MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* filed by Apple Inc.. Motion to Dismiss Hearing set for 5/16/2024 01:30 PM in San Francisco, Courtroom 05, 17th Floor. Responses due by 4/9/2024. Replies due by 4/16/2024. (Attachments: # 1 Proposed Order)(Juvinall, Kate) (Filed on 3/26/2024) (Entered: 03/26/2024) |
| 03/26/2024 | 49 | MOTION to Strike 47 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT* filed by Apple Inc.. Motion Hearing set for 5/16/2024 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 4/9/2024. Replies due by 4/16/2024. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Perry, Jessica) (Filed on 3/26/2024) (Entered: 03/26/2024) |
| 03/26/2024 | 50 | Request for Judicial Notice re 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF DEFENDANT APPLE INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT* filed byApple Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order) (Related document(s) 48 ) (Perry, Jessica) (Filed on 3/26/2024) (Entered: 03/26/2024) |
| 03/26/2024 | 51 | NOTICE of Change of Address by Ryan Booms (Booms, Ryan) (Filed on 3/26/2024) (Entered: 03/26/2024) |
| 04/09/2024 | 52 | OPPOSITION/RESPONSE (re 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* ) *OPPOSITION TO REQUEST FOR JUDICIAL NOTICE* filed byAshley M Gjovik. (Attachments: # 1 Proposed Order DENYING RJN)(Gjovik, Ashley) (Filed on 4/9/2024) (Entered: 04/09/2024) |
| 04/10/2024 | 53 | OPPOSITION/RESPONSE (re 49 MOTION to Strike 47 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT* ) *OPP'N TO MOTION TO STRIKE* filed byAshley M Gjovik. (Attachments: # 1 Proposed Order PROPOSED ORDER DENYING MTS)(Gjovik, Ashley) (Filed on 4/10/2024) (Entered: 04/10/2024) |
| 04/10/2024 | 54 | OPPOSITION/RESPONSE (re 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* ) *OPP'N TO MOTION TO DISMISS* filed byAshley M Gjovik. (Attachments: # 1 Proposed Order PROPOSED ORDER DENYING MTD)(Gjovik, Ashley) (Filed on 4/10/2024) (Entered: 04/10/2024) |
| 04/16/2024 | 55 | DECLARATION of Ashley Gjovik in Opposition to 50 Request for Judicial Notice,, 52 Opposition/Response to Motion, filed byAshley M Gjovik. (Related document(s) 50 , 52 ) |

| | | |
|---|---|---|
| | | (Gjovik, Ashley) (Filed on 4/16/2024) (Entered: 04/16/2024) |
| 04/16/2024 | 56 | DECLARATION of Ashley Gjovik in Opposition to 49 MOTION to Strike 47 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT*, 53 Opposition/Response to Motion, filed byAshley M Gjovik. (Related document(s) 49 , 53 ) (Gjovik, Ashley) (Filed on 4/16/2024) (Entered: 04/16/2024) |
| 04/16/2024 | 57 | DECLARATION of Ashley Gjovik in Opposition to 54 Opposition/Response to Motion, 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* filed byAshley M Gjovik. (Related document(s) 54 , 48 ) (Gjovik, Ashley) (Filed on 4/16/2024) (Entered: 04/16/2024) |
| 04/16/2024 | 58 | REPLY (re 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* ) filed byApple Inc.. (Perry, Jessica) (Filed on 4/16/2024) (Entered: 04/16/2024) |
| 04/16/2024 | 59 | REPLY (re 49 MOTION to Strike 47 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT* ) filed byApple Inc.. (Perry, Jessica) (Filed on 4/16/2024) (Entered: 04/16/2024) |
| 04/16/2024 | 60 | REPLY (re 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* ) *[Reply in Support of RJN re Motion to Dismiss]* filed byApple Inc.. (Perry, Jessica) (Filed on 4/16/2024) (Entered: 04/16/2024) |
| 04/16/2024 | 61 | Request for Judicial Notice re 58 Reply to Opposition/Response, *in Support of Motion to Dismiss Plaintiffs Third Amended Complaint* filed byApple Inc.. (Attachments: # 1 Exhibit A, # 2 Proposed Order Proposed Order)(Related document(s) 58 ) (Perry, Jessica) (Filed on 4/16/2024) (Entered: 04/16/2024) |
| 04/19/2024 | 62 | Declaration of Cher S. Scarlett in Support of Defendant's Moton to Strike 61 Request for Judicial Notice, 56 Declaration in Opposition, filed byAshley M Gjovik. (Attachments: # 1 Envelope) (Related document(s) 61 , 56 ) (kmg, COURT STAFF) (Filed on 4/19/2024) (Entered: 04/23/2024) |
| 04/24/2024 | 63 | OPPOSITION/RESPONSE (re 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* ) *Response to Def's New 4/16/24 Motion Requesting Judicial Notice* filed byAshley M Gjovik. (Attachments: # 1 Declaration Declaration in Support)(Gjovik, Ashley) (Filed on 4/24/2024) (Entered: 04/24/2024) |
| 04/24/2024 | 64 | First MOTION to Strike 58 Reply to Opposition/Response, 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF*, 59 Reply to Opposition/Response, 49 MOTION to Strike 47 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT*, 62 Declaration in Support, *MOTION TO STRIKE IMPROPER AMICUS DECLARATION BY* |

| | | |
|---|---|---|
| | | *NON-PARTY* filed by Ashley M Gjovik. Motion Hearing set for 5/16/2024 01:30 PM in San Francisco, - Videoconference Only before Judge Edward M Chen. Responses due by 5/8/2024. Replies due by 5/15/2024. (Attachments: # 1 Declaration Declaration in Support with Exhibits, # 2 Proposed Order Proposed Order Granting Motion)(Gjovik, Ashley) (Filed on 4/24/2024) (Entered: 04/24/2024) |
| 04/25/2024 | 65 | ERRATA re 61 Request for Judicial Notice, 63 Opposition/Response to Motion, *REFILING DOCUMENTS IN DOCKET NO 63 DUE TO FILE ERRORS* by Ashley M Gjovik. (Attachments: # 1 Exhibit Exhibits - Copies of Banko v Apple Case Documents from Docket 3:13-cv-02977, # 2 Declaration Declaration Authenticating Exhibits) (Gjovik, Ashley) (Filed on 4/25/2024) (Entered: 04/25/2024) |
| 04/30/2024 | 66 | Supplemental Declaration of Cher Swan Scarlett (Attachments: # 1 Envelope)(ark, COURT STAFF) (Filed on 4/30/2024) (Entered: 05/01/2024) |
| 05/01/2024 | 67 | Supplemental Brief re 64 First MOTION to Strike 58 Reply to Opposition/Response, 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREO, 62 Declaration in Support, 66 Received Document OBJECTIONS TO SECOND NON-PARTY AMICUS DECLARATION AT DOCKET NO 66 filed byAshley M Gjovik. (Related document(s) 64 , 62 , 66 ) (Gjovik, Ashley) (Filed on 5/1/2024) (Entered: 05/01/2024)* |
| 05/08/2024 | 68 | **CLERK'S NOTICE CONVERTING MOTIONS HEARING FROM IN-PERSON TO ZOOM.**<br><br>**Motions Hearing as to 48 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT* and 49 MOTION to Strike 47 Amended Complaint set 5/16/2024, at 1:30 PM in San Francisco, - Videoconference Only before Judge Edward M Chen. This proceeding will be held via a Zoom webinar.**<br><br>**ALL PARTIES PARTICIPATING IN THE HEARING ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 1:20 PM.**<br><br>**Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/emc**<br><br>**General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 5/8/2024)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 05/08/2024)** |
| 05/16/2024 | 69 | **Minute Entry for proceedings held before Judge Edward M Chen: Motion Hearing held on 5/16/2024, re 48 MOTION to Dismiss and 49 MOTION to Strike 47 Amended Complaint.**<br><br>**Total Time in Court: 31 Minutes. Court Reporter: Jennifer Pancratz.** |

| | | |
|---|---|---|
| | | **(vla, COURT STAFF) (Date Filed: 5/16/2024) (Entered: 05/20/2024)** |
| 05/20/2024 | 70 | TRANSCRIPT ORDER for proceedings held on May 16, 2024 before Judge Edward M Chen by Apple Inc., for Court Reporter Jennifer Pancratz. (Juvinall, Kate) (Filed on 5/20/2024) (Entered: 05/20/2024) |
| 05/20/2024 | 71 | TRANSCRIPT ORDER for proceedings held on 05/16/2024 before Judge Edward M Chen by Ashley M Gjovik, for Court Reporter Jennifer Pancratz. (Gjovik, Ashley) (Filed on 5/20/2024) (Entered: 05/20/2024) |
| 05/20/2024 | 72 | *****PLEASE DISREGARD, FILED IN ERROR. COURT REPORTER WAS PRESENT FOR PROCEEDINGS. ONLY A TRANSCRIPT IS AVAILABLE OF THESE PROCEEDINGS.**<br>AUDIO RECORDINGS ORDER (requesting docket(s): 69 ), by Ashley M Gjovik. Court will send to Ashley Gjovik at legal@ashleygjovik.com a link to the files requested in this order. ( Filing fee $ 34, receipt number ACANDC-19432235). (Gjovik, Ashley) (Filed on 5/20/2024) Modified on 5/23/2024 (knm, COURT STAFF). (Entered: 05/20/2024) |
| 05/20/2024 | 73 | **ORDER by Judge Edward M. Chen granting in part and denying in part 48 Defendant's Motion to Dismiss; denying 49 Defendant's Motion to Strike; and granting 64 Plaintiff's Motion to Strike. (emclc2, COURT STAFF) (Filed on 5/20/2024)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 05/20/2024)** |
| 05/20/2024 | 74 | **CLERK'S NOTICE SETTING INITIAL CASE MANAGEMENT CONFERENCE.**<br><br>**Joint Case Management Statement due by 7/9/2024.**<br><br>**Initial Case Management Conference set for 7/16/2024, at 1:30 PM in San Francisco, - Videoconference Only. This proceeding will be held via a Zoom webinar.**<br><br>**ALL PARTIES PARTICIPATING IN THE HEARNG ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 1:20 PM.**<br><br>**Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/emc**<br><br>**General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (vla, COURT STAFF) (Filed on 5/20/2024)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 05/20/2024)** |
| 05/23/2024 | 75 | Transcript of Proceedings held on 05/16/2024, before Judge Edward M. Chen. Court Reporter Jennifer Pancratz, telephone number 602-322-7198. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any |

| | | |
|---|---|---|
| | | Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 71 Transcript Order ) Release of Transcript Restriction set for 8/21/2024. (Related documents(s) 71 ) (Pancratz, Jennifer) (Filed on 5/23/2024) (Entered: 05/23/2024) |
| 06/18/2024 | 76 | AMENDED COMPLAINT *4AC* against Apple Inc.. Filed by Ashley M Gjovik. (Attachments: # 1 Errata TAC 4AC Delta)(Gjovik, Ashley) (Filed on 6/18/2024) (Entered: 06/18/2024) |
| 07/09/2024 | 77 | CASE MANAGEMENT STATEMENT *First Joint Case Mgmt Statement* filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 7/9/2024) (Entered: 07/09/2024) |
| 07/15/2024 | 78 | MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* filed by Apple Inc.. Motion to Dismiss Hearing set for 8/22/2024 01:30 PM in San Francisco, Courtroom 05, 17th Floor. Responses due by 7/29/2024. Replies due by 8/5/2024. (Attachments: # 1 Proposed Order)(Perry, Jessica) (Filed on 7/15/2024) (Entered: 07/15/2024) |
| 07/15/2024 | 79 | MOTION to Strike 76 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT* filed by Apple Inc.. Motion Hearing set for 8/22/2024 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 7/29/2024. Replies due by 8/5/2024. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Perry, Jessica) (Filed on 7/15/2024) (Entered: 07/15/2024) |
| 07/16/2024 | 80 | **Minute Entry for proceedings held before Judge Edward M Chen: Initial Case Management Conference held on 7/16/2024.**<br><br>**Joint Case Management Statement due by 8/15/2024.**<br><br>**Further Case Management Conference set for 8/22/2024, at 1:30 PM in San Francisco, - Videoconference Only. This proceeding will be held via a Zoom webinar.**<br><br>**ALL PARTIES PARTICIPATING IN THE HEARING ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 1:15 PM.**<br><br>**Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/emc**<br><br>**General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>**Total Time in Court: 24 Minutes. Court Reporter: Kendra Steppler.**<br><br>**(vla, COURT STAFF) (Date Filed: 7/16/2024) (Entered: 07/22/2024)** |
| 07/23/2024 | 81 | TRANSCRIPT ORDER for proceedings held on July 16, 2024 before Judge Edward M Chen by Apple Inc., for Court Reporter Kendra Steppler. (Juvinall, Kate) (Filed on 7/23/2024) (Entered: 07/23/2024) |

| | | |
|---|---|---|
| 07/23/2024 | 82 | TRANSCRIPT ORDER for proceedings held on 07/16/2024 before Judge Edward M Chen by Ashley M Gjovik, for Court Reporter Kendra Steppler. (Gjovik, Ashley) (Filed on 7/23/2024) (Entered: 07/23/2024) |
| 07/26/2024 | 83 | **ORDER REFERRING CASE to Magistrate Judge for Discovery purposes. Signed by Judge Edward M. Chen on 7/26/2024. (vla, COURT STAFF) (Filed on 7/26/2024)** <br> **Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)** <br> **(Entered: 07/26/2024)** |
| 07/31/2024 | 84 | OPPOSITION/RESPONSE (re 78 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* ) *Opposition* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 7/31/2024) (Entered: 07/31/2024) |
| 07/31/2024 | 85 | OPPOSITION/RESPONSE (re 79 MOTION to Strike 76 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT* ) *Opposition* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 7/31/2024) (Entered: 07/31/2024) |
| 07/31/2024 | 86 | OPPOSITION/RESPONSE (re 78 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF*, 79 MOTION to Strike 76 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT* ) *REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF P'S OPPOSITION* filed byAshley M Gjovik. (Attachments: # 1 Exhibit Exhibit A - RCRA Inspection Report, # 2 Exhibit Exhibit N - Modeling Toxic Gas Releases, # 3 Exhibit Exhibit O - Int Fire Code Semiconductor Fab)(Gjovik, Ashley) (Filed on 7/31/2024) (Entered: 07/31/2024) |
| 07/31/2024 | 87 | Declaration of Ashley Gjovik in Support of 85 Opposition/Response to Motion, 86 Opposition/Response to Motion,,, 84 Opposition/Response to Motion, *Declaration in Support of Plaintiff's Filings* filed byAshley M Gjovik. (Related document(s) 85 , 86 , 84 ) (Gjovik, Ashley) (Filed on 7/31/2024) (Entered: 07/31/2024) |
| 08/05/2024 | 88 | Transcript of Proceedings held on July 16, 2024, before Judge Edward M. Chen. Court Reporter Kendra Steppler, telephone number 406-489-3498. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 81 Transcript Order ) Release of Transcript Restriction set for 11/4/2024. (Related documents(s) 81 ) (Steppler, Kendra) (Filed on 8/5/2024) (Entered: 08/05/2024) |
| 08/05/2024 | 89 | REPLY (re 78 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* ) filed byApple Inc.. (Perry, Jessica) (Filed on 8/5/2024) (Entered: 08/05/2024) |
| 08/05/2024 | 90 | REPLY (re 79 MOTION to Strike 76 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S* |

| | | |
|---|---|---|
| | | *FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT* ) filed byApple Inc.. (Perry, Jessica) (Filed on 8/5/2024) (Entered: 08/05/2024) |
| 08/12/2024 | 91 | **CLERK'S NOTICE RESCHEDULING MOTIONS HEARING.**<br><br>**Motions Hearing as to 78 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT;* AND 79**<br><br>**MOTION to Strike 76 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT;* is reset from 8/22/2024 to 8/28/2024, at 9:30 AM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen.**<br><br>**ALL PARTIES ARE REQUIRED TO APPEAR IN COURTROOM 5, 17TH FLOOR NO LATER THAN 9:00 AM TO CHECK-IN WITH THE COURTROOM DEPUTY.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 8/12/2024)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 08/12/2024)** |
| 08/12/2024 | 92 | **CLERK'S NOTICE RESCHEDULING FURTHER CASE MANAGEMENT CONFERENCE.**<br><br>**Joint Case Management Statement due by 8/20/2024.**<br><br>**Further Case Management Conference reset from 8/22/2024 to 8/28/2024, at 9:30 AM in San Francisco, Courtroom 05, 17th Floor.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 8/12/2024)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 08/13/2024)** |
| 08/16/2024 | 99 | DECLARATION of Cher S. Scarlett in Objection to 93 Opposition/Response to Motion,, 96 Request for Judicial Notice, filed byAshley M Gjovik. (Related document(s) 93 , 96 ) (far, COURT STAFF) (Filed on 8/16/2024) (Entered: 08/27/2024) |
| 08/18/2024 | 93 | OPPOSITION/RESPONSE (re 78 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF*, 79 MOTION to Strike 76 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT* ) *Motion for Leave to file Sur-Reply and Attached Proposed Sur-reply Brief* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 8/18/2024) (Entered: 08/18/2024) |
| 08/18/2024 | 94 | DECLARATION of Ashley Gjovik in Opposition to 93 Opposition/Response to Motion,, 89 Reply to Opposition/Response, 90 Reply to Opposition/Response, *Declaration in* |

| | | |
|---|---|---|
| | | *Opposition to MTD* filed byAshley M Gjovik. (Related document(s) 93 , 89 , 90 ) (Gjovik, Ashley) (Filed on 8/18/2024) (Entered: 08/18/2024) |
| 08/18/2024 | 95 | Request for Judicial Notice re 93 Opposition/Response to Motion,, 89 Reply to Opposition/Response, 90 Reply to Opposition/Response, *Request for Judicial Notice in Support of Opposition II* filed byAshley M Gjovik. (Related document(s) 93 , 89 , 90 ) (Gjovik, Ashley) (Filed on 8/18/2024) (Entered: 08/18/2024) |
| 08/19/2024 | 96 | Request for Judicial Notice re 85 Opposition/Response to Motion, 86 Opposition/Response to Motion,,, *RJN and Notice of New 9th Circuit Precedent on Workplace Harassment* filed byAshley M Gjovik. (Related document(s) 85 , 86 ) (Gjovik, Ashley) (Filed on 8/19/2024) (Entered: 08/19/2024) |
| 08/20/2024 | 97 | JOINT CASE MANAGEMENT STATEMENT filed by Apple Inc.. (Perry, Jessica) (Filed on 8/20/2024) (Entered: 08/20/2024) |
| 08/22/2024 | 98 | **ORDER denying 93 Plaintiff's Motion for Leave to File Sur-Reply. Signed by Judge Edward M. Chen on 8/22/2024. (emclc2, COURT STAFF) (Filed on 8/22/2024)** <br> **Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)** <br> **(Entered: 08/22/2024)** |
| 08/27/2024 | 100 | NOTICE by Ashley M Gjovik re 97 Joint Case Management Statement *Notice of Pendency of Administrative Action, EPA/DOL, ARB-2024-0060* (Gjovik, Ashley) (Filed on 8/27/2024) (Entered: 08/27/2024) |
| 08/27/2024 | 101 | First MOTION to Strike 99 Declaration in Opposition *Improper and Unauthorized Non-Party Filing* filed by Ashley M Gjovik. Motion Hearing set for 8/28/2024 09:30 AM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 8/28/2024. Replies due by 8/28/2024. (Attachments: # 1 Supplement Memorandum of P&A, # 2 Declaration, # 3 Proposed Order)(Gjovik, Ashley) (Filed on 8/27/2024) (Entered: 08/27/2024) |
| 08/28/2024 | 104 | **Minute Entry for proceedings held before Judge Edward M Chen:** <br><br> **Further Case Management Conference held on 8/28/2024.** <br><br> **Motion Hearing held on 8/28/2024 re 78 MOTION to Dismiss *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT;* and 79 MOTION to Strike 76 Amended Complaint *DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FOURTH AMENDED COMPLAINT.*** <br><br> **CASE REFERRED to Magistrate Judge for Settlement Conference to be completed within 120-150 days.** <br><br> **Total Time in Court: 30 Minutes. Court Reporter: Kelly Shainline. (vla, COURT STAFF) (Date Filed: 8/28/2024) (Entered: 08/29/2024)** |

| | | |
|---|---|---|
| 08/28/2024 | 105 | **CLERK'S NOTICE SCHEDULING FURTHER CASE MANAGEMENT CONFERENCE.**<br><br>**Joint Case Management Statement due by 2/4/2025.**<br><br>**Further Case Management Conference set for 2/11/2025, at 2:30 PM in San Francisco, - Videoconference Only. This proceeding will be held via a Zoom webinar.**<br><br>**ALL PARTIES PARTICIPATING IN THE HEARING ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 2:20 PM**<br><br>**Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/emc**<br><br>**General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (vla, COURT STAFF) (Filed on 8/28/2024)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br><br>**(Entered: 08/29/2024)** |
| 08/29/2024 | 102 | TRANSCRIPT ORDER for proceedings held on 08/24/2024 before Judge Edward M Chen by Apple Inc., for Court Reporter Kelly Shainline. (Juvinall, Kate) (Filed on 8/29/2024) (Entered: 08/29/2024) |
| 08/29/2024 | 103 | TRANSCRIPT ORDER for proceedings held on 8/28/2024 before Judge Edward M Chen by Ashley M Gjovik, for Court Reporter Kelly Shainline. (Gjovik, Ashley) (Filed on 8/29/2024) (Entered: 08/29/2024) |
| 09/02/2024 | 106 | Transcript of Proceedings held on 8/28/2024, before Judge Edward M. Chen. Court Reporter/Transcriber Kelly Shainline, Official Court Reporter, telephone number (510)828-9404, Email: kelly_shainline@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 102 Transcript Order, 103 Transcript Order ) Release of Transcript Restriction set for 12/2/2024. (Related documents(s) 102 , 103 ) (Shainline, Kelly) (Filed on 9/2/2024) (Entered: 09/02/2024) |
| 09/03/2024 | 107 | CLERKS NOTICE SETTING PRE-SETTLEMENT SCHEDULING CONFERENCE. The parties are hereby notified that a Scheduling Conference is set for 9/9/2024 at 1:30 PM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/ |

| | | |
|---|---|---|
| | | **General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 9/3/2024) (Entered: 09/03/2024) |
| 09/04/2024 | 108 | CLERKS NOTICE CONTINUING THE PRE-SETTLEMENT SCHEDULING CONFERENCE.<br><br>The Scheduling Conference is hereby continued to 9/11/2024 at 1:30 PM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 9/4/2024) (Entered: 09/04/2024) |
| 09/11/2024 | 109 | **Minute Entry for pre-settlement conference held on 9/11/2024 before Magistrate Judge Alex G. Tse. The Court shall schedule a further pre-settlement conference to take place in 60 days. (Not Reported.)**<br><br>**Plaintiff: Ashley M Gjovik.**<br>**Defendant Attorney: Melinda S. Riechert.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Date Filed: 9/11/2024) (Entered: 09/12/2024)** |
| 09/12/2024 | 110 | CLERKS NOTICE SETTING FURTHER PRE-SETTLEMENT SCHEDULING CONFERENCE. The parties are hereby notified that a Further Scheduling Conference is set for 11/12/2024 at 11:00 AM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. |

| | | |
|---|---|---|
| | | *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 9/12/2024) (Entered: 09/12/2024) |
| 09/30/2024 | 111 | NOTICE by Ashley M Gjovik *Notice of Pendency of Administrative Action, Apple, NLRB Case No. 32-CA-284428 (Employment Policies & Contracts), 1/22/25 ALJ Hearing* (Gjovik, Ashley) (Filed on 9/30/2024) (Entered: 09/30/2024) |
| 10/01/2024 | 112 | **ORDER by Judge Edward M. Chen granting in part and denying in part 78 Defendant's Motion to Dismiss; denying 79 Defendant's Motion to Strike; and granting 101 Plaintiff's Motion to Strike. (emclc2, COURT STAFF) (Filed on 10/1/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 10/01/2024)** |
| 10/01/2024 | 113 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Ashley M Gjovik. (Pay.gov Agency Tracking ID 76845565451.) (Attachments: # 1 Errata Notice of Appeal fee payment receipt)(Gjovik, Ashley) (Filed on 10/1/2024) (Entered: 10/01/2024) |
| 10/04/2024 | 114 | USCA Case Number **24-6058** for 113 Notice of Appeal to the Ninth Circuit filed by Ashley M Gjovik. (gba, COURT STAFF) (Filed on 10/4/2024) (Entered: 10/07/2024) |
| 10/22/2024 | 115 | Emergency MOTION for Extension of Time to Amend 112 Order on Motion to Dismiss,, Order on Motion to Strike,,, *Request for Extension/Stay of Deadline for Fifth Amended Complaint (currently due Oct 29 2024).* filed by Ashley M Gjovik. (Attachments: # 1 Declaration, # 2 Proposed Order)(Gjovik, Ashley) (Filed on 10/22/2024) (Entered: 10/22/2024) |
| 10/23/2024 | 116 | First ADMINISTRATIVE MOTION Clarification of court order; addendum to Aug. 28 transcripts re 106 Transcript,,, 104 Terminate Hearings,,, Case Management Conference - Further,,, Motion Hearing,,, Case Referred to Magistrate Judge for Settlement Conference,, filed by Ashley M Gjovik. Responses due by 11/4/2024. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 10/23/2024) (Entered: 10/23/2024) |
| 10/23/2024 | 117 | MOTION to Stay re 115 Emergency MOTION for Extension of Time to Amend 112 Order on Motion to Dismiss,, Order on Motion to Strike,,, *Request for Extension/Stay of Deadline for Fifth Amended Complaint (currently due Oct 29 2024).*, 114 USCA Case Number *Motion to Stay District Court Proceedings Pending Appeal* filed by Ashley M Gjovik. Motion Hearing set for 12/19/2024 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 11/6/2024. Replies due by 11/13/2024. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 10/23/2024) (Entered: 10/23/2024) |
| 10/23/2024 | 118 | **ORDER. Defendant shall file a response to 115 Plaintiff's motion for an extension by Friday, 10/25/2024, at 9:00 a.m. There shall be no reply. Signed by Judge Edward M. Chen on 10/23/2024. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 10/23/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 10/23/2024)** |
| 10/24/2024 | 119 | **ORDER. If Defendant wishes to file a response to 116 Plaintiff's motion for clarification/correction, it shall file its responsive brief by Monday, October 28, 2024. Signed by Judge Edward M. Chen on 10/24/2024. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 10/24/2024)** |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 10/24/2024)** |
| 10/24/2024 | 120 | Statement of Non-Opposition re 116 First ADMINISTRATIVE MOTION Clarification of court order; addendum to Aug. 28 transcripts re 106 Transcript,,, 104 Terminate Hearings,,, Case Management Conference - Further,,, Motion Hearing,,, Case Referred to Magistrate Judge for Settlement filed byApple Inc.. (Related document(s) 116 ) (Riechert, Melinda) (Filed on 10/24/2024) (Entered: 10/24/2024) |
| 10/24/2024 | 121 | OPPOSITION/RESPONSE (re 115 Emergency MOTION for Extension of Time to Amend 112 Order on Motion to Dismiss,, Order on Motion to Strike,,, *Request for Extension/Stay of Deadline for Fifth Amended Complaint (currently due Oct 29 2024).* ) filed byApple Inc.. (Riechert, Melinda) (Filed on 10/24/2024) (Entered: 10/24/2024) |
| 10/25/2024 | 122 | **ORDER by Judge Edward M. Chen re 116 Plaintiff's Motion for Clarification and Correction. (emclc2, COURT STAFF) (Filed on 10/25/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 10/25/2024)** |
| 10/25/2024 | 123 | **ORDER by Judge Edward M. Chen denying 115 Plaintiff's Motion for Extension. (emclc2, COURT STAFF) (Filed on 10/25/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 10/25/2024)** |
| 10/25/2024 | 124 | ORDER of USCA as to 113 Notice of Appeal to the Ninth Circuit filed by Ashley M. Gjovik. (gba, COURT STAFF) (Filed on 10/25/2024) (Entered: 10/28/2024) |
| 10/28/2024 | 125 | ERRATA re 124 USCA Order *FYI: Motion to Reconsider Filed to 9th Circuit on Oct 25 2024; Motion Pending* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 10/28/2024) (Entered: 10/28/2024) |
| 11/06/2024 | 126 | OPPOSITION/RESPONSE (re 117 MOTION to Stay re 115 Emergency MOTION for Extension of Time to Amend 112 Order on Motion to Dismiss,, Order on Motion to Strike,,, *Request for Extension/Stay of Deadline for Fifth Amended Complaint (currently due Oct 29 2024).*, [11 ) filed byApple Inc.. (Juvinall, Kate) (Filed on 11/6/2024) (Entered: 11/06/2024) |
| 11/06/2024 | 127 | NOTICE by Ashley M Gjovik *Notice of Intent to file 5AC by EOD Nov 6 2024; Notice Ninth Circuit Appeal is Still Pending* (Gjovik, Ashley) (Filed on 11/6/2024) (Entered: 11/06/2024) |
| 11/07/2024 | 128 | AMENDED COMPLAINT *Fifth Amended Complaint* against Ashley M Gjovik. Filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 11/7/2024) (Entered: 11/07/2024) |
| 11/12/2024 | 129 | **Minute Entry for pre-settlement conference held on 11/12/2024 before Magistrate Judge Alex G. Tse. Discussion held regarding scheduling a settlement conference. (Not Reported.)**<br><br>**Plaintiff Attorney: Ashley M Gjovik.**<br>**Defendant Attorney: Melinda S. Riechert.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Date Filed: 11/12/2024) (Entered: 11/12/2024)** |
| 11/12/2024 | 130 | CLERKS NOTICE SETTING SETTLEMENT CONFERENCE. The parties are hereby notified that a Settlement Conference is set for 1/13/2025 10:00 AM before Magistrate |

| | | |
|---|---|---|
| | | Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>(shy, COURT STAFF) (Filed on 11/12/2024) (Entered: 11/12/2024) |
| 11/13/2024 | 131 | MOTION to Dismiss *for Failure to Comply with Court Order* filed by Apple Inc.. Motion to Dismiss Hearing set for 1/2/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor. Responses due by 11/27/2024. Replies due by 12/4/2024. (Attachments: # 1 Proposed Order)(Riechert, Melinda) (Filed on 11/13/2024) (Entered: 11/13/2024) |
| 11/13/2024 | 132 | MOTION to Shorten Time *Re: 131 Apple's Motion to Dismiss Plaintiff's Fifth Amended Complaint Pursuant to FRCP 41(B)* filed by Apple Inc.. (Attachments: # 1 Declaration, # 2 Proposed Order)(Riechert, Melinda) (Filed on 11/13/2024) (Entered: 11/13/2024) |
| 11/13/2024 | 133 | **ORDER. Plaintiff shall file a response to 132 Defendant's motion for shortened time by 5:00 p.m., November 15, 2024. Signed by Judge Edward M. Chen on 11/13/2024. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 11/13/2024)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br><br>**(Entered: 11/13/2024)** |
| 11/15/2024 | 134 | OPPOSITION/RESPONSE (re 131 MOTION to Dismiss *for Failure to Comply with Court Order*, 132 MOTION to Shorten Time *Re: 131 Apple's Motion to Dismiss Plaintiff's Fifth Amended Complaint Pursuant to FRCP 41(B) ) Response to both the MTD and Motion to Shorten Time* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 11/15/2024) (Entered: 11/15/2024) |
| 11/15/2024 | 135 | **ORDER. Previously, the Court ordered Plaintiff to respond to 132 Defendant's motion to shorten time on an expedited basis. The Court did not order Plaintiff to respond to Defendant's underlying 131 motion to dismiss on an expedited basis. Plaintiff chose to file an opposition that essentially addressed both the motion to shorten time and the motion to dismiss. If Defendant wishes to file a reply in support of its motion to dismiss, it shall do so by noon, 11/19/2024. Signed by Judge Edward M. Chen on 11/15/2024. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 11/15/2024)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br><br>**(Entered: 11/15/2024)** |
| 11/19/2024 | 136 | REPLY (re 131 MOTION to Dismiss *for Failure to Comply with Court Order* ) filed byApple Inc.. (Juvinall, Kate) (Filed on 11/19/2024) (Entered: 11/19/2024) |
| 11/19/2024 | 137 | **ORDER by Judge Edward M. Chen denying 131 Defendant's Motion to Dismiss; and finding as moot 132 Defendant's Motion to Shorten Time. (emclc2, COURT STAFF) (Filed on 11/19/2024)** |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 11/19/2024)** |
| 11/20/2024 | 138 | AMENDED COMPLAINT *Abbreviated 5-AC per Dkt. 137* against Ashley M Gjovik. Filed by Ashley M Gjovik. (Attachments: # 1 Errata Diff between 5AC at Dkt. 138 and at Dkt.128)(Gjovik, Ashley) (Filed on 11/20/2024) (Entered: 11/20/2024) |
| 11/20/2024 | 139 | First MOTION for Leave to File *a Motion Requesting Reconsideration of the Order at Dkt. 137* filed by Ashley M Gjovik. (Attachments: # 1 Exhibit Proposed Motion to Reconsider)(Gjovik, Ashley) (Filed on 11/20/2024) (Entered: 11/20/2024) |
| 11/20/2024 | 140 | **ORDER by Judge Edward M. Chen denying 139 Plaintiff's Motion for Leave to File a Motion for Reconsideration. (emclc2, COURT STAFF) (Filed on 11/20/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 11/20/2024)** |
| 11/20/2024 | 141 | NOTICE by Ashley M Gjovik re 138 Amended Complaint *Notice of Plaintiff's Intent to File a Revised 5AC by November 26* (Gjovik, Ashley) (Filed on 11/20/2024) (Entered: 11/20/2024) |
| 11/26/2024 | 142 | AMENDED COMPLAINT *5AC* against Apple Inc.. Filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 11/26/2024) (Entered: 11/27/2024) |
| 12/02/2024 | 143 | **CLERK'S NOTICE VACATING HEARING.**<br><br>**The Court HEREBY VACATES 117 Motion to Stay set for 12/19/2024.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (vla, COURT STAFF) (Filed on 12/2/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 12/02/2024)** |
| 12/04/2024 | 144 | **ORDER by Judge Edward M. Chen denying 117 Plaintiff's Motion to Stay. (emclc2, COURT STAFF) (Filed on 12/4/2024)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 12/04/2024)** |
| 01/07/2025 | 145 | MOTION to Dismiss *Portions of Plaintiff's Fifth Amended Complaint* ; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF filed by Apple Inc.. Motion to Dismiss Hearing set for 2/13/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor. Responses due by 1/21/2025. Replies due by 1/28/2025. (Attachments: # 1 Proposed Order)(Riechert, Melinda) (Filed on 1/7/2025) Modified on 1/27/2025 (slh, COURT STAFF). (Entered: 01/07/2025) |
| 01/07/2025 | 146 | Request for Judicial Notice in Support re 145 MOTION to Dismiss *Portions of Plaintiff's Fifth Amended Complaint* filed by Apple Inc.. (Attachments: # 1 Exhibits 1-6, # 2 Proposed Order)(Related document(s) 145 ) (Riechert, Melinda) (Filed on 1/7/2025) Modified on 1/27/2025 (slh, COURT STAFF). (Entered: 01/07/2025) |
| 01/09/2025 | 147 | CLERKS NOTICE RESCHEDULING SETTLEMENT CONFERENCE.<br><br>The parties are hereby notified that the Settlement Conference is rescheduled to 1/13/2025 at 2:00 PM (PST) before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting. |

| | | |
|---|---|---|
| | | **Zoom Meeting Access:** : Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 1/9/2025) (Entered: 01/09/2025) |
| 01/13/2025 | 148 | **Minute Entry for proceedings held before Magistrate Judge Alex G. Tse: Settlement Conference held on 1/13/2025. Case did not settle. (Not Reported.)**<br><br>**Pro Se Plaintiff: Ashley M Gjovik.**<br>**Defendant Attorneys: Melinda S. Riechert, Kathryn G. Mantoan, and Jessica Perry.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Date Filed: 1/13/2025) (Entered: 01/13/2025)** |
| 01/21/2025 | 149 | OPPOSITION/RESPONSE (re 145 MOTION to Dismiss *Portions of Plaintiff's Fifth Amended Complaint* ) filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 1/21/2025) (Entered: 01/22/2025) |
| 01/22/2025 | 150 | OPPOSITION/RESPONSE (re 145 MOTION to Dismiss *Portions of Plaintiff's Fifth Amended Complaint* ) *Final Version - Please Use this Version - Sorry!* filed by Ashley M Gjovik. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 1/22/2025) (Entered: 01/22/2025) |
| 01/22/2025 | 151 | NOTICE by Ashley M Gjovik *Notice of Pendency: US NLRB Hearing Scheduled for Unlawful Threats, Suspension, and Termination (Case # 32-CA-282142 & 32-CA-283161); US NLRB Hearing Cancelled per Settlement Conversations (Case # 32-CA-284428); BAAQMD Notice of Violations for Illegal Air Emissions at 3250 Scott Blvd, Santa Clara, CA.* (Gjovik, Ashley) (Filed on 1/22/2025) (Entered: 01/22/2025) |
| 01/28/2025 | 152 | OPPOSITION/RESPONSE re 145 MOTION to Dismiss *Portions of Plaintiff's Fifth Amended Complaint Defendant Apple Inc.s Reply in Support of* filed by Apple Inc.. (Riechert, Melinda) (Filed on 1/28/2025) Modified on 1/29/2025 (kam2, COURT STAFF). Modified on 1/29/2025 (kam2, COURT STAFF). (Entered: 01/28/2025) |
| 01/29/2025 | 153 | **CLERK'S NOTICE RESCHEDULING FURTHER CASE MANAGEMENT CONFERENCE AND MOTION HEARING.**<br><br>**Motion Hearing as to 145 MOTION to Dismiss *Portions of Plaintiff's Fifth Amended Complaint* reset from 2/13/2025 to 2/21/2025, at 9:00 AM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen.**<br><br>**Joint Case Management Statement due by 2/11/2025.**<br><br>**Further Case Management Conference reset from 2/13/2025 to 2/21/2025, at 9:00 AM in San Francisco, Courtroom 05, 17th Floor.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 1/29/2025)** |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 01/29/2025)** |
| 01/31/2025 | 154 | Request for Judicial Notice re 150 Opposition/Response to Motion, *In support of P's Opp to D's MTD* filed byAshley M Gjovik. (Attachments: # 1 Supplement Cal Labor Code Tolling, # 2 Supplement Toxic Tort Tolling)(Related document(s) 150 ) (Gjovik, Ashley) (Filed on 1/31/2025) (Entered: 01/31/2025) |
| 01/31/2025 | 155 | First MOTION to Amend/Correct 142 Amended Complaint filed by Ashley M Gjovik. Motion Hearing set for 2/27/2025 09:00 AM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 2/14/2025. Replies due by 2/21/2025. (Attachments: # 1 Supplement Memo, # 2 Supplement Judicial Notice, # 3 Proposed Order)(Gjovik, Ashley) (Filed on 1/31/2025) (Entered: 01/31/2025) |
| 01/31/2025 | 156 | First MOTION to Disqualify Counsel *Orrick, Herrington & Sutcliffe* filed by Ashley M Gjovik. Motion Hearing set for 2/27/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 2/14/2025. Replies due by 2/21/2025. (Attachments: # 1 Supplement Memo, # 2 Proposed Order)(Gjovik, Ashley) (Filed on 1/31/2025) (Entered: 01/31/2025) |
| 01/31/2025 | 157 | **CLERK'S NOTICE RESCHEDULING MOTIONS HEARING FOR FAILURE TO COMPLY WITH CIVIL LOCAL RULE 7-2(a).**<br><br>**Motions Hearing as to 155 First MOTION to Amend/Correct 142 Amended Complaint and 156 First MOTION to Disqualify Counsel *Orrick, Herrington & Sutcliffe* reset from 2/27/2025 to 3/13/2025, at 1:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen.**<br><br>**ALL PARTIES PARTICIPATING IN THE HEARING ARE REQUIRED TO ARRIVE IN COURTROOM 5, 17TH FLOOR NO LATER THAN 1:00 PM TO CHECK-IN WITH THE COURTROOM DEPUTY.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 1/31/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 01/31/2025)** |
| 01/31/2025 | 158 | ADMINISTRATIVE MOTION (First) and Proposed Order to Stay Defendant's Deadline to Respond to Plaintiff's Motion to Amend & Supplement Complaint re 155 First MOTION to Amend/Correct 142 Amended Complaint filed by Apple Inc. Responses due by 2/4/2025. (Attachments: # 1 Declaration)(Juvinall, Kate) (Filed on 1/31/2025) Modified on 2/3/2025 (kam2, COURT STAFF). (Entered: 01/31/2025) |
| 02/03/2025 | 159 | First ADMINISTRATIVE MOTION Stay Pending Motion to Dismiss re: Dkt Nos. 156 150 158 155 142 155 142 filed by Ashley M Gjovik. Responses due by 2/7/2025. (Attachments: # 1 Declaration)(Gjovik, Ashley) (Filed on 2/3/2025) Modified on 2/4/2025 (kam2, COURT STAFF). (Entered: 02/03/2025) |
| 02/05/2025 | 160 | **ORDER by Judge Edward M. Chen granting 158 Defendant's Administrative Motion to Stay; and denying 159 Plaintiff's Administrative Motion to Stay. (emclc2, COURT STAFF) (Filed on 2/5/2025)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 02/05/2025)** |

| | | |
|---|---|---|
| 02/07/2025 | 161 | REPLY re 145 154 MOTION to Dismiss *Portions of Plaintiff's Fifth Amended Complaint* filed by Apple Inc.. (Riechert, Melinda) (Filed on 2/7/2025) Modified on 2/7/2025 (kam2, COURT STAFF). (Entered: 02/07/2025) |
| 02/11/2025 | 162 | First Discovery Letter Brief*Request for Discovery Dispute Conference* filed by Ashley M Gjovik. (Attachments: # 1 Proposed Order Req. for Disc. Conf.)(Gjovik, Ashley) (Filed on 2/11/2025) (Entered: 02/11/2025) |
| 02/11/2025 | 163 | Second Discovery Letter Brief*Motion to Compel Production & Request for Clarification* filed by Ashley M Gjovik. (Attachments: # 1 Proposed Order Motion to Compel Prod.)(Gjovik, Ashley) (Filed on 2/11/2025) (Entered: 02/11/2025) |
| 02/11/2025 | 164 | Third Discovery Letter Brief*Motion to Compel Disclosures* filed by Ashley M Gjovik. (Attachments: # 1 Proposed Order Motion to Compel Disclosures)(Gjovik, Ashley) (Filed on 2/11/2025) (Entered: 02/11/2025) |
| 02/11/2025 | 165 | Fourth Discovery Letter Brief*Re: Disputes about Attorney-Client Privilege Claims, Confidentiality & Protective Orders, & Basic Discovery Planning & Communication* filed by Ashley M Gjovik. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 2/11/2025) (Entered: 02/11/2025) |
| 02/11/2025 | 166 | JOINT CASE MANAGEMENT STATEMENT filed by Apple Inc.. (Riechert, Melinda) (Filed on 2/11/2025) (Entered: 02/11/2025) |
| 02/14/2025 | 167 | OPPOSITION/RESPONSE re 156 First MOTION to Disqualify Counsel *Orrick, Herrington & Sutcliffe* filed by Apple Inc.. (Attachments: # 1 Perry Declaration in Support of Opposition to Motion to Disqualify, # 2 Exhibit A to Perry Declaration, # 3 Exhibit B to Perry Declaration, # 4 Exhibit C to Perry Declaration, # 5 Exhibit D to Perry Declaration)(Riechert, Melinda) (Filed on 2/14/2025) Modified on 2/18/2025 (kam2, COURT STAFF). Modified on 2/18/2025 (kam2, COURT STAFF). (Entered: 02/14/2025) |
| 02/14/2025 | 168 | RESPONSE *re: 162 First Discovery Letter Brief Request for Discovery Dispute Conference, 163 Second Discovery Letter Brief Motion to Compel Production & Request for Clarification, 164 Third Discovery Letter Brief Motion to Compel Disclosures, 165 Fourth Discovery Letter Brief Re: Disputes about Attorney-Client Privilege Claims, Confidentiality & Protective Orders, & Basic Discovery Planning & Communication* by Apple Inc. (Riechert, Melinda) (Filed on 2/14/2025) Modified on 2/18/2025 (kam2, COURT STAFF). (Entered: 02/14/2025) |
| 02/19/2025 | 169 | NOTICE of Withdrawal filed by Kate Elsa Juvinall, no longer appearing on behalf of Apple Inc. in this case (Juvinall, Kate) (Filed on 2/19/2025) (Entered: 02/19/2025) |
| 02/20/2025 | 170 | **ORDER TERMINATING PLAINTIFF'S UNILATERAL DISCOVERY LETTERS RE: re 165 Fourth Discovery Letter Brief*Re: Disputes about Attorney-Client Privilege Claims, Confidentiality & Protective Orders, & Basic Discovery Planning & Communication* filed by Ashley M Gjovik, 164 Third Discovery Letter Brief*Motion to Compel Disclosures* filed by Ashley M Gjovik, 162 First Discovery Letter Brief*Request for Discovery Dispute Conference* filed by Ashley M Gjovik, 163 Second Discovery Letter Brief*Motion to Compel Production & Request for Clarification* filed by Ashley M Gjovik. Signed by Magistrate Judge Kandis A. Westmore on 2/19/2025. (klh, COURT STAFF) (Filed on 2/20/2025)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 02/20/2025)** |
| 02/20/2025 | 171 | First Discovery Letter Brief*MOTION FOR RECONSIDERATION* filed by Ashley M Gjovik. (Attachments: # 1 Exhibit Exhibits: July 16 2024 Transcripts; NLRB Charges 01- |

| | | |
|---|---|---|
| | | CA-332897 etc; Feb 18 2025 Proof of Service of Chambers Copies)(Gjovik, Ashley) (Filed on 2/20/2025) (Entered: 02/20/2025) |
| 02/21/2025 | 172 | REPLY re: 156 First MOTION to Disqualify Counsel *Orrick, Herrington & Sutcliffe* filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 2/21/2025) Modified on 2/24/2025 (kam2, COURT STAFF). (Entered: 02/21/2025) |
| 02/21/2025 | 173 | **Minute Entry for proceedings held before Judge Edward M Chen: Motion Hearing held on 2/21/2025 re 145 MOTION to Dismiss *Portions of Plaintiff's Fifth Amended Complaint*** <br><br> **Total Time in Court: 36 Minutes. Court Reporter: Beth Krupa. (vla, COURT STAFF) (Date Filed: 2/21/2025) (Entered: 02/21/2025)** |
| 02/24/2025 | 174 | Declaration of Ashley Marie Gjovik in Support of 172 Reply to Opposition/Response, 156 First MOTION to Disqualify Counsel *Orrick, Herrington & Sutcliffe with Exhibits A-I* filed byAshley M Gjovik. (Related document(s) 172 , 156 ) (Gjovik, Ashley) (Filed on 2/24/2025) (Entered: 02/24/2025) |
| 02/24/2025 | 175 | **ORDER by Judge Edward M. Chen denying 156 Plaintiff's Motion to Disqualify Counsel. (emclc2, COURT STAFF) (Filed on 2/24/2025)** <br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> **(Entered: 02/24/2025)** |
| 02/26/2025 | 176 | Declaration of Cher S. Scarlett filed by Non Party (kam2, COURT STAFF) (Filed on 2/26/2025) (Entered: 02/27/2025) |
| 02/27/2025 | 177 | NOTICE re: 145 *Notice of Intent To File Motion To Strike Dkt 176* (Gjovik, Ashley) by Ashley M Gjovik (Filed on 2/27/2025) Modified on 2/27/2025 (kam2, COURT STAFF). (Entered: 02/27/2025) |
| 02/27/2025 | 178 | OPPOSITION/RESPONSE re: 171 First Discovery Letter Brief *Motion for Reconsideration* filed by Apple Inc. (Riechert, Melinda) (Filed on 2/27/2025) Modified on 2/27/2025 (kam2, COURT STAFF). (Entered: 02/27/2025) |
| 02/27/2025 | 179 | **ORDER by Judge Edward M. Chen granting in part and denying in part 145 Defendant's Motion to Dismiss; and denying 155 Plaintiff's Motion to Amend. (emclc2, COURT STAFF) (Filed on 2/27/2025)** <br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> **(Entered: 02/27/2025)** |
| 02/28/2025 | 180 | Discovery Letter Brief*Objections to Opposition at Dkt. No 178* filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 2/28/2025) Modified on 2/28/2025 (kam2, COURT STAFF). (Entered: 02/28/2025) |
| 03/11/2025 | 181 | **Order. Signed 3/11/2025 by Magistrate Judge Kandis A. Westmore denying 171 Motion for Leave to File a Motion for Reconsideration. (klh, COURT STAFF) (Filed on 3/11/2025)** <br> Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) <br> Erroneously filed as a First Discovery Letter Brief **(Entered: 03/11/2025)** |
| 03/11/2025 | 182 | **ORDER by Judge Kandis A. Westmore terminating 180 Discovery Letter Brief in light of 181 Order denying Motion for Leave to File a Motion for Reconsideration. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (kawlc1, COURT STAFF) (Filed on 3/11/2025)** |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 03/11/2025)** |
| 03/13/2025 | 183 | ANSWER to Amended Complaint *DEFENDANT APPLE INC.'S ANSWER TO PLAINTIFF'S FIFTH AMENDED COMPLAINT* by Apple Inc.. (Riechert, Melinda) (Filed on 3/13/2025) (Entered: 03/13/2025) |
| 03/18/2025 | 184 | First MOTION for Certificate of Appealability *of certain dismissed claims under FRCP Rule 54(B)* filed by Ashley M Gjovik. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 3/18/2025) (Entered: 03/18/2025) |
| 03/20/2025 | 185 | DEFENDANT APPLE INC.S OPPOSITION TO PLAINTIFFS ADMINISTRATIVE MOTION FOR RULE 54(B) CERTIFICATION OPPOSITION/RESPONSE (re 184 First MOTION for Certificate of Applicability *of certain dismissed claims under FRCP Rule 54(B)* ) filed by Apple Inc.. (Riechert, Melinda) (Filed on 3/20/2025) Modified on 3/20/2025 (kmg, COURT STAFF). (Entered: 03/20/2025) |
| 03/21/2025 | 186 | TRANSCRIPT ORDER for proceedings held on 02/21/2025 before Judge Edward M Chen by Ashley M Gjovik, for Court Reporter Beth Krupa. (Gjovik, Ashley) (Filed on 3/21/2025) (Entered: 03/21/2025) |
| 03/21/2025 | 187 | REPLY (re 184 First MOTION for Certificate of Appealability *of certain dismissed claims under FRCP Rule 54(B)* ) *Reply with Objections to Defendant's Opposition Statement* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 3/21/2025) (Entered: 03/21/2025) |
| 03/23/2025 | 188 | **ORDER by Judge Edward M. Chen denying 184 Plaintiff's Motion for Rule 54(b) Certification without prejudice. Plaintiff improperly framed the motion as an administrative motion. A Rule 54(b) motion is not an administrative matter but rather a substantive motion, and therefore should be treated as a regularly noticed motion as provided for in Civil Local Rule 7-2. Plaintiff may renotice her motion if she so chooses in compliance with the Civil Local Rules. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 3/23/2025)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 03/23/2025)** |
| 03/23/2025 | 189 | First MOTION for Entry of Judgment under Rule 54(b) filed by Ashley M Gjovik. Motion Hearing set for 5/8/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 4/7/2025. Replies due by 4/14/2025. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 3/23/2025) (Entered: 03/23/2025) |
| 03/25/2025 | 190 | PLAINTIFF'S PROTECTIVE NOTICE OF APPEAL - NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Ashley M Gjovik. Appeal of Order on Motion to Dismiss, 179 , First MOTION for Entry of Judgment under Rule 54(b) 189 (Appeal fee of $605 receipt number ACANDC-20493214 paid.) (Gjovik, Ashley) (Filed on 3/25/2025) Modified on 3/26/2025 (kmg, COURT STAFF). (Entered: 03/25/2025) |
| 03/26/2025 | 191 | **CLERK'S NOTICE RESCHEDULING MOTION HEARING.**<br><br>**Motion Hearing as to 189 First MOTION for Entry of Judgment under Rule 54(b) reset from 5/8/25 to 6/12/2025, at 1:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen.**<br><br>**COUNSEL IS REQUIRED TO ARRIVE IN COURTROOM 5, 17TH FLOOR NO LATER THAN 1:10 PM TO CHECK-IN WITH THE COURTROOM DEPUTY.** |

| | | |
|---|---|---|
| | | ***(This is a text-only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 3/26/2025)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 03/26/2025)** |
| 03/27/2025 | 192 | First MOTION to Strike 183 Answer to Amended Complaint filed by Ashley M Gjovik. Motion Hearing set for 6/12/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 4/10/2025. Replies due by 4/17/2025. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 3/27/2025) (Entered: 03/27/2025) |
| 03/27/2025 | 193 | First MOTION for More Definite Statement *re: Defendant's Answer* filed by Ashley M Gjovik. Motion Hearing set for 6/12/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 4/10/2025. Replies due by 4/17/2025. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 3/27/2025) (Entered: 03/27/2025) |
| 03/27/2025 | 196 | USCA Case Number 25-2028 United States Court of Appeals for 124 USCA Order. (kmg, COURT STAFF) (Filed on 3/27/2025) (Entered: 04/02/2025) |
| 03/28/2025 | 194 | Request for Judicial Notice re 192 First MOTION to Strike 183 Answer to Amended Complaint , 193 First MOTION for More Definite Statement *re: Defendant's Answer ; NOTICE OF NLRB SETTLEMENT AGREEMENT IN CASE NO. 32-CA-284428* filed byAshley M Gjovik. (Related document(s) 192 , 193 ) (Gjovik, Ashley) (Filed on 3/28/2025) (Entered: 03/28/2025) |
| 03/28/2025 | 195 | Transcript of Proceedings held on 2/21/2025, before Judge Edward M. Chen. Court Reporter/Transcriber Beth A. Krupa, RMR, CRR, Email beth_krupa@scd.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 186 Transcript Order ) Redaction Request due 4/18/2025. Redacted Transcript Deadline set for 4/28/2025. Release of Transcript Restriction set for 6/26/2025. (Related documents(s) 186 ) (Krupa, Beth) (Filed on 3/28/2025) (Entered: 03/28/2025) |

| | | |
|---|---|---|
| 04/03/2025 | 197 | **CLERK'S NOTICE RESCHEDULING TIME OF MOTION HEARING.**<br><br>**Motions Hearing as to 189 First MOTION for Entry of Judgment under Rule 54(b); 192 First MOTION to Strike 183 Answer to Amended Complaint and 193 First MOTION for More Definite Statement *re: Defendant's Answer* reset from 6/12/2025, at 1:30 PM to 6/12/2025, at 10:30 AM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen.**<br><br>**ALL COUNSEL PARTICIPATING IN THE HEARING ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 10:15 AM TO CHECK-IN WITH THE COURTROOM DEPUTY.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 4/3/2025)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 04/03/2025)** |
| 04/07/2025 | 198 | DEFENDANT APPLE INC.S OPPOSITION TO PLAINTIFFS MOTION REQUESTING CERTIFICATION OF APPEALABILITY UNDER FED. R. CIV. P. 54(B)-OPPOSITION/RESPONSE (re 189 First MOTION for Entry of Judgment under Rule 54(b) ) filed by Apple Inc.. (Riechert, Melinda) (Filed on 4/7/2025) Modified on 4/8/2025 (kmg, COURT STAFF). (Entered: 04/07/2025) |
| 04/10/2025 | 199 | OPPOSITION/RESPONSE (re 192 First MOTION to Strike 183 Answer to Amended Complaint ) filed byApple Inc.. (Riechert, Melinda) (Filed on 4/10/2025) (Entered: 04/10/2025) |
| 04/10/2025 | 200 | OPPOSITION/RESPONSE (re 193 First MOTION for More Definite Statement *re: Defendant's Answer* ) filed byApple Inc.. (Riechert, Melinda) (Filed on 4/10/2025) (Entered: 04/10/2025) |
| 04/10/2025 | 201 | OBJECTIONS to re 194 Request for Judicial Notice in Support of Plaintiff's Motion to Strike and Motion for a more Definite Statement. by Apple Inc.. (Riechert, Melinda) (Filed on 4/10/2025) Modified on 4/11/2025 (kmg, COURT STAFF). (Entered: 04/10/2025) |
| 04/14/2025 | 202 | REPLY (re 189 First MOTION for Entry of Judgment under Rule 54(b) ) filed byAshley M Gjovik. (Attachments: # 1 Exhibit Appellate Docket)(Gjovik, Ashley) (Filed on 4/14/2025) (Entered: 04/14/2025) |
| 04/15/2025 | 203 | NOTICE Of Pendency by Ashley M Gjovik: Final National Trilateral Settlement Agreement; & Defendant's Compliance Requirements in Plaintiff's NLRB Case No. 32-CA-284428 (confidentiality rules, surveillance, employment contracts, and work policies) (Gjovik, Ashley) (Filed on 4/15/2025) (Entered: 04/15/2025) |
| 04/15/2025 | 204 | **ORDER by Judge Edward M. Chen denying 189 Plaintiff's Motion for Entry of Partial Final Judgment. (emclc2, COURT STAFF) (Filed on 4/15/2025)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 04/15/2025)** |
| 04/17/2025 | 205 | REPLY in Support of Motion (re 193 First MOTION for More Definite Statement *re: Defendant's Answer* ) filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 4/17/2025) Modified on 4/21/2025 (kmg, COURT STAFF). (Entered: 04/17/2025) |

| | | |
|---|---|---|
| 04/17/2025 | 206 | REPLY in Support of Motion to Strike (re 192 First MOTION to Strike 183 Answer to Amended Complaint ) filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 4/17/2025) Modified on 4/21/2025 (kmg, COURT STAFF). (Entered: 04/17/2025) |
| 04/17/2025 | 207 | Plaintiffs Reply in Support of her Request for Judicial Notice In Support of Plaintiffs Motion to Strike & Motion for a More Definite Statement - REPLY (re 192 First MOTION to Strike 183 Answer to Amended Complaint , 193 First MOTION for More Definite Statement *re: Defendant's Answer* ) *REPLY TO DEFENDANT'S OBJECTIONS RE: REQUEST FOR JUDICIAL NOTICE OF TRILATERAL NATIONAL CONSENT DECREE BETWEEN DEFENDANT, PLAINTIFF, AND THE US GOVERNMENT* filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 4/17/2025) Modified on 4/22/2025 (kmg, COURT STAFF). (Entered: 04/17/2025) |
| 05/07/2025 | 208 | NOTICE filing of appellate Brief & Motion for injunction pending Appeal FRCP Rule 62(d) & FRAP Rule 8 by Ashley M Gjovik re 179 Order on Motion to Dismiss, 170 Order, 175 Order on Motion to Disqualify Counsel, 204 Order on Motion for Entry of Judgment under Rule 54(b), 160 Order on Administrative Motion per Civil Local Rule 7-11, *Notice of Ninth Circuit Appellate Brief and Motion for Injunctive Relief (Stay and Protective Order)* (Attachments: # 1 Exhibit Opening Appellate Brief and Addendum, # 2 Exhibit Motion for Injunctive Relief (Stay & Protective Order), # 3 Exhibit Docket for Case No. 25-2028) (Gjovik, Ashley) (Filed on 5/7/2025) Modified on 5/9/2025 (kmg, COURT STAFF). (Entered: 05/07/2025) |
| 05/08/2025 | 209 | USCA MOTION for Injunctive Relie Case Number 25-2028 United States Court of Appeals for 113 Notice of Appeal to the Ninth Circuit filed by Ashley M Gjovik. (kmg, COURT STAFF) (Filed on 5/8/2025) (Entered: 05/09/2025) |
| 05/12/2025 | 210 | TRANSCRIPT ORDER for proceedings held on 2/21/2025 before Judge Edward M Chen by Apple Inc., for Court Reporter Beth Krupa. (Riechert, Melinda) (Filed on 5/12/2025) (Entered: 05/12/2025) |
| 05/12/2025 | 212 | MANDATE of USCA Case No. 24-6058 as to 113 Notice of Appeal to the Ninth Circuit filed by Ashley M Gjovik, 190 Notice of Appeal to the Ninth Circuit, filed by Ashley M Gjovik. (kmg, COURT STAFF) (Filed on 5/12/2025) (Entered: 05/13/2025) |
| 05/13/2025 | 211 | First MOTION to Quash *Defendant's Request for Confidentiality Protective Order; & Request to Stay Discovery Pending Appeal* filed by Ashley M Gjovik. Motion Hearing set for 6/26/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 5/27/2025. Replies due by 6/3/2025. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 5/13/2025) (Entered: 05/13/2025) |
| 05/14/2025 | 213 | **ORDER by Judge Edward M. Chen denying 211 Plaintiff's Motion to Quash and Stay. (emclc2, COURT STAFF) (Filed on 5/14/2025)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 05/14/2025)** |
| 05/14/2025 | 214 | NOTICE of Motion to Stay District Court Order at Dkt. 213 Filed to USCA at Dkt. 22 by Ashley M Gjovik re 209 USCA Case Number, 213 Order on Motion to Quash, (Gjovik, Ashley) (Filed on 5/14/2025) Modified on 5/19/2025 (kmg, COURT STAFF). (Entered: 05/14/2025) |
| 05/19/2025 | 215 | **ORDER by Judge Edward M. Chen granting in part and denying in part 192 Plaintiff's Motion to Strike; and denying 193 Plaintiff's Motion for More Definite Statement. (emclc2, COURT STAFF) (Filed on 5/19/2025)** |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) **(Entered: 05/19/2025)** |
| 05/19/2025 | 216 | USCA- Response and Exhibit Case No. 25-2028 United States Court of Appeals for the Ninth Circuit for 212 USCA Mandate. (Attachments: # 1 Exhibit) (kmg, COURT STAFF) (Filed on 5/19/2025) (Entered: 05/21/2025) |
| 05/20/2025 | 217 | USCA Rely in Support Case No. 25-2028 United States Court of Appeals for 209 .. (kmg, COURT STAFF) (Filed on 5/20/2025) (Entered: 05/21/2025) |
| 06/02/2025 | 218 | AMENDED ANSWER to *Fifth* 142 Amended Complaint by Apple Inc.. (Riechert, Melinda) (Filed on 6/2/2025) (Entered: 06/02/2025) |
| 06/12/2025 | 219 | Discovery Letter Brief *Request for Telephonic Conference for Entry of Northern District's Model Stipulated Protective Order and for the Court to Fashion Alternative Procedures to Resolve Any Further Discovery Disputes* filed by Apple Inc.. (Attachments: # 1 Declaration)(Riechert, Melinda) (Filed on 6/12/2025) (Entered: 06/12/2025) |
| 06/12/2025 | 220 | OBJECTIONS to re 219 Discovery Letter Brief *Request for Telephonic Conference for Entry of Northern District's Model Stipulated Protective Order and for the Court to Fashion Alternative Procedures to Resolve Any Further Discovery Disputes OPPOSITION TO UNILATERAL DISCOVERY BRIEF; OPPOSITION TO GAG ORDER; OBJECTIONS TO DEF'S REQUESTS; MOTION TO STRIKE BRIEF; NONOPPOSITION TO COURT OVERSIGHT OF MEET AND CONFER.* by Ashley M Gjovik. (Attachments: # 1 Exhibit Exhibit A - Emails, # 2 Exhibit Exhibit B - NLRB Charge 01-CA-365726, # 3 Exhibit Exhibit C - NLRB Complaint Case No 32-CA-282142, # 4 Exhibit Exhibit D - NLRB Settlement Case 32-CA-284428, # 5 Exhibit Exhibit E - CUIAB 2022 ALJ Order Case No. 7253819, # 6 Exhibit Exhibit F - 2021 Cease and Desist, # 7 Exhibit Exhibit G - Motion for Reconsideration 25-2028, # 8 Exhibit Exhibit H - Gjovik v Apple 2025 03 25 Meet & Confer Recording, # 9 Exhibit Exhibit I - Gjovik v Apple 2025-05-02 Meet & Confer Recording, # 10 Exhibit Exhibit J - Email Correspondance 20250513, # 11 Exhibit Exhibit K - Order Denying Motion to Quash and Motion to Quash, # 12 Exhibit Exhibit L - Gjovik v Apple - Response to Interrogatories)(Gjovik, Ashley) (Filed on 6/12/2025) (Entered: 06/12/2025) |
| 06/16/2025 | 221 | Plaintiff's Second MOTION to Strike 218 Amended Answer to Complaint filed by Ashley M Gjovik. Motion Hearing set for 7/31/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 7/1/2025. Replies due by 7/8/2025. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 6/16/2025) Modified on 6/17/2025 (kmg, COURT STAFF). (Entered: 06/16/2025) |
| 06/17/2025 | 222 | NOTICE by Ashley M Gjovik *USCA 25-2028 Motion for Reconsideration under Rule 27-10 (Dkt. 33.1) (re denial of Business and Professions Code Section 17200 injunctive relief)* (Gjovik, Ashley) (Filed on 6/17/2025) (Entered: 06/17/2025) |
| 06/26/2025 | 223 | CLERK'S NOTICE SETTING ZOOM TELEPHONIC CONFERENCE CALL RE: DISCOVERY:<br><br>Zoom Telephonic Conference call set for 7/2/2025 at 03:00 PM in Oakland before Magistrate Judge Kandis A. Westmore. Please note that you must be logged into an ECF account of counsel of record in order to view this document.<br><br>(ccf, COURT STAFF) (Filed on 6/26/2025) (Entered: 06/26/2025) |
| 06/30/2025 | 224 | OPPOSITION/RESPONSE (re 221 MOTION to Strike 218 Amended Answer to Complaint ) filed byApple Inc.. (Riechert, Melinda) (Filed on 6/30/2025) (Entered: 06/30/2025) |

| | | |
|---|---|---|
| 07/01/2025 | 225 | NOTICE by Ashley M Gjovik *US EPA RCRA ENFORCEMENT ACTION AGAINST APPLE INC RE: 3250 SCOTT BLVD* (Gjovik, Ashley) (Filed on 7/1/2025) (Entered: 07/01/2025) |
| 07/01/2025 | 226 | NOTICE by Ashley M Gjovik *SIXTY DAY NOTICE OF FEDERAL ENVIRONMENTAL CITIZEN SUIT (RCRA, CAA, CWA, TSCA, EPCRA) & PUBLIC NUISANCE* (Gjovik, Ashley) (Filed on 7/1/2025) (Entered: 07/01/2025) |
| 07/02/2025 | 227 | REPLY (re 221 MOTION to Strike 218 Amended Answer to Complaint ) filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 7/2/2025) (Entered: 07/02/2025) |
| 07/02/2025 | 228 | ADMINISTRATIVE MOTION Request for Case Schedule including Summary Judgement Briefing filed by Ashley M Gjovik. Responses due by 7/7/2025. (Gjovik, Ashley) (Filed on 7/2/2025) (Entered: 07/02/2025) |
| 07/02/2025 | 229 | Joint MOTION for Protective Order filed by Apple Inc.. Responses due by 7/16/2025. Replies due by 7/23/2025. (Riechert, Melinda) (Filed on 7/2/2025) (Entered: 07/02/2025) |
| 07/02/2025 | 230 | **Minute Entry for Telephonic Conference Call Re: Discovery held on 7/2/2025 before Magistrate Judge Kandis A. Westmore:**<br><br>**Total Time in Court: 1 hour 4 minutes.**<br>**Court Reporter: Recorded via Zoom.**<br><br>**(ccf, COURT STAFF) (Date Filed: 7/2/2025) (Entered: 07/03/2025)** |
| 07/03/2025 | 231 | AUDIO RECORDINGS ORDER (requesting docket(s): 230 ), by Apple Inc.. Court will send to Melinda Riechert at mriechert@orrick.com a link to the files requested in this order. ( Filing fee $ 34, receipt number ACANDC-20856704). (Riechert, Melinda) (Filed on 7/3/2025) Modified on 7/3/2025 to indicate email with audio link sent to requesting party. (ccf, COURT STAFF). (Entered: 07/03/2025) |
| 07/03/2025 | 232 | AUDIO RECORDINGS ORDER (requesting docket(s): 230 ), by Ashley M Gjovik. Court will send to Ashley Gjovik at ashleymgjovik@protonmail.com a link to the files requested in this order. ( Filing fee $ 34, receipt number ACANDC-20856926). (Gjovik, Ashley) (Filed on 7/3/2025) Modified on 7/3/2025 to indicate email with audio link sent to requesting party. (ccf, COURT STAFF). (Entered: 07/03/2025) |
| 07/03/2025 | 233 | **ORDER by Judge Kandis A. Westmore terminating 219 Discovery Letter Brief on the grounds that the disputes were resolved at the 230 7/2/2025 discovery telephone conference. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (kawlc1, COURT STAFF) (Filed on 7/3/2025)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 07/03/2025)** |
| 07/03/2025 | 234 | **ORDER by Judge Edward M. Chen denying 221 Plaintiff's Motion to Strike and for Protective Order; and granting in part 228 Plaintiff's Request for Scheduling Order. (emclc2, COURT STAFF) (Filed on 7/3/2025)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 07/03/2025)** |
| 07/07/2025 | 235 | **Order Granting 229 Motion for Protective Order. Signed by Magistrate Judge Kandis A. Westmore on 7/7/2025.(ccf, COURT STAFF) (Filed on 7/7/2025) (Entered: 07/07/2025)** |
| 07/07/2025 | 236 | **CLERK'S NOTICE SETTING STATUS CONFERENCE.** |

| | | |
|---|---|---|
| | | **Joint Status Report due by 7/29/2025.**<br><br>**Status Conference set for 8/5/2025, at 2:30 PM in San Francisco, - Videoconference Only before Judge Edward M Chen. This proceeding will be held via a Zoom webinar.**<br><br>**ALL COUNSEL PARTICIPATING IN THE HEARING ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 2:20 PM.**<br><br>**Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/emc**<br><br>**Civ LR 77-3(b). Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (vla, COURT STAFF) (Filed on 7/7/2025)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 07/07/2025)** |
| 07/21/2025 | 237 | NOTICE by Ashley M Gjovik *NOTICE OF PENDENCY (RULE 3-13) Related Case in the District of Massachusetts, United States Bankruptcy Court, Chapter 7 Bankruptcy, 11 U.S.C. § 701 et seq., Case No. 25-11496* (Gjovik, Ashley) (Filed on 7/21/2025) (Entered: 07/21/2025) |
| 07/29/2025 | 238 | NOTICE by Ashley M Gjovik *NOTICE OF PENDENCY (RULE 3-13) Related Case in the District of Massachusetts, United States Bankruptcy Court, Ashley Gjovik v Dept. of Education and Maximus d.b.a. Aidvantage, 11 U.S.C. § 523(a)(8), Case No. 25-01104* (Gjovik, Ashley) (Filed on 7/29/2025) (Entered: 07/29/2025) |
| 07/29/2025 | 239 | JOINT CASE MANAGEMENT STATEMENT filed by Apple Inc.. (Riechert, Melinda) (Filed on 7/29/2025) (Entered: 07/29/2025) |
| 08/05/2025 | 242 | **Minute Entry for proceedings held before Judge Edward M Chen: Status Conference held on 8/5/2025.**<br><br>**Total Time in Court: 13 Minutes. Court Reporter: Andrea Bluedorn.**<br><br>**Joint Status Report due by 10/14/2025.**<br><br>**Status Conference set for 10/21/2025, at 2:30 PM in San Francisco, - Videoconference Only before Judge Edward M Chen. This proceeding will be held via a Zoom webinar.**<br><br>**ALL PARTIES PARTICIPATING IN THE HEARING ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 2:20 PM.**<br><br>**Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/emc**<br><br>**Civ LR 77-3(d). Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of** |

| | | |
|---|---|---|
| | | **court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>**(vla, COURT STAFF) (Date Filed: 8/5/2025) (Entered: 08/18/2025)** |
| 08/12/2025 | 240 | Discovery Letter Brief*Motion to Compel Defendant Apple Inc to Produce Plaintiff's Request for Production, Set 1, No. 15, the "Gobbler Informed Consent Form" dated August 2017* filed by Ashley M Gjovik. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 8/12/2025) (Entered: 08/12/2025) |
| 08/18/2025 | 241 | OPPOSITION/RESPONSE (re 240 Discovery Letter Brief*Motion to Compel Defendant Apple Inc to Produce Plaintiff's Request for Production, Set 1, No. 15, the "Gobbler Informed Consent Form" dated August 2017* ) filed byApple Inc.. (Riechert, Melinda) (Filed on 8/18/2025) (Entered: 08/18/2025) |
| 08/21/2025 | 243 | TRANSCRIPT ORDER for proceedings held on 8/5/25 before Judge Edward M Chen by Ashley M Gjovik, for Court Reporter Andrea Bluedorn. (Gjovik, Ashley) (Filed on 8/21/2025) (Entered: 08/21/2025) |
| 08/21/2025 | 244 | TRANSCRIPT ORDER for proceedings held on 08/05/2025 before Judge Edward M Chen by Apple Inc., for Court Reporter Andrea Bluedorn. (Perry, Jessica) (Filed on 8/21/2025) (Entered: 08/21/2025) |
| 08/22/2025 | 245 | REPLY (re 240 Discovery Letter Brief*Motion to Compel Defendant Apple Inc to Produce Plaintiff's Request for Production, Set 1, No. 15, the "Gobbler Informed Consent Form" dated August 2017* ) *Request for Leave to File a Motion for Sanctions* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 8/22/2025) (Entered: 08/22/2025) |
| 08/25/2025 | 246 | Transcript of Proceedings held on 8-5-25, before Judge Edward M. Chen. Court Reporter/Transcriber Andrea Bluedorn, telephone number Phone: 715-965-2298. Email: andrea_bluedorn@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 244 Transcript Order, 243 Transcript Order ) Release of Transcript Restriction set for 11/24/2025. (Related documents(s) 244 , 243 ) (Bluedorn, Andrea) (Filed on 8/25/2025) (Entered: 08/25/2025) |
| 08/25/2025 | 247 | MOTION to Stay filed by Apple Inc.. Motion Hearing set for 10/23/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 9/8/2025. Replies due by 9/15/2025. (Attachments: # 1 Declaration Ryan Booms, # 2 Declaration Melinda Riechert, # 3 Proposed Order, # 4 Certificate/Proof of Service) (Perry, Jessica) (Filed on 8/25/2025) (Entered: 08/25/2025) |
| 08/25/2025 | 248 | MOTION to Shorten Time filed by Apple Inc.. (Attachments: # 1 Declaration Jessica Perry, # 2 Proposed Order, # 3 Certificate/Proof of Service)(Perry, Jessica) (Filed on 8/25/2025) (Entered: 08/25/2025) |
| 08/25/2025 | 249 | **ORDER. Plaintiff shall file a response to 248 Defendant's motion to shorten time by 8/27/2025. Absent further order of the Court, there shall be no reply. Signed by Judge Edward M. Chen on 8/25/2025. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 8/25/2025)** |

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 08/25/2025)** |
| 08/27/2025 | 250 | OPPOSITION/RESPONSE (re 248 MOTION to Shorten Time , 247 MOTION to Stay ) *Plaintiff's Omnibus Opposition to Defendant's Emergency Motion to Stay* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 8/27/2025) (Entered: 08/27/2025) |
| 08/28/2025 | 251 | NOTICE by Ashley M Gjovik re 250 Opposition/Response to Motion, *Plaintiff/Debtor's Motion For A Protective Order & To Compel Trustee Action* (Attachments: # 1 Declaration, # 2 Certificate/Proof of Service, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit)(Gjovik, Ashley) (Filed on 8/28/2025) (Entered: 08/28/2025) |
| 08/28/2025 | 252 | NOTICE by Ashley M Gjovik re 250 Opposition/Response to Motion, *Plaintiff/Debtors Motion For Order To Show Cause And Sanctions Against Creditor Apple Inc.* (Attachments: # 1 Declaration, # 2 Certificate/Proof of Service, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit) (Gjovik, Ashley) (Filed on 8/28/2025) (Entered: 08/28/2025) |
| 08/28/2025 | 253 | **ORDER by Judge Edward M. Chen finding as moot 248 Defendant's Motion to Shorten Time. Previously, the Court ordered Plaintiff to file a response to the motion to shorten time. In her filing, Plaintiff essentially agreed to shortened time by responding to 247 Defendant's motion to stay on the merits. The Court therefore deems the motion to shorten time moot. The Court also orders Defendant to file a reply in support of its motion to stay by 9/2/2025. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 8/28/2025)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 08/28/2025)** |
| 09/02/2025 | 254 | REPLY (re 247 MOTION to Stay ) *in Light of Bankruptcy Proceedings* filed byApple Inc.. (Perry, Jessica) (Filed on 9/2/2025) (Entered: 09/02/2025) |
| 09/04/2025 | 255 | **ORDER by Judge Edward M. Chen granting 247 Defendant's Motion to Stay. (emclc2, COURT STAFF) (Filed on 9/4/2025)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 09/04/2025)** |
| 09/08/2025 | 256 | **SUA SPONTE Judicial Referral for Purpose of Determining Relationship of Case 5:25-cv-07360 NC with 3:23-cv-04597 EMC. Signed by Judge Nathanael M. Cousins on 9/08/2025.** (lmh, COURT STAFF) (Filed on 9/8/2025) (Entered: 09/08/2025) |
| 09/08/2025 | 257 | NOTICE by Ashley M Gjovik re 256 Judicial Referral for Purpose of Determining Relationship of Cases, 226 Notice (Other) *NOTICE OF PENDENCY AND NON-OPPOSITION TO DKT 256* (Attachments: # 1 Exhibit 3250 Scott Complaint 25-cv-07360)(Gjovik, Ashley) (Filed on 9/8/2025) (Entered: 09/08/2025) |
| 09/12/2025 | 258 | CERTIFICATE OF SERVICE by Ashley M Gjovik re 256 Judicial Referral for Purpose of Determining Relationship of Cases *EPA Citizen Suit (25-cv-07360): Proof of Service of the Complaint on the Attorney General of the United States and with the US EPA Administrator per 42 U.S. Code § 6972(f ), 42 U.S. Code § 7604(c)(3), 33 U.S. Code § 1365(c)(3) [Concurrently posted to case 5:25-cv-07360 at Dkt. 10]*. (Gjovik, Ashley) (Filed on 9/12/2025) (Entered: 09/12/2025) |

| | | |
|---|---|---|
| 09/12/2025 | 259 | Statement re 256 Judicial Referral for Purpose of Determining Relationship of Cases by Apple Inc.. (Perry, Jessica) (Filed on 9/12/2025) (Entered: 09/12/2025) |
| 09/12/2025 | 260 | NOTICE by Ashley M Gjovik re 259 Statement *Plaintiff's Request for Clarification and Case Mgmt Guidance re Apple's ex parte Motion to Stay case 5:25-cv-07360, and ex parte referral of case 5:25-cv-07360 to Boston Bankruptcy case 25-11496, filed by Apple to case 3:23-cv-04597 as a "Statement" arguing the cases are "unrelated."* (Gjovik, Ashley) (Filed on 9/12/2025) (Entered: 09/12/2025) |
| 09/15/2025 | 261 | **ORDER RELATING CASE. The Court has reviewed the motion and determined that Case No. 23-cv-4597 EMC is NOT related to Case No. 25-cv-7360 NC. Signed by Judge Edward M. Chen on 9/15/2025. (ads, COURT STAFF) (Filed on 9/15/2025)**<br>---<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 09/15/2025)** |
| 10/15/2025 | 262 | **CLERK'S NOTICE RESCHEDULING STATUS CONFERENCE.**<br><br>**Joint Status Report due by 1/6/2026.**<br><br>**Status Conference reset from 10/21/2025 to 1/13/2026, at 2:30 PM in San Francisco, - Videoconference Only before Judge Edward M Chen. This proceeding will be held via a Zoom webinar.**<br><br>**ALL PARTIES PARTICIPTING IN THE HEARING ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 2:20 PM.**<br><br>**Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/emc**<br><br>**Civ LR 77-3(d). Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (vla, COURT STAFF) (Filed on 10/15/2025)**<br>---<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 10/15/2025)** |
| 11/03/2025 | 263 | Joint Status Report re: MAB 25-11496, as Ordered at Dkt. 255 by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 11/3/2025) Modified on 11/6/2025 (kmg, COURT STAFF). (Entered: 11/03/2025) |
| 11/03/2025 | 264 | **ORDER. The Court has reviewed 263 the parties' status report. Assuming that there are no objections to the bankruptcy trustee's notice of intent to abandon, then there will be no reason for the stay in this case to continue. The Court, therefore, shall leave the status conference set for 1/13/2026 on calendar. One week prior to that conference, the parties shall file a joint status report. The parties shall discuss a case management schedule for the remainder of this case, including but not limited to discovery deadlines and a schedule for summary judgment. Any discovery matters remain referred to the magistrate judge. Signed by Judge Edward M. Chen on 11/3/2025. *(This is a text-only entry generated by the court. There is no document*** |

| | | |
|---|---|---|
| | | ***associated with this entry.)* (emclc2, COURT STAFF) (Filed on 11/3/2025)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 11/03/2025)** |
| 11/14/2025 | 265 | ADMINISTRATIVE MOTION Request for an Order Lifting the Stay at Dkt. 255 per Dkt. 264 re 264 Order,,,, *(All requirements listed in the Order at Dkt. 264 are now satisfied)* filed by Ashley M Gjovik. Responses due by 11/18/2025. (Gjovik, Ashley) (Filed on 11/14/2025) (Entered: 11/14/2025) |
| 11/18/2025 | 266 | OPPOSITION/RESPONSE (re 265 ADMINISTRATIVE MOTION Request for an Order Lifting the Stay at Dkt. 255 per Dkt. 264 re 264 Order,,,, *(All requirements listed in the Order at Dkt. 264 are now satisfied)* ) *[NONOPPOSITION]* filed byApple Inc.. (Riechert, Melinda) (Filed on 11/18/2025) (Entered: 11/18/2025) |
| 11/18/2025 | 267 | **ORDER by Judge Edward M. Chen granting 265 Plaintiff's Administrative Motion to Lift Stay. Defendant has not opposed given the status of the bankruptcy proceedings. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 11/18/2025)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 11/18/2025)** |
| 11/26/2025 | 268 | MANDATE of USCA case no. 25-2028 as to 190 Notice of Appeal to the Ninth Circuit, filed by Ashley M Gjovik (kmg, COURT STAFF) (Filed on 11/26/2025) (Entered: 12/04/2025) |
| 01/06/2026 | 269 | JOINT CASE MANAGEMENT STATEMENT filed by Apple Inc.. (Riechert, Melinda) (Filed on 1/6/2026) (Entered: 01/06/2026) |
| 01/13/2026 | 273 | **Minute Entry for proceedings held before Judge Edward M Chen:**<br>**Status Conference held on 1/13/2026.**<br>**Total Time in Court: 15 Minutes. Court Reporter: Jennifer Coulthard.**<br>**(vla, COURT STAFF) (Date Filed: 1/13/2026) (Entered: 02/06/2026)** |
| 01/13/2026 | 274 | **CASE MANAGEMENT SCHEDULING ORDER:**<br>**Close of Fact Discovery 4/16/2026.**<br>**Opening Reports due by 4/16/2026.**<br>**Rebuttal Reports due by 5/7/2026.**<br>**Close of Expert Discovery due by 5/28/2026.**<br>**Final Pretrial Conference set for 9/22/2026, at 2:30 PM in San Francisco, Courtroom 05, 17th Floor.**<br>**Jury Selection set for 10/19/2026, at 8:30 AM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen.**<br>**Jury Trial set for 10/19/2026, 10/20/2026, 10/21/2026, 10/23/2026 and 10/26/2026, at 8:30 AM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen.**<br>**Signed by Judge Edward M. Chen on 1/13/2026.** |

| | | |
|---|---|---|
| | | **(Attachments: # 1 Jury Questionnaire)(vla, COURT STAFF) (Filed on 1/13/2026)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 02/06/2026)** |
| 01/14/2026 | 270 | **Order Regarding 8/12/25, 8/18/25, and 8/22/25 Discovery Letters. Signed by Magistrate Judge Kandis A. Westmore on 1/14/2026. (ccf, COURT STAFF) (Filed on 1/14/2026) (Entered: 01/14/2026)** |
| 01/28/2026 | 271 | MOTION for Relief from a non-dispositive order re 270 Order on Discovery Letter Brief, 245 Reply to Opposition/Response, *Rule 72 Objections to the Order at Dkt. 270* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 1/28/2026) Modified on 1/29/2026 (kmg, COURT STAFF). (Entered: 01/29/2026) |
| 01/30/2026 | 272 | **ORDER by Judge Edward M. Chen denying 271 Plaintiff's Motion for Relief from Magistrate Judge Order. (emclc2, COURT STAFF) (Filed on 1/30/2026)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 01/30/2026)** |
| 02/10/2026 | 275 | **Erroneous Entry--Please Ignore--See below for Corrected Filing** Discovery Letter Brief*Regarding Subpoenas for Plaintiff's Medical Records* filed by Apple Inc.. (Attachments: # 1 Exhibit A)(Riechert, Melinda) (Filed on 2/10/2026) Modified on 2/10/2026 (msr, COURT STAFF). (Entered: 02/10/2026) |
| 02/10/2026 | 276 | Discovery Letter Brief *Regarding Subpoenas for Plaintiff's Medical Records* filed by Apple Inc.. (Attachments: # 1 Exhibit A)(Riechert, Melinda) (Filed on 2/10/2026) (Entered: 02/10/2026) |
| 02/16/2026 | 277 | OPPOSITION/RESPONSE (re 276 Discovery Letter Brief *Regarding Subpoenas for Plaintiff's Medical Records* ) filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 2/16/2026) (Entered: 02/16/2026) |
| 02/17/2026 | 278 | NOTICE by Ashley M Gjovik *NOTICE OF PENDENCY: US EPA Settlement In the Matter of Apple, Inc., U.S. EPA Docket No. RCRA-09-2026-000; US NLRB Cases and Charges; Environmental Litigation re: Apple, City of Santa Clara, City of Boston; and pending Federal environmental retaliation claims* (Attachments: # 1 Exhibit Exhibit F: CERCLA Petition re: South Bay, Boston)(Gjovik, Ashley) (Filed on 2/17/2026) (Entered: 02/17/2026) |
| 02/18/2026 | 279 | OBJECTIONS to *Apple's 2/18 off-docket emails to court staff seeking sanctions against the Plaintiff for her NLRB charges against Apple and her related speech protected under the NLRA and many other laws and policy* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 2/18/2026) (Entered: 02/18/2026) |
| 02/19/2026 | 280 | Discovery Letter Brief *Re Request for Immediate Conference Regarding Breaches of Protective Order* filed by Apple Inc.. (Riechert, Melinda) (Filed on 2/19/2026) (Entered: 02/19/2026) |
| 02/19/2026 | 281 | CLERK'S NOTICE SETTING A TELEPHONIC DISCOVERY CONFERENCE.<br>Telephonic Discovery Conference set for 2/20/2026 at 02:15 PM in Oakland, - Telephonic Only before Magistrate Judge Kandis A. Westmore. Please note that you must be logged into an ECF account of counsel of record in order to view this document.<br>(ccf, COURT STAFF) (Filed on 2/19/2026) |

| | | |
|---|---|---|
| | | Copy of this document emailed to counsels of record including Pro Se Plaintiff.(NEF) (Entered: 02/19/2026) |
| 02/19/2026 | 282 | NOTICE by Ashley M Gjovik re 279 Objection, *Plaintiff is e-filing off-docket court emails regarding Apple's non-motion request for sanctions, restraining orders, and findings of contempt against the Plaintiff without any formal briefing or hearing, and with the court de facto denying the Plaintiff's request for opposition briefing and de facto overruling her objections about the improprietary of this "conference"* (Gjovik, Ashley) (Filed on 2/19/2026) Modified on 2/20/2026 to restrict access to case participants. (ccf, COURT STAFF). (Entered: 02/19/2026) |
| 02/19/2026 | 283 | NOTICE by Ashley M Gjovik re 279 Objection, *Plaintiff is efiling off-docket emails where Defendant Apple is asking the Court to make the "conference" (where it is seeking sanctions, restraining orders, and findings of contempt against a pro se whistleblower/labor organizer Plaintiff employee) private and not available to the public; and where the Court also refuses to agree to record the "conference" or agree to have a court reporter present despite repeated objections about Due Process violations* (Gjovik, Ashley) (Filed on 2/19/2026) Modified on 2/20/2026 to restrict access to case participants. (ccf, COURT STAFF). (Entered: 02/19/2026) |
| 02/19/2026 | 292 | **ORDER by Judge Kandis A. Westmore granting 280 Discovery Letter Brief *Re Request for Immediate Conference Regarding Breaches of Protective Order*. Telephonic conference set in 281 . *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (kawlc1, COURT STAFF) (Filed on 2/26/2026)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**Modified on 2/26/2026 (kawlc1, COURT STAFF). (Entered: 02/26/2026)** |
| 02/20/2026 | 284 | OPPOSITION/RESPONSE (re 280 Discovery Letter Brief *Re Request for Immediate Conference Regarding Breaches of Protective Order* ) *Plaintiff's Opposition, Objections, and Request for Cancellation and Transfer of this Matter to Judge Chen* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 2/20/2026) (Entered: 02/20/2026) |
| 02/20/2026 | 285 | MOTION to Quash *Plaintiff's Objections and Request to Quash the 2/20 "Conference" with Defendant Requesting Sanctions, Restraining Orders, and Findings of Contempt for Plaintiff's NLRB Charges and Protected Concerted Activity* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 2/20/2026) (Entered: 02/20/2026) |
| 02/20/2026 | 286 | NOTICE by Ashley M Gjovik *Notice of Pendency: Motion for Sanctions against Apple Inc filed in Ch. 7 Bankruptcy Case 25-11496 for the Disputed Creditor's Willful Violation of the Stay (Creditor No. 21011446)* (Gjovik, Ashley) (Filed on 2/20/2026) (Entered: 02/20/2026) |
| 02/20/2026 | 287 | **ORDER. 285 Plaintiff's motion to quash is denied. Any issues may be raised in the first instance with Judge Westmore. Signed by Judge Edward M. Chen on 2/20/2026. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 2/20/2026)**<br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 02/20/2026)** |
| 02/20/2026 | 288 | **Minute Entry for proceedings held before Magistrate Judge Kandis A. Westmore: Telephonic Discovery Conference held on 2/20/2026 via Zoom Conference Call. Zoom Recording Time: 2:15 PM - 3:20 PM.<br>(ccf, COURT STAFF) (Date Filed: 2/20/2026) Audio file emailed to requestee on 2/23/2026 (bns, COURT STAFF). (Entered: 02/20/2026)** |

| | | |
|---|---|---|
| 02/20/2026 | 289 | AUDIO RECORDINGS ORDER (requesting docket(s): 288 ), by Ashley M Gjovik. Court will send to Ashley Gjovik at ashleymgjovik@protonmail.com a link to the files requested in this order. ( Filing fee $ 34, receipt number ACANDC-21678025). (Gjovik, Ashley) (Filed on 2/20/2026) Modified on 2/23/2026 to indicate copy of audio recording link sent to requester. (kmm2, COURT STAFF). Modified on 2/25/2026 to indicate audio recording link sent to Melinda Riechert (kmm2, COURT STAFF). (Entered: 02/20/2026) |
| 02/20/2026 | 290 | TRANSCRIPT ORDER for proceedings held on Jan 13 2026 before Judge Edward M Chen by Ashley M Gjovik, for Court Reporter Jennifer Coulthard. (Gjovik, Ashley) (Filed on 2/20/2026) (Entered: 02/20/2026) |
| 02/23/2026 | 291 | **ORDER REGARDING APPLE'S SUBPOENAS FOR PLAINTIFF'S MEDICAL RECORDS re: 276 Defendant's Discovery Letter and 277 Plaintiff's Opposition to Discovery Letter. Signed by Judge Kandis A. Westmore on 2/23/2026. (ccf, COURT STAFF) (Filed on 2/23/2026) (Entered: 02/23/2026)** |
| 02/26/2026 | 293 | *** Correction of Documents (293-5), (293-4) SEE Dkt. 298 Administrative Motion to File Under Seal filed by Apple Inc.. (Attachments: # 1 Declaration of Melinda S. Riechert, # 2 Proposed Order, # 3 Motion to Enforce Protective Order (Filed Under Seal), # 4 Ex. A to Riechert Declaration ISO Motion for Protective Order (Filed Under Seal), # 5 Ex. B to Riechert Declaration ISO Motion for Protective Order (Filed Under Seal)) (Riechert, Melinda) (Filed on 2/26/2026) Modified on 3/2/2026 (kmg, COURT STAFF). (Entered: 02/26/2026) |
| 02/26/2026 | 294 | MOTION to Enforce Protective Order filed by Apple Inc.. Motion Hearing set for 4/2/2026 01:30 PM in Oakland, - To be determined before Magistrate Judge Kandis A. Westmore. Responses due by 3/12/2026. Replies due by 3/19/2026. (Attachments: # 1 Declaration of Melinda S. Riechert, # 2 Proposed Order)(Riechert, Melinda) (Filed on 2/26/2026) (Entered: 02/26/2026) |
| 02/26/2026 | 295 | MOTION to Shorten Time *for Briefing and Hearing on Defendant's Motion to Enforce Protective Order* filed by Apple Inc.. (Attachments: # 1 Declaration of Melinda S. Riechert, # 2 Proposed Order)(Riechert, Melinda) (Filed on 2/26/2026) (Entered: 02/26/2026) |
| 02/27/2026 | 296 | Proposed Order re 295 MOTION to Shorten Time *for Briefing and Hearing on Defendant's Motion to Enforce Protective Order* by Apple Inc.. (Riechert, Melinda) (Filed on 2/27/2026) (Entered: 02/27/2026) |
| 02/27/2026 | 297 | OPPOSITION/RESPONSE (re 295 MOTION to Shorten Time *for Briefing and Hearing on Defendant's Motion to Enforce Protective Order*, 293 Administrative Motion to File Under Seal ) *Plaintiff's Omnibus OPPOSITION to Motions 293 and 295 with Exhibit Demonstrating Apple's repeated refusal to Meet and Confer (No Response Filed yet to Dkt. 294, Due 3/12/2026)* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 2/27/2026) (Entered: 02/27/2026) |
| 02/27/2026 | 298 | CORRECTION OF DOCKET # 293-5 EXHIBITS re 293 Administrative Motion to File Under Seal *Ex. B to Riechert Declaration ISO Motion for Protective Order* filed byApple Inc.. (Related document(s) 293 ) (Riechert, Melinda) (Filed on 2/27/2026) Modified on 3/2/2026 (kmg, COURT STAFF). (Entered: 02/27/2026) |
| 03/03/2026 | 299 | NOTICE by Ashley M Gjovik *PLAINTIFF'S NOTICE OF PENDENCY: FEDERAL COURT HEARING SCHEDULED FOR APRIL 2 2026 AT THE BANKRUPTCY COURT IN THE DISTRICT OF MASSACHUSETTS (25-11496) RE: PLAINTIFF ASHLEY GJOVIK'S MOTION FOR SANCTIONS AGAINST CREDITOR APPLE INC (FEB. 20 2026, DKT. 286, 3:23-cv-04597)* (Gjovik, Ashley) (Filed on 3/3/2026) (Entered: 03/03/2026) |

| | | |
|---|---|---|
| 03/06/2026 | 300 | Transcript of Proceedings STATUS CONFERENCE held on 1/13/2026, before Judge Chen. Court Reporter/Transcriber Jennifer Coulthard, telephone number (530)537-9312. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 290 Transcript Order ) Redaction Request due 3/27/2026. (Related documents(s) 290 ) (Coulthard, Jennifer) (Filed on 3/6/2026) (Entered: 03/06/2026) |
| 03/06/2026 | 301 | Motion for Relief from a Magistrate Judge's Order re 288 Discovery Hearing,, Terminate Deadlines and Hearings, *Rule 72 (Magistrate Judge) Objections to the Written and Verbal Order at Dkt. 288* by Ashley M Gjovik. (Attachments: # 1 Exhibit Feb. 20 2026 Discovery Conference Certified Transcript (Dkt. 281, 288))(Gjovik, Ashley) (Filed on 3/6/2026) Modified on 3/9/2026 (gba, COURT STAFF). (Entered: 03/06/2026) |
| 03/06/2026 | 302 | MOTION for Sanctions *PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS AGAINST DEFENDANT APPLE INC UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 26(G)* filed by Ashley M Gjovik. Motion Hearing set for 4/16/2026 01:30 PM in Oakland, - To be determined before Magistrate Judge Kandis A. Westmore. Responses due by 3/20/2026. Replies due by 3/27/2026. (Attachments: # 1 Declaration Declaration & Exhibits, # 2 Exhibit Feb. 20 2026 Discovery Conference Certified Transcript (Dkt. 281, 288), # 3 Exhibit July 2 2025 Discovery Conference Certified Transcript (Dkt. 223, 230))(Gjovik, Ashley) (Filed on 3/6/2026) (Entered: 03/06/2026) |
| 03/10/2026 | 303 | **ORDER by Judge Edward M. Chen re 301 Plaintiff's Objections. (emclc2, COURT STAFF) (Filed on 3/10/2026)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 03/10/2026)** |
| 03/11/2026 | 304 | MOTION to Retain Confidentiality Designations filed by Apple Inc.. Motion Hearing set for 4/16/2026 01:30 PM in Oakland, - To be determined before Magistrate Judge Kandis A. Westmore. Responses due by 3/25/2026. Replies due by 4/1/2026. (Attachments: # 1 Declaration of Michael DiVincent, # 2 Declaration of Melinda S. Riechert, # 3 Proposed Order)(Riechert, Melinda) (Filed on 3/11/2026) (Entered: 03/11/2026) |
| 03/11/2026 | 305 | Administrative Motion to File Under Seal filed by Apple Inc.. (Attachments: # 1 Declaration of Melinda S. Riechert, # 2 Proposed Order, # 3 Exhibit A to Decl. of Melinda S. Riechert in Supp. of Motion to Retain Confidentiality Designations, # 4 Exhibit B to Decl. of Melinda S. Riechert in Supp. of Motion to Retain Confidentiality Designations, # 5 Exhibit C to Decl. of Melinda S. Riechert in Supp. of Motion to Retain Confidentiality Designations)(Riechert, Melinda) (Filed on 3/11/2026) (Entered: 03/11/2026) |
| 03/12/2026 | 306 | OPPOSITION/RESPONSE (re 294 MOTION to Enforce Protective Order ) filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 3/12/2026) (Entered: 03/12/2026) |
| 03/13/2026 | 307 | OPPOSITION/RESPONSE (re 294 MOTION to Enforce Protective Order ) *CORRECTED Opposition with Declaration, Exhibits, Request for Judicial Notice, and Proposed Order Denying Defendant's Motion* filed byAshley M Gjovik. (Attachments: # 1 Declaration Declaration & Exhibits, # 2 Exhibit Request for Judicial Notice of Certain Exhibits, # 3 Proposed Order Proposed Order)(Gjovik, Ashley) (Filed on 3/13/2026) (Entered: 03/13/2026) |
| 03/13/2026 | 308 | ADMINISTRATIVE MOTION Consolidate the three pending hearings by moving the April 2 hearing to April 16 re 294 MOTION to Enforce Protective Order *(Attn: Judge* |

| | | |
|---|---|---|
| | | *Westmore)* filed by Ashley M Gjovik. Responses due by 3/17/2026. (Gjovik, Ashley) (Filed on 3/13/2026) (Entered: 03/13/2026) |
| 03/16/2026 | 309 | Discovery Letter Brief*Plaintiff's Request to Compel Defendant's Response to Interrogatories No. 2 through 16, and Supplement or Sanction re: No. 1 (Reason for Termination)* filed by Ashley M Gjovik. (Attachments: # 1 Exhibit Exhibit & Declaration)(Gjovik, Ashley) (Filed on 3/16/2026) (Entered: 03/16/2026) |
| 03/16/2026 | 310 | Discovery Letter Brief*Plaintiff's Request to Compel Defendant to Produce Documents & Things re Protected Activity: RFP Set One, No. 7, 8, 9, & 10; Set Two, No. 23, 24, 28, 29, 30, 31, 32, 37, 40, 41, 42, 43, 44, & 54* filed by Ashley M Gjovik. (Attachments: # 1 Exhibit)(Gjovik, Ashley) (Filed on 3/16/2026) (Entered: 03/16/2026) |
| 03/16/2026 | 311 | OPPOSITION/RESPONSE (re 308 ADMINISTRATIVE MOTION Consolidate the three pending hearings by moving the April 2 hearing to April 16 re 294 MOTION to Enforce Protective Order *(Attn: Judge Westmore)* ) filed byApple Inc.. (Riechert, Melinda) (Filed on 3/16/2026) (Entered: 03/16/2026) |
| 03/19/2026 | 312 | REPLY (re 294 MOTION to Enforce Protective Order ) filed by Apple Inc.. (Attachments: # 1 Proposed Order - Erroneously e-filed attachment, Disregard, See doc [313-1] )(Riechert, Melinda) (Filed on 3/19/2026) Modified on 3/19/2026 (far, COURT STAFF). (Entered: 03/19/2026) |
| 03/19/2026 | 313 | Request for Judicial Notice re 294 MOTION to Enforce Protective Order filed byApple Inc.. (Attachments: # 1 Proposed Order)(Related document(s) 294 ) (Riechert, Melinda) (Filed on 3/19/2026) (Entered: 03/19/2026) |
| 03/19/2026 | 314 | CERTIFICATE OF SERVICE by Apple Inc. re 313 Request for Judicial Notice, 312 Reply to Opposition/Response (Riechert, Melinda) (Filed on 3/19/2026) (Entered: 03/19/2026) |
| 03/19/2026 | 315 | Discovery Letter Brief filed by Apple Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Riechert, Melinda) (Filed on 3/19/2026) (Entered: 03/19/2026) |
| 03/20/2026 | 316 | OPPOSITION/RESPONSE (re 302 MOTION for Sanctions *PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS AGAINST DEFENDANT APPLE INC UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 26(G)* ) filed byApple Inc.. (Riechert, Melinda) (Filed on 3/20/2026) (Entered: 03/20/2026) |
| 03/23/2026 | 317 | Discovery Letter Brief *in response to Plaintiff's Request to Compel Defendant's Response to Interrogatories No. 2 through 16, and Supplement or Sanction re: No. 1 309* filed by Apple Inc.. (Riechert, Melinda) (Filed on 3/23/2026) (Entered: 03/23/2026) |
| 03/23/2026 | 318 | Discovery Letter Brief *in response to Plaintiff's Request to Compel Defendant to Produce Documents & Things re Protected Activity: RFP Set One, No. 7, 8, 9, & 10; Set Two, No. 23, 24, 28, 29, 30, 31, 32, 37, 40, 41, 42, 43, 44, & 54 310* filed by Apple Inc.. (Riechert, Melinda) (Filed on 3/23/2026) (Entered: 03/23/2026) |
| 03/24/2026 | 319 | OPPOSITION/RESPONSE (re 315 Discovery Letter Brief ) *Opposition to Extended Deposition of Plaintiff* filed byAshley M Gjovik. (Attachments: # 1 Exhibit)(Gjovik, Ashley) (Filed on 3/24/2026) (Entered: 03/25/2026) |
| 03/25/2026 | 320 | OPPOSITION/RESPONSE (re 304 MOTION to Retain Confidentiality Designations , 305 Administrative Motion to File Under Seal ) filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 3/25/2026) Modified on 3/26/2026 (anj, COURT STAFF). (Entered: 03/25/2026) |
| 03/26/2026 | 321 | Request for Judicial Notice re 320 Opposition/Response to Motion filed by Ashley M Gjovik. (Related document(s) 320 ) (Gjovik, Ashley) (Filed on 3/26/2026) Modified on |

| | | |
|---|---|---|
| | | 3/26/2026 (anj, COURT STAFF). (Entered: 03/26/2026) |
| 03/26/2026 | 322 | Declaration of Ashley Marie Gjovik in Support of 320 Opposition/Response to Motion *re: Confidentially Designations of Public Information* filed by Ashley M Gjovik. (Related document(s) 320 ) (Gjovik, Ashley) (Filed on 3/26/2026) Modified on 3/26/2026 (anj, COURT STAFF). (Entered: 03/26/2026) |
| 03/26/2026 | 323 | TRANSCRIPT ORDER for proceedings held on 1/13/2026 before Judge Edward M Chen by Apple Inc., for Court Reporter Jennifer Coulthard. (Riechert, Melinda) (Filed on 3/26/2026) (Entered: 03/26/2026) |
| 03/26/2026 | 324 | Discovery Letter Brief*re: Production Protocol Issues regarding Defendant's subpoena of Plaintiff's Medical Records, Defendants refusal to use Authorization Form, Providers requesting an Authorization Form, and Defendant's use of Disputed Protective Order to Claim Plaintiff's Medical Records & Content within are Designated "Confidential" as applied to the Plaintiff herself* filed by Ashley M Gjovik. (Attachments: # 1 Exhibit Declaration)(Gjovik, Ashley) (Filed on 3/26/2026) Modified on 3/26/2026 (anj, COURT STAFF). (Entered: 03/26/2026) |
| 03/27/2026 | 325 | REPLY (re 302 MOTION for Sanctions *PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS AGAINST DEFENDANT APPLE INC UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 26(G)* ) filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 3/27/2026) (Entered: 03/27/2026) |
| 03/30/2026 | 326 | **ORDER DENYING APPLE'S 294 MOTION TO ENFORCE PROTECTIVE ORDER; ORDER TERMINATING 295 MOTION TO SHORTEN TIME AS MOOT. Signed by Magistrate Judge Kandis A. Westmore on 3/30/2026. Motion (Stipulation) due by 4/6/2026. (nmh, COURT STAFF) (Filed on 3/30/2026) (Entered: 03/30/2026)** |
| 03/30/2026 | 327 | **OMNIBUS DISCOVERY ORDER; ORDER SETTING FINAL FACT DISCOVERY DISPUTE PROCESS RE 309 , 310 , 315 , 317 , 318 , 319 , and 324 Discovery Letter Briefs and Opposition. Signed by Magistrate Judge Kandis A. Westmore on 3/30/2026. Motion (Opening Discovery Brief) due by 4/23/2026. Responses due by 4/30/2026. Replies due by 5/7/2026. (nmh, COURT STAFF) (Filed on 3/30/2026) (Entered: 03/30/2026)** |
| 03/30/2026 | 328 | **ORDER by Judge Kandis A. Westmore terminating as moot 308 Administrative Motion to Consolidate the three pending hearings by moving the April 2 hearing on 294 motion to enforce protective order to April 16, 2026 in light of 326 . *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (kawlc1, COURT STAFF) (Filed on 3/30/2026)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 03/30/2026)** |
| 03/30/2026 | 329 | **ORDER GRANTING DEFENDANT APPLE INC.'S 293 ADMINISTRATIVE MOTION TO SEAL. Signed by Magistrate Judge Kandis A. Westmore on 3/30/2026. (nmh, COURT STAFF) (Filed on 3/30/2026) (Entered: 03/30/2026)** |
| 03/31/2026 | 330 | *****STRICKEN BY COURT ORDER*** See [Dkt. #335]**<br>. OBJECTIONS to re 329 Order on Administrative Motion to File Under Seal *PLAINTIFFS OBJECTIONS UNDER RULE 72(a) TO PROPOSED SEALING ORDER AT DKT. 329* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 3/31/2026) Modified on 4/3/2026 (vla, COURT STAFF). (Entered: 03/31/2026) |
| 03/31/2026 | 331 | *****STRICKEN BY COURT ORDER*** See [Dkt. #335]**<br>. OBJECTIONS to re 327 Discovery Order,, Terminate Motions,, Set Deadlines, |

| | | |
|---|---|---|
| | | *PLAINTIFFS OBJECTIONS UNDER RULE 72(a) TO MAGISTRATE JUDGES ORDER AT DKT. 327* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 3/31/2026) Modified on 4/3/2026 (vla, COURT STAFF). (Entered: 03/31/2026) |
| 03/31/2026 | 332 | *****STRICKEN BY COURT ORDER*** See [Dkt. #335]** . OBJECTIONS to re 326 Order,, Terminate Motions,, Set Deadlines, *PLAINTIFFS OBJECTIONS UNDER RULE 72(a) TO MAGISTRATE JUDGES ORDER AT DKT. 326 WITH INJUNCTIONS INCLUDING GAG ORDERS AND TAKEDOWN ORDERS* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 3/31/2026) Modified on 4/3/2026 (vla, COURT STAFF). (Entered: 03/31/2026) |
| 04/01/2026 | 333 | REPLY (re 304 MOTION to Retain Confidentiality Designations ) filed byApple Inc.. (Attachments: # 1 Declaration of Melinda S. Riechert)(Riechert, Melinda) (Filed on 4/1/2026) (Entered: 04/01/2026) |
| 04/02/2026 | 334 | **ORDER DENYING 302 PLAINTIFF'S MOTION FOR DECLARATORY RELIEF AND DISCOVERY SANCTIONS. Signed by Magistrate Judge Kandis A. Westmore on 4/2/2026. (ccf, COURT STAFF) (Filed on 4/2/2026) (Entered: 04/02/2026)** |
| 04/02/2026 | 335 | **ORDER. Plaintiff has filed objections to three nondispositive orders issued by Judge Westmore. See Docket Nos. 330 , 331 , 332 . The objections constitute motions for relief under Civil Local Rule 72-2. The motions exceed the page limits set by the Local Rule. The Court has given Plaintiff some leniency in the past but she has markedly exceeded the page limits here. Accordingly, the Court STRIKES the motions for relief. Plaintiff may refile new motions so long as they comply with the Civil Local Rules, the Federal Rules, and/or other applicable federal law. Signed by Judge Edward M. Chen on 4/2/2026. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 4/2/2026)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 04/02/2026)** |
| 04/06/2026 | 336 | *PLAINTIFF'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 326 ) (re: GAG ORDERS AND PRIOR RESTRAINT, TAKE DOWN ORDERS, & OTHER INJUNCTIONS AGAINST THE PLAINTIFF) OR REQUEST FOR CERTIFICATION FOR INTERLOCUTORY APPEAL* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 4/6/2026) Modified on 4/7/2026 (kab, COURT STAFF). Modified on 4/7/2026 (kab, COURT STAFF). (Entered: 04/06/2026) |
| 04/06/2026 | 337 | *PLAINTIFF'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 327 ) (re: INTERROGATORIES, REQUEST FOR PRODUCTION, REFUSAL TO HEAR FURTHER ISSUES UNTIL AFTER DISCOVERY & SUMMARY JUDGEMENT MOTION, ETC.)* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 4/6/2026) Modified on 4/7/2026 (kab, COURT STAFF). Modified on 4/7/2026 (kab, COURT STAFF). (Entered: 04/06/2026) |
| 04/06/2026 | 338 | *PLAINTIFF'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 329 ) (re: SEALING ORDERS & IMPLIED ADDITIONAL GAG ORDER)* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 4/6/2026) Modified on 4/7/2026 (kab, COURT STAFF). Modified on 4/7/2026 (kab, COURT STAFF). (Entered: 04/06/2026) |
| 04/06/2026 | 339 | *PLAINTIFF'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (DKT. 334 ) (re: DEFENDANT'S SERVICE & SIGNING REQUIREMENT FOR CONFIDENTIALITY CLAIMS)* by Ashley M Gjovik. (Gjovik, |

| | | |
|---|---|---|
| | | Ashley) (Filed on 4/6/2026) Modified on 4/7/2026 (kab, COURT STAFF). (Entered: 04/06/2026) |
| 04/06/2026 | 340 | ADMINISTRATIVE MOTION Seal Dkt. Nos. 297, 301, 301-1, 302, 302-1, 302-2, 306, 307, 307-1, 307-2, 320, 321, 322, 325, 330, 332, and 338 re 326 Order,, Terminate Motions,, Set Deadlines, filed by Apple Inc.. Responses due by 4/10/2026. (Attachments: # 1 Declaration of Melinda S. Riechert, # 2 Proposed Order)(Riechert, Melinda) (Filed on 4/6/2026) (Entered: 04/06/2026) |
| 04/07/2026 | | Electronic filing error. Incorrect event used.Correct event should be Miscellaneous Relief Motion.Corrected by Clerk's Office. No further action is necessary. Re: 336 MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE filed by Ashley M Gjovik, 337 MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE filed by Ashley M Gjovik, 339 MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE filed by Ashley M Gjovik, 338 MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE filed by Ashley M Gjovik (kab, COURT STAFF) (Filed on 4/7/2026) (Entered: 04/07/2026) |
| 04/07/2026 | 341 | ADMINISTRATIVE MOTION to Extend the Discovery Cut-Off Deadline filed by Apple Inc.. Responses due by 4/13/2026. (Attachments: # 1 Declaration of Jessica R. Perry, # 2 Proposed Order)(Perry, Jessica) (Filed on 4/7/2026) (Entered: 04/07/2026) |
| 04/07/2026 | 342 | OPPOSITION/RESPONSE (re 340 ADMINISTRATIVE MOTION Seal Dkt. Nos. 297, 301, 301-1, 302, 302-1, 302-2, 306, 307, 307-1, 307-2, 320, 321, 322, 325, 330, 332, and 338 re 326 Order,, Terminate Motions,, Set Deadlines, ) filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 4/7/2026) (Entered: 04/07/2026) |
| 04/08/2026 | 343 | OPPOSITION/RESPONSE (re 341 ADMINISTRATIVE MOTION to Extend the Discovery Cut-Off Deadline ) filed byAshley M Gjovik. (Attachments: # 1 Declaration) (Gjovik, Ashley) (Filed on 4/8/2026) (Entered: 04/08/2026) |
| 04/08/2026 | 344 | **ORDER by Judge Edward M. Chen denying 336 , 337 , 338 , 339 Plaintiff's Motions for Relief from Nondispositve Orders of Magistrate Judge. (emclc2, COURT STAFF) (Filed on 4/8/2026)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 04/08/2026)** |
| 04/08/2026 | 345 | **ORDER by Judge Edward M. Chen granting in part 341 Defendant's Administrative Motion to Extend Discovery Cut-off Deadline. (emclc2, COURT STAFF) (Filed on 4/8/2026)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 04/08/2026)** |
| 04/09/2026 | 346 | ADMINISTRATIVE MOTION Request to Amend the Order at 345 to add Three Depositions (Deposition of Plaintiff, Deposition of Defendant as Corporation, & Deposition of Yannick Bertolus) re 345 Order on Administrative Motion per Civil Local Rule 7-11, filed by Ashley M Gjovik. Responses due by 4/13/2026. (Attachments: # 1 Declaration)(Gjovik, Ashley) (Filed on 4/9/2026) (Entered: 04/09/2026) |
| 04/10/2026 | 347 | ADMINISTRATIVE MOTION Request to Further Amend the Order at Dkt. 345 to add Four Non-Party Subpoenas to the Extended Fact Discovery re 345 Order on Administrative Motion per Civil Local Rule 7-11, filed by Ashley M Gjovik. Responses due by 4/14/2026. (Attachments: # 1 Declaration)(Gjovik, Ashley) (Filed on 4/10/2026) (Entered: 04/10/2026) |

| | | |
|---|---|---|
| 04/13/2026 | 348 | CLERK'S NOTICE VACATING HEARING ON 304 MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS.<br><br>PLEASE TAKE NOTICE THAT the Motion Hearing set for 4/16/2026 at 1:30 PM is hereby VACATED, and the matter will be decided without oral argument pursuant to Civil L.R. 7-1(b).<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ccf, COURT STAFF) (Filed on 4/13/2026) (Entered: 04/13/2026) |
| 04/13/2026 | 349 | OPPOSITION/RESPONSE (re 346 ADMINISTRATIVE MOTION Request to Amend the Order at 345 to add Three Depositions (Deposition of Plaintiff, Deposition of Defendant as Corporation, & Deposition of Yannick Bertolus) re 345 Order on Administrative Motion per Civil Local Rule 7-11, ) filed byApple Inc.. (Attachments: # 1 Declaration of Jessica R. Perry)(Perry, Jessica) (Filed on 4/13/2026) (Entered: 04/13/2026) |
| 04/13/2026 | 350 | OPPOSITION/RESPONSE (re 347 ADMINISTRATIVE MOTION Request to Further Amend the Order at Dkt. 345 to add Four Non-Party Subpoenas to the Extended Fact Discovery re 345 Order on Administrative Motion per Civil Local Rule 7-11, ) filed byApple Inc.. (Perry, Jessica) (Filed on 4/13/2026) (Entered: 04/13/2026) |
| 04/13/2026 | 351 | **ORDER REQUIRING CHAMBERS COPIES re 340 Apple's ADMINISTRATIVE MOTION to Seal Docket Entries, 342 Plaintiff's Opposition to sealing. By 4/16/2026, the parties are ordered to lodge hard copies of all documents and tabbed exhibits, if any, and email Word (.docx) versions of their moving papers to *kawpo@cand.uscourts.gov* in accordance with Paras. 6 & 7 of Judge Westmores Civil Standing Order. Signed by Judge Kandis A. Westmore on 4/13/2026. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (kawlc1, COURT STAFF) (Filed on 4/13/2026)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br><br>**(Entered: 04/13/2026)** |
| 04/14/2026 | 352 | **ORDER by Judge Edward M. Chen granting in part 346 Plaintiff's Motion re Discovery Deadline. (emclc2, COURT STAFF) (Filed on 4/14/2026)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br><br>**(Entered: 04/14/2026)** |
| 04/15/2026 | 353 | **ORDER by Judge Edward M. Chen denying 347 Plaintiff's Motion re Discovery Deadline. (emclc2, COURT STAFF) (Filed on 4/15/2026)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br><br>**(Entered: 04/15/2026)** |
| 04/15/2026 | 354 | CERTIFICATE OF SERVICE by Ashley M Gjovik *PLAINTIFFS DECLARATION & CERTIFICATE OF SERVICE PER COURT ORDERS AT DKT. 351, 352, & 353* (Gjovik, Ashley) (Filed on 4/15/2026) (Entered: 04/15/2026) |
| 04/16/2026 | 355 | **Order as Modified Granting 340 Defendant Apple Inc.'s Administrative Motion to Seal in Response to Dkt. No. 326 . Signed by Magistrate Judge Kandis A. Westmore on 4/16/2026. (ccf, COURT STAFF) (Filed on 4/16/2026) (Entered: 04/16/2026)** |
| 04/21/2026 | 356 | Joint Discovery Letter Brief per Order at Dkt 352 regarding the Rule 30(B)(6) Deposition of Defendant Apple Inc filed by Ashley M Gjovik. (Attachments: # 1 Exhibit Amended |

| | | |
|---|---|---|
| | | Notice of Rule 30(B)(6) Deposition of Defendant Apple Inc, # 2 Proposed Order, # 3 Declaration) (Gjovik, Ashley) (Filed on 4/21/2026) (Entered: 04/21/2026) |
| 04/22/2026 | 357 | **ORDER REGARDING 356 4/21/26 JOINT LETTER RE PLAINTIFF'S REQUESTED RULE 30(B)6) DEPOSITION. Signed by Magistrate Judge Kandis A. Westmore on 4/22/2026. (ccf, COURT STAFF) (Filed on 4/22/2026) (Entered: 04/22/2026)** |
| 04/23/2026 | 358 | Plaintiff's Opening Discovery Dispute Brief per Order at Dkt. No. 327 filed by Ashley M Gjovik. (Attachments: # 1 Exhibit Parties Meet & Confer Email Chain, # 2 Exhibit Plaintiff's RFP Set One, # 3 Exhibit Defendant's Response to Pl's RFP Set One, # 4 Exhibit Plaintiff's RFP Set Two, # 5 Exhibit Defendant's Response to Pl's RFP Set Two, # 6 Exhibit Plaintiff's RFP Set Three (No Response), # 7 Exhibit Plaintiff's RFP Set Four (No Response), # 8 Exhibit Defendant's Privilege Log, # 9 Exhibit Defendant's Amended Initial Disclosures, # 10 Proposed Order)(Gjovik, Ashley) (Filed on 4/23/2026) (Entered: 04/24/2026) |
| 04/24/2026 | 359 | MOTION for Summary Judgment and Preliminary Injunction (Partial) against Defendant Apple Inc on Certain Subclaims under Tamney, §§ 98.6, 1102.5, 6310 with request for Preliminary Injunction per Dkt. 273 filed by Ashley M Gjovik. Motion for Summary Judgment Hearing set for 6/11/2026 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 5/11/2026. Replies due by 5/18/2026. (Attachments: # 1 Proposed Order)(Gjovik, Ashley) (Filed on 4/24/2026) (Entered: 04/24/2026) |
| 04/24/2026 | 360 | Declaration of Ashley Gjovik in Support of Plaintiff's Motion for Partial Summary Judgment with Exhibits in Support of 359 MOTION for Summary Judgment (Partial) against Defendant Apple Inc on Certain Subclaims under Tamney, §§ 98.6, 1102.5, 6310 with request for Preliminary Injunction per Dkt. 273 filed by Ashley M Gjovik. (Related document(s) 359 ) (Gjovik, Ashley) (Filed on 4/24/2026) (Entered: 04/24/2026) |
| 04/24/2026 | 361 | ADMINISTRATIVE MOTION to Strike Plaintiff's Late-Filed Motion and Declaration re 359 MOTION for Summary Judgment (Partial) against Defendant Apple Inc on Certain Subclaims under Tamney, §§ 98.6, 1102.5, 6310 with request for Preliminary Injunction per Dkt. 273, 360 Declaration in Support, filed by Apple Inc.. Responses due by 4/28/2026. (Attachments: # 1 Declaration of Melinda S. Riechert, # 2 Proposed Order) (Riechert, Melinda) (Filed on 4/24/2026) (Entered: 04/24/2026) |
| 04/25/2026 | 362 | OPPOSITION/RESPONSE (re 361 ADMINISTRATIVE MOTION to Strike Plaintiff's Late-Filed Motion and Declaration re 359 MOTION for Summary Judgment *(Partial) against Defendant Apple Inc on Certain Subclaims under Tamney, §§ 98.6, 1102.5, 6310 with request for P ) Request for Leave to File dkt. 359-360 1-day past deadline; request to extend defendant's response time from May 7 to May 11; certification of service of chamber's copies (April 25 2026); & Opposition to Defendant's Admin Motion at dkt 361 filed by Ashley M Gjovik. (Attachments: # 1 Declaration & Supporting Exhibits) (Gjovik, Ashley) (Filed on 4/25/2026) (Entered: 04/25/2026)* |
| 04/30/2026 | 363 | Brief *Re: Remaining Discovery Disputes and Opposition to Plaintiff's Opening Discovery Dispute Brief* 358 filed byApple Inc.. (Attachments: # 1 Exhibits in Support)(Riechert, Melinda) (Filed on 4/30/2026) (Entered: 04/30/2026) |
| 05/05/2026 | 364 | **ORDER REGARDING UNUSABLE CHAMBERS COPIES re 363 Brief. Signed by Judge Kandis A. Westmore on 5/5/2026.<br>Defendant to submit chambers copies by 5/8/2026.<br>(ccf, COURT STAFF) (Filed on 5/5/2026) (Entered: 05/05/2026)** |
| 05/06/2026 | 365 | OPPOSITION/RESPONSE (re 358 Plaintiff's Opening Discovery Dispute Brief per Order at Dkt. No. 327 ) *Plaintiff's Responsive Brief Re: Defendant's Remaining Discovery* |

| | | |
|---|---|---|
| | | *Disputes; Filed Per Judge Westmore's Order In Dkt. 327 at P. 7* filed by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 5/6/2026) (Entered: 05/06/2026) |
| 05/07/2026 | 366 | EXHIBITS re 365 Opposition/Response to Motion, *Exhibit A in Support of Plaintiff's Responsive Brief - Excerpt of Defendant Apple Inc's Dec. 16 2025 Deposition of Plaintiff Ashley Gjovik regarding Apple employee Cher Scarlett and the "Gobbler" data collection software* filed byAshley M Gjovik. (Related document(s) 365 ) (Gjovik, Ashley) (Filed on 5/7/2026) (Entered: 05/07/2026) |
| 05/07/2026 | 367 | MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* filed by Apple Inc.. Motion for Summary Judgment Hearing set for 6/11/2026 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 5/21/2026. Replies due by 5/28/2026. (Attachments: # 1 Proposed Order)(Riechert, Melinda) (Filed on 5/7/2026) (Entered: 05/07/2026) |
| 05/07/2026 | 368 | Declaration of Melinda S. Riechert in Support of 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* filed byApple Inc.. (Related document(s) 367 ) (Riechert, Melinda) (Filed on 5/7/2026) (Entered: 05/07/2026) |
| 05/07/2026 | 369 | Declaration of Yannick Bertolus in Support of 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* filed byApple Inc.. (Related document(s) 367 ) (Riechert, Melinda) (Filed on 5/7/2026) (Entered: 05/07/2026) |
| 05/07/2026 | 370 | Declaration of Robert Aloe in Support of 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* filed byApple Inc.. (Related document(s) 367 ) (Riechert, Melinda) (Filed on 5/7/2026) (Entered: 05/07/2026) |
| 05/07/2026 | 371 | Declaration of Megan Bowman in Support of 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* filed byApple Inc.. (Related document(s) 367 ) (Riechert, Melinda) (Filed on 5/7/2026) (Entered: 05/07/2026) |
| 05/07/2026 | 372 | Declaration of Ekelemchi Okpo in Support of 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* filed byApple Inc.. (Related document(s) 367 ) (Riechert, Melinda) (Filed on 5/7/2026) (Entered: 05/07/2026) |
| 05/07/2026 | 373 | Request for Judicial Notice re 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* filed byApple Inc.. (Attachments: # 1 Proposed Order)(Related document(s) 367 ) (Riechert, Melinda) (Filed on 5/7/2026) (Entered: 05/07/2026) |
| 05/21/2026 | 374 | OPPOSITION/RESPONSE (re 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* ) *REPLY IN SUPPORT OF PL'S MSJ; OPPOSITION TO DEF'S CROSS-MSJ* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 5/21/2026) (Entered: 05/22/2026) |
| 05/22/2026 | 375 | OPPOSITION/RESPONSE (re 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* ) *CORRECTED VERSION - REPLACING DOCKET 374* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 5/22/2026) (Entered: 05/22/2026) |

| | | |
|---|---|---|
| 05/22/2026 | 376 | OPPOSITION/RESPONSE (re 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* ) *OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE AT 373 AND/OR CONDITIONAL CROSS-REQUEST FOR JUDICIAL NOTICE ARISING FROM DEFENDANT'S REQUEST AT DKT 373* filed byAshley M Gjovik. (Gjovik, Ashley) (Filed on 5/22/2026) (Entered: 05/22/2026) |
| 05/25/2026 | 377 | Declaration of Ashley M. Gjovik (as pro se Plaintiff) in Support of 375 Opposition/Response to Motion, *DECLARATION AND EXHIBITS RE: CERTIFIED DEPOSITION TRANSCRIPTS (APPLE INC/WARNER, ADELMISE; BERTOLUS, YANNICK; WEST, DAN; OKPO, EKELEMCHI; KAGRAMANOV, ALEKS; MCKEON-ALOE, ROBERT; GJOVIK, ASHLEY) AND AGENCY INTERVIEW TRANSCRIPTS (GJOVIK, ASHLEY) -- AS CITED IN PLAINTIFF'S REPLY/OPP DECL. AND PLAINTIFF'S FILINGS AT DKT. 359, 375 (WITH CORRECTED PINCITES)* filed byAshley M Gjovik. (Related document(s) 375 ) (Gjovik, Ashley) (Filed on 5/25/2026) (Entered: 05/25/2026) |
| 05/25/2026 | 378 | Request for Judicial Notice re 375 Opposition/Response to Motion, *APPENDIX OF CAL. LABOR CODE (98.6, 96K, 232.5, 1102.5-1102.62, 6310), CAL CIV. CODE (51.9, 1001), CAL. PEN. CODE (266, 647), & CAL. GOV. CODE (12940) OFFICIAL STATUTES; AND CAL. LABOR CODE LEGISLATION PENDING IN SESSION 2025-2026 (AB-1883 - WORKPLACE SURVEILLANCE TOOLS, AB-1898 - WORKPLACE AI TOOLS, AB-1331 - WORKPLACE SURVEILLANCE)* filed byAshley M Gjovik. (Related document(s) 375 ) (Gjovik, Ashley) (Filed on 5/25/2026) (Entered: 05/25/2026) |
| 05/26/2026 | 379 | Declaration of Ashley M. Gjovik (Plaintiff) in Support of 375 Opposition/Response to Motion, 359 MOTION for Summary Judgment and Preliminary Injunciton (Partial) against Defendant Apple Inc. *SUBSTANTIVE DECLARATION OF ASHLEY GJOVIK IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH REPLY; WITH REQUEST FOR LEAVE TO FILE AND INCLUDE* filed byAshley M Gjovik. (Related document(s) 375 , 359 ) (Gjovik, Ashley) (Filed on 5/26/2026) (Entered: 05/27/2026) |
| 05/28/2026 | 380 | REPLY (re 367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities filed by Apple Inc.* ) filed byApple Inc.. (Riechert, Melinda) (Filed on 5/28/2026) (Entered: 05/28/2026) |
| 05/28/2026 | 381 | Declaration of Melinda S. Riechert in Support of 380 Reply to Opposition/Response, filed byApple Inc.. (Related document(s) 380 ) (Riechert, Melinda) (Filed on 5/28/2026) (Entered: 05/28/2026) |
| 05/28/2026 | 382 | RESPONSE re 373 Request for Judicial Notice, *and Objections to 376 Opposition/Response to Motion and 378 Request for Judicial Notice* by Apple Inc.. (Riechert, Melinda) (Filed on 5/28/2026) (Entered: 05/28/2026) |
| 06/04/2026 | 383 | **ORDER RESOLVING REMAINING FACT DISCOVERY DISPUTES Re: Dkt. Nos. 358 , 363 , 365 . Signed by Magistrate Judge Kandis A. Westmore on 6/4/2026. (ccf, COURT STAFF) (Filed on 6/4/2026) (Entered: 06/04/2026)** |
| 06/04/2026 | 384 | Plaintiffs MOTION for Relief from Non-Dispositive Pretrial Order of Magistrate Judge (Dkt. 383) Objection to re 383 Order on Discovery Letter Brief by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 6/4/2026) Modified on 6/9/2026 (kmg, COURT STAFF). (Entered: 06/04/2026) |

| | | |
|---|---|---|
| 06/09/2026 | 385 | **CLERK'S NOTICE RESCHEDULING TIME OF MOTIONS HEARING.**<br><br>**Motions Hearing as to 359 MOTION for Summary Judgment and Preliminary Injunction (Partial) against Defendant Apple Inc., and**<br><br>**367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities* reset from 6/11/2026 at 1:30 PM to 6/11/2026, at 2:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen.**<br><br>**ALL COUNSEL PARTICIPATING IN THE HEARING ARE REQUIRED TO ARRIVE IN COURTROOM 5, 17TH FLOOR NO LATER THAN 2:15 PM TO CHECK-IN WITH THE COURTROOM DEPUTY.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 6/9/2026)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 06/09/2026)** |
| 06/09/2026 | 386 | **ORDER by Judge Edward M. Chen denying 384 Plaintiff's Motion for Relief from Magistrate Order. (emclc2, COURT STAFF) (Filed on 6/9/2026)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 06/09/2026)** |
| 06/10/2026 | 387 | NOTICE of Appearance filed by Nicholas James Horton on behalf of Apple Inc. (Horton, Nicholas) (Filed on 6/10/2026) (Entered: 06/10/2026) |
| 06/11/2026 | 392 | **Minute Entry for proceedings held before Judge Edward M Chen:**<br><br>**Motion Hearing held on 6/11/2026 re 359 MOTION for Summary Judgment and Preliminary Injunction (Partial) against Defendant Apple Inc and**<br><br>**367 MOTION for Summary Judgment *and OPPOSITION (re 359 MOTION for Summary Judgment and Preliminary Injunction) / Memorandum of Points and Authorities***<br><br>***Total Time in Court: 36 Minutes. Court Reporter: Kendra Steppler. (vla, COURT STAFF) (Date Filed: 6/11/2026) (Entered: 06/24/2026)*** |
| 06/18/2026 | 388 | RESPONSE re 383 Order on Discovery Letter Brief by MDlive, Inc.. (Attachments: # 1 Exhibit A - Subpoena Issued to MD Live, Inc., # 2 Exhibit B - Declaration re Service) (Traver, Joshua) (Filed on 6/18/2026) (Entered: 06/18/2026) |
| 06/24/2026 | 389 | **ORDER by Judge Edward M. Chen denying 359 Plaintiff's Motion for Summary Judgment; granting in part and denying in part 361 Defendant's Motion to Strike; and granting 367 Defendant's Motion for Summary Judgment. (emclc2, COURT STAFF) (Filed on 6/24/2026)**<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>**(Entered: 06/24/2026)** |
| 06/24/2026 | 390 | **JUDGMENT. Signed by Judge Edward M. Chen on 6/24/2026. (vla, COURT STAFF) (Filed on 6/24/2026)** |

| | | |
|---|---|---|
| | | **Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 06/24/2026)** |
| 06/24/2026 | | ***Civil Case Terminated. (vla, COURT STAFF) (Filed on 6/24/2026) (Entered: 06/24/2026) |
| 06/24/2026 | 391 | NOTICE by Ashley M Gjovik *REQUEST FOR MINUTE ORDER RE JUNE 11 2026 HEARING (DKT. 385) & ORDER/DECISION ON CONFIDENTIALITY DESIGNATIONS (DKT. 304-305, 355).* (Gjovik, Ashley) (Filed on 6/24/2026) (Entered: 06/24/2026) |
| 06/24/2026 | 393 | TRANSCRIPT ORDER for proceedings held on 06/11/2026 before Judge Edward M Chen by Ashley M Gjovik, for Court Reporter Kendra Steppler. (Gjovik, Ashley) (Filed on 6/24/2026) (Entered: 06/24/2026) |
| 06/25/2026 | 394 | **Order Granting 305 Defendant Apple Inc.'s Administrative Motion to Seal. Signed by Magistrate Judge Kandis A. Westmore on 6/25/2026. (ccf, COURT STAFF) (Filed on 6/25/2026) (Entered: 06/25/2026)** |
| 06/29/2026 | 395 | Transcript of Proceedings held on June 11, 2026, before Judge Edward M. Chen. Court Reporter Kendra Steppler, email at kendra_steppler@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 393 Transcript Order ) Release of Transcript Restriction set for 9/28/2026. (Related documents(s) 393 ) (Steppler, Kendra) (Filed on 6/29/2026) (Entered: 06/29/2026) |
| 06/29/2026 | 396 | **ORDER GRANTING 304 DEFENDANT'S MOTION TO RETAIN CONFIDENTIALITY. Signed by Magistrate Judge Kandis A. Westmore on 6/29/2026. (ccf, COURT STAFF) (Filed on 6/29/2026) (Entered: 06/29/2026)** |
| 07/13/2026 | 397 | *PLAINTIFF'S MOTION FOR RELIEF FROM NON DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE re 396 Order on Motion for Miscellaneous Relief (DKT. 396) RULE 72(A)* by Ashley M Gjovik. (Gjovik, Ashley) (Filed on 7/13/2026) Modified on 7/15/2026 (kmg, COURT STAFF). (Entered: 07/13/2026) |
| 07/16/2026 | 398 | **ORDER denying 397 Plaintiff's Motion for Relief from Magistrate Judge Order. Signed by Judge Edward M. Chen on 7/16/2026. (emclc2, COURT STAFF) (Filed on 7/16/2026)**<br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 07/16/2026)** |
| 07/22/2026 | 399 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Ashley M Gjovik. Appeal of Judgment, 390 (Pay.gov Agency Tracking ID 77457673167.) (Attachments: # 1 Exhibit Payment Receipt)(Gjovik, Ashley) (Filed on 7/22/2026) (Entered: 07/22/2026) |
| 07/23/2026 | 400 | Filing fee: $ 605.00, receipt number 284D579V. (pjf, COURT STAFF) (Filed on 7/23/2026) (Entered: 07/23/2026) |
| 07/23/2026 | 401 | USCA Case Number 26-4716 9th Circuit Court of Appeals (bjw, COURT STAFF) (Filed on 7/23/2026) (Entered: 07/24/2026) |
| 08/12/2026 | 402 | Motion for Clarification re: Dkt. 398 by Ashley M Gjovik re 398 Order, *Plaintiff's Request for Clarification re: Dkt. 398 and the pending Appeal (Dkt. 399-401)* (Gjovik, Ashley) (Filed on 8/12/2026) Modified on 8/19/2026 (kmg, COURT STAFF). (Entered: 08/12/2026) |

| | | |
|---|---|---|
| 08/14/2026 | 403 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Ashley M Gjovik. Appeal of Order, 398 (Pay.gov Agency Tracking ID 2853RGKP.) (Attachments: # 1 Exhibit Payment receipt)(Gjovik, Ashley) (Filed on 8/14/2026) (Entered: 08/14/2026) |
| 08/17/2026 | 404 | **ORDER. Defendant shall file a response to 402 Plaintiff's request for clarification by 8/21/2026. Signed by Judge Edward M. Chen on 8/17/2026. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (emclc2, COURT STAFF) (Filed on 8/17/2026)** <br> **Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)** <br> **(Entered: 08/17/2026)** |
| 08/19/2026 | 405 | USCA Case Number 26-5331 9th Circuit Court of Appeals. (bjw, COURT STAFF) (Filed on 8/19/2026) (Entered: 08/19/2026) |
| 08/21/2026 | 406 | REPLY (re 402 MOTION ) *Defendant Apple Inc.'s Response to Request for Clarification RE: dkt. 398 filed by Apple Inc.. (Riechert, Melinda) (Filed on 8/21/2026) Modified on 8/24/2026 (kmg, COURT STAFF). (Entered: 08/21/2026)* |
| 08/25/2026 | 407 | **ORDER by Judge Edward M. Chen re 402 Plaintiff's Motion for Clarification. (emclc2, COURT STAFF) (Filed on 8/25/2026)** <br> **Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)** <br> **(Entered: 08/25/2026)** |
| 08/28/2026 | 408 | REDACTION to 297 Opposition/Response to Motion, *filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 409 | REDACTION *to 301 Plaintiff's Objections, filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 410 | REDACTION *to [301-1] Exhibit Feb. 20 2026 Discovery Conference Certified Transcript, filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 411 | REDACTION *to 302 MOTION for Sanctions, filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 412 | REDACTION *to [302-1] Declaration Declaration & Exhibits, filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 413 | REDACTION *to [302-2] Exhibit Feb. 20 2026 Discovery Conference Certified Transcript, filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 414 | REDACTION to 306 Opposition/Response to Motion *filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 415 | REDACTION to 307 Opposition/Response to Motion, *filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 416 | REDACTION *to [307-1] Declaration Declaration & Exhibits, filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 417 | REDACTION *to [307-2] Exhibit Request for Judicial Notice of Certain Exhibits, filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |

| | | |
|---|---|---|
| 08/28/2026 | 418 | REDACTION to 320 Opposition/Response to Motion, *filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 419 | REDACTION to 321 Request for Judicial Notice , *filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 420 | REDACTION to 322 Declaration in Support, *filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 08/28/2026 | 421 | REDACTION to 325 Reply to Opposition/Response , *filed at Plaintiff's direction* by Apple Inc.. (Riechert, Melinda) (Filed on 8/28/2026) (Entered: 08/28/2026) |
| 09/06/2026 | 422 | Transcript Designation Form for proceedings held on 6/11/26, 1/13/2026, 8/5/2025, 2/21/2025, 8/28/2024, 7/16/2024, 5/16/2024 before Judge Edward Chen, re 401 USCA Case Number *26-4716* Transcript due by 9/4/2026. (Gjovik, Ashley) (Filed on 9/6/2026) (Entered: 09/06/2026) |
| 09/06/2026 | 423 | Transcript Designation Form for proceedings held on n/a before Judge n/a, re 405 USCA Case Number *26-5331* Transcript due by 9/28/2026. (Gjovik, Ashley) (Filed on 9/6/2026) (Entered: 09/06/2026) |

## PACER Service Center

### Transaction Receipt

| | | | |
|---|---|---|---|
| 11/13/2026 19:40:00 | | | |
| **PACER Login:** | ashleygjovik | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-04597-EMC |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |